**UNITED STATES DISTRICT COURT**
**Washington DC**

**FILED**

JAN 16 2009

Clerk, U.S. District and
Bankruptcy Courts

John Connolly
5609 Trotter Road
Clarksville MD 21029 *
(and similarly situated individuals)
703 856-6712
Plaintiff,

vs.

Case: 1:09-cv-00110
Assigned To : Robertson, James
Assign. Date : 1/16/2009
Description: Pro Se Gen. Civil

**Jury Trial**
**Demanded**

Ernst & Young LLP
1225 Connecticut Avenue N.W.
Washington D.C. 20036

Defendants – (Approximately 46)

| | | |
|---|---|---|
| Kathryn A Oberly General Counsel<br>Ernst & Young LLP<br>1225 Connecticut Avenue N.W.<br>Washington D.C. 20036 ✓ | Oracle Corporation<br>1090 Vermont Ave North West<br>Washington D.C. 20005 ✓ | USIS Corporation<br>7799 Leesburg Pike,<br>Suite 1100 North<br>Falls Church, VA 22043-2413 ✓ |
| PriceWaterhouseCoopers<br>300 Madison Avenue<br>New York N.Y. 10017 ✓ | Unisys Corporation<br>Unisys Way<br>Blue Bell , PA 19424-0001 ✓ | William J. Cull Chief Legal Officer<br>USIS Corporation<br>7799 Leesburg Pike,<br>Suite 1100 North<br>Falls Church, VA 22043-2413 ✓ |
| KPMG LLP<br>2001 M Street NW<br>Washington D.C. 20036-3310 ✓ | IBM Corporation<br>1 New Orchard Road<br>Armonk, New York 10504-1722 ✓ | Bristol Myers Squbb<br>345 Park Avenue<br>New York, New York,<br>USA 10154-0037 ✓ |
| Deloitte LLP<br>1633 Broadway<br>New York, New York 10019-6754 ✓ | BAE SYSTEMS North America,<br>1300 North 17th Street, Suite 1400<br>Arlington, Virginia 22209 ✓ | Chevy Chase Bank<br>7501 Wisconsin Avenue<br>Bethesda, MD 20814 ✓ |
| Bearingpoint Inc<br>1676 International Drive<br>McLean, VA 22102 | Northrop Grumman Corporation<br>Corporate Government Relations<br>1000 Wilson Boulevard<br>Arlington, Virginia 22209-2278 ✓ | Bank of America<br>100 North Tryon Street<br>Charlotte, North Carolina ✓ |
| AT&T's /Bell South<br>Whitacre Tower<br>175 E. Houston,<br>San Antonio, Texas 78205. ✓ | Citigroup Inc<br>399 Park Avenue<br>New York, NY 10043 ✓ | |

| | | |
|---|---|---|
| Ms. Valerie E. Caproni General Counsel<br>Federal Bureau of Investigation<br>935 Pennsylvania Avenue, NW<br>Washington, D.C. 20535-0001 | Ms. Janet Barnes<br>Chief Information Officer<br>Office of Personnel Management<br>1900 E Street NW,<br>Washington, DC 20415-001 | Parikh Jayprakash –<br>Supervisory Systems Acct<br>Pension Benefit Guaranty Corp<br>1200 K Street NW,<br>Washington DC 20005-4026 |
| Mr. William L. Hooton Asst Dir<br>Records Management Division<br>Federal Bureau of Investigation<br>935 Pennsylvania Avenue, NW<br>Washington, D.C. 20535-0001 | Pension Benefit Guaranty Corp<br>United States Government Agency<br>1200 K Street NW,<br>Washington DC 20005-4026 | Christina Pearson Assistant Secretary for Public Affairs<br>Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201 |
| Mr. Patrick E. McFarland<br>Inspector General<br>Office of Personnel Management<br>1900 E Street NW,<br>Washington, DC 20415-001 | Judith Starr is General Counsel.<br>Pension Benefit Guaranty Corp<br>United States Government Agency<br>1200 K Street NW,<br>Washington DC 20005-4026 | ~~**U.S. Solicitor General**~~<br>~~**950 Pennsylvania Ave NW**~~<br>~~**Washington DC 20530**~~ |
| Mr. Kerry B. McTigue General Counsel<br>Office of Personnel Management<br>1900 E Street NW,<br>Washington, DC 20415-001 | Walt Luiza - Deputy Director & Treasurer<br>Pension Benefit Guaranty Corp<br>1200 K Street NW,<br>Washington DC 20005-4026 | ~~**US Attorney**~~<br>~~**Jeffrey A. Taylor**~~<br>~~**555 4th street NW., Suite 3266**~~<br>~~**Washington, D.C. 20530 -0001**~~ |
| Ms. Linda M. Springer Director<br>U.S. Office of Personnel Management<br>1900 E Street NW,<br>Washington, DC 20415-001 | Ruben G. Moreno Manager, Attorney<br>Pension Benefit Guaranty Corp<br>1200 K Street NW,<br>Washington DC 20005-4026 | Federal Deposit Insurance Corp<br>550 17th St., NW,<br>Washington, DC 20429 |
| Ms. Kathy Dillaman Assoc Director<br>Office of Personnel Management<br>1900 E Street NW,<br>Washington, DC 20415-001 | John P. Higgins, Jr. Inspector General,<br>U.S. Department of Education<br>400 Maryland Avenue, SW, PCP 9143<br>Washington, DC 20202-4700 | Richard W. Hartt C/O<br>FDIC Federal Deposit Insurance Corp<br>Virginia Square, L. William Seidman Center<br>3501 Fairfax Drive,<br>Arlington, VA 22226 |
| Daniel R. Levinson Inspector General,<br>Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201 | PAUL S. KOFFSKY<br>Deputy General Counsel for Personnel<br>Department of Defense<br>1000 Defense Pentagon<br>Washington, DC 20301-1000 | Gus P. Coldebella General Counsel<br>Department Homeland Security<br>Washington, DC 20528 |
| Daniel R Meron<br>7501 Hackamore Dr<br>Potomac, MD 20854-3816 | Robert F. Hoyt General Counsel<br>Department of the Treasury<br>1500 Pennsylvania Avenue, NW<br>Washington, D.C. 20220) | Mr. Lennard Loewentritt Acting General Counsel<br>General Services Administration<br>1800 F St NW<br>Washington, DC 20405-0000 |
| Kerry Weems Administrator<br>Center For Medicare Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201 | State of Virginia C/O Gov Kaine<br>Patrick Henry Building, 3rd Floor<br>1111 East Broad Street<br>Richmond, Virginia 23219 | Brian D. Miller Inspector General<br>General Services Administration<br>1800 F St NW<br>Washington, DC 20405-0000 |
| J. Carolyn Adams Exec Officer GCO<br>Department of Education<br>400 Maryland Avenue, SW, PCP 9143<br>Washington, DC 20202-4700 | **United States ~~et al~~**<br>~~**U.S. Solicitor General**~~ US Attorney General<br>**950 Pennsylvania Ave NW**<br>**Washington DC 20530** | Gordon S. Heddell Acting Inspector General<br>Department of Defense<br>1000 Defense Pentagon<br>Washington, DC 20301-1000 |
| D.J. Gribbin - General Counsel<br>Department of Transportation<br>1200 New Jersey Avenue S.E.<br>Washington D.C. 20590 | | |

**Table of Contents**


| | | Page |
|---|---|---|
| Defendants - | | |
| Complaint Overview | | 1 |
| Jurisdiction & Venue | | 9 |
| Demands | End of doc | 130 |
| Parties & Facts | | 9 |
| Detailing of Specific Facts | | 19 |
| First Cause of Action – Declaratory Judgment APA | | 44 |
| Second Cause of Action – APA/U.S. Const – Denial of Due Process In Termination Of Federal "EMPLOYMENT/LICENSE" | | 47 |
| Third Cause of Action – APA/U.S. Const – Denial of Due Process In Termination Of Federal Contractor "EMPLOYMENT/LICENSE" | | 52 |
| Fourth Cause of Action – APA/Failure To Follow Regulations or Statutes | | 56 |
| **Fifth Cause of Action EMERGENCY – LIBERTY INTEREST & NAME CLEARING HEARING** | | 59 |
| Sixth Cause of Action – Privacy Act | | 67 |
| Seventh Cause of Action – Privacy Act | | 71 |
| Eighth Cause of Action – Privacy Act | | 76 |
| Ninth Cause of Action – Fifth Amendment Liberty Interest | | 80 |
| Tenth Cause of Action – | | 85 |
| Eleventh Cause of Action – | | 89 |
| Twelfth Cause of Action – | | 91 |
| Thirteenth Cause of Action – | | 92 |
| Fourteenth Cause of Action – | | 94 |
| Fifteenth Cause of Action – | | 95 |
| Sixteenth Cause of Action – | | 96 |
| Seventeenth Cause of Action – | | 97 |
| Eighteenth Cause of Action – | | 98 |
| Nineteenth Cause of Action – | | 100 |
| Twentieth Cause of Action – | | 102 |
| Twenty-first Cause of Action – | | 105 |
| Twenty-Second Cause of Action – | | 108 |
| Twenty-Third Cause of Action – | | 109 |
| Twenty-Forth Cause of Action – | | 110 |
| Twenty-Fifth Cause of Action – US Constitution Amendment II - **Right To Bear Arms** | | 112 |
| Twenty-Sixth Cause of Action – US Constitution Amendment IV - **Right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,** | | 112 |
| Twenty-Seventh Cause of Action – US Constitution Amendment V - **No Capital Crime without** Presentment Or Indictment. Nor be deprived of life, liberty, or property, without due process of law | | 114 |
| Twenty-Eighth Cause of Action – US Constitution Amendment VI - **Right to a speedy and public trial,** by an impartial jury & be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have the assistance of counsel for his defense. | | 116 |
| Twenty-Ninth Cause of Action – US Constitution Amendment VIII - **Nor cruel and unusual punishments** | | 117 |
| Thirtieth Cause of Action – US Constitution Amendment IX - **Privacy and Right To Be Left Alone** | | 118 |
| Thirty First Cause of Action – US Constitution Amendment X - **Powers not delegated** to the United States reserved to the states respectively, or to the people. | | 119 |
| Thirty Second Cause of Action – US Constitution Amendment XIV - **Right to Due Process.** | | 119 |
| Thirty Third Cause of Action – US Constitutional Rights & Civil Protections As Provisioned By Congress & Provided In Title 18, U.S.C., Section 241 - **Conspiracy Against Rights** | | 120 |
| Thirty Fourth Cause of Action – US Constitutional Rights & Civil Protections As Provisioned By Congress & Provided In Title 18, U.S.C., Section 242 - **Acting under color of law, To willfully deprive or cause to be deprived from any person those rights** | | 122 |
| Thirty Fifth Cause of Action – US Constitutional Rights & Civil Protections As Provisioned By Congress & Provided In Title 18, U.S.C., Section 245 **Federally Protected Activities** | | 124 |
| Thirty Sixth Cause of Action – US Constitutional Rights & Civil Protections **RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT** TITLE 18 U.S.C. S1962(d) (CONSPIRACY CLAIM) CIVIL REMEDIES TITLE 18 U.S.C. 1964(c) – **RICO** | | 126 |
| Thirty Seventh Cause of Action – US Constitutional Rights & Civil Protections As Provisioned By Civil Rights Act of 1871,1964, 42 U.S.C. §§ 1983, 1985, 1988. et al | | 129 |

## COMPLAINT

Plaintiff John Connolly (and similarly situated individuals), brings this action against defendant government agencies, public and private corporations and companies and individuals serving in credentialed Public Trust Positions, "under color of law", including "Officers of the Court", attorneys, functioning from the offices of General Councils for government agencies, Inspector Generals and attorneys representing public and private corporations, who conducted and/or participated, in violation of law, in supporting maintaining and protecting, concealed adjudication processes adversely impacting Plaintiffs. Adverse actions were initially based on incorrect, misleading, false and fraudulent information with respect to John Connolly. John Connolly (and similarly situated individuals) was denied Due Process in adverse actions taken over a period spanning two decades or more, for which claims are being pursued. Actions are taken against aforementioned defendants and other unnamed defendents pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the Administrative Procedure Act, 5 U.S.C. § 701 the Privacy Act, 5 U.S.C. § 552a, Federal Acquisition Regulations, Anti-Deficiency Act, the All Writs Act, 28 U.S.C. § 1651, the Code of Federal Regulations, and internal regulations of FBI, OPM, OMB, DOJ, DOD, DSS, Commerce, GSA, FDIC, HHS, DHS, TSA, DOT, Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985,1988, 1994, and Racketeer Influenced and Corrupt Organization Act Title 18 U.S.C. S1962(d) (CONSPIRACY CLAIM) CIVIL REMEDIES TITLE 18 U.S.C. 1964(c). Actions are also taken under the Civil Rights Act of 1964 (42 U.S.C. 2000e-5(e), 2000a et seq, & section717,) and relief authorized by 1977A of the Revised Statutes (42 U.S.C. 1981a), Age Discrimination in Employment Act 1967 (29 U.S.C. 626(d) & section 15(f), Americans with Disabilities Act of 1990, Rehabilitation Act of 1973 sections 501 and 504 (29 U.S.C. 791, 794), Fair Labor Standards Act of 1938 (29 U.S.C. 201, 206(d)(1), 215 (a)(3) et seq), anti-discrimination affirmative action requirements of Executive Order No. 11246, Equal Pay Act of 1963, Sarbanes-Oxley Act , Private Securities Litigation Reform Act.

## Complaint - In My Own Words

To: Federal Judge Mr. James Robertson

Mr. Robertson

Your court dismissed the previous write-up of my complaint with a finding of "fantastical and delusional". This finding only begins to explain the situation in which I find myself. I will make another attempt and keep in mind the guidance pro-offered in your last ruling. The numbers of defendants have been culled by 3/4 from 223 to 48 and the size of the complaint has also been reduced by almost 2/3 from 318 to 130 pages and includes a table of contents. I respect and appreciate the ability and necessity to produce a concise complaint. Not being an attorney, there are limits on my ability in separating the wheat from the chaff.

In addition to being a pro-se litigant, the claims asserted in the complaint cover a time frame encompassing almost three decades. Due to my line of work and the extended time period involved, the potential number of defendants is likely to be extraordinarily high. I can provide documentation on hundreds of defendants who should be covered in this complaint. I have no intention of wasting the courts time and I have apprised myself of the ability and duty of the court to dissuade frivolous lawsuits by exacting serious civil and criminal penalties. I have no intention of placing myself in jeopardy for no reason and without cause. To that end I am appending a sworn statement subjecting myself to additional criminal penalties for any untruthful or fraudulent statements. I have been denied due process for almost three decades, and as a result, I would appreciate the opportunity to actually be in your courtroom if any adverse actions are taken against me. If I cannot obtain counsel on my own in the next 30 days I intend to ask the court to appoint counsel.

My name is John Connolly. I am almost fifty years of age and **I found out that I have been living and operating as a criminal for almost three decades.** Because of my line of work with and for the largest consulting firms in the country (including PWC, IBM, Deloitte, E&Y, KPMG, Oracle, Unisys), over a period approximating 15 years, as an employee, contractor/subcontractor/consultant, job applicant and private business owner - investigations, assessments, evaluations and associations of my background have been made on hundreds of occasions which I can document. Investigations of my background were routine and were required under a number of federal laws, agency regulations and executive orders.

I have no criminal record. The records were wrong. The adverse actions and discrimination I was repeatedly subjected to for two decades or more, was based on false and fraudulent information. Leveraging my experience, as an auditor, business process re-engineering/re-structuring consultant and business systems analyst I attempted unsuccessfully, to clear my name,

correct the record, and assess my damages, in order to move my life forward. What I learned during the last two years has scared the living hell out me. I am not alone - millions of individuals are in the same position in which I find myself.

In the broader scope, it is critically important that the court recognize this case has really nothing to do with criminal records. This case is about due process. This case is about the wholesale use of data being used against individuals without their knowledge, in violation of due process and administrative procedures requiring individuals to be notified and provided with the opportunity to challenge, correct and amend records. As a business and data analyst, I can inform the court that for the most part data is neutral. With some exception, data is neither positive nor negative. If an end user were to provide a desired outcome (discrimination) of data, I could provide them with a finding, analysis and narrative that would in fact, truthfully support that desired outcome (discrimination). This case is not about criminal records. This case is all about vehicles of discrimination and denial of due process, for all types of data qualified as adverse or otherwise.

Judge Robertson – I recognize that I am not all that important. There is no giant conspiracy against John Connolly. This case is about illegal discrimination of all types, and the illegal support, protection, and maintenance of these vehicles of discrimination by federal and state government officials and public and private corporations. Due to the extensive efforts of the bad actors in denying due process, concealing "adverse" data and the fact that adverse actions have even taken place, my resulting analysis can come to no other conclusion but reference the data as secret and reference the systems and processes that support, maintain and produce the data as secret systems.

Illegal Discrimination against individuals, as a practical matter, usually takes place only after personnel identifying, and protected information is obtained and abused. Individuals, including myself have been subjected to discrimination of age, race, color, religion, sex and national origin, after personally identifying and federally protected information was obtained, and abused. The severity and degree of discrimination varied from discrimination in compensation, to missed opportunities, reassignment to other projects, and contracts, termination of contracts and loss of jobs, and eventually lost liberty due to a pattern of losses and the **construction of "virtually rap sheets of Passed-Over opportunities"** that indicate a closed or closed-pending status.

The continued illegal employment practices, including pay disparities are also due to continued intentional discrimination and illegal effects of past discrimination. I have significant experience as a business and data analyst working my way up to the position of managing principal in the Oracle Corporation. I can state without equivocation, that there are known, substantial, material and significant hazards in the data quality and accuracy of the data existing in the varied information systems used, including criminal justice information systems. It should also be no surprise to the court that federally protected personnel identifying information on individuals is being abused, and was **repeatedly used against me in retaliation for non-compliance in corruption initiatives, and to further support and protect those corruption initiatives and the individuals and officials who sponsor those initiatives.**

I have been made aware of general dispositions courts have with pro se litigants and has a result will include a small selected sampling of the hundreds of potential exhibits I intend to produce, running the gamete from government policy documents, contracts, memorandums of agreements, memorandums of understanding, "supplementary guidelines", inspector general audits, FISMA audits, varied concept of operations white papers etc, to buttress my complaint and document the assertations of my allegations.

I understand the need to be brief. I also appreciate the requirement as a pro se litigant to demonstrate a credible case before I am permitted in a courtroom or receive another lovely finding of delusional.

Most of the documents, and extracts referenced in the Exhibit Summary and the table of contents listed below, are included in their entirety as exhibits in supplied appendixes. There are two categories of exhibits. One category of deliverables, prepared by myself will document the unsuccessful and exhaustive efforts on my part, over the last two years to obtain the information necessary, in a lawful manner, to improve my situation and restore my liberty interests.

The other category of documents is a varied sampling of government deliverables (federal and state level) selected to illustrate that the deprivation of constitutional, civil rights, and legally mandated administrative due process procedures and regulations is an established policy of the United States government, and Public and Private Corporations. In addition to the collateral provided I will able to produce testimony and affidavits from and about federal employees, their actions, practices and words, substantiating the assertations and claims made in complaint.

**Table of Contents / Listing of Exhibits**

**Exhibit Summary – Summary Qualification of Exhibits Provided (See Appendixes' for complete Exhibits)**


Exhibit A) OPM / FBI Investigation Material and records on Plaintiff –

Exhibit B) OPM Collateral on product service offerings and guidance

Exhibit C) Partial Security & Clearance History Review Of Plaintiff – Document prepared by Plaintiff

Exhibit D) Federal Agency Communications Index – Documenting more than 100 of the 700 communications Requests and Appeals for Information to the Federal Government

Exhibit E) Data Broker Communications Index – Documenting more than 38 communications, requests and appeals for information from data brokers who provided information to the Federal Government.

Exhibit F) Conforming Contract Provision - Centers for Disease Control and Prevention - Deliverable demonstrates and documents the standardization and practical application on Deprivation of Due Process procedures asserted by plaintiff.

Exhibit G) Conforming Contract Provision - Department of Justice - Conforming Contract Provision - Deliverable demonstrates and documents the standardization and practical application on Deprivation of Due Process procedures asserted by plaintiff. Deliverable also qualifies plaintiff for government agencies, Public and Private Corporations as a Terrorist.

Exhibit H) Conforming Contract Provision - State of Florida - Deliverable demonstrates and documents the standardization and practical application on Deprivation of Due Process procedures asserted by plaintiff.

Exhibit I) Inspector General Audit Report - Smithsonian Institution - Deliverable demonstrates and documents the standardization and practical application on Deprivation of Due Process procedures asserted by plaintiff.


Judge Robertson - The federal judiciary is also a federal agency. In two years of research I have not come across any information that the non – judicial bureaucrats managing the internal processes of the judiciary operate with a different set of rule books. With all do respect to the court, I think your offices may be able to save a lot of research time by simply calling in the Clerk of Court and having her explain how these operations work.

In addition to aforementioned exhibits, I also have a copy of records, indicating numerous arrests, of myself during the period of 2001 through November 2007. I do not know if this is due to delusionary thinking on the part of the federal government, incompetence, retaliation for not participating in standard corruption activities in defrauding the federal government in billions of contracting dollars, or an effort by contractors in selling their expertise of Dick Tracy shared service offerings. I want this activity stopped **NOW**. I want the Justice Department to start establishing a plain on how they intend to restore my liberty interests and the liberty interests of other similarly situated individuals **NOW**. I request the court make a referral to the new attorney general for the **appointment of a Special Prosecutor**.

The psychos I find myself in is not a movie, it's my life. It is also the lives of millions of other individuals, courtesy of the legal profession – agency general counsels, inspector generals, and general counsels in the service of public and private corporations, acting in no ones best interest.

Events that led to complaint started about two years ago when an employee of a government contractor placed himself in jeopardy and provided me with an unauthorized disclosure of "classified" information, purporting to the effect that I was a security issue and a criminal. I did not know what he was talking about. It was entirely ridiculous. I knew and believed it was nothing more than an effort to discredit my findings with respect to hundreds of millions of dollars in contracting fraud initiatives that would amount to billions over time. I never made "a federal case" of these frauds. I did however keep faith with my clients, my position and responsibility - I reported frauds to clients and superiors, declined to participate in frauds, and worked for an approach that did not involve fraud. I had a bill rate as high as 320/hour and did not view, and do mot view my actions in protecting my clients interests or refusal to participate in wide scale fraud as special in any way.

Complaint is not submitted to address fraud in the standard order of government/business contracting. I do take issue with retaliation efforts against me personally, and in order protect corruption initiatives. Defendants committing fraud could have just left me alone. However, I am submitting **complaint to address deliberate civil and criminal violations of my constitutional and civil rights, by those charged with the specific responsibility of protecting those constitutional and civil rights over a period approximating 15 to 20 years. Adverse actions were taken against me, based on false, fraudulent, adverse and misleading data, including falsification of government records**. Adverse, harmful and unlawful actions damaging plaintiff were the result of both established policy and tremendous opportunity for bad actors to take retaliation against plaintiff and protect & further corruption initiatives.

I am a seasoned business restructuring, business process and systems analyst, experienced in assisting, and working clients through difficult, stressful and adverse circumstances. I am cognizant, confident and experienced enough to realize that the adverse actions taken against me, concealment of adverse data and deprivation of due process over a 15 to 20 year period, repeatedly, was not the result of a statistical aberration. Plaintiff suffered harmful, and unlawful wrongs as the result of the abuse of power, by officials acting under color of law, making unlawful determinations in the deprivation of John Connolly (and similarly situated individuals) constitutionally protected due process rights, to which he was fully entitled under the United States Constitution. The violations were clear and deliberate departures from regulations of laws and statute at federal, state and local levels to include established agency's published policies, regulations, values and mission statements. There was no lawful purpose or reason for these individual bad actors to be taking the law into their own hands. The damages and hurt, deliberately wrought on myself and my family could have been anticipated with complete certainty and could have been avoided.

Plaintiff's injuries, catastrophic damages suffered therein, changes in life circumstances (lost opportunities, lost jobs, lost contracts and loss of liberty) repeatedly, over a 15 to 20 year period, which can be fully documented from the defendant's own records, was nothing more than standard and unlawful operating procedures. The legal wrongs suffered by John Connolly (and similarly situated individuals) were the result of unlawful operating procedure, supported by "supplementary guidelines" and a real policy that was and is not public at all.

Plaintiff received a "classified and confidential" communication that records indicating he was a criminal were being disseminated through the Federal Bureau of Investigation (FBI), the Office of Personal Management (OPM), and Defense Security Services (DSS) to hundreds of government agencies, public and private corporations and private companies. Plaintiff conducted and managed an investigation, involving two teams of consultants and a law firm over the period of one and half years at a cost far in excess of six hundred thousand dollars. The investigation involved research, analysis and findings and included thousands of verbal and written communications to government agencies, public and private corporations and private companies. The investigation required more than seven-hundred Freedom of Information Act (FOIA), Privacy Act (PA) and Fair Credit Reporting Act (FCRA) requests and covered the production and review of thousands of documents. Approximately two hundred requests were sent certified mail.

Investigation determined that the FBI, OPM, DSS and their contractors agents and representatives have been disseminating and/or supporting and/or protecting the dissemination of adverse and illegal records, including records which are 100% false, deliberately falsified, fraudulent documents and records, including criminal records on plaintiff to hundreds of government agencies, public and private corporations and private companies over a fifteen to twenty year period. **Dissemination of records to large number of entities is due to plaintiff's line of work as a consultant/contractor and business owner over extended period.**

Plaintiff has no criminal record. Plaintiff was repeatedly harmed over a period approximating 15 to 20 years by adverse, false and misleading records, which included the deliberate falsification of records. Plaintiff was harmed as a job applicant, consultant, contractor, employee and business owner. Each and every time an adverse action was taken against plaintiff, the plaintiff was supposed to be informed and receive an opportunity to challenge, correct, and amend records, (i.e. adjudication). Over a number of years plaintiff, has built up a virtual rap sheet of "passed-over' opportunities, and a countless number of breached contracts. Denying plaintiff knowledge of what was going on, knowledge of adverse information or knowledge of an adjudication process, for the most part, was not a great conspiracy but simply established government policy. There are some major exceptions to this policy where the government enthusiastically supports due process, particularly with respect to volunteering for the military. If amending or expunging a negative record would enable an individual to successfully move forward with an enlistment, due process, notice, assistance and guidance will be forthcoming

Plaintiff is in possession of numerous documents reflecting these blatantly illegal, discriminatory and un-American policies, including Inspector General Audit reports and memorandums, white papers and varied discussion documents, contracts, acquisition regulations, inspector general guidance, OPM guidance, etc, etc, etc. John Connolly (and similarly situated individuals) has built up of virtual rap sheet, of background investigations and falsification of government records with respect to record entries (frauds) concerning mandatory determinations (findings) on suitability, and legally required due process and adjudication procedures which in John Connolly (and similarly situated individuals)'s case resulted in short term "passed over" opportunities, and long term "loss of liberty", repeatedly, over 15 to 20 years.

The FBI, OPM, DSS, and other government agency defendants and their contractors and representatives continue to obstruct plaintiff efforts to clear records, by refusing to comply with hundreds of lawful FOIA, PA, FCRA and FACT Act requests for information. There is no liberty. The refusal to comply with these lawful record requests and an accounting of record disseminations as is required by law, and is necessary to clear John Connolly (and similarly situated individuals)s records, is nothing more than an effort to escape civil and criminal legal liability for their legal wrongs. It is a catch – 22, I cannot clear my record until I am provided with a proper accounting of all dissemination. No organization wants to take the lead, responsibility, ownership, or liability of acknowledging that they have participated in programs that have disseminated inaccurate, false and misleading information on me for over a period of 15 to 20 years, in conjunction with programs mandating the deprivation of due process as a matter of policy. Organizations, government agencies, public and private corporations and private companies are also parties to agreements, Compaq's, Memorandums of Agreements, Memorandums of Understanding etc, etc limit and restrict disclosures that can be made. - I am not alone.

Agency General Counsels and Inspector Generals have short-circuited standardized due process protocols and procedures. Agency General Counsels and Inspector Generals have deliberately compromised their roles and responsibilities in the "segregation of duties". Both positions have direct responsibility in their management and oversight of agency security programs. Inspector Generals are also directly involved (not oversight) in managing, auditing and maintaining these security programs, to include their role (by statute), on the Data Integrity Boards. Both positions have direct responsibility in certifying numerous documents attesting to agencies mandatory compliance with federal and state law and their detailed responsibility in the certification accreditation and testing of their agencies specific "compliance with Individual's constitutional and civil rights laws rules and regulations". A countless number of these documents (i.e. PIA's, FISMA, Audit Reports, managements representations to auditors, certification and accreditation processes etc, etc,) are signed under oath, commented on in testimony to congress, and included in managements representation to auditors. These are material misrepresentations, with material and significant liabilities. By law and regulations these are "Reportable Conditions". **This is not an assertion to the court that I make lightly and is entirely accurate.** Because agency General Counsels are also in the position of being the same entity to which agency final actions and determinations are made and/or materially influenced, segregation of duties are short circuited. Because agency General Counsels are also in the position of being the same entity to which agency final actions and determinations on FOIA and Privacy Act (&FCRA) appeals are made, the integrity of the process is full circle and completely circumvented.

Agency officials, including government attorney functioning from the offices of inspector general and attorneys representing the offices of general counsel for both government agencies and public and private corporations are acting unlawfully in supporting and protecting programs which mandate the deprivation of individual's due process rights. There is no error or mistaken effort of these agency officials, and private sector individuals serving in credentialed "public trust positions" acting in their clients best interests. Whether their clients are considered to be the agency, company, department, president, constitution or the official senior position they occupy, these individuals are not acting in their client's interests and are in serious violation of law. These general counsels and inspector generals and other public trust officials are acting in their own pecuniary interests and in deliberate and direct contravention of their client's explicit instructions and directives plainly stated in agency's policies, regulations, mission statements, values and federal, state and local laws.

Deliberate malfeasance of John Connolly (and similarly situated individuals)'s records by one or more of the defendants, throughout complaint, testifies to records that included, one or more of the following errors and/or characterizations, including; adverse information, that was one hundred percent false, inaccurate, misleading, untimely, irrelevant. Records also included false and wholly inaccurate data that was illegal to obtain and illegal to use, data that was, is, and continues to be incorrect. Records included hundreds of false and fraudulent entries that included entries made to deliberately, and with criminal intent, harm John Connolly (and similarly situated individuals) as part of efforts to discriminate unlawfully and to protect fraud and corruption initiatives and retaliate against John Connolly. **Deliberate** falsification of records, fraudulent record entries and disseminations also included mention and findings of undisclosed and concealed adjudication processes, which were **concealed from John Connolly (and similarly situated individuals)**, as a matter of policy, and to which John

Connolly (and similarly situated individuals) was not invited to participate in or be informed of, however each adjudication/tribunal impacted and "imparted" on John Connolly (and similarly situated individuals) a status change of essentially "persona non grata". **John Connolly (and similarly situated individuals) was a defendant in absentia, without representation or knowledge, at undisclosed and concealed adjudication processes, held by government agencies and/or government "business partners" representing public and private corporations and companies. Although John Connolly (and similarly situated individuals) had no representation, the government, public and private corporations and companies were represented by attorneys, "OFFICERS OF THE COURT", functioning from agencies Office Of General Counsel and the Inspector Generals Office, and their counterparts in public and private corporations and private companies.** John Connolly (and similarly situated individuals)'s records were misclassified, subjected to incorrect interpretation of records, incorrect assessment and compilation of investigatory records, incorrect suitability determinations and, incorrect suitability actions, incorrect employment eligibility interpretations, false and incorrect compilation of employment records, incorrect assessment of employment records, and involved the deliberate and willful denial of required due process procedures, rights, and protections to which John Connolly (and similarly situated individuals) was fully entitled, under the United States Constitution and other laws, rules and regulations of the United States at federal, state and local levels, including the Privacy Act, Fair Credit Reporting Act, FACT Act, and Freedom of Information Act. Defendant's illegal and deliberate actions also resulted in the loss/breach of contracts, loss of gainful employment, and/or employment/license, regardless of IRS category as W2, 1099, LLP, Corp, or Contract to hire employee, for a period approximating 15 to 20 years. Defendant's deliberate actions caused horrific damages and losses to John Connolly (and similarly situated individuals), and resulted in a complete loss of John Connolly (and similarly situated individuals)'s "liberty interest".

The quiet tribunals involved undisclosed and concealed adjudication processes; determinations, actions and processes, etc. Evidence was obtained and evaluated, charges were made, testimony was obtained and/or reviewed, written and/or verbal, supplemental and "classified" guidelines were referenced, which were supported by "classified" legal opinions and/or advisories that have no basis in law. Appeals were made or were declined to be made, on behalf of John Connolly (and similarly situated individuals) by the defendant entities involved, including; government agencies, public and private corporations, private companies and individuals. Verdicts were reached and sentence were determined by defendant entities and individuals involved. The logistics and processes in how and when to best impose and execute the sentences were then worked out and/or agreed on by defendant government agencies, public and private corporations, private companies and individuals. John Connolly (and similarly situated individuals) was never informed.

John Connolly (and similarly situated individuals) was not permitted to have any knowledge of events, proceedings or actions and had no knowledge of events, proceedings or actions. When secret tribunal sentences dictated transfers to different contracts or projects John Connolly (and similarly situated individuals) was not even aware an adverse action had taken place. When sentences of the undisclosed and concealed adjudication processes involved a direct and/or constructive termination, John Connolly (and similarly situated individuals)'s lack of knowledge was the result of illegal fraudulent acts, misrepresentation of facts, falsification of documents, including falsification of government records and violation of numerous constitutional and civil rights, laws, rules, statutes and regulations, federal and state laws and included violations of criminal statutes. John Connolly (and similarly situated individuals)'s **lack of knowledge and suspect is testimony and credit to government's secret and illegal initiatives in developing and maintaining sophisticated, elaborate and comprehensive supporting infrastructures of business processes and system architectures, with illegally appropriated government funds** designed to perpetuate, enforce and provide concealment of the deprivation and violations of John Connolly (and similarly situated individuals)'s United States Constitutional and Civil rights to which he is fully entitled under the law.

Through the Freedom of Information Act, Privacy Act and future "Discovery motions", plaintiff has been and will continue to request information on contracts and appropriations to ascertain how and who is funding and approving these illegal programs.

John Connolly had made approximately seven hundred requests for all records from government agencies, and their data brokers under the Freedom of Information Act (FOIA), Privacy Act, FACT Act, Fair Credit Reporting Act (FCRA) and other laws during 2006 and 2008. There were approximately 200 certified mailings. Additionally John Connolly (and similarly situated individuals) reviewed his personal files, as a matter of course, in many organizations and on many project engagements over the past decade. If it was not for an "illegal" leak of information, John Connolly would never have found out the truth. False, misleading, wholly inaccurate records which included devastatingly adverse information (constituting

malfeasance of records) had been sold by DOJ/FBI/OPM/ DSS/DHS and others to government agencies, public and private corporations and private companies on hundreds of occasions.

In response to two separate requests for information under the Privacy Act and Freedom of Information Act **in 1999 and 2000 the Federal Bureau of Investigation reported that they had no records that pertained to** John Connolly. The FBI than spends the next 7 years disseminating adverse information on John Connolly. The FBI still refuses to provide me with an accounting of record disclosures, until and/or unless I provide them with a list of companies I was "associated" with. Due to my line of work that list is in the thousands. I am not alone.

OPM/FBI/PBGC/DOJ/GSA/DHS/DOD/DOT) willful and deliberate fraudulent record entries with respect to undisclosed and concealed adjudication processes conducted on John Connolly (and similarly situated individuals), including subsequent recordation and updating of adjudication/tribunal processes and findings with respect to employment records, employment eligibility, recordation and interpretation of records, and resulting assessment, and concealment of investigatory records, concealment of suitability determinations, concealment of suitability actions, concealment of adverse information, and concealment of adverse information and procedures followed was unlawful. Defendants actions were arbitrary, capricious, an abuse of discretion, contrary to constitutional right, power, privilege, or immunity, in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, without observance of procedure required by law, unsupported by substantial evidence and unwarranted by the facts thereby causing John Connolly (and similarly situated individuals) to suffer legal wrongs under constitutional, and civil rights laws and statutes, including the Administrative Procedures Act.

The actions of defendants (there are hundreds, including OPM/FBI/PBGC/DOJ/GSA/DHS/DOD) over a period approximating 15 to 20 years, in deliberately and knowingly branding falsely and without due process, John Connolly (and similarly situated individuals) for life, in secret, demonstrates a callous and reckless disregard and rises to a level that clearly constitutes depraved indifference for human life. These numerous, varied, and creative protocols and procedures ("Products") used against John Connolly (and similarly situated individuals), including "No Doc" investigations, "closed pending", audit trail reports that effectively denote record entries based only on queries, "pre placement" "post-placement" reviews and analysis, verbal conveyance of records through background investigation meetings with current employer, and/or officials determining "employment/license" etc, etc, including vetting information off site and/or with a "licensed" and/or proscribed data repository "views" created a vast "virtual rap sheet" of "passed over" opportunities in which John Connolly (and similarly situated individuals) was denied due process and was often not even aware an opportunity had passed him by and/or that an adverse action was even taken, and that he was "imparted" with additional record entries in his "virtual rap sheet". There are a countless number of laws, statutes, regulations, guidelines and presidential executive orders, that leave no room for interpretation, once sufficient data is gathered, a suitability determination, finding, answer or result, no matter how you define it (subject to due process and other procedures) is produced and recorded. Each and every time adverse data and adverse actions are obtained and taken the recordation of events and actions to the contrary are simply falsification of government records, perjury, it really is that simple. The findings of the investigation are absolutely incontrovertible, no more no less. I find it inconceivable, however, the fact is government agencies, particularly the justice department, in concert with other agencies, public and private corporations are engaged in a charade of mottled protocols, procedures and guidelines designed to obfuscate due process, as part of policy. One example: "No Doc" investigations – Where we have the data to make or assist in a determination before a background investigation is complete –adverse action is then taken – without due process or ability to challenge, and the investigation is simply marked "closed" or even "closed pending". It is similar to a "No-Doc" loan, with the payout being the significant, material and differentiating factor. The bad actors have developed a wide variety of "hat tricks" to support deprivation of due processes, unlawful discrimination and illegal and prohibited personal practices in this domain and related areas.

The deprivation of John Connolly (and similarly situated individuals)'s civil rights protections was the result of very sophisticated, well practiced and choreographed, obfuscation programs, that also provide an illusionary front of confusion and defused responsibility.

John Connolly (and similarly situated individuals) had the right to be informed of these "classified supplementary guidelines", practices, and procedures. John Connolly had the right to be informed of these undisclosed and concealed adjudication processes and receive notice of, agency/OPM/DSS/DHS etc, suitability determinations, actions, findings, policy, guidelines and employment practices. John Connolly had specific rights to appeal agency OPM employment and business practices, and supplementary guidelines that adversely impacted him with respect to termination of his employment/licenses over a period approximating 15 to 20 years, as an employee at PBGC, as a managing principal at the Oracle Corporation, as a contractor, job applicant, convicted felon, escaped terrorist or prolific drug dealer with hundreds of other agencies and firms

or as an annuitant that may appeal OPM/FBI decisions affecting entitlements under John Connolly's retirement systems, as a contractor, volunteer, or individual entitled to the full protections of the United States Constitution. John Connolly had specific rights to notice and appeals of OPM/FBI employment and business practices, suitability actions, suitability determinations, and investigation findings that adversely impacted him, on a daily basis possibly going back twenty years, with respect to being a job applicant to hundreds of government and private sector jobs, or as a contractor working for and with the other defendant public and private corporations and private companies and individuals.

John Connolly (and similarly situated individuals) and most other Americans have no idea what an "employment/license" is. They have a right to know. They have a need to know. John Connolly has a right to know. John Connolly has a need to know.

**Regardles**s of John Connolly (and similarly situated individuals)'s "employment/license" type, as businessman, independent contractor, employee, sub-contractor, employee of subcontractor, volunteer and/or regardless his IRS filing status as a W2 employee, 1099, LLC or Corp, or Corp to hire, **he was gainfully employed, by either defendant government agencies and/or defendant public and private corporations and companies - who over a period of approximately fifteen to twenty years repeatedly terminated his "employment license" as part of secret sentences that were the outcome of undisclosed and concealed adjudication processes, and which violated John Connolly (and similarly situated individuals)'s constitutional rights and liberty interests and other rights to which he was fully entitled under the United States Constitution** and other laws of the United States and their political subdivisions. The catastrophic harms inflicted on John Connolly (and similarly situated individuals) were premeditated, deliberate, without cause, right, authority or immunity and in violation of law. The catastrophic harm and damages incurred by John Connolly (and similarly situated individuals) would have been entirely preventable, if any of defendants, who were serving in Public Trust Positions and Under Color of Law, acted in a lawful and/or non criminal manor. The defendants knew, and should have known, their actions were illegal and outside the law. The pain suffering and damages deliberately inflicted and incurred by John Connolly and his family, through no fault of his own, was predictable with absolute certainty and could have been anticipated and avoided.

**John Connolly (and similarly situated individuals) was never provided with any notice** that would afford him any knowledge or any fair, reasonable or meaningful appreciation of the circumstances or facts of his situation. **John Connolly (and similarly situated individuals) was not provided with any notices of administrative remedies to address, correct or challenge government agency's actions findings or determinations that resulted in "employment/license" terminations or the actions of public and private corporations who were provided with false information** and were acting in an agencies interest and/or in their own pecuniary interest. This lack of notice, or ability to challenge, respond or appeal was deliberate and not due to any omission or lack of oversight, on either the part of government agencies or their "business partners". OPM partial withdrawal of certain PBGC delegated authority, notwithstanding, the deprivation of due process with respect to John Connolly, was the result of nothing more than established policy, and efforts to protect corruption initiatives. Alternatively, even as a contractor, volunteer, employee, convicted/escaped felon, or terrorist, John Connolly was entitled to have government agencies follow specific regulations, and laws which were deliberately ignored, governing termination.

The defendant government agencies, public and private corporations and companies and individuals worked in collusion and in violation of constitutional, civil rights laws, rules and regulations with federal, state and local authorities in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes over a period approximating fifteen to twenty years.

**Over the last fifteen to twenty years John Connolly (and similarly situated individuals)** entered into numerous gainful employment relationships with **defendants;** public and private corporations, private companies and individuals and with government entities. John Connolly lived in a "free country" and was under the full protection of the United States Constitution. John Connolly is approximately fifty years old, well educated, well read, technologically astute, and had **Never heard of the term, "employment license".** John Connolly **was under the impression that the only "employment license" he needed was The United States Constitution.** As a federal employee, contractor, sub-contractor, career appointee, political appointee, part-time contractor, contract to hire contractor, or even a volunteer, John Connolly (and similarly situated individuals) was fully possessive of all constitutional, statutory and regulatory rights as any other individual, for which he is claiming a stated interest, deprivation of any right or benefit, incurrence of any damages and/or violation of any right, statute, regulation or law. The usual rights, privileges and benefits that are accorded all individuals include the rights, unimpeded, to seek, apply for, obtain and maintain gainful employment ("employment/license"), regardless of IRS filing

category as W2, 1099, LLC or LLP. An individual's rights, duly exercised, in seeking, obtaining and maintaining gainful employment, are not compromised or limited when an individual undergoes any type of investigation. Whether an individual undergoes an investigation for an "employment/license" or a capital crime, he is entitled to the full protections of the United States Constitution, and other laws, regulations and statutes of the United States and their political subdivisions.

Plaintiff's lack of knowledge of any adverse information and repeated denial of due process as a matter of policy is unassailable and can be documented in countless government records and established at trial. Plaintiff does not even expect the defendants to deny allegations. Plaintiff was denied due process fro a period approximating 15 to 20 years.

## JURISDICTION

1. This Court has jurisdiction over this action pursuant to Privacy Act **5 U.S.C. § 552a**, Fair Credit Reporting Act, 15 U.S.C. § 618, 619, 616, - 2004 WL 243404 (4th Cir. Va.).6 PL 108-159 (Dec. 4, 2004). 81 702 and 28 U.S.C. § 1331. United States Constitution /Fair Accurate Credit Transactions Act, Freedom of Information Act / Torture / Civil Rights Act / Sarbanes Oxley Act / RICO Act / Laws and Constitutions of the State of New York /Laws and Constitution of the State of Virginia / Laws and Constitution of the State of Illinois /Laws and Constitution of the District of Columbia
This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal 1476.question) and the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985,1988, 1994.

## VENUE

2. Venue is appropriate in the District under 5 U.S.C. § 552 a,(g)(5) in whole and additional aggravating circumstances in **552a(g)(1)(2)(3)(4)&(5).** Fair Credit Reporting Act 15 U.S.C.,§ 618, 616, and other sections 03 and 28 U.S.C. § 1391. Also pursuant to 28 U.S.C. § 1331 (federal 1476.question) and the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985 and 1988. **Section 1962.", Title 18 U.S.C. S1964(c) and other sections. Title 18 U.S.C.A. §§ 1341 & 1343.**

## PARTIES & FACTS

3. Plaintiff John Connolly was formerly affiliated with the PBGC Corporation as an employee. His full name and past services are provided to Solicitor General and other defendants as determined by the court.

4. Defendant PBGC is an agency, "PBGC is a federal corporation created under the Employee Retirement Income Security Act of 1974. " as defined by 5 U.S.C. § 552a(a)(1), 701.

5. The **Federal Bureau of Investigation (FBI)** is an agency within the Department of Justice. The FBI stores and disseminates criminal, investigatory and other adverse records on individuals to government agencies, and authorized public and private corporations and private companies for the purpose of determining employment suitability, and in compliance with some laws which for certain jobs, require criminal background checks by statute and regulations. The FBI in conjunction with OPM, DSS and other government agencies have been disseminating adverse, false, inaccurate, misleading and deliberately falsified record information on John Connolly for a period approximating 20 years. John Connolly (and others) had been the subject of investigations and 15 to 20 years of undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his relationship with all defendants who followed established policies and practices that deliberately violated his constitutional and civil rights to due process, without cause, recklessly and with clear knowledge that catastrophic harm would result. John Connolly had a number of relationships with the Bureau including those of a consultant/contractor, and job applicant for multiple opportunities. John Connolly s main relationship with the FBI was that of "subject" for background investigations and criminal record checks provided to multiple government agencies and corporations as part of clearances to work, and/or continue to work on different consulting assignments. During the 24 month period approximating 2003 and 2004 03 there may have been more than 20 investigation checks conducted on my background. Regardless of John Connolly's relationship with defendant, including but not limited to being a volunteer, employee, contractor, sub-contractor or job applicant, or subject of background investigations, defendant had no right to harm John Connolly, in the manor it did, in violation of law. Federal Bureau of Investigation in conjunction with other government agencies and their "business partners" in the public and private corporations have set up a pattern and practice of business processes designed to deprive individuals, in this case John Connolly of his constitutional and civil rights, by establishing varied processes and protocols that prevented disclosure of adverse

information to John Connolly and subject John Connolly to undisclosed and concealed adjudication processes denying him Due Process. The FBI will assert that they are merely a repository of information and that they supply that information to third parties. Plaintiff asserts that the Defendant FBI has both directly, by policy, protocols, guidelines, training, "approved" training guidelines established, protected and maintain business support infrastructures and policies that deliberately promote non-disclosure of an individual's records, and deny an individual the ability to be informed of, to challenge and/or correct records.

6. The **U.S. Department of Justice (DOJ) is an agency or cabinet level department of the United States Government. Michael B. Mukasey has been the Attorney General of DOJ since November of 2007.** Regardless of John Connolly's relationship with defendant, including but not limited to being a volunteer, employee, contractor, sub-contractor and job applicant, defendant had no right to harm John Connolly (and similarly situated individuals), in the manor it did, in violation of law.

7. **The U.S. Office of Personnel Management (OPM)** is an executive service agency that manages most of the United States Federal workforce and manages the government's human resources requirements and human resources management systems, and functions, which also includes millions of individuals working under varied contracting vehicles for federal agencies. OPM's business processes, systems, functions, policies and procedures, also directly impacts tens of millions of individuals, who are not "employed", either directly or indirectly by the federal government. John Connolly (and similarly situated individuals) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and similarly situated individuals)'s relationship with defendant, including but not limited to being a volunteer, employee, contractor, sub-contractor or job applicant, defendant had no right to harm John Connolly (and similarly situated individuals), in the manor it did, in violation of law.

8. **Defendant Department of Health and Human Services (HHS)**. John Connolly (and similarly situated individuals) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and similarly situated individuals)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and similarly situated individuals), without cause, in the manor it did, deliberately, and in violation of law.

9. **Centers for Medicare & Medicaid Services (CMS)** John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes adjudications with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

10. **Defendant Program Support Center (PSC)** is an agency or "Operations" support center which supports a large number of agencies or operational divisions (Opdivs) within the Department of Health and Human Services (DHHS). John Connolly (and others), as part of his consulting and contracting activities had been the subject of a number of investigations and undisclosed and concealed adjudication processes, to which he prohibited any knowledge and that resulted in adverse and catastrophic consequences. PSC deliberately violated John Connolly (and others)'s constitutional and civil rights, without cause, recklessly and with clear knowledge that catastrophic harm would result. Defendants at PSC were also involved in fraud exceeding hundreds of millions of dollars. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law. There was no valid government interest in violating agency regulations and other laws on due process. The **Program Support Center (PSC)** terminated John Connolly (and others)'s "employment/license" in **May of 2005.** John Connolly (and others) had been engaged on full time basis and was "gainfully employed" on or about **November 2004**; the specific work effort was scheduled to continue into the year **2007**. Although Government business/contracting practices, renewals, etc, provide no guarantees, John Connolly (and others), may very well have been able to continue gainful employment on **PSC** programs through to his own

retirement. The denial of employment/license was based on false and fraudulent adverse information and/or undisclosed and concealed adjudication processes, in which John Connolly (and others) was denied due process.

11. **Defendant Indian Health Service (IHS),** John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause, recklessly and with clear knowledge that catastrophic harm would result. Regardless of John Connolly (and others)'s relationship with defendant as a employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law. **Defendant Indian Health Service (IHS) terminated/**withdrew/denied John Connolly (and others)'s application/selection for employment/license on numerous occasions, including but not limited to a specific senior government position as a Section Chief, after he was selected for the position, **in the period approximating June/July 2005 time frame.** The denial of employment/license was based on false and fraudulent adverse information and/or undisclosed and concealed adjudication processes, in which John Connolly (and others) was denied due process. Defendant's efforts were part of initiative to cover up fraud.

12. **Defendant Food and Drug Administration (FDA) As part of** consulting work with large firms and as an independent contractor John Connolly (and others) had been the subject numerous investigation for work related clearance activities. Unknown to John Connolly (and others) was numerous investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences that resulted from false, misleading, and fraudulent records. Defendants deliberately violated John Connolly (and others) constitutional and civil rights, by denying him the due-process opportunity or knowledge to correct or challenge the record. Defendants acted without cause, recklessly and with clear knowledge that catastrophic harm would result. Regardless of John Connolly (and others)'s relationship with defendant as a employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law. **Defendant Food and Drug Administration (FDA) terminated/**withdrew/denied John Connolly (and others)'s application/selection for employment/license on numerous occasions, including but not limited to a specific senior government position in **the period approximating July/Aug 2005 time frame.** The denial of employment/license was based on false and fraudulent adverse information and/or undisclosed and concealed adjudication processes, in which John Connolly (and others) was denied due process

13. **Defendant Centers for Disease Control and Prevention (CDC) As part of** consulting work with large firms and as an independent contractor John Connolly (and others) had been the subject numerous investigation for work related clearance activities. Unknown to John Connolly (and others) was numerous investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences that resulted from false, misleading, and fraudulent records. Defendants deliberately violated John Connolly (and others)s constitutional and civil rights, by denying him the due-process opportunity or knowledge to correct or challenge the record. Defendants acted without cause, recklessly and with clear knowledge that catastrophic harm would result. Regardless of John Connolly (and others)'s relationship with defendant as a employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law. CDC acting through their administrative agency Support Centers and other federal agencies **denied John Connolly (and others)'s application for employment/license** on more than half a dozen different occasions in the period **from December 2003 through September 2006 as** a federal employee and has a government contractor. The denial of employment/license was based on false and fraudulent adverse information and/or undisclosed and concealed adjudication processes, in which John Connolly (and others) was denied due process.

14. **The Social Security Administration As part of** consulting work with large firms and as an independent contractor, employee and job applicant, John Connolly (and others) had been the subject numerous investigation for work related clearance activities. Unknown to John Connolly (and others) was numerous investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences that resulted from false, misleading, and fraudulent records. Defendants deliberately violated John Connolly (and others)s constitutional and civil rights, by denying him the due-process opportunity or knowledge to correct or challenge the record. Defendants acted without cause, recklessly and with clear knowledge that catastrophic harm would result. Regardless of John Connolly (and others)'s relationship with defendant as a employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did,

deliberately, and in violation of law. **Defendant the Social Security Administration (SSA)** denied John Connolly (and others)'s application for employment/license on almost a half dozen different occasions in the period from February through August 2002, and December 2003 through September 2006 as a federal employee and has a government contractor. The denial of employment/license was based on false and fraudulent adverse information and/or undisclosed and concealed adjudication processes, in which John Connolly (and others) was denied due process.

15. **Department of Education (DOE'd) As part of** consulting work with large firms and as an independent contractor, employee and job applicant, John Connolly (and others) had been the subject numerous investigation for work related clearance activities. Unknown to John Connolly (and others) was numerous investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences that resulted from false, misleading, and fraudulent records. Defendants deliberately violated John Connolly (and others)s constitutional and civil rights, by denying him the due-process opportunity or knowledge to correct or challenge the record. Defendants acted without cause, recklessly and with clear knowledge that catastrophic harm would result. Regardless of John Connolly (and others)'s relationship with defendant as a employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

16. The **Defendant Department of Education terminated** John Connolly (and others)'s "employment/license" in **October of 2004**. John Connolly (and others) had been **fully engaged and was "gainfully employed" on a full time basis at the point in time of termination of "employment/license".** Although Government business/contracting practices, renewals, etc, provide no guarantees, John Connolly (and others), may very well have been able to continue gainful employment on **DOE'd** programs through to his own retirement. The denial of employment/license was based on false and fraudulent adverse information and/or undisclosed and concealed adjudication processes, in which John Connolly (and others) was denied due process.

17. **Defendant Department of Education terminated** John Connolly (and others)'s "employment/license" in **January of 1997**. John Connolly (and others) had been **fully engaged and was "gainfully employed" on a full time basis at the point in time of termination of "employment/license".** Although Government business/contracting practices, renewals, etc, provide no guarantees, John Connolly (and others), may very well have been able to continue gainful employment on **DOE'd** programs through to his own retirement. The denial of employment/license was based on false and fraudulent adverse information and/or undisclosed and concealed adjudication processes, in which John Connolly (and others) was denied due process.

18. **Defendant International Business Machines Corporation (IBM)** & PriceWaterhouseCoopers are both large global product and services organization headquartered in Armonk, New York, and New York, New York, respectively. IBM has almost 400,000 employees and revenues of $99 billion dollars for the year 2007. IBM and PWC are also both large government contractors. IBM and PWC, both have the biggest security consulting practices in the market.. John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendants, who deliberately violated his constitutional and civil rights, without cause and with intent to harm, going back to 1997, concerning a Department of Education Contract. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

19. **The Department of Energy -** John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

20. The **Department of Labor -** John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights,

without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

21. **The Defense Security Service (DSS)** is an agency within the Department of Defense (DoD). DSS supports national security secures the nation's technological base, and oversees the protection of US and foreign classified information in the hands of industry. DSS accomplish this mission by clearing industrial facilities, accrediting information systems, facilitating the personnel security clearance process and delivers security education and training. the years approximating 2005 and 2006, most of DSS's mission, assets, resources and roles were transferred and transitioned to the Office of Personal Management. **John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes conducted by DSS as a result of his "employment/license" relationships with government agencies, public and private corporations who contracted or worked with defendant DSS to procure investigations. DSS had a duty and responsibility to act within the law in conducting investigations. DSS deliberately violated John Connolly (and others)s constitutional and civil rights, without cause and with intent to harm.** Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

22. **Department of Defense** is a government agency or cabinet level department of the United States Government. The department of defense supports war fighting capabilities and is the chief agency responsible for defending the United States. **Defense Security Service** agency within DOD was the primary agency responsible for facilitating investigations and running security and background checks on individuals and contractors working on DOD initiatives. DOD HR role for security, investigations and background checks was transitioned to OPM in 2005/2006 timeframe. John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

23. **Business Transformation Agency – (DOD Support Agency)** BTA oversees and assists DOD agencies with Business Transformation in the form of change management / Business Process Analysis & Information Technology Management Implementations. John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant and their associates, as employee, contractor, sub-contractor, job applicant or even a volunteer, escaped felon, convicted terrorist, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

24. **Defendant Deloitte Consulting** is a large global professional services organization with approximately 150,000 employees worldwide. Deloitte serves more than 80 percent of the world's largest companies. Deloitte has the largest pool of security consultants in the market, and its global reach includes engagements in more than 100 countries. Security, privacy, and information risk management services within the company are integrated into a single enterprise framework. Deloitte Consulting including but not limited to their Corporate Governance Services group hold themselves experts in assisting their clients in navigating, understanding and implementing legal governance requirements, and are particularly experts in Sarbanes Oxley compliance initiatives. John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

25. **Defendants Bearing Point & KPMG** are both large global professional services organization and management and technology consulting company known for their deep industry experience. John Connolly (and others) had been the

subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, and related organizations who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

26. **Defendants KPMG** is also a Big 4 Auditing Firm who deliberately and falsely certified financial statements and other internal control audits and process reviews as being in compliance with federal and state laws. **KPMG fraudulent audits certifying varied instruments of integrity checks and legal compliance for the FBI, OPM, Departments of Justice, Energy, Labor, Smithsonian, Transportation, Homeland Security and other government agencies, adversely impacted John Connolly (and others).** Many of the business processes that generate information for financial statements are supported by information systems. Adequate internal controls over these systems are essential to the integrity, confidentially, and reliability of critical data, and the prevention of fraud and other illegal activity and acts. As part of the assessment internal controls, including the internal controls involving the entity wide security program, access controls (physical and logical) were reviewed and certified in a number of contractual vehicles being in compliance with the federal and state laws, federal regulations, rules and statutes. There were no errors in the audits. This auditing firm has a professed and demonstrated expertise in **"IDENTITY MANAGEMENT" from the perspectives of 1) Implementing the business process and systems, complying as a federal contractor, 2) from the prospective of working on a daily basis with the numerous and illegal "personnel requirements" as defined in federal acquisition regulations, contracts, proposals, and management of employees and contractors, and 3) from the prospective of being "EXPERTS" in auditing these systems and processes. These folks know exactly what they are doing**. In their role in working for government agencies as consultants and auditors, the individuals acting on behalf of this firm are in numerous circumstances acting under color of law. The auditors are also responsible for their deliberate malicious acts of malfeasance, in allowing Public and Private Corporations and other entities to engage in these activities. **KPMG fraudulent audits of these Public and Private Corporations, certifying varied instruments, statements and assurances of integrity checks and legal compliance with numerous laws and regulations, including the Sarbanes Oxley Act, for BAE Systems, Acxiom Corporation, TALX Corporation and other organizations adversely impacted John Connolly (and others) in their employment, "employment/license", liberty interests and investments. KPMGs activities in implementing supporting maintaining and protecting these business processes and the associated systems, internally, as a management consulting firm as well as an auditing firm, place them in clear violation of the Private Securities Litigation Reform Act of 1995 (PSLARA), and other security laws rules and regulations.**

27. **Defendants Ernst & Young LLP** is also a Big 4 Auditing Firm who deliberately and falsely certified financial statements and other internal control audits and process reviews as being in compliance with federal and state laws. **E&Y fraudulent audits certifying varied instruments of integrity checks and legal compliance for the Departments of Health & Human Services, Education, and numerous other government agencies, directly and adversely impacted John Connolly (and others).** Many of the business processes that generate information for financial statements are supported by information systems. Adequate internal controls over these systems are essential to the integrity, confidentially, and reliability of critical data, and the prevention of fraud and other illegal activity and acts. As part of the assessment internal controls, including the internal controls involving the entity wide security program, access controls (physical and logical) were reviewed and certified in a number of contractual vehicles being in compliance with the federal and state laws, federal regulations, rules and statutes. There were no errors in the audits. This auditing firm has a professed and demonstrated expertise in **"IDENTITY MANAGEMENT" from the perspectives of 1) Implementing the business process and systems, complying as a federal contractor, 2) from the prospective of working on a daily basis with the numerous and illegal "personnel requirements" as defined in federal acquisition regulations, contracts, proposals, and management of employees and contractors, and 3) from the prospective of being "EXPERTS" in auditing these systems and processes. These folks know exactly what they are doing**. In their role in working for government agencies as consultants and auditors, the individuals acting on behalf of this firm are in numerous circumstances acting under color of law. The auditors are also responsible for their deliberate malicious acts of malfeasance, in allowing Public and Private Corporations and other entities to engage in these activities. **E&Y fraudulent audits of these Public and Private Corporations, certifying varied instruments, statements and assurances of integrity checks and legal compliance with numerous laws and regulations, including the Sarbanes Oxley Act, for the IBM**

**Corporation, Oracle Corporation, Unisys Corporation, TALX Corporation, and BearingPoint and other entities adversely impacted John Connolly (and others) in their employment, "employment/license" liberty interests and investments. E & Y's activities in implementing supporting maintaining and protecting these business processes and the associated systems, internally, as a management consulting firm as well as an auditing firm, place them in clear violation of the Private Securities Litigation Reform Act of 1995 (PSLARA), and other security laws rules and regulations**

28. **Defendants PriceWaterhouseCoopers** is also a Big 4 Auditing Firm who deliberately and falsely certified financial statements and other internal control audits and process reviews as being in compliance with federal and state laws. **PWC's fraudulent audits certifying varied instruments of integrity checks and legal compliance for the Departments of Health & Human Services, Center For Medicated Services, General Services Administration, and numerous other government agencies, directly and adversely impacted John Connolly (and others).** Many of the business processes that generate information for financial statements are supported by information systems. Adequate internal controls over these systems are essential to the integrity, confidentially, and reliability of critical data, and the prevention of fraud and other illegal activity and acts. As part of the assessment internal controls, including the internal controls involving the entity wide security program, access controls (physical and logical) were reviewed and certified in a number of contractual vehicles being in compliance with the federal and state laws, federal regulations, rules and statutes. There were no errors in the audits. This auditing firm has a professed and demonstrated expertise in **"IDENTITY MANAGEMENT" from the perspectives of 1) Implementing the business process and systems, complying as a federal contractor, 2) from the prospective of working on a daily basis with the numerous and illegal "personnel requirements" as defined in federal acquisition regulations, contracts, proposals, and management of employees and contractors, and 3) from the prospective of being "EXPERTS" in auditing these systems and processes. These folks know exactly what they are doing**. In their role in working for government agencies as consultants and auditors, the individuals acting on behalf of this firm are in numerous circumstances acting under color of law. The auditors are also responsible for their deliberate malicious acts of malfeasance, in allowing Public and Private Corporations and other entities to engage in these activities. **PWC's fraudulent audits of these Public and Private Corporations, certifying varied instruments, statements and assurances of integrity checks and legal compliance with numerous laws and regulations, including the Sarbanes Oxley Act, for the L-3 Communications Corporation, Raytheon Corporation, Resources Connection Inc, First Advantage and other entities adversely impacted John Connolly (and others) in their employment, "employment/license" liberty interests and investments. PWC's activities in implementing supporting maintaining and protecting these business processes and the associated systems, internally, as a management consulting firm as well as an auditing firm, place them in clear violation of the Private Securities Litigation Reform Act of 1995 (PSLARA), and other security laws rules and regulations**

29. **Defendants Deloitte** is also a Big 4 Auditing Firm who deliberately and falsely certified financial statements and other internal control audits and process reviews as being in compliance with federal and state laws. **Deloitte's fraudulent audits certifying varied instruments of integrity checks and legal compliance for the Departments of Health & Human Services, and numerous other government agencies, directly and adversely impacted John Connolly (and others).** Many of the business processes that generate information for financial statements are supported by information systems. Adequate internal controls over these systems are essential to the integrity, confidentially, and reliability of critical data, and the prevention of fraud and other illegal activity and acts. As part of the assessment internal controls, including the internal controls involving the entity wide security program, access controls (physical and logical) were reviewed and certified in a number of contractual vehicles being in compliance with the federal and state laws, federal regulations, rules and statutes. There were no errors in the audits. This auditing firm has a professed and demonstrated expertise in **"IDENTITY MANAGEMENT" from the perspectives of 1) Implementing the business process and systems, complying as a federal contractor, 2) from the prospective of working on a daily basis with the numerous and illegal "personnel requirements" as defined in federal acquisition regulations, contracts, proposals, and management of employees and contractors, and 3) from the prospective of being "EXPERTS" in auditing these systems and processes. These folks know exactly what they are doing**. In their role in working for government agencies as consultants and auditors, the individuals acting on behalf of this firm are in numerous circumstances acting under color of law. The auditors are also responsible for their deliberate malicious acts of malfeasance, in allowing Public and Private Corporations and other entities to engage in these activities. **Deloitte fraudulent audits of these Public and Private Corporations, certifying varied instruments, statements and assurances of integrity checks and legal compliance with numerous laws and regulations, including the Sarbanes Oxley Act, for the Northrop Grumman Corporation,**

**Computer Sciences Corporation, Science Applications International Corporation, ChoicePoint, HireRight Corporation, and Kroll Background America Inc, and other entities adversely impacted John Connolly (and others) in their employment, "employment/license" liberty interests and investments. Deloitte's activities in implementing supporting maintaining and protecting these business processes and the associated systems, internally, as a management consulting firm as well as an auditing firm, place them in clear violation of the Private Securities Litigation Reform Act of 1995 (PSLARA), and other security laws rules and regulations.**

30. **Bristol-Myers Sq**uibb manufactures prescription pharmaceuticals, over-the-counter drugs and health care products in several therapeutic areas. John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, and related organizations who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

31. **Defendant Northrop Grumman Corporation** is a global defense and technology company who's, 120,000 employees provide innovative systems, products, and solutions in information and services, electronics, aerospace and shipbuilding to government and commercial customers worldwide. John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

32. **Defendant Department of Transportation** is a cabinet level department/agency within the U.S. Government.. The Department of Transportation in conjunction with the Oracle Corporation deliberately caused John Connolly (and others) serious harm. Complaint details involving DOT have been consolidated into the Oracle Corporations narrative. Oracle Corporation was functioning as primary contractor for DOT. John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

33. **Defendant AT&T Inc/Bell South** is the largest communications holding company in the world by revenue. AT&T operating companies, have 2007 revenues approximating 120 billion dollars. AT&T currently ranks 10th among the 2008 Fortune 500 with 307,550 employees worldwide. John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

34. **Defendant BAE** Systems is a global company engaged in the development, delivery and support of advanced defense and aerospace systems in the air, on land and at sea. BAE is the 3rd largest global defense company, and the 6th largest US defense company, with 97,500 employees and sales approximating £15.7 billion. John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

35. **Defendant The Oracle Corporation** is the largest worldwide software information technology and Database services and solutions provider in the world. Oracle had 22.4 billion in revenue for the fiscal year 2008 and had 84,000 employees. Oracle has been a leader and innovator in the software industry for more than 30 years. John

Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

36. **Defendant U.S. General Services Administration** (GSA) oversees a federal agency of about 13,000 people and an annual budget of approximately $16 billion. GSA affects almost $66 billion in financial transactions throughout the government. John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

37. **Defendant Department of Homeland Security's overriding and urgent mission is to lead the unified national effort to secure the country and preserve our freedoms. This Department of Homeland Security's overriding and urgent mission is to lead the unified national effort to secure the country and preserve our freedoms. The DHS is the central agency in the fight against terrorism and the war on terror.** John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

38. Defendant **Transportation Security Administration (TSA) is** an agency within the Department of Homeland Security. John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

39. **Defendant Unisys Corporation** is a worldwide information technology services and solutions company. Their core offerings include systems integration and consulting services, outsourcing services, infrastructure services, maintenance services and high-end server technology. Unisys revenue for the year 2007 was approximately $5,653 Billion Dollars. John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

40. **The Defendant Government Printing Office** (GPO) is the Federal Government's primary centralized resource for gathering, cataloging, producing, providing and preserving published information in all its forms. GPO is responsible for the production and distribution of information products and services for all three branches of the Federal Government. John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

41. **The Defendant the Federal Deposit Insurance Corporation (FDIC)** is an independent government agency created by the Congress that maintains the stability and public confidence in the nation's financial system by insuring deposits, examining and supervising financial institutions, and managing receiverships. John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law. The treatment of John Connolly (and others) and responsibility for illegal treatment of John Connolly (and others) extends to supporting/mandating initiatives of member entities of FDIC to ascribe to certain policies and procedures with respect to disclosures and dissemination of adverse information on individuals. FDIC officials cannot abdicate liability in these areas to other agencies and contractors that supplied training and guidelines

42. **Defendant Chevy Chase Bank** is the largest bank headquartered in the Washington metropolitan area. Chevy Chase Bank offers convenient access to products, services, and perhaps most importantly, people who can help with their money management, borrowing, and investment needs. Chevy Chase Bank has assets of $15.1 billion and net income for the year of $55.3 million – Chevy Chase Bank is of course a member of the Federal Deposit Insurance Corporation (FDIC). John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

43. **Defendant Bank of America** Bank of America is of course a member of the Federal Deposit Insurance Corporation (FDIC). John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

44. **Defendant Citigroup Inc**. Citigroup is of course a member of the Federal Deposit Insurance Corporation (FDIC). John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

45. **DHS Department of Homeland Security** is a department within the Federal Government. DHS implements and supports hundreds of initiatives and programs to achieve these objectives. In specific and successful efforts to dry up the funding that supports terrorists in the United States, DHS has raised the bar exponentially in developing programs that deny all bad people and/or people of ill refute, funds by prohibiting them from obtaining and/or maintaining gainful employment or receiving any government benefits. The programs also apply to individuals who are associated with or who are related to bad people and/or people of ill refute. These programs have been expanded to include not only prohibitions on gainful employment but to also include prohibitions against public subsidized housing and other federal benefits. It is important to note these "programs", are only for terrorists and bad people. The department of Homeland Security, FBI, and DOJ have successfully migrated these programs to each and every state of the United States through the generous support dollars they provide state and local law enforcement agencies , and their respective "fission centers of excellence". Their efforts and programs, although completely unrecognized, have fully matured to operational production and dissemination centers throughout the country. The terrorists, bad people, their associates and relatives can not figure out why they can't get or maintain a decent job. These bad individuals have, for the most part, been "cornered" into low paying job with out any hope of getting ahead in life by government agencies including DOJ/FBI/DHS/DSS/OPM/DOD. Our trusted government civil servants working in the quite confidences of their tremendous successes need to be recognized for their efforts and the contributions of

their corporate sponsors, and other government business partners in achieving what could only be described as a "awe". Unfortunately DHS and other bad actors have violated John Connolly (and others)'s constitutional and civil rights on numerous occasions.

46. **State of Virginia** also operates as a data brokerage firm (For Profit) and processor of data from numerous multi-dimensional perspectives. The State of Virginia is actual a National hub for the Transference of Federally Protected Data to Public and private corporations around the country. The plaintiff asserts that the activities, products and services, supported, produced and/or facilitated, accessed and results produced, transient or permanent and access availability or transmission of data/results or algorithms provided by the State of Virginia covers the full spectrum of definitions provisioned for entities referencing data in the Fair Credit Reporting Act, FACT Act, Privacy Act, Paper Reduction Act, Sarbanes Oxley Act and other regulations. Plaintiff considers this entity to be a Furnisher, User, Verifier, Credit Reporting Agency, and at times an entity with individuals operating under color of law.

**Detailing Of Specific Facts**

47. **PBGC -** On or about October 20, 2005, John Connolly (and others) entered into an employment relationship with the Pension Benefit Guaranty Corporation (PBGC), as an employee fully possessive of all constitutional, statutory and regulatory rights as any other PBGC federal employee (full time, part time, career appointment, political appointment, term appointment, probationary employee or non-probationary employee, contractor, applicant or even volunteer), for which he is claiming a stated interest, deprivation of right or benefit, incurrence of any damages and/or violation of any right, statute, regulation or law. This would include, among other things, the usual rights, privileges and benefits that are accorded all individuals including but not limited to those who undergo investigations and are entitled to the full protections of the United States Constitution, and other laws, regulations and statutes of the United States and their political subdivisions.

48. **CMS -** On or about October 2, 2006, John Connolly (and others) entered into an "employment/license" relationship with the **Center for Medicated Services.** As a federal employee, contractor, sub-contractor, career appointee, political appointee, part-time contractor, contract to hire contractor, or even a volunteer, John Connolly (and others) was fully possessive of all constitutional, statutory and regulatory rights as any other individual, for which he is claiming a stated interest, deprivation of any right or benefit, incurrence of any damages and/or violation of any right, statute, regulation or law. The usual rights, privileges and benefits that are accorded all individuals include the rights, unimpeded, to seek, apply for, obtain and maintain gainful employment ("employment/license), regardless of IRS filing category as W2, 1099, LLC or LLP. An individual's rights, duly exercised, in seeking, obtaining and maintaining gainful employment, are not compromised or limited when an individual undergoes any type of investigation. Whether an individual undergoes an investigation for an "employment/license" or a capital crime, he is entitled to the full protections of the United States Constitution, and other laws, regulations and statutes of the United States and their political subdivisions.

49. **Over the last fifteen to twenty years John Connolly (and others)** entered into numerous gainful employment relationships with **defendants;** public and private corporations, private companies and individuals and with government entities. John Connolly (and others) lived in a "free country" and was under the full protection of the United States Constitution. John Connolly (and others) is approximately fifty years old, well educated, well read, technologically astute, and he had **Never heard of the term, "employment license". John Connolly (and others) was under the impression that the only "employment license" he needed was The United States Constitution.** As a federal employee, contractor, sub-contractor, career appointee, political appointee, part-time contractor, contract to hire contractor, or even a volunteer, John Connolly (and others) was fully possessive of all constitutional, statutory and regulatory rights as any other individual, for which he is claiming a stated interest, deprivation of any right or benefit, incurrence of any damages and/or violation of any right, statute, regulation or law. The usual rights, privileges and benefits that are accorded all individuals include the rights, unimpeded, to seek, apply for, obtain and maintain gainful employment ("employment/license"), regardless of IRS filing category as W2, 1099, LLC or LLP. An individual's rights, duly exercised, in seeking, obtaining and maintaining gainful employment, are not compromised or limited when an individual undergoes any type of investigation. Whether an individual undergoes an investigation for an "employment/license" or a capital crime, he is entitled to the full protections of the United States Constitution, and other laws, regulations and statutes of the United States and their political subdivisions.

50. Approximate termination dates for varied contracts, employment/license positions and specific details in which John Connolly (and others) lost "employment/license" where he was gainfully employed and/or received denial/revocation/withdrawal of employment/license and or employment/license applications are included, but not limited in defendant summaries below. Federal agencies have "understandings", contracts, memorandums of agreements, memorandums of understanding with non government defendants who had what the government refers to as and employment/license relationship with plaintiff.

51. **The Centers for Medicated Services (CMS),** terminated John Connolly (and others)'s "employment/license" in **November of 2006.** John Connolly (and others) had been providing professional services and advice on CMS programs from early September 2006, and had been engaged on full time basis "gainfully employed" on October 2, 2006, the specific work effort was scheduled to continue into the year 2009. Although Government business/contracting practices, renewals, etc, provide no guarantees, John Connolly (and others), may very well have been able to continue gainful employment on CMS programs through to his own retirement. The denial of employment/license was based on false and fraudulent adverse information and/or undisclosed and concealed adjudication processes, in which John Connolly (and others) was denied due process.

52. **Defendant International Business Machines Corporation (IBM)** is a public corporation, PWC is an Auditing and consulting firm. In addition to commercial interests IBM and PWC are both government contractors with business interests in federal, state and local governments. IBM managed several government contracts on behalf of the federal government in which John Connolly (and others) lost an "employment/license". IBM officers and employees, **"under color of law"** working with and in collusion with numerous federal government agencies, including but not limited to CMS, **DOE'd**, Department of Energy, Department of Labor, **terminated, and/or authorized, supported, facilitated, participated in and/or provided support services for terminations of** John Connolly (and others)'s "employment/license", in a manor which was in egregious and deliberate violation of law, without cause and which violated John Connolly (and others)'s constitutional and civil rights to due process. John Connolly (and others) had been **fully engaged and was "gainfully employed" on a full time basis in a number of positions, the point at which IBM "participated" in the termination of John Connolly (and others)'s "employment/licenses".** The losses included but are not limited to undisclosed and concealed adjudication processes in **October of 2004 at the Department of Education, August of 2005 at the Department of Energy, August of 2005 at the Department of Labor and in November of 2006 at the Center of Medicated services.**

53. **Defendant Department of Energy (DOE) terminated** John Connolly (and others)'s "employment/license" in **August of 2005**. John Connolly (and others) was **"gainfully employed" on a full time basis at the point in time of termination of "employment/license", on a contract managed by the IBM corporation.** Although **(DOE)** Government business/contracting practices, renewals, etc, provide no guarantees, John Connolly (and others), may very well have been able to continue gainful employment on **any one of (DOE) government agency** programs through to his own retirement. The denial of employment/license was based on false and fraudulent adverse information and undisclosed and concealed adjudication processes, in which John Connolly (and others) was deliberately denied his constitutional rights in order to circumvent due process requirements, and/or protect corruption initiatives, which would also impact **IBM** bottom line and/or other pecuniary interests.

54. **Defendant Department of Labor (DOL)** terminated John Connolly (and others)'s "employment/license" in **August of 2005**. John Connolly (and others) had been **"gainfully employed" and/or been just denied license (legal definition?) after obtaining contract for full time employment at the point in time of termination of "employment/license" on a contract managed by the IBM corporation.** Although **(DOL)** Government business/contracting practices, renewals, etc, provide no guarantees, John Connolly (and others), may very well have been able to continue gainful employment on **any one of (DOL) government agency** programs through to his own retirement. The denial of employment/license was based on false and fraudulent adverse information and undisclosed and concealed adjudication processes, in which John Connolly (and others) was deliberately denied his constitutional rights in order to circumvent due process requirements, and/or protect corruption initiatives, which would also **impact IBM bottom line** and/or other pecuniary interests.

55. Defendant **Deloitte Consulting** is a professional services firm with commercial and government business interests. Deloitte is a government contractor with business interests in federal, state and local governments. Deloitte Consulting firms are the established and recognized leaders in the security consulting services market. Deloitte

consulting managed several government contracts on behalf of the federal government in which John Connolly (and others) lost an "employment/license", and applications for "employment/license" Deloitte officers and employees, **"under color of law"** working with and in collusion with their "client" Defendants, including, but not limited to the **Northrop Grumman Corporation, and with numerous federal government agencies, including but not limited to the Departments of Defense, Office of Personal Management, Defense Security Services, Transportation Security Administration (TSA), Health and Human Services, Pension Benefit Guarantee Corporation** and other entities, terminated, and/or authorized, supported, facilitated, **participated in and/or** provided support services for terminations **of** John Connolly (and others)'s "employment/license", in a manor which was in egregious and deliberate violation of law, without cause and which violated John Connolly (and others)'s constitutional and civil rights to due process. John Connolly (and others) had been **fully engaged and was "gainfully employed" on a full time basis as a contractor and/or employee in a number of opportunities and/or positions, the point at which Deloitte/ Northrop Grumman "participated", supported, and/or facilitated the termination of John Connolly (and others)'s "employment/licenses" and/or "employment/license" applications.**

56. **Defendant Oracle Corporation** managed several government contracts on behalf of the federal government in which John Connolly (and others) lost several "employment/licenses" – (i.e. terminations). John Connolly (and others) had been focusing on Oracle products for almost twenty years and had worked his way up to the position of Managing Principal in the Oracle Corporation. The Oracle Corporation, officers and employees, **"under color of law"** working with their commercial "clients", **defendants, BAE Systems, U.S Healthcare, Bell South (ATT – purchase of Bell South), Deloitte, and federal clients, their "government business sponsors" including but not limited to Departments of Transportation, Agency of Federal Highways, FAA, U.S. Air Force, Social Security Administration, in conjunction with** numerous other federal government agencies/support services, including but not limited to the **DOD, Defense Security Services, OPM, FBI, DOJ, FDIC, and other entities, terminated, and/or authorized, supported, facilitated, participated in and/or provided support services for terminations of** John Connolly (and others)'s "employment/license", numerous times.

57. **Defendant Unisys Corporation** managed several government contracts on behalf of the federal government in which John Connolly (and others) lost several "employment/licenses" – (i.e. terminations). The Unisys Corporation, officers and employees, **"under color of law"** working with their commercial "clients", business partners, **and federal government "business sponsors" including but not limited to the Department of Homeland Security, Transportation Security Administration,** Department of Health & Human Services, Food & Drug Administration, Centers for Disease Control and the **Government Services Administration in conjunction with** numerous other federal government agencies/support services, including but not limited to the **DOD, Defense Security Services, OPM, FBI, DOJ, FDIC, IRS and other entities, terminated, and/or authorized, supported, facilitated, participated in and/or provided support services for terminations of** John Connolly (and others)'s "employment/license", including but not limited to undisclosed and concealed adjudication processes **several times in 2003 and 2004 at the Transportation Security Administration and Department of Homeland Security, in November of 2003 at the Food and Drug Administration, in 2004 at the Centers of Disease Control and in June of 2004 at the General Services Administration.**

58. **Defendant Government Printing Office** terminated John Connolly (and others)'s "employment/license" in **October of 2005.** John Connolly (and others) had been providing professional services and advice on GPO programs from early August 2005, and had been **fully engaged on full time basis and "gainfully employed"** in October 2005, the specific work effort was scheduled to continue into the year 2007. Although Government business/contracting practices, renewals, etc, provide no guarantees, John Connolly (and others), may very well have been able to continue gainful employment on **GPO programs** through to his own retirement. The denial of employment/license was based on false and fraudulent adverse information, and "malfeasance of John Connolly (and others)'s records" as defined in complaint, and undisclosed and concealed adjudication processes, in which John Connolly (and others) was denied due process.

59. **Defendant (FDIC)** terminated John Connolly (and others)'s "employment/license" applications in 2003, 2004, twice in 2005, and twice in 2006 as a full time employee. Operating under the auspices of **FDIC** in their role and responsibility as a regulatory authority, John Connolly (and others) also lost his "employment/license" applications terminated with **Citigroup, Bank of North America and Chevy Chase Bank**. Although Government business & regulatory practices can change, renewals, etc, and there are no guarantees, John Connolly (and others), may very well have been able to secure gainful employment on **FDIC programs** and jobs with the aforementioned banks

through to his own retirement. The denial of employment/license applications was based on false and fraudulent adverse information, and "malfeasance of John Connolly (and others)'s records" as defined in complaint, and which were provided to undisclosed and concealed adjudication processes, in which John Connolly (and others) was denied due process.

60. PBGC - On or about September 28, 2006, John Connolly (and others)'s relationship was formally terminated by the PBGC. At no time, despite multiple requests, including record request via the Freedom of Information Act, Privacy Act and the Fair Credit Reporting Act, has he ever been informed of, or provided with any notice referencing accurate records, his rights or the true reasons of his termination. Quite the opposite actually happened. John Connolly (and others) was deprived of number of very serious due process rights. The deprivation of John Connolly (and others)'s constitutional and civil rights was in violation of laws, rules and regulations, and included violations of criminal statutes. John Connolly (and others) has been deceived and lied to on numerous occasions about the circumstances surrounding termination. Misrepresentations and deceptions to John Connolly (and others) have included deliberate falsification of government records, in violation of agency regulations and criminal statutes.

61. One or more of the defendants will assert John Connolly (and others) was some sort of independent contractor or employee, or sub-contractor, or volunteer whose relationship with the government and/or public and private corporations or private company's, can be terminated at convenience or "at will", and he would not be entitled to any constitutional or statutory rights of due process or rights of appeal or review. One or more of the defendants further claim documentation is in their possession that supports their position but as of the date of filing of this complaint they have refused to reveal the information.

62. Regardless of John Connolly (and others)'s "employment/license" type, as businessman, independent contractor, employee, or sub-contractor, employee of subcontractor, volunteer and/or regardless his IRS filing status as a W2 employee, 1099, LLC, or Corp, or Corp to hire, he was gainfully employed, by either defendant government agencies and/or defendant public and private corporations and companies - who over a period of approximately fifteen to twenty years repeatedly terminated his "employment license" as part of secret sentences that were the outcome of undisclosed and concealed adjudication processes, and which violated John Connolly (and others)'s constitutional rights and liberty interests and other rights to which he was fully entitled under the United States Constitution and other laws of the United States and their political subdivisions. The catastrophic harms inflicted on John Connolly (and others) were premeditated, deliberate, without cause, right, authority or immunity and in violation of law. The catastrophic harm and damages incurred by John Connolly (and others) would have been entirely preventable, if any of defendants, who were serving in Public Trust Positions and Under Color of Law, acted in a lawful and/or non criminal manor. The defendants knew, and should have known, their actions were illegal and outside the law. The pain suffering and damages deliberately inflicted and incurred by John Connolly (and others) and his family, through no fault of his own, was predictable with absolute certainty and could have been anticipated and avoided.

63. PBGC - During the course of his relationship with the PBGC, John Connolly (and others) earned approximately $17,600.00 in overtime and vacation time pay for which he was not properly compensated. The time was put forth and income earned under specific instructions of the PBGC and proper documentation and timesheets were submitted.

64. PBGC - John Connolly (and others)'s termination from the PBGC was a direct result of efforts to protect corruption initiatives that amounted to between seven and ten million dollars and represent illegal retaliation, under numerous statutes including the **whistle blowing Act and the Civil Rights Act**. The fraudulent activity involved [redacted] Consulting charging out between seven and ten million dollars, for a work effort that should not have exceeded any more than approximately two hundred hours. The illegal and fraudulent efforts were documented in detail, validated with individuals in top tier consulting firms, and brought to the attention of PBGC management by John Connolly (and others). John Connolly (and others) in point of fact completed and independently validated a "proof of concept" and created a fully functioning test instance, with the support of another firm, in less than eighty hours. Documentation and copies detailing each step and finding of the validation process and testing results were provided to and included in a review with John Connolly (and others)'s immediate management. Detailed copies and reviews were provided to the PBGC's Inspector Generals Office. John Connolly (and others) termination was a direct result and in direct retaliation for reporting waste, fraud and abuse, by management in PBGC, in violation of law.

65. The termination of John Connolly (and others)'s liberty interests and protected constitutional rights as reflected in fifteen to twenty years of terminations/denials/revocations of "employment/license" was the direct result of policy and/or efforts to protect lucrative corruption initiatives, by government agencies, and their "business partners" in public and private corporations and private companies. In many instances the actions represent illegal retaliation, and violations of constitutional and civil rights statutes including the whistle blowing Act and the Civil Rights Act. In all instances there are deliberate efforts to obstruct justice, in the concealment of these illegal activities and processes.

66. Defendant **Centers for Medicated Services (CMS)** terminated John Connolly (and others)'s employment **license as part of an effort to protect illegal corruption initiatives** amounting to hundreds of millions of dollars on government contracts. This government fraud and abuse initiatives would amount to **billions of dollars over time**. John Connolly (and others) was terminated from **CMS,** ostensibly, based on the results of false and fraudulent government records that were presented at a secret tribunal. John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes of these undisclosed and concealed adjudication processes.

67. **Defendant Program Support Center (PSC)** terminated John Connolly (and others)'s employment **license as part of an effort to protect illegal corruption initiatives** amounting to hundreds of millions of dollars on government contracts. This government fraud and abuse would amount to **billions of dollars over time**. John Connolly (and others) was terminated from **PSC,** ostensibly, based on the results of false and fraudulent government records that were presented at a secret tribunal. John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes of these undisclosed and concealed adjudication processes. The **PSC** undisclosed and concealed adjudication processes involved suitability determinations, actions and processes. Evidence was obtained and evaluated, charges were made, testimony was obtained and/or reviewed, written and/or verbal, supplemental and "classified" guidelines were referenced, which were supported by "classified" legal opinions and/or advisories that have no basis in law. Appeals were made and/or were declined to be made, on behalf of John Connolly (and others) by the defendant entities involved, including; government agencies, public and private corporations, private companies and individuals. **All organizational entities and individuals** (except for John Connolly (and others) – who was not invited to, or notified about these activities), **were represented at varied points in the process by legal counsel.** The attorneys, "Officers of The Court", operated and functioned through government agencies Offices of General Counsel, and Inspector Generals offices, in conjunction and collusion with attorneys representing public and private corporations and private companies and individuals. Verdicts were reached and sentence were determined by defendant entities and individuals involved. These illegal, unconstitutional activities were deliberately conducted and concealed from John Connolly (and others) in order to circumvent John Connolly (and others)'s constitutional rights. Defendant **PSC** and associated government "business partners", to include public and private corporations and companies and individuals, worked in collusion and in violation of constitutional, civil rights laws, rules and regulations with federal authorities in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes.

68. **Defendant Indian Health Service (IHS), in conjunction with DHHS senior leadership and through the services of the Program Support Center (PSC)** terminated/withdrew/denied John Connolly (and others)'s "employment/**license" application as part of an effort to protect illegal corruption initiatives** amounting to hundreds of millions of dollars on government contracts. This government fraud and abuse would amount to **billions of dollars over time**. John Connolly (and others) "employment/license" **application** was terminated, after his selection, ostensibly, based on the results of false and fraudulent government records that were presented at a secret tribunal. John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes of these undisclosed and concealed adjudication processes.

69. **The Food and Drug Administration (FDA),** in conjunction with DHHS senior leadership and through the services of the Program Support Center (PSC) **terminated/withdrew/denied** John Connolly (and others)'s "employment/license" **application as part of an effort to protect illegal corruption initiatives** amounting to hundreds of millions of dollars on government contracts. This government fraud and abuse would amount to **billions of dollars over time**. John Connolly (and others) "employment/license" **application** was terminated, ostensibly, based on the results of false and fraudulent government records that were presented at a secret tribunal. John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes of these undisclosed and concealed adjudication processes.

70. **Defendant the Food & Drug Administration** acting through their administrative agency the Program Support Center and other federal agencies terminated John Connolly (and others)'s "employment/license" in **November of 2003. John Connolly (and others) was fully engaged and "gainfully employed" on a full time, at the point of termination.** During the period of time referenced, John Connolly (and others) was a senior level manager acting on behalf of a government contract with the **Unisys Corporation**. John Connolly (and others) "employment/license" was terminated, based on the results of false and fraudulent government records that were presented at a secret tribunal. John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes of these undisclosed and concealed adjudication processes. All organizational entities (except for John Connolly (and others) – who was not invited to, or notified about these activities), were represented at varied points in the process by legal counsel. The attorneys, "Officers of The Court", operated and functioned through government agencies Offices of General Counsel, and Inspector Generals offices, in conjunction and collusion with attorneys representing public and private corporations and private companies and individuals. Defendant's and associated government "business partners", **Unisys Corporation** and to include other public and private corporations and companies and individuals, worked in collusion and in deliberate violation of constitutional, civil rights laws, rules and regulations with federal authorities in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes. These undisclosed and concealed adjudication processes and their results have resulted in unspeakable injury and harm to John Connolly (and others) and his family.

71. **Defendants the Food & Drug Administration** acting through their administrative agency the Program Support Center and other federal agencies and their "business partners" denied John Connolly (and others)'s application for employment/license on more than a dozen occasions in the period **from April 2001 through September 2006**, as a federal employee and has a government contractor. The denial of employment/license was based on adverse information and/or undisclosed and concealed adjudication processes, in which John Connolly (and others) was denied due process.

72. **Defendant the Food & Drug Administration** acting through their administrative agency the Program Support Center denied John Connolly (and others)'s application for employment/license to a senior federal employment position, despite receiving one of the three highest "scores" for that position, which would have also "mandated" the granting of an interview, during the period approximating **January through March 2004**. John Connolly (and others) "employment/license" application was terminated, based on the results of false and fraudulent government records that were presented at a secret tribunal. John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes of these undisclosed and concealed adjudication processes. Defendant's and associated government "business partners", **Unisys Corporation** and to include public and private corporations and companies and individuals, worked in collusion and in deliberate violation of constitutional, civil rights laws, rules and regulations with federal authorities in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes. These undisclosed and concealed adjudication processes and their results have resulted in unspeakable injury and harm to John Connolly (and others) and his family.

73. **Defendant the Centers for Disease Control and Prevention** acting through and with administrative support agencies denied John Connolly (and others)'s application for employment/license to senior federal employment positions, and contractor positions for which he was well and most qualified, on numerous occasions during the periods approximating **from February through August 2002, and December 2003 through September 2006.** John Connolly (and others)'s "employment/license" applications were terminated, based on the results of false and fraudulent government records that were presented at a secret tribunal. John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes of these undisclosed and concealed adjudication processes. **All organizational entities and individuals (except for John Connolly (and others)** – who was not invited to, or notified about these activities)**, were represented at varied points in the process by legal counsel. The attorneys, "Officers of the Court", operated and functioned through government agencies Offices of General Counsel, and Inspector Generals offices, in conjunction and collusion with attorneys representing public and private corporations and private companies and individuals.** Defendant's and associated government "business partners", **Unisys Corporation** and to include public and private corporations and companies and individuals, worked in collusion and in deliberate violation of constitutional, civil rights laws, rules and regulations with federal authorities in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes. These undisclosed and concealed adjudication processes and their results have resulted in unspeakable injury and harm to John Connolly (and others) and his family.

74. **Defendant Social Security Administration (SSA)** acting through and with administrative support agencies denied John Connolly (and others)'s application for employment/license to senior federal employment positions, and contractor positions for which he was well and most qualified, on numerous occasions during the periods approximating **from February through August 2002, and December 2003 through September 2006.** John Connolly (and others) "employment/license" applications were terminated based on the results of false and fraudulent government records that were presented at a secret tribunal. John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes of these undisclosed and concealed adjudication processes.

75. **The department of Education (DOE'd) in conjunction with and through the services of support agencies and functions** terminated John Connolly (and others)'s "employment/**license**". John Connolly (and others) "employment/**license**" was terminated, based on the results of false and fraudulent government records that were presented at a secret tribunal in **October of 2004.** John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes of these undisclosed and concealed adjudication processes.

76. The **department of Education (DOE'd) in conjunction with and through the services of support agencies and functions** terminated John Connolly (and others)'s "employment/**license**". John Connolly (and others) "employment/license" was terminated, based on the results of false and fraudulent government records that were presented at a secret tribunal in **January of 1997.** John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes of these undisclosed and concealed adjudication processes.

77. **Defendant International Business Machines Corporation (IBM)** is a public corporation, PriceWaterhouseCoopers is an auditing and Consulting Management firm. In addition to commercial interests IBM and PWC are both government contractors with business interests in federal, state and local governments. IBM and PWC both managed several government contracts on behalf of the federal government in which John Connolly (and others) lost an "employment/license". IBM and PWC officers and employees, **"under color of law"** working with and in collusion with numerous federal government agencies, including but not limited to CMS, **DOE'd**, Department of Energy, Department of Labor, **terminated, and/or authorized, supported, facilitated, participated in and/or provided support services for terminations of** John Connolly (and others)'s "employment/license", in a manor which was in egregious and deliberate violation of law, without cause and which violated John Connolly (and others)'s constitutional and civil rights to due process. John Connolly (and others) had been **fully engaged and was "gainfully employed" on a full time basis in a number of positions, the point at which IBM "participated" in the termination of John Connolly (and others)'s "employment/licenses"**

78. **International Business Machines Corporation** (& PWC) in conjunction with and based on information, and/or authorities from government agencies and their supporting business process infrastructures and system architectures (including supporting agencies) and/or other public and private corporations and private companies, terminated John Connolly (and others)'s "employment/license". John Connolly (and others) "employment/license" was terminated, based on the results of false and fraudulent government records that were presented at undisclosed and concealed adjudication processes in **October of 2004 at the Department of Education, August of 2005 at the Department of Energy, August of 2005 at the Department of Labor and in November of 2006 at the Center of Medicated services.** John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes/proceedings of these undisclosed and concealed adjudication processes. The International Business Machines Corporation participation in, and **"degree" of contributory negligence may appear to vary somewhat in each of the undisclosed and concealed adjudication processes. Whether the IBM Corporation took a material lead role in conjunction and/or collusion with their** government business sponsors and/or other entities, or took a supporting role and even acted unilaterally in their own pecuniary interest, their actions were in deliberate violation of John Connolly (and others)'s constitutional and civil rights. **IBM's** actions violated numerous laws, rules and regulations, at federal, state and local levels, (cited below) with the intent to injure, and to the detriment of John Connolly (and others). The **IBM** Corporation, their officers, employees, to include officers and employees of associated public and private corporations and private companies, acted in a manor in violation of law. These **IBM** corporate officers, employees, their agents and representatives, were serving in accredited and certified "PUBLIC TRUST POSITIONS" and were operating "Under Color of Law".

79. **Department of Energy** in conjunction with **IBM** and other "business partners", and based on information, and/or authorities from government agencies and their supporting business process infrastructures and system architectures

(including supporting agencies) and/or other public and private corporations and private companies, terminated John Connolly (and others)'s "employment/license". John Connolly (and others) "employment/license" was terminated, based on the results of false and fraudulent government records that were presented at undisclosed and concealed adjudication processes in **August of 2005.** John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes/proceedings of these undisclosed and concealed adjudication processes. The International Business Machines Corporation participation in, and **"degree" of contributory negligence may appear to vary somewhat in each of the undisclosed and concealed adjudication processes. Whether the IBM Corporation took a material lead role in conjunction and/or collusion with their government business sponsors and/or other entities, or took a supporting role and even acted unilaterally in their own pecuniary interest, their actions on behalf of the department of Energy were in deliberate violation of law and John Connolly (and others)'s constitutional and civil rights. DOE/IBM's actions violated numerous laws, rules and regulations, at federal, state and local levels, (cited below) with the intent to injure, and to the detriment of John Connolly (and others). The DOE/IBM Corporation, their officers, employees, to include officers and employees of associated public and private corporations and private companies, acted in a manor in violation of law. These DOE/IBM corporate officers, employees, their agents and representatives, were serving in accredited and certified "PUBLIC TRUST POSITIONS" and were operating "Under Color of Law".**

80. **Department of Labor** in conjunction with **IBM** and other "business partners", and based on information, and/or authorities from government agencies and their supporting business process infrastructures and system architectures (including supporting agencies) and/or other public and private corporations and private companies, terminated John Connolly (and others)'s "employment/license". John Connolly (and others)'s "employment/license" was terminated, based on the results of false and fraudulent government records that were presented at undisclosed and concealed adjudication processes in **August of 2005.** John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes/proceedings of these undisclosed and concealed adjudication processes. The Department of **Labor / IBM** participation in, and **"degree" of contributory negligence may appear to vary somewhat in each of the undisclosed and concealed adjudication processes.** Whether the **IBM Corporation took the material or lead role in conjunction and/or collusion** with their **government "business sponsors"** and/or other entities, or took a supporting role and even acted unilaterally in their own pecuniary interest, their actions on behalf of the department of **Labor or on their own behalf were in** deliberate violation of law and John Connolly (and others)'s constitutional and civil rights. **DOL/IBM's** actions violated numerous laws, rules and regulations, at federal, state and local levels, with the intent to injure, and to the detriment of John Connolly (and others). The **DOL/IBM Corporation,** their officers, employees, to include officers and employees of associated public and private corporations and private companies, acted in a manor in violation of law. **These DOL/IBM corporate officers, employees, their agents and representatives, were serving in accredited and certified "PUBLIC TRUST POSITIONS" and were operating "Under Color of Law".**

81. **Deloitte Consulting / Northrop Grumman** in conjunction with and based on information, and/or authorities from government agencies and their supporting business process infrastructures and system architectures (including supporting agencies) and/or other public and private corporations and private companies, terminated John Connolly (and others)'s "employment/license". John Connolly (and others) "employment/license" **and applications for "employment/license"** was terminated, based on the results of false and fraudulent government records that were presented at undisclosed and concealed adjudication processes **going back as far as May of 1996, at Deloitte Consulting, the Department of Defense, Defense Security Services, and to also include associated entities of Office Personal Management and the Global defense contractor the Northrop Grumman Corporation. Additionally John Connolly (and others) was denied "employment/license" and due process based on false information in and for** senior positions, and contractor positions for which he was well and most qualified, on numerous occasions and particularly during the periods approximating **from February through August 2002, and December 2003 through August 2006, with Deloitte and Northrop Grumman.** John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes/proceedings of these undisclosed and concealed adjudication processes, although as young boy John Connolly (and others) did read much about undisclosed and concealed adjudication processes taking place in Hitler's Nazis Germany and Stalin's Solvate Union. **Deloitte Consulting and or Northrop Grumman's** participation in, and **"degree" of contributory negligence may appear to vary somewhat in each of the undisclosed and concealed adjudication processes. Whether the Deloitte or Northrop took a material lead role in conjunction and/or collusion with their government business sponsors and/or other entities, or took a supporting role and even acted unilaterally in their own pecuniary interest, their actions were in deliberate violation of John Connolly (and others)'s constitutional and civil**

**rights. Deloitte's and Northrop's actions violated numerous laws, rules and regulations, at federal, state and local levels, with the intent to injure, and to the detriment of John Connolly (and others). Deloitte Consulting/ Northrop, their officers, employees, to include officers and employees of associated public and private corporations and private companies, acted in a manor in violation of law. Deloitte Consulting/Northrop Grumman corporate officers, employees, their agents and representatives, were serving in accredited and certified "PUBLIC TRUST POSITIONS" and were operating "Under Color of Law".**

82. **The Oracle Corporation** in conjunction with and based on information, and/or authorities from government agencies and their supporting business process infrastructures and system architectures (including supporting agencies) and/or other public and private corporations and private companies, terminated John Connolly (and others)'s "employment/license". John Connolly (and others) "employment/license" was terminated, based on the results of false and fraudulent government records that were presented at undisclosed and concealed adjudication processes in October of 2000, at **BAE Systems**, in August of 2000, and June of 2001 at **Bell South** (Purchased by ATT), in November and December of 2001 at agency for **Federal Highways and the Department of Transportation**, and the **Social Security Administration in March through July 2002**. The Oracle corporation in conjunction with their business partners and government "business sponsors", operated in conjunction and collusion with varied government security services and other interests, including but not limited to one or more of the following, **DOD, DSS, FBI, DOJ, OPM, FDIC and the IRS** to effectively ensure the deliberate and planned deprivation of John Connolly (and others)'s constitutional and civil rights. **Additionally John Connolly (and others) was denied "employment/license" and due process based on false information in and for** senior positions, and contractor positions for which he was well and most qualified, on numerous occasions and particularly during the periods approximating **from February through August 2002, with the Oracle Corporation implementing a program at the Social Security Administration.** John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes/proceedings of these undisclosed and concealed adjudication processes. The **Oracle** Corporation and their co-defendants, participation in, and **"degree" of contributory negligence may appear to vary somewhat in each of the undisclosed and concealed adjudication processes. Whether the Oracle Corporation took a material lead role in conjunction and/or collusion with their government business sponsors and/or other entities, or took a supporting role and even acted unilaterally in their own pecuniary interest, their actions were in deliberate violation of John Connolly (and others)'s constitutional and civil rights. Oracles actions violated numerous laws, rules and regulations, at federal, state and local levels, with the deliberate intent to injure, and to the detriment of John Connolly (and others). The Oracle Corporation, and the other defendants their officers, employees, to include officers and employees of associated public and private corporations and private companies, acted in a manor in violation of law. These Oracle/BEA/Bell South/ATT corporate officers, employees, their agents and representatives, were serving in accredited and certified "PUBLIC TRUST POSITIONS" and were operating "Under Color of Law".**

83. **Defendant Unisys Corporation** is a public corporation. In addition to commercial interests **Unisys** is also a government contractor with business interests in federal, state and local government's contracts. **Unisys** managed several government contracts on behalf of the federal government in which John Connolly (and others) lost several "employment/licenses". John Connolly (and others) had been focusing on Oracle products for almost twenty years and had worked his way up the corporate ladder attaining the position of **Managing Principal within the Oracle Corporation. John Connolly (and others)'s work was recognized by representatives of the Unisys Corporation, who actively and successfully recruited John Connolly (and others) to a managing position with the Unisys Corporation.** The Unisys Corporation, officers and employees, **"under color of law"** working with their commercial "clients", business partners, **and federal government "business sponsors" including but not limited to the Department of Homeland Security, Transportation Security Administration, Department of Health & Human Services, Food & Drug Administration, Centers for Disease Control and the Government Services Administration in conjunction with** numerous other federal government agencies/support services, including but not limited to the **DOD, Defense Security Services, OPM, FBI, DOJ, FDIC, IRS, DHS and other entities, terminated, and/or authorized, supported, facilitated, participated in and/or provided support services for terminations of** John Connolly (and others)'s "employment/license".

84. **The Unisys Corporation** in conjunction with and based on information, and/or authorities from government agencies and their supporting business process infrastructures and system architectures (including supporting agencies) and/or other public and private corporations and private companies, terminated John Connolly (and others)'s "employment/license". John Connolly (and others) "employment/license" was terminated, based on the

results of false and fraudulent government records, and "malfeasance of John Connolly (and others)'s records" as defined in complaint, and that were presented at undisclosed and concealed adjudication processes **several times in 2003 and 2004 at the Transportation Security Administration, Department of Homeland Security, in November of 2003 at the Food and Drug Administration, in 2004 at the Centers of Disease Control and in June of 2004 at the General Services Administration.** The **Unisys Corporation** in conjunction with their business partners and government "business sponsors", operated in conjunction and collusion with varied government security services and other interests, including but not limited to one or more of the following, **DHS, TSA, DOD, HHS, DSS, FBI, DOJ, OPM, FDIC and the IRS** to effectively ensure the deliberate and planned deprivation of John Connolly (and others)'s constitutional and civil rights. **Additionally John Connolly (and others) was denied "employment/license" and due process based on false information in and for** senior positions, and contractor positions for which he was well and most qualified, on numerous occasions including positions for all aforementioned government agencies and defendant public and private corporations. John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes/proceedings of these undisclosed and concealed adjudication processes. The **Unisys** Corporation and their co-defendants, participation in, and **"degree" of contributory negligence may appear to vary somewhat in each of the undisclosed and concealed adjudication processes. Whether the Unisys Corporation took a material lead role in conjunction and/or collusion with their government business sponsors and/or other entities, or took a supporting role and/or even acted unilaterally in their own pecuniary interest, their actions were in deliberate violation of John Connolly (and others)'s constitutional and civil rights. Unisys's actions violated numerous laws, rules and regulations, at federal, state and local levels, with the deliberate intent to injure, and to the detriment of John Connolly (and others). The Unisys Corporation, and the other defendants their officers, employees, to include officers and employees of associated public and private corporations and private companies, acted in a manor in violation of law. The Unisys Corporation corporate officers, employees, their agents and representatives, were serving in accredited and certified "PUBLIC TRUST POSITIONS" and were operating "Under Color of Law".**

85. The **Government Printing Office (GPO)** terminated John Connolly (and others)'s employment **license in conjunction with efforts to protect illegal corruption initiatives that compromise and circumvent essential civil and due process rights and protections that would ordinarily be required under the law.** John Connolly (and others) was terminated from **GPO,** ostensibly, based on the results of false and fraudulent government records and "malfeasance of John Connolly (and others)'s records" as defined in complaint, and that were presented at a secret tribunal. John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes of these undisclosed and concealed adjudication processes.

86. **The FDIC** in their role of insuring deposits, examining and supervising financial institutions, has inoculated, by deliberate and illicit use of their regulatory authority, illegal, false, fraudulent protocols and procedures that have deliberately and illegally circumvented John Connolly (and others)'s constitutional and civil rights, without cause, right, or privilege, in violation of law.

87. The **Federal Deposit Insurance Corporation (FDIC)/Chevy Chase/Bank of America/Citigroup** terminated John Connolly (and others)'s employment **license applications in conjunction with efforts to protect illegal corruption initiatives that compromise and circumvent essential civil rights and due process rights and protections that would have ordinarily be required under the law, if they had followed the law.** John Connolly (and others)'s license was terminated from **FDIC/Chevy Chase/Bank of America/Citigroup,** ostensibly, based on the results of false and fraudulent government records and "malfeasance of John Connolly (and others)'s records" as defined in complaint, and that were presented at secret tribunal. John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes of these undisclosed and concealed adjudication processes.

88. PBGC - Upon information and belief, **Jayprakash Parikh, Ellis Tash and James Gerber and Walt Luiza took** steps based on their own personal reasons, in conspiracy with other defendants and other individuals to unlawfully and/or unethically ensure John Connolly (and others)'s relationship with the PBGC was terminated. This included, but was not limited to, the dissemination of false information concerning John Connolly (and others), and falsification of records pertaining to John Connolly (and others).

89. PBGC - Upon evidence, information and belief of John Connolly (and others)'s situation, to include the Office Inspector General interaction and referral to the Office of Special Counsel, and other possible legal actions, the

inclusion of the Chief Financial Officer in office at the time decided to be become involved in the decision-making process to determine how best the PBGC Corporation should react.

90. DHHS – PSC and later CMS - Upon evidence, information and belief of corruption initiatives being compromised Asst. Sec. and later Administrator Kerry Weems from HHS to decide to become involved in the decision-making process to determine how best the DHHS should cover themselves.

91. PBGC - As a result of the PBGC's Chief Financial Officers (CFO) actions James Gerber, and the actions of, Ellis Tash, Jayprakash Parikh and Walt Luiza, Ted Winters, - John Connolly (and others) was terminated in and around the end of September, 2006.

92. PBGC - The actions that led to the circumstance above were undertaken by the PBGC, and **through the conduct of the CFO** James Gerber, **Jayprakash Parikh, Ellis Tash ,** Walt Luiza, Ted Winters **and others.** These actions, except for those of the OGC, OIG, and Facilities, (security support personnel) and likely other senior leadership, were of a personal nature, unlawful and/or retaliatory.

93. John Connolly (and others) was **never provided any of the required administrative remedies** to challenge the governments actions to terminate/deny/revoke or withdraw his "employment/license", or "employment/license" application, which, as a federal employee (full time, part time, career appointment, political appointment, term appointment, probationary employee or non-probationary employee, contractor or even volunteer), he was **entitled to** pursue. This included, but was not limited to, **the ability and opportunity to appeal as is provided** by law, Executive Order, regulation, (public regulations) and agency procedures (excluding supplementary 'classified" procedures) to challenge a proposed action by presenting evidence and/or calling witnesses before an agency official who has the authority to modify or rescind the proposed action. John Connolly (and others) also had the ability to appeal a termination and/or "employment/license" termination based on conditions arising before employment on the grounds that the termination was not in accordance with regulations, (public regulations – excluding supplementary or 'classified" regulations). Alternatively, even as a contractor or volunteer John Connolly (and others) was entitled to have all government agencies follow specific regulations, and statutes which were designed and required by various laws to inject the protection of civil rights into the process. Defendant Government agencies and their representatives deliberately and purposefully, ignored, circumvented and substituted these civil rights protections, (required by law) with business processes, supplementary "classified" guidelines, procedures and regulations that may have been far more efficient and cost effective, but they were also illegal, criminal, and unconstitutional.

94. Not only were all the appurtenant facts surrounding the termination of John Connolly (and others) misrepresented, John Connolly (and others) was specifically informed by PBGC that he was not entitled to any appeal rights. This information was also conveyed to PBGC CFO and EEOC officer James Gerber, as well as representatives in the Office of PBGC's Inspector General.

95. Not only were all the appurtenant facts surrounding the termination of John Connolly (and others)'s "employment/license" with respect to DHHS misrepresented, John Connolly (and others) was specifically informed by representatives of public and private corporations that with respect to the PSC & CMS corruption initiatives and termination of his "employment/license" he was not permitted to have any "direct communication" (violation of PA statute on obtaining information directly from individual) with government employees and that he was not entitled to any appeal rights. Within one business day of being congratulated by senior HHS officials for "saving" twenty eight million dollars, his employment/license was terminated.

96. The Deprivation of John Connolly (and others)'s civil rights protections in the form of United States Constitutional rights, civil rights laws, rules, regulations and other statutes would not have been possible without violations of criminal and civil statutes, necessary to achieve the deprivation of John Connolly (and others)'s constitutional rights. The deprivation of John Connolly (and others)'s civil rights protections was the result of very sophisticated, well practiced and choreographed, obfuscation programs, that included "delegated authority", and varied modalities, methodologies, and collateral, on whose basis the varied supplementary "classified" guidelines, "registers", rely is fraudulent, "parsed", "classified" and the legal opinions and advisories provided have absolutely no basis in law. These legal opinions, and their varied byproducts in the forms of "classified", supplementary guidelines, registers, practices, procedures and regulations are unconstitutional, illegal, discriminatory, and are designed with the explicit purpose of supporting corruption initiatives on a government scale that could reasonable be described as breathtaking

in scope. John Connolly (and others) had the right to be informed of these "classified" guidelines, practices, and procedures. John Connolly (and others) had the right to be informed of these undisclosed and concealed adjudication processes and receive notice of, agency/OPM/DSS etc, suitability determinations, actions, findings, policy, guidelines and employment practices. John Connolly (and others) had specific rights to appeal agency OPM employment and business practices, and supplementary guidelines that adversely impacted him with respect to termination of his employment/licenses over a period approximating 15 to 20 years, as an employee at PBGC, or contractor with hundreds of other agencies and firms or as an annuitant that may appeal OPM/FBI decisions affecting entitlements under John Connolly (and others)'s retirement systems, as a contractor, volunteer, or individual entitled to the full protections of the United States Constitution. John Connolly (and others) had specific rights to notice and appeals of OPM/FBI employment and business practices, suitability actions, suitability determinations, and investigation findings that adversely impacted him, on a daily basis possibly going back twenty years, with respect to being an applicant to hundreds of government jobs, or as a contractor working for and with the other defendant public and private corporations and private companies and individuals.

97. John Connolly (and others) was never provided any administrative remedies to challenge and/or correct, the false inaccurate, irrelevant records that pertained to John Connolly (and others), and also led to defendant government and government contractors actions to terminate his "employment/license which, as a federal employee, contractor, volunteer, convicted felon, escaped convict or terrorist he was entitled to pursue.

98. John Connolly (and others) was never provided with any notice that would afford him any knowledge or any fair, reasonable or meaningful appreciation of the circumstances or facts of his situation that would have enabled him as a member of a bargaining unit, which was the case at PBGC that has a negotiated grievance procedure covering actions that may have been appealed to the Merit Systems Protection Board, including other appeal rights.

99. The **CMS** secret trials conducted, essentially involved the use of undisclosed and concealed adjudication processes; determinations, actions and processes, etc. Evidence was obtained and evaluated, charges were made, testimony was obtained and/or reviewed, written and/or verbal, supplemental and/or "classified" guidelines were referenced, which were supported by "classified" legal opinions and/or advisories that have no basis in law, and were in fact designed to circumvent and violate the law. Appeals were made and/or were declined to be made, on behalf of John Connolly (and others) by the defendant entities involved, including; government agencies, public and private corporations, private companies and individuals. All organizational entities (except for John Connolly (and others) – who was not invited to, or notified about these activities), were represented at varied points in the process by legal counsel. The attorneys, "Officers of The Court", operated and functioned through government agencies Offices of General Counsel, and Inspector Generals offices, in conjunction and collusion with attorneys representing public and private corporations and private companies and individuals. Verdicts were reached and sentence were determined by defendant entities and individuals involved. These illegal, unconstitutional activities were deliberately conducted and concealed from John Connolly (and others) in order to circumvent John Connolly (and others)'s constitutional rights.

100. Defendant **CMS** and associated government "business partners", **International Business Machines Corporation (IBM)** and to include other public and private corporations and companies and individuals, worked in collusion and in violation of constitutional, civil rights laws, rules and regulations with federal authorities in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes to deliberately and adversely impact John Connolly (and others), in a manor in violation of law, with the purpose of protecting corruption initiatives. John Connolly (and others) was denied due process and was deprived of his "liberty interest".

101. **CMS** and their defendant "business partners" representing public and private corporations and private companies and individuals are not permitted, notwithstanding any contractual language to the contrary, to violate John Connolly (and others)'s constitutional, statutory or regulatory rights.

102. **CMS** and one or more of the defendants violated John Connolly (and others)'s constitutional rights, to which he was he was fully entitled and/or which the defendants were obligated, by law, statutes, regulations and contracts to comply with and obey. **CMS** and their associated defendant government "business partners" deliberately violated the law with the purpose of causing John Connolly (and others) harm. In addition to deliberate violations of John Connolly (and others)'s constitutional and civil rights, other specific violations include but are not limited to violations of the Privacy Act, Freedom of Information Act, Fair Credit Reporting Act, FACT Act, Sarbanes- Oxley

Act, Civil Rights Act, Fair Labor Standards Act, and other laws and departmental regulations which have resulted in unspeakable injury and harm to John Connolly (and others) and his family.

103. **Defendant PSC** and their defendant "business partners" representing public and private corporations and private companies are not permitted, notwithstanding any contractual language to the contrary, to violate John Connolly (and others)'s constitutional, statutory or regulatory rights.

104. **PSC** and one or more of the other defendants violated John Connolly (and others)'s constitutional rights, to which he was he was fully entitled and/or which the defendants were obligated, by law, statutes, regulations and contracts to comply with and obey. **PSC** and their associated defendant government "business partners" deliberately violated the law with the purpose of causing John Connolly (and others) harm. In addition to deliberate violations of John Connolly (and others)'s constitutional and civil rights, other specific violations include but are not limited to violations of the Privacy Act, Freedom of Information Act, Fair Credit Reporting Act, FACT Act, Sarbanes- Oxley Act, Civil Rights Act, Fair Labor Standards Act, and other laws and departmental regulations which have resulted in unspeakable injury and harm to John Connolly (and others) and his family.

105. Defendant agencies, public and private corporations and private companies, and individuals **conducted secret tribunal's** which, essentially involved the use of undisclosed and concealed adjudication processes; determinations, actions and processes, etc. Evidence was obtained and evaluated, charges were made, testimony was obtained and/or reviewed, written and/or verbal, supplemental and/or "classified" guidelines were referenced, which were supported by "classified" legal opinions and/or advisories that have no basis in law, and were in fact designed to circumvent and violate the law. Appeals were made and/or were declined to be made, on behalf of John Connolly (and others) by the defendant entities involved, including; government agencies, public and private corporations, private companies and individuals. **All organizational entities** (except for John Connolly (and others) – who was not invited to, or notified about these activities), were **represented at varied points in the process by legal counsel. The attorneys, "Officers of The Court", operated and functioned through government agencies Offices of General Counsel, and Inspector Generals offices, in conjunction and collusion with attorneys representing public and private corporations and private companies and individuals.** Verdicts were reached and sentence were determined by defendant entities and individuals involved. These illegal, unconstitutional activities were deliberately conducted and concealed from John Connolly (and others) in order to circumvent John Connolly (and others)'s constitutional rights.

106. Defendant's **IHS/DHHS/PSC** and associated government "business partners", to include public and private corporations and companies and individuals, worked in collusion and in violation of constitutional, civil rights laws, rules and regulations with federal authorities in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes to the detriment and injury of John Connolly (and others).

107. **IHS/DHHS/PSC** and their defendant "business partners" representing public and private corporations and private companies are not permitted, notwithstanding any contractual language to the contrary, to violate John Connolly (and others)'s constitutional, statutory or regulatory rights.

108. **IHS/DHHS/PSC** and one or more of the defendants violated John Connolly (and others)'s constitutional rights, to which he was he was fully entitled and/or which the defendants were obligated, by law, statutes, regulations and contracts to comply with and obey. **IHS/DHHS/PSC** and their associated defendant government "business partners" deliberately violated the law with the purpose of causing John Connolly (and others) harm. In addition to deliberate violations of John Connolly (and others)'s constitutional and civil rights, other specific violations include but are not limited to violations of the Privacy Act, Freedom of Information Act, Fair Credit Reporting Act, FACT Act, Sarbanes- Oxley Act, Civil Rights Act, Fair Labor Standards Act, and other laws and departmental regulations which have resulted in unspeakable injury and harm to John Connolly (and others) and his family.

109. Defendant's **FDA/HHS/PSC** and associated government "business partners", to include public and private corporations and companies and individuals, worked in collusion and in violation of constitutional, civil rights laws, rules and regulations with federal authorities in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes, to the detriment and injury of John Connolly (and others).

110. Defendants **FDA/HHS/PSC** and their defendant "business partners" representing public and private corporations and private companies are not permitted, notwithstanding any contractual language to the contrary, to violate John Connolly (and others)'s constitutional, statutory or regulatory rights.

111. **Defendants FDA/HHS/PSC** and one or more of the associated defendants government "business partners" violated John Connolly (and others)'s constitutional rights, to which he was fully entitled and/or which the defendants were obligated, by law, statutes, regulations and contracts to comply with and obey. **FDA/HHS/PSC** and their associated defendant government "business partners" deliberately violated the law with the purpose of causing John Connolly (and others) harm. In addition to deliberate violations of John Connolly (and others)'s constitutional and civil rights, other specific violations include but are not limited to violations of the Privacy Act, Freedom of Information Act, Fair Credit Reporting Act, FACT Act, Sarbanes- Oxley Act, Civil Rights Act, Fair Labor Standards Act, and other laws and departmental regulations which have resulted in unspeakable injury and harm to John Connolly (and others) and his family.

112. **Defendant the Social Security Administration (SSA)** denied John Connolly (and others)'s application for employment/license on almost a half dozen different occasions in the period from February through August 2002, and December 2003 through September 2006 as a federal employee and has a government contractor. The denial of employment/license was based on false and fraudulent adverse information and/or undisclosed and concealed adjudication processes, in which John Connolly (and others) was denied due process. John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law

113. The **Department of Health & Human Services** and their agencies, acting on their own and/or with the support of administrative support agencies and/or "detailed" functions provided by one and/or more of the following entities OMB, OPM, DSS, FBI, FDIC, IRS, SSA, IRS denied John Connolly (and others)'s application for employment/license, numerous times over the last ten years. The denial of employment/license was based on false and fraudulent adverse information and/or undisclosed and concealed adjudication processes, in which John Connolly (and others) was denied due process. References to agencies are to include their associations to public and private corporations and private companies, their officers, employees and other individuals. John Connolly (and others) was denied due process in each and every instance.

114. **Virtually all** Defendant agencies, public and private corporations and private companies, and individuals conducted undisclosed and concealed adjudication processes/trials against John Connolly (and others) without his knowledge. Undisclosed and concealed adjudication processes were conducted with legal counsel and/or attorney representation of the interests of the government agencies and the public and private corporations and companies. Government attorneys purportedly, representing the interests of the agencies, and their "corporate partners" and/or attorneys from public and private corporations representing their own interests were involved in each one of the undisclosed and concealed adjudication processes against John Connolly (and others), either directly, in each and every verdict, or overseeing, managing, certifying and/or reporting on the process and results.

115. **The trails/tribunals** essentially involved the use of undisclosed and concealed adjudication processes; determinations, actions and processes, etc. Evidence was obtained and evaluated, charges were made, testimony was obtained and/or reviewed, written and/or verbal, supplemental and/or "classified" guidelines were referenced, which were supported by "classified" legal opinions and/or advisories that have no basis in law, and were in fact designed to circumvent and violate the law. Appeals were made and/or were declined to be made, on behalf of John Connolly (and others) by the defendant entities involved, including; government agencies, public and private corporations, private companies and individuals. **All organizational entities** and individuals (except for John Connolly (and others) – who was not invited to, or notified about these activities), **were represented at varied points in the process by legal counsel. The attorneys, "Officers of The Court", operated and functioned through government agencies Offices of General Counsel, and Inspector Generals offices, in conjunction and collusion with attorneys representing public and private corporations and private companies and individuals.** Verdicts were reached and sentence were determined by defendant entities and individuals involved. These illegal,

unconstitutional activities were deliberately conducted and concealed from John Connolly (and others) in order to circumvent John Connolly (and others)'s constitutional rights.

116. Defendant DOE and associated government "business partners", **International Business Machines Corporation (IBM) and** to include other public and private corporations and companies and individuals, worked in collusion and in violation of constitutional, civil rights laws, rules and regulations with federal authorities in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes, to the detriment and injury of John Connolly (and others).

117. Defendant **DOE'd** (Education) and associated government "business partners", to include other public and private corporations and companies and individuals, worked in collusion and in violation of constitutional, civil rights laws, rules and regulations with federal authorities in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes, to the detriment and injury of John Connolly (and others).

118. **Defendant DOE'd** (Education) and their defendant "business partners" representing public and private corporations and private companies are not permitted, notwithstanding any contractual language to the contrary, to violate John Connolly (and others)'s constitutional, statutory or regulatory rights.

119. **Defendants DOE'd** (Education)and one or more of the associated defendants government "business partners" to include **International Business Machines Corporation (IBM) & PriceWaterhouseCoopers** violated John Connolly (and others)'s constitutional rights, to which he was fully entitled and/or which the defendants were obligated, by law, statutes, regulations and contracts to comply with and obey. **DOE'd** and their associated defendant government "business partners" deliberately violated the law with the purpose of causing John Connolly (and others) harm. In addition to deliberate violations of John Connolly (and others)'s constitutional and civil rights, other specific violations include but are not limited to violations of the Privacy Act, Freedom of Information Act, Fair Credit Reporting Act, FACT Act, Sarbanes- Oxley Act, Civil Rights Act, Fair Labor Standards Act, and other laws and departmental regulations which have resulted in unspeakable injury and harm to John Connolly (and others) and his family

120. Although Government business/contracting practices, renewals, etc, provide no guarantees, John Connolly (and others), may very well have been able to continue gainful employment on **any one of these government agency** programs through to his own retirement. The denial of employment/license was based on false and fraudulent adverse information and undisclosed and concealed adjudication processes, in which John Connolly (and others) was deliberately denied his constitutional rights in order to circumvent due process requirements, and/or protect corruption initiatives, which would impact **IBM** & PWC's bottom line and/or other pecuniary interests.

121. Depending on the circumstances, the undisclosed and concealed adjudication processes **IBM & PWC** participated in varied in terms of forum, format, parties, roles, responsibilities, and locations. Although the exact "vehicles" providing the mandates proscribing the illegal protocols and procedures in the deprivation of John Connolly (and others)'s due process rights may have been assorted, the "proscribing" entities never varied government agencies and individuals working in the most senior of Public Trust Positions.

122. Defendant **International Business Machines Corporation (IBM) (&PWC), and other entities,** and their associated government "business sponsors", to include, but not limited to **CMS, Education, Energy and Labor and supporting agencies, to include FBI, OPM, OMB, DSS, IRS, DOJ and other** government entities at federal, state and local levels, worked in collusion and in violation of constitutional, civil rights laws, rules and regulations with federal authorities in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes, to the deliberate detriment and injury of John Connolly (and others).

123. Defendant public and private corporations and private companies and individuals deliberate circumvention of John Connolly (and others)'s constitutional and civil rights, to which he was fully entitled under the United States Constitution, **was further facilitated by the creation, employment, utilization and structuring of independent corporate legal entities, organizational boundaries.** These "legal entities", "points of separation", taken together with the structuring of contracts, vendors, and the provision of legal opinions, advisories and guidelines from government attorneys have created environments of "perceived immunities" from violations of law. Individuals involved and responsible in deliberately causing John Connolly (and others) harm, without cause, and in willful violation of law, serve in **Public Trust Positions**, and include the assemblage of "functional" associations and

advisory groups, which also traverse traditional agency boundaries. **The primary groups of bad actors are attorneys functioning from the offices of agency General Counsels, and Inspector Generals in collusion with attorneys from public and private corporations, including their "outside counsels"**, which have taken actions to deliberately harm and injure John Connolly (and others). Operating environments were engineered by attorneys, to deliberately circumvent the law, and in particular, agency/attorney requirements, regulations and procedures to provide for, and that pertained to, the protection of John Connolly (and others)'s constitutional, civil rights and liberty interests. The engineered environment, conductive to violations of John Connolly (and others)'s constitutional and civil rights, in violation of law was based on assurances and "acceptable risk assessments" of perceived immunities to liabilities and violations of law provided by government attorneys. The attorneys in the private sector representing public and private corporations and/or simultaneously serving in Public Trust Positions representing the United States Government (i.e. us constitution) have absolutely no basis in law, claim, right, immunity, or privilege to be in reliance on representations or misrepresentations made by government agents to be engaged in violations of law, and particularly in violation of civil and criminal statutes at federal, state and local level.

124. **Defendant International Business Machines Corporation (IBM &PWC)** and their defendant government "business sponsors" representing government agencies and/or their own pecuniary interests are not permitted, notwithstanding any contractual language to the contrary, to violate John Connolly (and others)'s constitutional, statutory or regulatory rights.

125. **Defendants IBM & PWC** and one or more of the associated defendants government "business sponsors" to include **CMS, Education, Energy and Labor and supporting agencies, to include FBI, OPM, OMB, DSS, IRS, DOJ and other** government entities at federal, state and local levels violated John Connolly (and others)'s constitutional rights, to which he was fully entitled and/or which the defendants were obligated, by law, statutes, regulations and contracts to comply with and obey. **IBM / PWC** and their associated defendant government "business sponsors" deliberately violated the law with the purpose of causing John Connolly (and others) serious harm. In addition to deliberate violations of John Connolly (and others)'s constitutional and civil rights, other specific violations include but are not limited to violations of the Privacy Act, Freedom of Information Act, Fair Credit Reporting Act, FACT Act, Sarbanes- Oxley Act, Civil Rights Act, Fair Labor Standards Act, and other laws and departmental regulations which have resulted in unspeakable injury and harm to John Connolly (and others) and his family

126. Depending on the circumstances, the undisclosed and concealed adjudication processes defendants participated in varied in terms of forum, format, parties, roles, responsibilities, and locations. Although the exact "vehicles" providing the mandates proscribing the illegal protocols and procedures in the deprivation of John Connolly (and others)'s due process rights may have been assorted, the "proscribing" entities never varied government agencies and individuals working in the most senior of Public Trust Positions.

127. Defendant government agencies and their associated corporate "business partners", and other corporate defendants in the private sector, in addition to governmental entities at federal, state and local levels, worked in collusion and in violation of constitutional, civil rights laws, rules and regulations in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes, **to the deliberate detriment and injury of John Connolly (and others).**

128. Defendant public and private corporations and private companies and individuals deliberate circumvention of John Connolly (and others)'s constitutional and civil rights, to which he was fully entitled under the United States Constitution, **was further facilitated by the creation, employment, utilization and structuring of independent corporate legal entities, organizational boundaries. These "legal entities", "points of separation",** taken together with the structuring of contracts, vendors, and the provision of legal opinions, advisories and guidelines from government attorneys have created environments of "perceived immunities" from violations of law. Individuals involved and responsible in deliberately causing John Connolly (and others) harm, without cause, and in willful violation of law, serve in **Public Trust Positions**, and include the assemblage of "functional" associations and advisory groups, which also traverse traditional agency boundaries. **The primary groups of bad actors are attorneys functioning from the offices of agency General Counsels, and Inspector Generals in collusion with attorneys from public and private corporations, including their "outside counsels"**, which have taken actions to deliberately harm and injure John Connolly (and others). Operating environments were engineered by attorneys, to

deliberately circumvent the law, and in particular, agency/attorney requirements, regulations and procedures to provide for, and that pertained to, the protection of John Connolly (and others)'s constitutional, civil rights and liberty interests. The engineered environment, conductive to violations of John Connolly (and others)'s constitutional and civil rights, in violation of law was based on assurances and "acceptable risk assessments" of perceived immunities to liabilities and violations of law provided by government attorneys. The attorneys in the private sector representing public and private corporations and/or simultaneously serving in Public Trust Positions representing the United States Government (i.e. us constitution) have absolutely no basis in law, claim, right, immunity, or privilege to be in reliance on representations or misrepresentations made by government agents to be engaged in violations of law, and particularly in violation of civil and criminal statutes at federal, state and local level.

129. **Defendant government agencies, their agents and representatives, and their corporate "business partners", their agents and representatives** representing government agencies and/or their own pecuniary interests are not permitted, notwithstanding any contractual language to the contrary, to violate John Connolly (and others)'s constitutional, statutory or regulatory rights.

130. **Defendant government agencies and** one or more of the associated defendants corporate "business partners" to include **supporting agencies, FBI, OPM, OMB, DSS, IRS, DOJ and other** government entities at federal, state and local levels violated John Connolly (and others)'s constitutional rights, to which he was fully entitled and/or which the defendants were obligated, by law, statutes, regulations and contracts to comply with and obey. **Defendants** and associated defendants of government agencies and their corporate "business partners" deliberately violated the law with the purpose of causing John Connolly (and others) serious harm. **In addition to deliberate violations of John Connolly (and others)'s constitutional and civil rights, other specific violations of law include but are not limited to violations of the Privacy Act, Freedom of Information Act, Fair Credit Reporting Act, FACT Act, Sarbanes- Oxley Act, Civil Rights Act, Fair Labor Standards Act, and other laws and departmental regulations which have resulted in unspeakable, catastrophic injury and harm to John Connolly (and others) and his family.**

131. Although Government business/contracting practices, renewals, etc, provide no guarantees, John Connolly (and others), may very well have been able to continue gainful employment on any one of the government agency programs on which he was working through to his own retirement at Deloitte and/or **Northrop Grumman**, if **Deloitte** Consulting/ **Northrop Grumman** had acted in a lawful manor. The denial loss of employment/license was based on false and fraudulent adverse information and undisclosed and concealed adjudication processes, in which John Connolly (and others) was deliberately denied his constitutional rights in order to circumvent due process requirements, and/or protect corruption initiatives, which would impact both **Deloitte Consulting** and **Northrop Grumman** bottom line and/or other pecuniary interests.

132. Plaintiff has a number of claims with respect to Deloitte Consulting and a specific complaint has been submitted under seal with the Federal District Court and a referral to other entities and is awaiting a response and/or disposition.

133. **Deloitte Consulting / Northrop Grumman** in conjunction with and based on information, and/or authorities from government agencies and their supporting business process infrastructures and system architectures (including supporting agencies) and/or other public and private corporations and private companies, terminated John Connolly (and others)'s "employment/license". John Connolly (and others) "employment/license" **and applications for "employment/license"** was terminated, based on the results of false and fraudulent government records that were presented at undisclosed and concealed adjudication processes **going back as far as May of 1996, at Deloitte Consulting, the Department of Defense, Defense Security Services, and to also include associated entities of Office Personal Management and the Global defense contractor the Northrop Grumman Corporation. Additionally John Connolly (and others) was denied "employment/license" and due process based on false information in and for** senior positions, and contractor positions for which he was well and most qualified, on numerous occasions and particularly during the periods approximating **from February through August 2002, and December 2003 through August 2006, with Deloitte and Northrop Grumman.** John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes/proceedings of these undisclosed and concealed adjudication processes, although as young boy John Connolly (and others) did read much about undisclosed and concealed adjudication processes taking place in Hitler's Nazis Germany and Stalin's Solvate Union.

**Deloitte Consulting and or Northrop Grumman's** participation in, and **"degree" of contributory negligence may appear to vary somewhat in each of the undisclosed and concealed adjudication processes. Whether the Deloitte or Northrop took a material lead role in conjunction and/or collusion with their government business sponsors and/or other entities, or took a supporting role and even acted unilaterally in their own pecuniary interest, their actions were in deliberate violation of John Connolly (and others)'s constitutional and civil rights. Deloitte's and Northrop's actions violated numerous laws, rules and regulations, at federal, state and local levels, with the intent to injure, and to the detriment of John Connolly (and others). Deloitte Consulting/ Northrop, their officers, employees, to include officers and employees of associated public and private corporations and private companies, acted in a manor in violation of law. Deloitte Consulting/Northrop Grumman corporate officers, employees, their agents and representatives, were serving in accredited and certified "PUBLIC TRUST POSITIONS" and were operating "Under Color of Law".**

134. Depending on the circumstances, the undisclosed and concealed adjudication processes **Deloitte/Northrop** participated in varied in terms of forum, format, parties, roles, responsibilities, and locations. Although the exact "vehicles" providing the mandates proscribing the illegal protocols and procedures in the deprivation of John Connolly (and others)'s due process rights may have been assorted, the "proscribing" entities never varied government agencies and individuals working in the most senior of Public Trust Positions.

135. **Defendant Deloitte Consulting/Northrop Grumman,** and other entities, and their associated government **"business sponsors",** to include, but not limited to DOD/DSS and one or more of the following supporting agencies, to include FBI, OPM, OMB, DOJ, IRS, DOJ, FDIC and other government entities at federal, state and local levels, worked in collusion and in violation of constitutional, civil rights laws, rules and regulations with federal authorities and/or other defendants in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes, to the deliberate detriment and injury of John Connolly (and others).

136. **Defendant Deloitte Consulting/ Northrop Grumman** and their defendant government "business sponsors" representing government agencies, their client's interests, and/or their own pecuniary interests are not permitted, notwithstanding any contractual language to the contrary, to violate John Connolly (and others)'s constitutional, statutory or regulatory rights. All organizations and individuals were acting "under color of law".

137. **Defendants Deloitte Consulting/ Northrop Grumman** and one or more of the associated defendants government "business sponsors" to include **DOD/DSS, and supporting agencies, to include one or more of the following, FBI, OPM, OMB, DSS, DOD, IRS, DOJ, FDIC and other** government entities at federal, state and local levels violated John Connolly (and others)'s constitutional rights, to which he was fully entitled and/or which the defendants were obligated, by law, statutes, regulations and contracts to comply with and obey. **Deloitte/Northrop** and their associated defendant government "business sponsors" deliberately violated the law with the purpose of causing John Connolly (and others) serious harm. In addition to deliberate violations of John Connolly (and others)'s constitutional and civil rights, other specific violations include but are not limited to one or more of the following violations, including; the Privacy Act (Deloitte/Northrop has non-government entities, had specific obligations with respect to the Privacy Act) , Fair Credit Reporting Act, FACT Act, Sarbanes- Oxley Act, Civil Rights Act, Fair Labor Standards Act, and other laws and departmental regulations which have resulted in unspeakable injury and harm to John Connolly (and others) and his family. All individuals, and organizations, regardless of their status as a public or private corporation, or private company, were "Acting under Color of Law".

138. Plaintiff asserts that **Deloitte and Northrop,** even as a non-government entity had specific responsibilities and obligations, with respect to provisions of the Privacy Act, and their deliberate failure in complying with their legal obligation deliberately caused John Connolly (and others) serious harm.

139. The **actions the Oracle** Corporation, officers and employees, **"under color of law"** working with their commercial "clients", defendants, **BAE Systems, U.S Healthcare, Bell South (ATT – purchase of Bell South), Deloitte, and federal clients, their "government business sponsors" including but not limited to Departments of Transportation, Agency of Federal Highways, FAA, U.S. Air Force, Social Security Administration, in conjunction d with** numerous other federal government agencies/support services, including but not limited to the **DOD, Defense Security Services, OPM, FBI, DOJ, FDIC,IRS, and other entities,** took egregious illegal deliberate actions in terminating John Connolly (and others)'s "employment/license", and the manor in which the actions were taken were unlawful. The actions and the manor in which the actions were taken was unlawful, an

egregious and deliberate violation of law, without cause and which violated John Connolly (and others)'s constitutional and civil rights, including rights to Due-Process. The actions taken, and the manor in which they were taken, were also based on false and fraudulent records and "malfeasance of John Connolly (and others)'s records" as defined in complaint. Their sole purpose in taking these illegal actions was the protecting and the support of government/corporate corruption initiatives. John Connolly (and others) had been **fully engaged and was "gainfully employed" on a full time basis in a number of positions, the point at which the Oracle Corporation acting on their own, and/or on behalf of their government "business sponsors", "participated" in the termination of John Connolly (and others)'s "employment/licenses", and the termination of John Connolly (and others)'s "liberty interest".**

140. Although Government business/contracting practices, renewals, etc, provide no guarantees, John Connolly (and others), may very well have been able to continue gainful employment on **any one of these government agency** programs through to his own retirement. The termination and/or denial of employment/license was based on false and fraudulent adverse information and undisclosed and concealed adjudication processes, in which John Connolly (and others) was deliberately denied his constitutional rights in order to circumvent due process requirements, and/or protect corruption initiatives, which would impact **Oracle Corporations** bottom line and/or other pecuniary interests, including the interests of their government business sponsors, and other business partners.

141. Depending on the circumstances, the undisclosed and concealed adjudication processes **Oracle/BAE/Bell South/ATT** participated in varied in terms of forum, format, parties, roles, responsibilities, and locations. Although the exact "vehicles" providing the mandates proscribing the illegal protocols and procedures in the deprivation of John Connolly (and others)'s due process rights may have been assorted, the "proscribing" entities never varied government agencies and individuals working in the most senior of Public Trust Positions.

142. **Defendants Oracle Corporation, BEA Systems, Bell South, ATT, and other entities,** and their associated government **"business sponsors", to include, but not limited to DOT, FAA/ DOD, and one or more of the following supporting agencies, to include FBI, OPM, OMB, DSS, IRS, DOJ, FDIC, DOJ and other** government entities at federal, state and local levels, worked in collusion and in violation of constitutional, civil rights laws, rules and regulations with federal authorities and/or other defendants in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes, to the deliberate detriment and injury of John Connolly (and others).

143. **Defendant Oracle Corporation, BEA Systems, Bell South, ATT,** and their defendant government "business sponsors" representing government agencies, (DOD, DOT, FAA, DSS, FBI, OPM, FDIC, IRS), their clients interests, and/or their own pecuniary interests are not permitted, notwithstanding any contractual language to the contrary, to violate John Connolly (and others)'s constitutional, statutory or regulatory rights.

144. **Defendants Oracle Corporation, BEA Systems, Bell South, ATT,** and one or more of the associated defendants government "business sponsors" to include **DOD/DSS, and supporting agencies, to include one or more of the following, FBI, OPM, OMB, DSS, DOD, IRS, DOJ, FDIC, DOJ and other** government entities at federal, state and local levels violated John Connolly (and others)'s constitutional rights, to which he was fully entitled and/or which the defendants were obligated, by law, statutes, regulations and contracts to comply with and obey. **Oracle Corporation, BEA Systems, Bell South, ATT,** and their associated defendant government "business sponsors" deliberately violated the law with the purpose of causing John Connolly (and others) serious harm. In addition to deliberate violations of John Connolly (and others)'s constitutional and civil rights, other specific violations include but are not limited to one or more of the following violations, including; the Privacy Act (Oracle/BEA/BellSouth & ATT has non-government entities, had specific obligations with respect to the Privacy Act, which they failed to observe) , Fair Credit Reporting Act, FACT Act, Sarbanes- Oxley Act, Civil Rights Act, Fair Labor Standards Act, and other laws and departmental regulations which have resulted in unspeakable injury and harm to John Connolly (and others) and his family. All individuals, and organizations, regardless of their status as a public or private corporation, or private company, were "Acting under Color of Law".

145. Plaintiff asserts that **Oracle Corporation, BEA Systems, Bell South, ATT,,** even as a non-government entity had specific responsibilities and obligations, with respect to provisions of the Privacy Act, and their deliberate failure in complying with their legal obligations under that act and other acts caused John Connolly (and others), serious, deliberate, and premeditated harm.

146. The actions the aforementioned bad actors took in terminating John Connolly (and others)'s employment license, and the manor in which the actions were taken were unlawful. The actions and the manor in which the actions were taken was unlawful, and an egregious and deliberate violation of law, without cause and which violated John Connolly (and others)'s constitutional and civil rights, including rights to Due-Process. The actions taken, and the manor in which they were taken, were also based on false and fraudulent records and "malfeasance of John Connolly (and others)'s records" as defined in complaint. Their sole purpose in taking these illegal actions was the protecting and support of government/corporate corruption initiatives. John Connolly (and others) had been fully engaged and was "gainfully employed" on a full time basis in a number of positions, the point at which the **Unisys Corporation** acting on their own, and/or on behalf of their government "business sponsors", "participated" in the termination of John Connolly (and others)'s "employment/licenses" **", and the termination of John Connolly (and others)'s "liberty interest".**

147. Although Government business/contracting practices, renewals, etc, provide no guarantees, John Connolly (and others), may very well have been able to continue gainful employment on **any one of these government agency** programs through to his own retirement. The termination and/or denial of employment/license was based on false and fraudulent adverse information and undisclosed and concealed adjudication processes, in which John Connolly (and others) was deliberately denied his constitutional rights in order to circumvent due process requirements, and/or protect corruption initiatives, which would impact the **Unisys Corporations** bottom line and/or other pecuniary interests, including the interests of their government business sponsors, and other business partners.

148. Depending on the circumstances, the undisclosed and concealed adjudication processes **Unisys and/or their co-defendants** participated in varied in terms of forum, format, parties, roles, responsibilities, and locations. Although the exact "vehicles" providing the mandates proscribing the illegal protocols and procedures in the deprivation of John Connolly (and others)'s due process rights may have been assorted, the "proscribing" entities never varied government agencies and individuals working in the most senior of Public Trust Positions.

149. **Defendants Unisys Corporation, their co-defendants, and other entities,** and their associated government **"business sponsors", to include, but not limited to DHS/TSA/HHS/GSA/DOD, and one or more of the following supporting agencies, to include FBI, OPM, OMB, DSS, IRS, DOJ, FDIC, DOJ and other** government entities at federal, state and local levels, worked in collusion and in violation of constitutional, civil rights laws, rules and regulations with federal authorities and/or other defendants in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes, to the deliberate detriment and injury of John Connolly (and others).

150. **Defendant Unisys Corporation** and their defendant government "business sponsors" representing government agencies, (DOD, DHS, TSA, GSA, DSS, FBI, OPM, FDIC, and IRS), their clients interests, and/or their own pecuniary interests are not permitted, notwithstanding any contractual language to the contrary, to violate John Connolly (and others)'s constitutional, statutory or regulatory rights.

151. **Defendants Unisys Corporation, and other entities and defendants in the private sector,** and one or more of the associated defendants government "business sponsors" to include **DHS/TSA/HHS/GSA/DOD, and supporting agencies, to include one or more of the following, FBI, OPM, OMB, DSS, IRS, DOJ, FDIC, DOJ and other** government entities at federal, state and local levels violated John Connolly (and others)'s constitutional rights, to which he was fully entitled and/or which the defendants were obligated, by law, statutes, regulations and contracts to comply with and obey. **Unisys Corporation** and their associated defendant government "business sponsors" deliberately violated the law with the purpose of causing John Connolly (and others) serious harm. In addition to deliberate violations of John Connolly (and others)'s constitutional and civil rights, other specific violations include but are not limited to one or more of the following violations, including; the Privacy Act **(Unisys** has a non-government entity, had specific obligations with respect to the Privacy Act, which they failed to observe) , Fair Credit Reporting Act, FACT Act, Sarbanes- Oxley Act, Civil Rights Act, Fair Labor Standards Act, and other laws and departmental regulations which have resulted in unspeakable injury and harm to John Connolly (and others) and his family. All individuals, and organizations, regardless of their status as a public or private corporation, or private company, were acting in violation of law and were, "Acting under Color of Law".

152. Plaintiff asserts that **Unisys Corporation, and other defendants,** even as a non-government entity had specific responsibilities and obligations, with respect to provisions of the Privacy Act, and their deliberate failure in complying with their legal obligations under that act and other acts caused John Connolly (and others), serious, deliberate, and premeditated harm.

153. **Defendants Bearing Point & KPMG**. John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, and related organizations who deliberately violated his constitutional and civil rights, without cause and with intent to harm. The illegal actions took place against John Connolly (and others) as a job applicant, subcontractor numerous times in 2002, and 2004 through 2008. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendants had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

154. Bristol-Myers Squibb manufactures prescription pharmaceuticals, over-the-counter drugs and health care products in several therapeutic areas. It is also the parent company of Mead Johnson which manufactures nutritional products such as Enfamil baby formulas and infant vitamin supplements. John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, and related organizations who deliberately violated his constitutional and civil rights, without cause and with intent to harm. The violation of constitutional and civil rights was inculcated into the standard operating procedures and policies of the defendant. Regardless of John Connolly (and others)'s relationship with defendant as employee, contractor, sub-contractor, job applicant or even a volunteer, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of law.

155. **Business Transformation Agency (BTA – DOD Support Agency) Business** Transformation Agency – (DOD Support Agency) BTA oversees and assists DOD agencies with Business Transformation in the form of change management / Business Process Analysis & Information Technology Management Implementations. John Connolly (and others) had been the subject of investigations and undisclosed and concealed adjudication processes with adverse and catastrophic consequences has a result of his "employment/license" relationship with defendant, who deliberately violated his constitutional and civil rights, without cause and with intent to harm. Regardless of John Connolly (and others)'s relationship with defendant and their associates, as employee, contractor, sub-contractor, job applicant or even a volunteer, escaped felon, convicted terrorist, defendant had no right to harm John Connolly (and others), without cause, in the manor it did, deliberately, and in violation of the specific laws they are charged to protect. John Connolly (and others) was denied an "employment/license" for a job, contract and or application, as a result of this false and adverse information in violation of the Fair Credit Reporting Act and the Privacy Act. John Connolly (and others) was denied due process, and the opportunity to correct, amend or challenge the information resulting in failure of required due process procedures which caused him legal wrongs, and were in violation of his constitutional and civil rights. The violation of constitutional and civil rights was inculcated into the standard operating procedures and policies of the defendant and/or the defendants supporting authorities. Said information, as incorrect and misleading as it may have been, was originally generated with federal funds and as such was protected information under federal and state Privacy Act Statutes, in addition to other laws rules and regulations. Defendants violated the law to the deliberate detriment and injury of John Connolly (and others)

156. Defendant **Government Printing Office** and associated government "business partners", and to include other public and private corporations and companies and individuals, who worked in collusion and in violation of constitutional, civil rights laws, rules and regulations with federal authorities in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes to adversely impact John Connolly (and others). John Connolly (and others) was denied due process and was deprived of his "liberty interest". John Connolly (and others) was seriously damaged with malice of forethought, and in violation of law.

157. **GPO** and their defendant "business partners", representing public and private corporations and private companies and individuals, including government supporting agencies, **FBI, OPM, OMB, DSS, IRS, DOJ, FDIC, DOJ**, and all their data brokers are not permitted, notwithstanding any contractual language to the contrary, to violate John Connolly (and others)'s constitutional, statutory or regulatory rights.

158. **GPO** and one or more of the defendants violated John Connolly (and others)'s constitutional rights, to which he was he was fully entitled and/or which the defendants were obligated, by law, statutes, regulations and contracts to comply with and obey. **GPO** and their associated defendant government "business partners" deliberately violated the law with the purpose of causing John Connolly (and others) harm. In addition to deliberate violations of John Connolly (and others)'s constitutional and civil rights, other specific violations include but are not limited to violations of the Privacy Act, Freedom of Information Act, Fair Credit Reporting Act, FACT Act, Sarbanes- Oxley Act, Civil Rights Act, Fair Labor Standards Act, and other laws and departmental regulations which have resulted in unspeakable injury and harm to John Connolly (and others) and his family.

159. **Government Printing Office in conjunction with GPO senior leadership and through the services of the OPM and SLA's with public and private corporations and private companies,** terminated/withdrew/denied John Connolly (and others)'s "employment/**license" application.** John Connolly (and others) "employment/license" **application** was terminated, after his selection, ostensibly, based on the results of false and fraudulent government records and "malfeasance of John Connolly (and others)'s records" as defined in complaint, ant that were presented at a secret tribunal. John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes of these undisclosed and concealed adjudication processes.

160. Defendant's **GPO** and associated government "business partners", to include public and private corporations and companies and individuals, worked in collusion and in violation of constitutional, civil rights laws, rules and regulations with federal authorities in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes to the deliberate detriment and injury of John Connolly (and others).

161. **Government Printing Office**, associated agencies, acting on their own and/or with the support of administrative support agencies and/or "detailed" functions provided by one and/or more of the following entities OMB, OPM, DSS, FBI, FDIC, IRS, SSA, IRS denied John Connolly (and others)'s application for employment/license, numerous times over the last ten years. The denial of employment/license was based on false and fraudulent adverse information and/or undisclosed and concealed adjudication processes, in which John Connolly (and others) was denied due process. References to agencies are to include their associations to public and private corporations and private companies (i.e. including their data repositories or repositors) their officers, employees and other individuals. John Connolly (and others) was denied due process in each and every instance.

162. The **FDIC/Chevy Chase/Bank of America/Citigroup** secret trials/tribunals and hearings involved suitability adjudications determinations, actions and processes. Evidence was obtained and evaluated, charges were made, testimony was obtained and/or reviewed, written and/or verbal, supplemental and "classified" guidelines were referenced, which were supported by "classified" legal opinions and/or advisories that have no basis in law. Appeals were made and/or were declined to be made, on behalf of John Connolly (and others) by the defendant entities involved, including; government agencies, public and private corporations, private companies and individuals. **All organizational entities and individuals involved (except for Plaintiff John Connolly (and others) – who was not invited to, or notified about these activities), were represented at varied points in the process by legal counsel. The attorneys, "Officers of The Court", operated and functioned through government agencies Offices of General Counsel, and Inspector Generals offices, in conjunction and collusion with attorneys representing public and private corporations and private companies and individuals.** Verdicts were reached and sentence were determined by defendant entities and individuals involved (except for John Connolly (and others)). These illegal, unconstitutional activities were deliberately conducted and concealed from John Connolly (and others) in order to circumvent John Connolly (and others)'s constitutional rights. Defendants FDIC/**Chevy Chase/Bank of America/Citigroups** and associated government "business partners", and to include other public and private corporations and companies and individuals, who worked in collusion and in violation of constitutional, civil rights laws, rules and regulations with federal authorities in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes to adversely impact John Connolly (and others). John Connolly (and others) was denied due process and was deprived of his "liberty interest". John Connolly (and others) was seriously damaged with malice of forethought, and in violation of law.

163. **FDIC/Chevy Chase/Bank of America/Citigroups** and their defendant "business partners", representing public and private corporations and private companies and individuals, including government supporting agencies, **FBI, OPM, OMB, DSS, IRS, DOJ, FDIC, DOJ,** and all their data brokers are not permitted, notwithstanding any

contractual language to the contrary, to violate John Connolly (and others)'s constitutional, statutory or regulatory rights – ever.

164. **FDIC/Chevy Chase/Bank of America/Citigroups** and one or more of the defendants violated John Connolly (and others)'s constitutional rights, to which he was he was fully entitled and/or which the defendants were obligated, by law, statutes, regulations and contracts to comply with and obey. **FDIC/Chevy Chase/Bank of America/Citigroups** and their associated defendant government "business partners" deliberately violated the law with the purpose of causing John Connolly (and others) harm. In addition to deliberate violations of John Connolly (and others)'s constitutional and civil rights, other specific violations include but are not limited to violations of the Privacy Act, Freedom of Information Act, Fair Credit Reporting Act, FACT Act, Sarbanes- Oxley Act, Civil Rights Act, Fair Labor Standards Act, and other laws and departmental regulations which have resulted in unspeakable injury and harm to John Connolly (and others) and his family.

165. **Defendant Federal Deposit Insurance Corporation (FDIC) in conjunction with Chevy Chase/Bank of America/Citigroups senior leadership and through the services of the OPM, OPM-FSD, FBI, DOJ, DSS and their agents and contractors and** other public and private corporations and private companies, facilitated, supported, and participated in termination/withdrawal/denial of John Connolly (and others)'s "employment/license" and/or "employment/license" applications, without cause and in violation of law.

166. **FDIC** and their defendant "business partners" representing public and private corporations and private companies, including, but not limited to **Chevy Chase/Bank of America/Citigroups** are not permitted, notwithstanding any contractual language to the contrary, to violate John Connolly (and others)'s constitutional, statutory or regulatory rights.

167. **Federal Deposit Insurance Corporation**, **Chevy Chase/Bank of America/Citigroups** and associated agencies, acting on their own and/or with the support of administrative support agencies and/or "detailed" functions provided by one and/or more of the following entities OMB, OPM, DSS, FBI, FDIC, IRS, SEC, SSA, IRS terminated/denied/withdrew John Connolly (and others)'s "employment/license" and/or employment license application, numerous times over the last ten years. The denial of employment/license was based on false and fraudulent adverse information and/or undisclosed and concealed adjudication processes, in which John Connolly (and others) was denied due process. References to defendant agencies and defendants **Chevy Chase/Bank of America/Citigroups** are to include their associations to other entities, either under contract, service level agreements, memorandums of agreement, memorandums of understanding, security advisories, "supplementary guidelines", legal opinions, "approved" and/or authorized and/or reviewed training, training material and courses. This includes the data brokers, their officers, employees and other individuals. John Connolly (and others) was deliberately denied due process in each and every instance, as a matter of policy and to protect corruption initiatives that violated John Connolly (and others)'s, constitutional and civil rights, with intent to cause harm and grievous injury.

168. **USIS Corporation** is a data brokerage firm and processor of data from numerous multi-dimensional perspectives. The data collected was used to take illegal and adverse actions against Plaintiff. Defendant supplied data and/or other analysis and support to one or more defendants including government agencies and other public and private corporations to the detrainment of John Connolly (and others). Entity acted a final furnisher of data because they purchase retain and obtain data on individuals in a manor and process which Doe's not allow a subject to correct or amend records. The entity operates in a manor where individuals are denied due process and liberty interests as a standard operating procedure. The defendants know and/or should have known that the entities or clients, public and or private corporations they are supplying information too are denying individuals due process in employment/license and other areas, and are failing to notify subjects of adverse data, in violation of law and John Connolly (and others)'s constitutional and civil rights and in violation of the Fair Credit Reporting Act, FACT Act, Privacy Act and Sarbanes Oxley Act. The defendant has the same fiduciary responsibility of due care, regardless of whether they supply this information to a corporation or government entity. Defendant acted in a manor that can be characterized as reckless and depraved indifference. Defendant also violated the aforementioned laws by failing to adequately respond to several requests made under the FCRA, FACT Act and Privacy Act. Reliance on government attorney guidelines, provisions, opinions and understandings, in violation of John Connolly (and others)'s constitutional and civil rights; provide no immunities or mitigation for civil and criminal liabilities for the willful and deliberate injuries of John Connolly (and others). John Connolly (and others) was also denied employment/license

several times directly with this organization and was never advised of the existence of adverse information and never provided consent to access information which was in violation of the Fair Credit Reporting Act. Defendant had numerous lawful obligations they deliberately failed to comply with as furnishers of data, users of data and Credit Reporting Agencies, in addition to users of data from an employer perspective. In some areas Defendant also acted in credentialed Public Trust Positions and/or acted under "color of law". Defendant representatives also violated their oath and rules of conduct as attorneys and "Officers of the Court". John Connolly (and others) was injured by the unlawful actions of defendant.

169. **State of Virginia a State of the United States** is also a data brokerage firm and processor of data from numerous multi-dimensional perspectives. Data collected was used to take illegal and adverse actions against Plaintiff. Defendant supplied data and/or other analysis and support to one or more defendants including government agencies and other public and private corporations to the detrainment of John Connolly (and others). Entity acted a final furnisher of data because they purchase retain and obtain data on individuals in a manor and process which Doe's not allow a subject to correct or amend records. The entity operates in a manor where individuals are denied due process and liberty interests as a standard operating procedure. The defendants know and/or should have known that the entities or clients, public and or private corporations they are supplying information too are denying individuals due process in employment/license and other areas, and are failing to notify subjects of adverse data, in violation of law and John Connolly (and others)'s constitutional and civil rights and in violation of the Fair Credit Reporting Act, FACT Act, Privacy Act and Sarbanes Oxley Act. The defendant has the same fiduciary responsibility of due care, regardless of whether they supply this information to a corporation or government entity. Defendant acted in a manor that can be characterized as reckless and depraved indifference. Defendant also violated the aforementioned laws by failing to adequately respond to several requests made under the FCRA, FACT Act and Privacy Act. Reliance on government attorney guidelines, provisions, opinions and understandings, in violation of John Connolly (and others)'s constitutional and civil rights; provide no immunities or mitigation for civil and criminal liabilities for the willful and deliberate injuries of John Connolly (and others). John Connolly (and others) was also denied employment/license several times directly with this organization and was never advised of the existence of adverse information and never provided consent to access information which was in violation of the Fair Credit Reporting Act. Defendant had numerous lawful obligations they deliberately failed to comply with as furnishers of data, users of data and Credit Reporting Agencies, in addition to users of data from an employer perspective. In some areas Defendant also acted in credentialed Public Trust Positions and/or acted under "color of law". Defendant representatives also violated their oath and rules of conduct as attorneys and "Officers of the Court". John Connolly (and others) was injured by the unlawful actions of defendant.

170. In September of 2006, John Connolly (and others) informed PBGC's Chief Financial Officer James Gerber, and PBGC Attorney Ruben G. Moreno that the fraudulent waste fraud and abuse conducted by PBGC representatives were in violation of the law. John Connolly (and others) further reported that the actions he took were "protected" activities and that the retaliatory actions that followed were in violation of the Whistleblower Protection Act. PBGC Attorney Ruben G. Moreno responded by stating that the Whistleblower Protection Act did not apply to the Pension Benefit Guarantee Corporation because PBGC was a corporation and not a government agency.

171. John Connolly (and others) informed PBGC's Office Of Inspector General that the fraudulent waste fraud and abuse conducted PBGC representatives were in violation of the law. John Connolly (and others) further reported that the actions he took were "protected" activities and that the retaliatory actions that followed were in violation of the Whistleblower Protection Act. Representatives of the Inspector Generals office responded that as an alternative to going to the Office of Special Council, that PBGC had their own "Internal Whistleblower Act Program"

172. John Connolly (and others) informed the Office Of Inspector General at HHS, through their private corporation representatives, that the fraudulent waste fraud and abuse conducted HHS were in violation of the law. John Connolly (and others) further reported that the actions he took were "protected" activities and that the retaliatory actions that followed were in violation of various whistleblower laws including the Whistleblower Protection Act.

173. Up to the date of the filing of this case and continuing, John Connolly (and others) has made numerous efforts to discover, investigate, remedy and administratively address and resolve these issues. In attempting to do so he has **incurred more than $635,000 in expenses** that he otherwise would not be responsible for had the **defendant government agencies and their "business partners" in public and private corporations and companies** acted

lawfully and not deliberately and egregiously interfered with his efforts to find or maintain gainful employment. At no time, despite hundreds of requests, including record request via the Freedom of Information Act, Privacy Act and the Fair Credit Reporting Act, FACT Act, has a complete accounting and disclosure of records, to any minimally acceptable standard ever been made. John Connolly (and others) has been deceived and lied to on numerous occasions about the reasons surrounding his termination. Misrepresentations and deceptions to John Connolly (and others) included deliberate falsification of government records, in violation of agency regulations and criminal statutes.

174. John Connolly (and others) has been provided and has obtained one or more offers of employment with government contractors involved in business operations with the PBGC, DHHS, DOD and other federal agencies and public and private corporations. The work John Connolly (and others) was to perform required a security clearance. At the time John Connolly (and others) had been terminated by the PBGC he "purportedly" possessed a clearance that was still active. During 2005 – 2007, and, he was repeatedly verbally informed by representatives of the PBGC and OPM that there were no security or employment clearance issues or concerns within his PBGC investigative and/or personnel files. John Connolly (and others) obtained personal confirmations' and assurance that there was no security or employment clearance issues from PBGC's supervisors Jayprakash Parikh, Ellis Tash and facilities security personal Tamera Louis on several occasions. PBGC attorney, Ruben G. Moreno also confirmed that John Connolly (and others) had no clearance issues. John Connolly (and others) had made specific requests for all records from the PBGC, under the **FOIA and Privacy Act**. **Additionally John Connolly (and others) reviewed his personal files in the week preceding his departure – termination- from the PBGC Corporation**. In September and October of 2006, John Connolly (and others) again confirmed no security or employment clearance issues with CFO Jamie Gerber and PBGC attorney, Ruben G. Moreno. Upon evidence, information and belief, these PBGC representatives were aware of derogatory information within John Connolly (and others)'s files and they lied to him and prevented him from defending himself or providing him with an opportunity of due process to challenge and correct the false information and records. PBGC and other government agencies and their corporate "business partners" have lied to government contractors inquiring about John Connolly (and others). These actions in providing John Connolly (and others) with false information, and misrepresenting the facts resulted in termination and future loss of employment, direct termination of contract for hire, loss of his liberty interest, and were in violation of numerous constitutional, civil rights laws, rules and regulations.

175. John Connolly (and others) has been provided and has obtained one or more offers of employment with government contractors involved in business operations with the aforementioned defendant government agencies and other federal agencies and public and private corporations. The work John Connolly (and others) performs requires a security clearance. On numerous occasions in which John Connolly (and others)'s "employment/license" had been "terminated/denied/revoked" in secret as the result of verdicts from undisclosed and concealed adjudication processes he "purportedly" possessed a clearances that were still active. John Connolly (and others) than acting as a "Typhoid Mary" or current day equivalent of a Human IED (without the benefit of knowledge), would than create and/or move onto a new opportunity, in which the process would be repeated again and again. John Connolly (and others) would work his way up into senior and trusted leadership positions, then BOOM, destroying or damaging surrounding business unites, practices, small companies and colleagues careers. During his career in "virtual confinement" John Connolly (and others) was repeatedly, in writing and verbally, informed by representatives of government agencies and public and private corporations that there were no security or employment clearance issues or concerns within his investigative and/or personnel files. John Connolly (and others) obtained personal confirmations' and assurance that there were no security or employment clearance issues numerous times, including communications, written and verbal, with the Federal Bureau of Investigation in 1999 and 2000 - "No records", responsive to request.

176. One or more of the government contractors attempted to have government agencies and their supporting administrative agencies **DSS, OPM, FBI, DOJ, FDIC, IRS** transfer or renew John Connolly (and others) security clearance. Upon evidence, information and belief, the agencies continued the dissemination of false and defamatory information concerning John Connolly (and others) to the government contractors and additional federal agency, **for the purpose of causing the employer to terminate John Connolly (and others) from his employment contract and/or his** "employment/license" (contract to hire, W2, LLC, 1099, etc) and his ability to seek and/or maintain other employment. As a result of the defendants' actions, John Do has suffered harm, both financially and with respect to his health.

177. Named and titled references to **defendant government agencies**, throughout complaint, is to include all government agencies, their agents, representatives, officers and employees, whether employed directly or through contracts with public and private corporations, private companies and/or individuals, associations, and/or "functional associations" or groups of individuals, acting on an agencies behalf, and/or in their own interest and/or under "color of law", regardless of how they are compensated, or fail to be compensated, and regardless of any organizational and/or agency/corporate boundaries and/or structures created and/or maintained to circumvent and/or provide immunity for the circumvention and/or facilitate the violation of the United States Constitution, civil rights laws rules and regulations and other laws of the United States, to the determent and/or injury of John Connolly (and others).

178. There are **"unnamed", "defendant government agencies"** federal, state and local levels to include but not limited to entities referenced directly or **concealed indirectly, by implication, function, shared service offering of another entity, referenced in memorandums of understanding, memorandums of agreement, confidentially agreements, non-disclosure agreements, contracts, Compaq, compacts, with and/or for and/or by other entities**, regardless of any organizational and/or agency/corporate boundaries and/or structures created and/or maintained to circumvent and/or provide immunity for the circumvention and/or facilitate the violation of the United States Constitution, civil rights laws rules and regulations and other laws of the United States, to the determent and/or injury of John Connolly (and others).

179. Named and titled references to defendant **government "business partners"**, throughout complaint is to include all defendant **public and private corporations, and private companies, their agents, representatives, officers,** employees whether employed directly or through contracts with other public and private corporations, private companies and/or individuals, associations, and/or "functional associations" acting on their own behalf, and/or in their own interest and/or under "color of law", regardless of how they are compensated, or fail to be compensated, and regardless of any organizational and/or corporate boundaries and/or structures created and/or maintained to circumvent and/or provide immunity for the circumvention and/or facilitate the violation of the United States Constitution, civil rights laws rules and regulations and other laws of the United States, to the determent and/or injury of John Connolly (and others). For purposes of this complaint **"Defendant government business partners", also includes entities that have adversely impacted John Connolly (and others) and whose only nexus relationship with the government is the conspicuous and deliberate absence and/or failure of punitive law enforcement actions, (for matters of professional courtesy and mutual protection) for violations of criminal and civil rights protections, as they pertained to John Connolly (and others).**

180. There are **"unnamed", "defendant government business partners**" to include but not limited to entities referenced directly or concealed indirectly, by implication, function, shared service offering of another entity, referenced in memorandums of understanding, memorandums of agreement, confidentially agreements, non-disclosure agreements, contracts, Compaq, compacts, with and/or for and/or by other entities, regardless of any organizational and/or corporate boundaries and/or structures created and/or maintained to circumvent and/or provide immunity for the circumvention and/or facilitate the violation of the United States Constitution, civil rights laws rules and regulations and other laws of the United States, to the determent and/or injury of John Connolly (and others).

**FIRST CAUSE OF ACTION**
**(DECLARATORY JUDGMENT, APA)**

181. Plaintiff is notifying the court that he has no education or experience with respect to practice of law. Plaintiff is further requesting that each claim and assertion of violations made and damages incurred be applied throughout complaint to the appropriate laws of the U.S Constitution, Privacy Act, Fair Credit Reporting Act, Fair Accurate Credit Transactions Act, Sarbanes Oxley Act, Freedom of Information Act, Statutes of Frauds and other appropriate laws as the court deems fit.

182. Plaintiff is respectfully notifying/asserting to the court that failure to obtain adequate counsel is due to fraudulent, illegal and criminal actions being conducted by attorneys representing government agencies, functioning from the Offices of General Counsel and Inspector Generals offices, and attorneys who are acting in conjunction and collusion with these illegal activities who are representing public and private corporations.

183. Plaintiff Prays the court provide all aid, assistance and intercession where possible to John Connolly (and others) who is acting without the benefit of counsel, due to fraudulent acts of counsel - Officers Of The Court –

attorneys representing government agencies colluding with public and private corporations in deliberate violation of law, including premeditated violations of criminal statutes and violations of John Connolly (and others)'s constitutional and civil rights, and other rights to which he is fully entitled under the United States Constitution.

184. All paragraphs of this section are **to be used and applied in whole or in part in all other sections** and subsections of complaint, including items presented in tables of Authorities, to further identify, clarify and present comprehensive complaint as should be determined using all information throughout complaint, and where possible and/or necessary, expanded complaint, as the court may so determine or see fit, including the generation of additional injunctive orders, as the court may so determine.

185. All paragraphs, arguments of **all other sections** and subsections of complaint, including items presented in table of Authorities are to be utilized, argued, reasoned and **inserted into this section**, in order to further identify, clarify and present comprehensive complaint as should be determined using all information throughout complaint, and where possible and/or necessary, expanded complaint, as the court may so determine or see fit, including the generation of additional injunctive orders, as the court may so determine.

186. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

187. On or about October 20, 2005, John Connolly (and others) entered into an employment relationship with the Pension Benefit Guaranty Corporation (PBGC), as an employee fully possessive of all constitutional, statutory and regulatory rights as any other PBGC federal employee (full time, part time, career appointment, political appointment, term appointment, probationary employee or non-probationary employee, contractor or even volunteer), for which he is claiming a stated interest, deprivation of right or benefit, incurrence of any damages and/or violation of any right, statute, regulation or law. This would include, among other things, the usual rights, privileges and benefits that are accorded all individuals including but not limited to those who undergo investigations and are entitled to the full protections of the United States Constitution, and other laws, regulations and statutes of the United States and their political subdivisions.

188. **Over the last fifteen to twenty years John Connolly (and others)** entered into numerous gainful employment relationships with **defendants;** public and private corporations, private companies and individuals and with government entities. John Connolly (and others) lived in a "free country" and was under the full protection of the United States Constitution. John Connolly (and others) is approximately fifty years old, well educated, well read, technologically astute, and he had **Never heard of the term, "employment license". John Connolly (and others) was under the impression that the only "employment license" he needed was The United States Constitution.** As a federal employee, contractor, sub-contractor, career appointee, political appointee, part-time contractor, contract to hire contractor, or even a volunteer, John Connolly (and others) was fully possessive of all constitutional, statutory and regulatory rights as any other individual, for which he is claiming a stated interest, deprivation of any right or benefit, incurrence of any damages and/or violation of any right, statute, regulation or law. The usual rights, privileges and benefits that are accorded all individuals include the rights, unimpeded, to seek, apply for, obtain and maintain gainful employment ("employment/license"), regardless of IRS filing category as W2, 1099, LLC or LLP. An individual's rights, duly exercised, in seeking, obtaining and maintaining gainful employment, are not compromised or limited when an individual undergoes any type of investigation. Whether an individual undergoes an investigation for an "employment/license" or a capital crime, he is entitled to the full protections of the United States Constitution, and other laws, regulations and statutes of the United States and their political subdivisions.

189. One or more of the defendants will assert John Connolly (and others) was some sort of independent contractor or employee, or sub-contractor, or volunteer whose relationship with the government and/or public and private corporations or private company's, can be terminated at convenience or "at will", and he would not be entitled to any constitutional or statutory rights of due process or rights of appeal or review. One or more of the defendants further claim documentation is in their possession that supports their position but as of the date of filing of this complaint they have refused to reveal the information.

190. Regardless of John Connolly (and others)'s "employment/license" type, as businessman, independent contractor, employee, or sub-contractor, employee of subcontractor, volunteer and/or regardless his IRS filing status as a W2 employee, 1099, LLC, or Corp, or Corp to hire, he was gainfully employed, by either defendant government

agencies and/or defendant public and private corporations and companies - who over a period of approximately fifteen to twenty years repeatedly terminated his "employment license" as part of secret sentences that were the outcome of undisclosed and concealed adjudication processes, and which violated John Connolly (and others)'s constitutional rights and liberty interests and other rights to which he was fully entitled under the United States Constitution and other laws of the United States and their political subdivisions. The catastrophic harms inflicted on John Connolly (and others) were premeditated, deliberate, without cause, right, authority or immunity and in violation of law. The catastrophic harm and damages incurred by John Connolly (and others) would have been entirely preventable, if any of defendants, who were serving in Public Trust Positions and Under Color of Law, acted in a lawful and/or non criminal manor. The defendants knew, and should have known, their actions were illegal and outside the law. The pain suffering and damages deliberately inflicted and incurred by John Connolly (and others) and his family, through no fault of his own, was predictable with absolute certainty and could have been anticipated and avoided.

191. The termination of John Connolly (and others)'s liberty interests and protected constitutional rights as reflected in fifteen to twenty years of terminations/denials/revocations of "employment/license" was the direct result of policy and/or efforts to protect lucrative corruption initiatives, by government agencies, and their "business partners" in public and private corporations and private companies. In many instances the actions represent illegal retaliation, and violations of constitutional and civil rights statutes including the whistle blowing Act and the Civil Rights Act. In all instances there are deliberate efforts to obstruct justice, in the concealment of these illegal activities and processes.

192. Not only were all the appurtenant facts surrounding the termination of John Connolly (and others) misrepresented, John Connolly (and others) was specifically informed by PBGC that he was not entitled to any appeal rights. This information was also conveyed to PBGC CFO and EEOC officer James Gerber, as well as representatives in the Office of PBGC's Inspector General.

193. Not only were all the appurtenant facts surrounding the termination of John Connolly (and others)'s employment/license with respect to DHHS misrepresented, John Connolly (and others) was specifically informed by representatives of public and private corporations that with respect to the PSC & CMS corruption initiatives and termination of his "employment/license" he was not permitted to have any "direct communication" with government employees and that he was not entitled to any appeal rights. Within one business day of being congratulated by senior HHS officials for "saving" twenty eight million dollars, his employment/license was terminated.

194. John Connolly (and others) was never provided any administrative remedies to challenge and/or correct, the false inaccurate, irrelevant records that pertained to John Connolly (and others), and also led to defendant government and government contractors actions to terminate his "employment/license which, as a federal employee, contractor, volunteer, convicted felon, escaped convict or terrorist he was entitled to pursue.

195. John Connolly (and others) was never provided with any notice that would afford him any knowledge or any fair, reasonable or meaningful appreciation of the circumstances or facts of his situation that would have enabled him as a member of a bargaining unit, which was the case at PBGC that has a negotiated grievance procedure covering actions that may have been appealed to the Merit Systems Protection Board, including other appeal rights.

196. In September of 2006, John Connolly (and others) informed PBGC's Chief Financial Officer James Gerber, and PBGC Attorney Ruben G. Moreno that the fraudulent waste fraud and abuse conducted by PBGC representatives were in violation of the law. John Connolly (and others) further reported that the actions he took were "protected" activities and that the retaliatory actions that followed were in violation of the Whistleblower Protection Act. PBGC Attorney Ruben G. Moreno responded by stating that the Whistleblower Protection Act did not apply to the Pension Benefit Guarantee Corporation because PBGC was a corporation and not a government agency. This was a misrepresentation of the facts, entitlements and rights of due process and rights to appeal by two senior government officials who were in the best position to know.

197. In May of 2005, John Connolly (and others) informed HHS through their federal contractor that the fraudulent waste fraud and abuse conducted by named federal contractors were in violation of the law. John Connolly (and others) further reported that the actions he took were "protected" activities and that the retaliatory actions that followed were in violation of the Whistleblower Protection Act and other laws that protected government

frauds. John Connolly (and others) had conversation on these frauds on with government representatives in the past. These same type of frauds were brought to the attention of CMS agency management in October of 2006

198. John Connolly (and others) informed PBGC's Office Of Inspector General that the fraudulent waste fraud and abuse conducted PBGC representatives were in violation of the law. John Connolly (and others) further reported that the actions he took were "protected" activities and that the retaliatory actions that followed were in violation of the Whistleblower Protection Act. Representatives of the Inspector Generals office responded that as an alternative to going to the Office of Special Council, that PBGC had their own "Internal Whistleblower Act Program" This was a misrepresentation of the facts, entitlements and rights of due process and rights to appeal by two senior government officials who were in the best position to know.

199. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**SECOND CAUSE OF ACTION**
**(APA/U.S. CONSTITUTION – DENIAL OF DUE PROCESS IN TERMINATION OF FEDERAL EMPLOYEE – INCLUDING FEDERAL "EMPLOYMENT/LICENSE" –Per specific agency regulations Due Process apply to contractors, sub-contractors & volunteers)**

200. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

201. **PBGC** - On or about October 20, 2005, John Connolly (and others) entered into an employment relationship with the Pension Benefit Guaranty Corporation (PBGC), as an employee fully possessive of all constitutional, statutory and regulatory rights as any other PBGC federal employee (full time, part time, career appointment, political appointment, term appointment, probationary employee or non-probationary employee, contractor, applicant or even volunteer), for which he is claiming a stated interest, deprivation of right or benefit, incurrence of any damages and/or violation of any right, statute, regulation or law. This would include, among other things, the usual rights, privileges and benefits that are accorded all individuals including but not limited to those who undergo investigations and are entitled to the full protections of the United States Constitution, and other laws, regulations and statutes of the United States and their political subdivisions.

202. **CMS** - On or about October 2, 2006, John Connolly (and others) entered into an "employment/license" relationship with the **Center for Medicated Services.** As a federal employee, contractor, sub-contractor, career appointee, political appointee, part-time contractor, contract to hire contractor, or even a volunteer, John Connolly (and others) was fully possessive of all constitutional, statutory and regulatory rights as any other individual, for which he is claiming a stated interest, deprivation of any right or benefit, incurrence of any damages and/or violation of any right, statute, regulation or law. The usual rights, privileges and benefits that are accorded all individuals include the rights, unimpeded, to seek, apply for, obtain and maintain gainful employment ("employment/license), regardless of IRS filing category as W2, 1099, LLC or LLP. An individual's rights, duly exercised, in seeking, obtaining and maintaining gainful employment, are not compromised or limited when an individual undergoes any type of investigation. Whether an individual undergoes an investigation for an "employment/license" or a capital crime, he is entitled to the full protections of the United States Constitution, and other laws, regulations and statutes of the United States and their political subdivisions.

203. Varied gainful employment organizations, positions, and "employment/licenses" as an employee, contractor, volunteer, bagger bond or hanger on and the approximate termination dates and specific details in which John Connolly (and others) lost "employment/license" and/or received termination, denial/revocation/withdrawal of employment/license applications are included in claims against defendants in summaries previously presented. To avoid replication please reference and include all previous paragraphs and plaintiff claims which are being re-alleged here.

204. Defendant agencies each have their own internal regulations that stipulated same Due Process treatment, protocols and procedures to cover individuals under the same circumstances and fact patterns associated with John Connolly (and others).

205. PBGC - On or about September 28, 2006, John Connolly (and others)'s relationship was formally terminated by the PBGC. At no time, despite multiple requests, including record request via the Freedom of Information Act, Privacy Act and the Fair Credit Reporting Act, has he ever been informed of, or provided with any notice referencing accurate records, his rights or the true reasons of his termination. Quite the opposite actually happened. John Connolly (and others) was deprived of number of very serious due process rights. The deprivation of John Connolly (and others)'s constitutional and civil rights was in violation of laws, rules and regulations, and included violations of criminal statutes. John Connolly (and others) has been deceived and lied to on numerous occasions about the circumstances surrounding termination. Misrepresentations and deceptions to John Connolly (and others) have included deliberate falsification of government records, in violation of agency regulations and criminal statutes.

206. One or more of the defendants will assert John Connolly (and others) was some sort of independent contractor or employee, or sub-contractor, or volunteer whose relationship with the government and/or public and private corporations or private company's, can be terminated at convenience or "at will", and he would not be entitled to any constitutional or statutory rights of due process or rights of appeal or review. One or more of the defendants further claim documentation is in their possession that supports their position but as of the date of filing of this complaint they have refused to reveal the information.

207. Regardless of John Connolly (and others)'s "employment/license" type, as businessman, independent contractor, employee, or sub-contractor, employee of subcontractor, volunteer and/or regardless his IRS filing status as a W2 employee, 1099, LLC, or Corp, or Corp to hire, he was gainfully employed, by either defendant government agencies and/or defendant public and private corporations and companies - who over a period of approximately fifteen to twenty years repeatedly terminated his "employment license" as part of secret sentences that were the outcome of undisclosed and concealed adjudication processes, and which violated John Connolly (and others)'s constitutional rights and liberty interests and other rights to which he was fully entitled under the United States Constitution and other laws of the United States and their political subdivisions. The catastrophic harms inflicted on John Connolly (and others) were premeditated, deliberate, without cause, right, authority or immunity and in violation of law. The catastrophic harm and damages incurred by John Connolly (and others) would have been entirely preventable, if any of defendants, who were serving in Public Trust Positions and Under Color of Law, acted in a lawful and/or non criminal manor. The defendants knew, and should have known, their actions were illegal and outside the law. The pain suffering and damages deliberately inflicted and incurred by John Connolly (and others) and his family, through no fault of his own, was predictable with absolute certainty and could have been anticipated and avoided.

208. PBGC - John Connolly (and others)'s termination from the PBGC was a direct result of efforts to protect corruption initiatives that amounted to between seven and ten million dollars and represent illegal retaliation, under numerous statutes including the **whistle blowing Act and the Civil Rights Act**. The fraudulent activity involved ██████ Consulting charging out between seven and ten million dollars, for a work effort that should not have exceeded any more than approximately two hundred hours. The illegal and fraudulent efforts were documented in detail, validated with individuals in top tier consulting firms, and brought to the attention of PBGC management by John Connolly (and others). John Connolly (and others) in point of fact completed and independently validated a "proof of concept" and created a fully functioning test instance, with the support of another firm, in less than eighty hours. Documentation and copies detailing each step and finding of the validation process and testing results were provided to and included in a review with John Connolly (and others)'s immediate management. Detailed copies and reviews were provided to the PBGC's Inspector Generals Office. John Connolly (and others) termination was a direct result and in direct retaliation for reporting waste, fraud and abuse, by management in PBGC, in violation of law.

209. The termination of John Connolly (and others)'s liberty interests and protected constitutional rights as reflected in fifteen to twenty years of terminations/denials/revocations of "employment/license" was the direct result of policy and/or efforts to protect lucrative corruption initiatives, by government agencies, and their "business partners" in public and private corporations and private companies. In many instances the actions represent illegal

retaliation, and violations of constitutional and civil rights statutes including the whistle blowing Act and the Civil Rights Act. In all instances there are deliberate efforts to obstruct justice, in the concealment of these illegal activities and processes.

210. Defendant **Centers for Medicated Services (CMS)** terminated John Connolly (and others)'s employment **license as part of an effort to protect illegal corruption initiatives** amounting to hundreds of millions of dollars on government contracts. This government fraud and abuse initiatives would amount to **billions of dollars over time**. John Connolly (and others) was terminated from **CMS,** ostensibly, based on the results of false and fraudulent government records that were presented at a secret tribunal. John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes of these undisclosed and concealed adjudication processes.

211. **Defendant Program Support Center (PSC)** terminated John Connolly (and others)'s employment **license as part of an effort to protect illegal corruption initiatives** amounting to hundreds of millions of dollars on government contracts. This government fraud and abuse would amount to **billions of dollars over time**. John Connolly (and others) was terminated from **PSC,** ostensibly, based on the results of false and fraudulent government records that were presented at a secret tribunal. John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes of these undisclosed and concealed adjudication processes. The **PSC** trials involved undisclosed and concealed adjudication processes; determinations, actions and processes, etc. Evidence was obtained and evaluated, charges were made, testimony was obtained and/or reviewed, written and/or verbal, supplemental and "classified" guidelines were referenced, which were supported by "classified" legal opinions and/or advisories that have no basis in law. Appeals were made and/or were declined to be made, on behalf of John Connolly (and others) by the defendant entities involved, including; government agencies, public and private corporations, private companies and individuals. **All organizational entities and individuals** (except for John Connolly (and others) – who was not invited to, or notified about these activities), **were represented at varied points in the process by legal counsel.** The attorneys, "Officers of The Court", operated and functioned through government agencies Offices of General Counsel, and Inspector Generals offices, in conjunction and collusion with attorneys representing public and private corporations and private companies and individuals. Verdicts were reached and sentence were determined by defendant entities and individuals involved. These illegal, unconstitutional activities were deliberately conducted and concealed from John Connolly (and others) in order to circumvent John Connolly (and others)'s constitutional rights. Defendant **PSC** and associated government "business partners", to include public and private corporations and companies and individuals, worked in collusion and in violation of constitutional, civil rights laws, rules and regulations with federal authorities in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes.

212. **Plaintiff Asserts Constitutional and Civil Rights protections, which are reflected in agency regulations under this cause of action also fully apply to contractors.** Defendant agencies each have their own internal regulations, less publicized in the last six years that clearly stipulate same Due Process treatment, protocols and procedures also cover individuals under the same circumstances and fact patterns associated with John Connolly (and others). Those assertations being the case please reference and include for ruling all previous and subsequent paragraphs.

213. Not only were all the appurtenant facts surrounding the termination of John Connolly (and others) misrepresented, John Connolly (and others) was specifically informed by PBGC that he was not entitled to any appeal rights. This information was also conveyed to PBGC CFO and EEOC officer James Gerber, as well as representatives in the Office of PBGC's Inspector General.

214. Not only were all the appurtenant facts surrounding the termination of John Connolly (and others)'s employment/license with respect to DHHS misrepresented, John Connolly (and others) was specifically informed by representatives of public and private corporations that with respect to the PSC & CMS corruption initiatives and termination of his "employment/license" he was not permitted to have any "direct communication" with government employees and that he was not entitled to any appeal rights. Within one business day of being congratulated by senior HHS officials for "saving" twenty eight million dollars, his employment/license was terminated.

215. John Connolly (and others) was never provided any administrative remedies to challenge and/or correct, the false inaccurate, irrelevant records that pertained to John Connolly (and others), and also led to defendant

government and government contractors actions to terminate his "employment/license which, as a federal employee, contractor, volunteer, convicted felon, escaped convict or terrorist he was entitled to pursue.

216. John Connolly (and others) was never provided with any notice that would afford him any knowledge or any fair, reasonable or meaningful appreciation of the circumstances or facts of his situation that would have enabled him as a member of a bargaining unit, which was the case at PBGC that has a negotiated grievance procedure covering actions that may have been appealed to the Merit Systems Protection Board, including other appeal rights.

217. In September of 2006, John Connolly (and others) informed PBGC's Chief Financial Officer James Gerber, and PBGC Attorney Ruben G. Moreno that the fraudulent waste fraud and abuse conducted by PBGC representatives were in violation of the law. John Connolly (and others) further reported that the actions he took were "protected" activities and that the retaliatory actions that followed were in violation of the Whistleblower Protection Act. PBGC Attorney Ruben G. Moreno responded by stating that the Whistleblower Protection Act did not apply to the Pension Benefit Guarantee Corporation because PBGC was a corporation and not a government agency. This was a misrepresentation of the facts, entitlements and rights of due process and rights to appeal by two senior government officials who were in the best position to know.

218. John Connolly (and others) informed PBGC's Office Of Inspector General that the fraudulent waste fraud and abuse conducted PBGC representatives were in violation of the law. John Connolly (and others) further reported that the actions he took were "protected" activities and that the retaliatory actions that followed were in violation of the Whistleblower Protection Act. Representatives of the Inspector Generals office responded that as an alternative to going to the Office of Special Council, that PBGC had their own "Internal Whistleblower Act Program" This was a misrepresentation of the facts, entitlements and rights of due process and rights to appeal by two senior government officials who were in the best position to know.

219. John Connolly (and others)'s obtained and maintained gainful employment or "employment/licenses" relationships either directly as an employee with the government, as was the case with defendant PBGC, as an employee, contractor or subcontractor to defendant government contractors, and as an employee, contractor or **subcontractor to defendant public and/or private corporations, private companies and individuals, who had "hired" or provided other "employment license" to John Connolly (and others) for (NOT)non-government related work, for approximately fifteen years.**

220. The undisclosed and concealed adjudication processes were formed due to adverse investigatory information, and or adverse object algorithm relationships established to data provided by and through the defendants, including but not limited to; Federal Bureau of Investigation (FBI), Defense Security Services (DSS), and/or the Department of Homeland Security (DHS) and/or the Office Of Personnel Management (OPM), Federal Deposit Insurance Corporation (FDIC), Internal Revenue Service (IRS)and other agencies and sources, including all entities acting has their agents, under contract or otherwise, to the respective government agency's involved, including all entities acting has their agents, under contract or otherwise.

221. John Connolly (and others) was not permitted to have any knowledge of events, proceedings or actions and had no knowledge of events, proceedings or actions. When secret tribunal sentences dictated transfers to different contracts or projects John Connolly (and others) was not even aware an adverse action had taken place. When sentences of the undisclosed and concealed adjudication processes involved a direct and/or constructive termination, John Connolly (and others)'s lack of knowledge was the result of illegal fraudulent acts, misrepresentation of facts, falsification of documents, including falsification of government records and violation of numerous constitutional and civil rights, laws, rules, statutes and regulations, federal and state laws and included violations of criminal statutes. John Connolly (and others)'s **lack of knowledge and suspect is testimony and credit to government's secret and illegal initiatives in developing and maintaining sophisticated, elaborate and comprehensive supporting infrastructures of business processes and system architectures, with illegally appropriated government funds** designed to perpetuate, enforce and provide concealment of the deprivation and violations of John Connolly (and others)'s United States Constitutional and Civil rights to which he is fully entitled under the law.

222. The PBGC failed to accord John Connolly (and others) any due process and denied him any administrative rights that federal employees in the employ of the PBGC must be provided before their employment is terminated. This included, but was not limited to, the ability to receive notice, to challenge and to correct and/or amend adverse

investigatory records and findings. This also included but was not limited to the ability to challenge and appeal a termination based in whole or in part, on information and/or records referencing data and or actions that existed prior to employment.

223. Defendant government agencies and their associated business partners in public and private corporations and private companies failed to accord John Connolly (and others) any due process and denied him any administrative rights that individuals, in either government or private sector employment, as a federal employees in the employ of the PBGC, as an employee with the Oracle Corporation or any other entity, must be provided before their employment and/or their "employment/license", as defined by the U.S. Government is terminated, as the result of adverse information obtained from government agencies and their data brokers, according to numerous laws rules and regulations including the Fair Credit Reporting Act, The Privacy Act, FACT Act, and the United States Constitution. This included, but was not limited to, the ability to receive notice, to challenge and to correct and/or amend adverse investigatory records and findings. This also included but was not limited to the ability to challenge and appeal a termination based in whole or in part, on information and/or records referencing data from data brokers or adverse data from any source.

224. The OPM and other agencies actions and policies failed to accord John Connolly (and others) any due process and denied him any administrative rights that federal employees in the employ of any agency must be provided before their employment is terminated. This included, but was not limited to, the ability to receive notice, to challenge and to correct and/or amend adverse investigatory records and findings. This also included but was not limited to the ability to challenge and appeal a termination based in whole or in part, on information and/or records referencing data and or actions that existed prior to employment. OPM and other agencies actions and policies created a situation in which John Connolly (and others) lost gainful employment, "employment/license" contracts, as an employee, contractor or subcontractor with over as many as two hundred employers.

225. Undisclosed and concealed adjudication processes, supplementary guidelines, "classified" opinions of legal counsel, structuring and restructuring of legal entities, liability and accountable notwithstanding, the supporting actors calling the shots including but not limited to DOJ/FBI/OPM/OMB/DSS/DHS/IRS/FDIC/SSA and their "business partners", failed to accord John Connolly (and others) any due process and denied him any administrative rights that individuals, including federal employees in the employ of any agency must be provided before their employment is terminated. This included, but was not limited to, the ability to receive notice, to challenge and to correct and/or amend adverse investigatory records and findings. This also included but was not limited to the ability to challenge and appeal a termination based in whole or in part, on information and/or records referencing data and or actions that existed prior to employment.

226. With specific respect to PBGC, if John was to be considered to be a probationary employee with the facts presented he would have been entitled to the same rights afforded to employees with finalized appointments. Such rights include having: (1) An action taken against them **only for such cause as will promote the efficiency of the service; (2)** at least 30 days' advance written notice of the reasons for the proposed action; (3) a reasonable time but not less than 7 days, to **answer orally and in writing and to furnish affidavits or other documentary evidence; (4) the right to be represented by an attorney or other representative; (5) a written decision, and the specific reasons for the action, at the earliest practicable date; and (6) the right to appeal the action to the Merit Systems Protection Board (MSPB or the Board). Additionally, the Code of Federal Regulations and agency specific internal regulations provide clear and unequivocal protocols and procedures providing for due process in all circumstances, including for probationers and contractors undergoing investigations, who are to be "treated with same Due – Process procedurals rights". – Including but not limited to** 5 C.F.R. § 315.801(a), 5 C.F.R. § 315.801(b), 5 C.F.R. § 315.802(b), and 5 U.S.C. § 1221(e) (1)., for probs.

227. The defendant government agencies, defendant public and private corporations, private companies and individuals, to include all their agents and representatives, including contractors, acting on their own behalf, or under "color of law" and/or acting and serving with or in a federal "credentialed Public Trust Positions" failed to accord John Connolly (and others) any due process and denied him any administrative rights that federal employees, or individuals under contract to any agency must be provided before their "employment/license" regardless of category is terminated. This included, but was not limited to, the failure to provide notice, or the ability to challenge and to correct and/or amend adverse investigatory records and findings.

228. The defendant public and private corporations, private companies and individuals, to include all their agents and representatives, including contractors, acting on their own behalf, or under "Color of law" and/or acting and serving with or in a federal "credentialed Public Trust Positions" failed to accord John Connolly (and others) any due process and denied him any administrative rights he was entitled to from entities acting under "Color of law". Moreover, defendant public and private **corporations**, private companies and individuals, to include all their agents and representatives under public **contracts violated contract provisions that require them to remain in compliance with the laws, rules, regulations and statutes of the United States at federal, state and local levels.** The defendant public and private corporations, private companies and individuals, violated a number of laws and due process rights of John Connolly (and others), with respect to and including his constitutional and civil rights, and specific rights provided to him under the statutes of the Fair Credit Reporting Act, FACT Act, Privacy Act (that also apply to government contractors) and other federal and state rights laws. The defendant public and private corporations, private companies and individuals, to include all their agents and representatives, did willfully and with **reckless indifference sell the life and liberty of John Connolly (and others), to include his wife and children, down the river for a profit, never let him know about it, and never asked any questions.**

229. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

230. A federal Judge has additional authority and equitable powers over public and private corporations and companies through the use and exercise of the same federal acquisition regulations and contract clauses, government agencies, and their "willing" business partners in public corporations and private companies submit themselves and agree to on a regular basis.

**THIRD CAUSE OF ACTION**
**(APA/U.S. CONSTITUTION – DENIAL OF DUE PROCESS IN TERMINATION OF CONTRACTOR)**

231. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

232. **In summary** - One or more of the defendants will assert John Connolly (and others) was some sort of independent contractor or employee, or sub-contractor, or volunteer whose relationship with the government and/or public and private corporations or private company's, can be terminated at convenience or "at will", and he would not be entitled to any constitutional or statutory rights of due process or rights of appeal or review. One or more of the defendants further claim documentation is in their possession that supports their position but as of the date of filing of this complaint they have refused to reveal the information.

233. Individually, one or more of the defendant **government agencies assert John Connolly (and others) was an employee** of a type whose relationship or "employment/license" with the government can be terminated at its convenience, and that John Connolly (and others), is **not entitled to any constitutional or regulatory rights or due process rights of appeal or review.** One or more of the defendant agencies further claim documents are in their possession that supports their position but as of the date of the filing of this complaint they have refused to reveal the information.

234. Individually, one or more of the defendants that are **government agencies assert John Connolly (and others) was some sort of independent contractor** whose relationship or "employment/license" with the government can be terminated at its convenience, and that John Connolly (and others), is **not entitled to any constitutional or regulatory rights or due process rights of appeal or review.** One or more of the defendant agencies further claim documents are in their possession that supports their position but as of the date of the filing of this complaint they have refused to reveal the information.

235. Individually, one or more of the defendants that are **government contractors** (primary or sub-contractors) representing public and private corporations, private companies and individuals, **assert John Connolly (and others) was some sort of independent contractor** whose "employment/license" relationship can be terminated at its convenience, and that John Connolly (and others), is **not entitled to any constitutional or regulatory rights or due process rights of appeal or review.** One or more of the defendant government contractors (primary or sub-contractors) and other individuals, do further, have claim of government documents proscribing protocols and procedures on treatment of individuals they contend is the governments responsibility, they "are just following orders".

236. Individually, one or more of the defendants that are **government contractors** (primary or sub-contractors) representing public and private corporations, private companies and individuals, **assert John Connolly (and others) was an employee** of a type whose relationship or "employment/license" can be terminated at its convenience, and that John Connolly (and others), is **not entitled to any constitutional or regulatory rights or due process rights of appeal or review.** One or more of the defendant government contractors (primary or sub-contractors) and other individuals, do further, have claim of government documents proscribing protocols and procedures on treatment of individuals they contend is the governments responsibility, they "are just following orders".

237. Individually, one or more of the defendants that are **government Sub-contractors** or not primary contractors **assert John Connolly (and others) was an employee or contractor of a sub-contractor type** whose relationship or "employment/license" can be terminated at its convenience, and **assert that John Connolly (and others), as a sub-contractor would not be entitled to any constitutional or regulatory rights or due process rights of appeal or review.** One or more of the defendant **government Sub-contractors** do further, have claim of government documents proscribing protocols and procedures on treatment of individuals they contend is the governments responsibility, they "are just following orders".

238. **CMS** - On or about October 2, 2006, John Connolly (and others) entered into an "employment/license" relationship with the **Center for Medicated Services.** As a federal employee, contractor, sub-contractor, career appointee, political appointee, part-time contractor, contract to hire contractor, or even a volunteer, John Connolly (and others) was fully possessive of all constitutional, statutory and regulatory rights as any other individual, for which he is claiming a stated interest, deprivation of any right or benefit, incurrence of any damages and/or violation of any right, statute, regulation or law. The usual rights, privileges and benefits that are accorded all individuals include the rights, unimpeded, to seek, apply for, obtain and maintain gainful employment ("employment/license), regardless of IRS filing category as W2, 1099, LLC or LLP. An individual's rights, duly exercised, in seeking, obtaining and maintaining gainful employment, are not compromised or limited when an individual undergoes any type of investigation. Whether an individual undergoes an investigation for an "employment/license" or a capital crime, he is entitled to the full protections of the United States Constitution, and other laws, regulations and statutes of the United States and their political subdivisions.

239. Defendant agencies each have their own internal regulations that stipulated same Due Process treatment, protocols and procedures to cover individuals under the same circumstances and fact patterns associated with John Connolly (and others) as an employee or contractor.

240. The defendant public and private corporations, private companies and individuals, to include all their agents and representatives, including contractors, acting on their own behalf, or under "Color of law" and/or acting and serving with or in a federal "credentialed Public Trust Positions" failed to accord John Connolly (and others) any due process and denied him any administrative rights he was entitled to from entities acting under "Color of law" and in compliance with contract provisions which mandate same. Moreover, defendant public and private corporations, private companies and individuals, to include all their agents and representatives under public contracts violated contract provisions that require them to remain in compliance with the laws, rules, regulations and statutes of the United States at federal, state and local levels. The defendant public and private corporations, private companies and individuals, violated a number of laws and due process rights of John Connolly (and others), with respect to and including his constitutional rights, and other rights under the civil rights act, and rights specifically provided to him under the statutes of the Fair Credit Reporting Act, FACT Act, Privacy Act (that also apply to government contractors) and other federal and state rights laws. **The defendant public and private corporations, private companies and individuals, to include all their agents and representatives, did willfully and with reckless**

**indifference sell the life and liberty of John Connolly (and others), to include his wife and children, down the river for a profit, never let him know about it, and never asked any questions.**

241. On or about September 28, 2006, John Connolly (and others)'s relationship was formally terminated by the PBGC. At no time, despite multiple requests, including record request via the Freedom of Information Act and the Privacy Act has he ever been informed of the true reasons of termination. John Connolly (and others) has been deceived and lied to on numerous occasions about the reasons surrounding his termination. Misrepresentations and deceptions to John Connolly (and others), included deliberate falsification of government records

242. John Connolly (and others)'s obtained and maintained gainful employment or "employment/licenses" relationships either directly as an employee with the government, as was the case with defendant PBGC, as an employee, contractor or subcontractor to defendant government contractors, and as an employee, contractor or **subcontractor to defendant public and/or private corporations, private companies and individuals, who had "hired" or provided other "employment license" to John Connolly (and others) for (NOT)non-government related work, for approximately fifteen years.**

243. The undisclosed and concealed adjudication processes were formed due to adverse investigatory information, and or adverse object algorithm relationships established to data provided by and through the defendants, including but not limited to; Federal Bureau of Investigation (FBI), Defense Security Services (DSS), and/or the Department of Homeland Security (DHS) and/or the Office Of Personnel Management (OPM), Federal Deposit Insurance Corporation (FDIC), Internal Revenue Service (IRS)and other agencies and sources, including all entities acting has their agents, under contract or otherwise, to the respective government agency's involved, including all entities acting has their agents, under contract or otherwise.

244. Defendant government agencies and their associated business partners in public and private corporations and private companies failed to accord John Connolly (and others) any due process and denied him any administrative rights that individuals, in either government or private sector employment, as a federal employees in the employ of the PBGC, or as an employee with the Oracle Corporation or any other entity, must be provided before their employment and/or their "employment/license", as defined by the U.S. Government is terminated, as the result of adverse information obtained from government agencies and their data brokers, according to numerous laws rules and regulations including the Fair Credit Reporting Act, The Privacy Act, FACT Act, and the United States Constitution. This included, but was not limited to, the ability to receive notice, to challenge and to correct and/or amend adverse investigatory records and findings. This also included but was not limited to the ability to challenge and appeal a termination based in whole or in part, on information and/or records referencing data and or actions that existed prior to employment.

245. Defendant public and private corporations, private companies and individuals, acting under color of law, and on instructions from government agencies, failed to accord John Connolly (and others) any due process and denied him any administrative rights that to which he was entitled by law and which the corporate entity, representing the agency must provided John Connolly (and others) before employment is terminated. Compliance with the law, including provisions for penalties is also mandated in specific contracts which agencies and corporations agreed to. This included, but was not limited to, the ability to receive notice, to challenge and to correct and/or amend adverse investigatory records and findings. This also included but was not limited to the ability to challenge and appeal any action based on adverse information obtained from data brokers and or DOJ and/or any other government agency or party.

246. The defendant government agencies, defendant public and private corporations, private companies and individuals, to include all their agents and representatives, including contractors, acting on their own behalf, or under "color of law" and/or acting and serving with or in a federal "credentialed Public Trust Positions" failed to accord John Connolly (and others) any due process and denied him any administrative rights that federal employees in the employ or under contract to any agency must be provided before their "employment license" regardless of category is terminated. This included, but was not limited to, the failure to provide notice, or the ability to challenge and to correct and/or amend adverse investigatory records and findings. This also includes FBI CFR 50.12, 50.14 and similar regs.

247. Undisclosed and concealed adjudication processes, supplementary guidelines, "classified" opinions of legal counsel, structuring and restructuring of legal entities, liability and accountable notwithstanding, the supporting actors calling the shots including but not limited to DOJ/FBI/OPM/OMB/DSS/DHS/IRS/FDIC/SSA and their "business partners", failed to accord, and deliberately denied John Connolly (and others) any due process and denied him any administrative rights that individuals, including contractors, volunteers, convicted felons or terrorists, in the employ of any agency must be provided before their gainful employment, or government defined "employment/license" is terminated. This included, but was not limited to, the ability to receive notice, to challenge and to correct and/or amend adverse investigatory records and findings.

248. The defendant government agencies, defendant public and private corporations, private companies and individuals, to include all their agents and representatives, including contractors, acting on their own behalf, or under "color of law" and/or acting and serving with or in a federal "credentialed Public Trust Positions" failed to accord John Connolly (and others) any due process and denied him any administrative rights that federal employees, or individuals under contract to any agency must be provided before their "employment/license" regardless of category is terminated. This included, but was not limited to, the failure to provide notice, or the ability to challenge and to correct and/or amend adverse investigatory records and findings.

249. The defendant public and private corporations, private companies and individuals, to include all their agents and representatives, including contractors, acting on their own behalf, or under "Color of law" and/or acting and serving with or in a federal "credentialed Public Trust Positions" failed to accord John Connolly (and others) any due process and denied him any administrative rights he was entitled to from entities acting under "Color of law". Moreover, **defendant public and private corporations, private companies and individuals, to include all their agents and representatives under public contracts violated contract provisions that require them to remain in compliance with the laws, rules, regulations and statutes of the United States at federal, state and local levels.** The defendant public and private corporations, private companies and individuals, violated a number of laws and due process rights of John Connolly (and others), with respect to and including his constitutional and civil rights, and specific rights provided to him under the statutes of the Fair Credit Reporting Act, FACT Act, Privacy Act (that also apply to government contractors) and other federal and state rights laws. **The defendant public and private corporations, private companies and individuals, to include all their agents and representatives, did willfully and with reckless indifference sell the life and liberty of John Connolly (and others), to include his wife and children, down the river for a profit, never let him know about it, and never asked any questions.**

250. The defendants are not permitted, notwithstanding any contractual language to the contrary, to violate John Connolly (and others) Constitutional, statutory or regulatory rights.

**Final Agency Action**

251. One or more of the defendants inappropriately terminated John Connolly (and others) gainful employment relationship in violation of a number of government regulations, and John Connolly (and others)'s U.S. Constitutional rights to which he was fully entitled, in addition to other rights. Defendants violated federal and state constitutional laws, rules and regulations pertaining to civil rights protections of John Connolly (and others), including the state constitutions and laws of New York, Virginia and Maryland. **Deprivation of John Connolly (and others)'s civil right protections was achieved with deliberate violation of laws, including violations of criminal statutes. Terminations of contracts from government agencies constituted a final agency decision.** Government agencies do not possess absolute discretion in terminating contractors in violation of constitutional, civil rights, laws, rules and regulations to include willful and deliberate violations of criminal statutes, in bad faith, or without either good cause or an opportunity for a hearing. Public and private corporations, private companies, and individuals acting as agents for the government, or on their own behalf, serving in Public Trust Positions, "under color of law" are accountable to the same legal standards of conduct. Public and private corporations, and private companies and individuals, represented by legal counsel, in conjunction with government attorneys functioning from the Offices of General Counsel, and the Offices of Inspector Generals, have no absolution, right, privilege or foundation in law to be relying on these attorney generated immunities from complying with civil and criminal statutes.

252. Defendants actions were unwarranted by the facts, unsupported by any evidence, in violation of internal regulations and federal statutes, contrary to constitutional right, power, privilege, or immunity, and excess of

statutory jurisdiction, authority and limitations, or short of statutory right thereby causing John Connolly (and others) to suffer legal wrongs under the Administrative Procedures Act.

253. Upon information and belief, **Jayprakash Parikh, Ellis Tash, Ted Winters, Walt Luiza, CFO James Gerber,** PBGC attorney, Ruben G. Moreno **and others took** steps based on their own personal reasons, in conspiracy with other defendants and other individuals to unlawfully and/or unethically ensure John Connolly (and others) relationship with the PBGC was terminated. The illegal actions included, but were not limited to, the dissemination of false information concerning John Connolly (and others), and falsification of official government records pertaining to John Connolly (and others).

254. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

## FOURTH CAUSE OF ACTION
## (APA – FAILURE TO FOLLOW REGULATIONS OR STATUTES)

255. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

256. On or about October 20, 2005, John Connolly (and others) entered into an employment relationship with the Pension Benefit Guaranty Corporation (PBGC), as an employee fully possessive of all constitutional, statutory and regulatory rights as any other PBGC federal employee (full time, part time, career appointment, political appointment, term appointment, probationary employee or non-probationary employee, contractor or even volunteer), for which he is claiming a stated interest, deprivation of right or benefit, incurrence of any damages and/or violation of any right, statute, regulation or law. This would include, among other things, the usual rights, privileges and benefits that are accorded all individuals including but not limited to those who undergo investigations and are entitled to the full protections of the United States Constitution, and other laws, regulations and statutes of the United States and their political subdivisions.

257. One or more of the defendants will assert John Connolly (and others) was some sort of independent contractor or employee, or sub-contractor, or volunteer whose relationship with the government and/or public and private corporations or private company's, can be terminated at convenience or "at will", and he would not be entitled to any constitutional or statutory rights of due process or rights of appeal or review. One or more of the defendants further claim documentation is in their possession that supports their position but as of the date of filing of this complaint they have refused to reveal the information.

258. The termination of John Connolly (and others)'s liberty interests and protected constitutional rights as reflected in fifteen to twenty years of terminations/denials/revocations of "employment/license", was the direct result of policy and/or efforts to protect lucrative corruption initiatives, by government agencies, and their "business partners" in public and private corporations and private companies. In many instances the actions represent illegal retaliation, and violations of constitutional and civil rights statutes including the whistle blowing Act and the Civil Rights Act. In all instances there are deliberate efforts to obstruct justice, in the concealment of these illegal activities and processes.

259. Not only were all the appurtenant facts surrounding the termination of John Connolly (and others) misrepresented, John Connolly (and others) was specifically informed by PBGC that he was not entitled to any appeal rights. This information was also conveyed to PBGC CFO and EEOC officer James Gerber, as well as representatives in the Office of PBGC's Inspector General.

260. Not only were all the appurtenant facts surrounding the termination of John Connolly (and others)'s employment/license with respect to DHHS misrepresented, John Connolly (and others) was specifically informed by

representatives of public and private corporations that with respect to the PSC & CMS corruption initiatives and termination of his "employment/license" he was not permitted to have any "direct communication" with government employees and that he was not entitled to any appeal rights. Within one business day of being congratulated by senior HHS officials for "saving" twenty eight million dollars, his employment/license was terminated.

261. John Connolly (and others) was never provided any administrative remedies to challenge and/or correct, the false inaccurate, irrelevant records that pertained to John Connolly (and others), and also led to defendant government and government contractors actions to terminate his "employment/license which, as a federal employee, contractor, volunteer, convicted felon, escaped convict or terrorist he was entitled to pursue.

262. Varied gainful employment organizations, positions, and "employment/licenses" as an employee, contractor, volunteer, bagger bond or hanger on and the approximate termination dates and specific details in which John Connolly (and others) lost "employment/license" and/or received termination, denial/revocation/withdrawal of employment/license applications are included in claims against defendants in summaries previously presented. To avoid replication please reference, include all previous paragraphs and plaintiff claims which are being re-alleged, particularly Facts Section.

263. Defendant agencies each have their own internal regulations that stipulated same Due Process treatment, protocols and procedures to cover individuals under the same circumstances and fact patterns associated with John Connolly (and others).

264. PBGC - On or about September 28, 2006, John Connolly (and others)'s relationship was formally **terminated by the PBGC**. At no time, despite multiple requests, including record request via the Freedom of Information Act, Privacy Act and the Fair Credit Reporting Act, has he ever been informed of, or provided with any notice referencing accurate records, his rights or the true reasons of his termination. Quite the opposite actually happened. John Connolly (and others) was deprived of number of very serious due process rights. The deprivation of John Connolly (and others)'s constitutional and civil rights was in violation of laws, rules and regulations, and included violations of criminal statutes. John Connolly (and others) has been deceived and lied to on numerous occasions about the circumstances surrounding termination. Misrepresentations and deceptions to John Connolly (and others) have included deliberate falsification of government records, in violation of agency regulations and criminal statutes.

265. John Connolly (and others)'s "employment/license" termination from the **PBGC** was a direct result of efforts to protect corruption initiatives that amounted to between seven and ten million dollars and represented illegal retaliation, under numerous laws including the Whistle Blowing Act, the Civil Rights Act and other statutes.

266. Regardless of whether John Connolly (and others) was a staff employee or some sort of contractor his termination from "gainful employment" in government contracts and/or termination of government defined "employment/licenses" from public and private corporations in undisclosed and concealed adjudication processes over a fifteen to twenty year period, violated regulations, laws and statutes.

267. Regardless of whether John Connolly (and others) was a staff employee or some sort of contractor, the failure of the PBGC to reimburse him approximately $17,600.00 in overtime and vacation time pay for which he was not properly compensated and that he put forth and earned income under specific instructions of the PBGC and for which proper documentation and timesheets were submitted, violated PBGC regulations and/or statutes.

268. Regardless of whether John Connolly (and others) was a staff employee or some sort of contractor the Northrop Grumman/ Deloitte/ abandonment of him at his domestic post, where he had been required to live by the in order to receive a specific assignment, which forced him to incur significant expenses that exceeded 42,000 and violated government regulations and or statutes.

269. Government agencies their officers and employees, and their representatives in public and private corporations and private companies committed and undertook actions in deliberate violation of internal agency regulations, acquisition regulations and federal statutes, and constitutional law, with the intent and purpose to cause John Connolly (and others) grievous harm an injury, and suffer legal wrongs under the Administrative Procedures Act.

270. The PBGC, its officers and employees, to include but not limited to Jayprakash Parikh, Ellis Tash, Walt Luiza, Ted Winters, CFO James Gerber, PBGC attorney, Ruben G. Moreno, and other defendants took steps based on their own personal reasons to unlawfully and/or unethically ensure John Connolly (and others)'s relationship with the PBGC was terminated. The illegal actions included, but were not limited to, the dissemination of false information concerning John Connolly (and others), and falsification of official government records pertaining to John Connolly (and others). They committed and undertook actions in violation of internal regulations and federal statutes thereby causing John Connolly (and others) to suffer legal wrongs under the Administrative Procedures Act.

271. The OPM failed to accord John Connolly (and others) any due process and denied him any administrative rights that federal employees in the employ of any agency must be provided before their employment is terminated. This included, but was not limited to, the ability to receive notice, to challenge and to correct and/or amend adverse investigatory records and findings. This also included but was not limited to the ability to challenge and appeal a termination based in whole or in part, on information and/or records referencing data and or actions that existed prior to employment.

272. The defendant government agencies, defendant public and private corporations, private companies and individuals, to include all their agents and representatives, including contractors, acting on their own behalf, or under "color of law" and/or acting and serving with or in a federal "credentialed Public Trust Positions" failed to accord John Connolly (and others) any due process and denied him any administrative rights that federal employees, or individuals under contract to any agency must be provided before their "employment/license" regardless of category is terminated. This included, but was not limited to, the failure to provide notice, or the ability to challenge and to correct and/or amend adverse investigatory records and findings.

273. The defendant public and private corporations, private companies and individuals, to include all their agents and representatives, including contractors, acting on their own behalf, or under "Color of law" and/or acting and serving with or in a federal "credentialed Public Trust Positions" failed to accord John Connolly (and others) any due process and denied him any administrative rights he was entitled to from entities acting under "Color of law". Moreover, defendant public and private **corporations**, private companies and individuals, to include all their agents and representatives under public **contracts violated contract provisions that require them to remain in compliance with the laws, rules, regulations and statutes of the United States at federal, state and local levels.** The defendant public and private corporations, private companies and individuals, violated a number of laws and due process rights of John Connolly (and others), with respect to and including his constitutional and civil rights, and specific rights provided to him under the statutes of the Fair Credit Reporting Act, FACT Act, Privacy Act (that also apply to government contractors) and other federal and state rights laws. The defendant public and private corporations, private companies and individuals, to include all their agents and representatives, did willfully and with **reckless indifference sell the life and liberty of John Connolly (and others), to include his wife and children, down the river for a profit, never let him know about it, and never asked any questions.**

274. Undisclosed and concealed adjudication processes, supplementary guidelines, "classified" opinions of legal counsel, structuring and restructuring of legal entities, liability and accountable notwithstanding, the supporting actors calling the shots including but not limited to DOJ/FBI/OPM/OMB/DSS/DHS/IRS/FDIC/SSA and their "business partners", failed to accord, and deliberately denied John Connolly (and others) any due process and denied him any administrative rights that individuals, including contractors, volunteers, convicted felons or terrorists, in the employ of any agency must be provided before their gainful employment, or government defined "employment/license" is terminated. This included, but was not limited to, the ability to receive notice, to challenge and to correct and/or amend adverse investigatory records and findings.

275. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**FIFTH CAUSE OF ACTION**
**(EMERGENCY – LIBERTY & NAME CLEARING HEARING)**

276. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

277. **PBGC** - On or about October 20, 2005, John Connolly (and others) entered into an employment relationship with the Pension Benefit Guaranty Corporation (PBGC), as an employee fully possessive of all constitutional, statutory and regulatory rights as any other PBGC federal employee (full time, part time, career appointment, political appointment, term appointment, probationary employee or non-probationary employee, contractor, applicant or even volunteer), for which he is claiming a stated interest, deprivation of right or benefit, incurrence of any damages and/or violation of any right, statute, regulation or law. This would include, among other things, the usual rights, privileges and benefits that are accorded all individuals including but not limited to those who undergo investigations and are entitled to the full protections of the United States Constitution, and other laws, regulations and statutes of the United States and their political subdivisions.

278. **CMS** - On or about October 2, 2006, John Connolly (and others) entered into an "employment/license" relationship with the **Center for Medicated Services.** As a federal employee, contractor, sub-contractor, career appointee, political appointee, part-time contractor, contract to hire contractor, or even a volunteer, John Connolly (and others) was fully possessive of all constitutional, statutory and regulatory rights as any other individual, for which he is claiming a stated interest, deprivation of any right or benefit, incurrence of any damages and/or violation of any right, statute, regulation or law. The usual rights, privileges and benefits that are accorded all individuals include the rights, unimpeded, to seek, apply for, obtain and maintain gainful employment ("employment/license), regardless of IRS filing category as W2, 1099, LLC or LLP. An individual's rights, duly exercised, in seeking, obtaining and maintaining gainful employment, are not compromised or limited when an individual undergoes any type of investigation. Whether an individual undergoes an investigation for an "employment/license" or a capital crime, he is entitled to the full protections of the United States Constitution, and other laws, regulations and statutes of the United States and their political subdivisions.

279. One or more of the defendants will assert John Connolly (and others) was some sort of independent contractor or employee, or sub-contractor, or volunteer whose relationship with the government and/or public and private corporations or private company's, can be terminated at convenience or "at will", and he would not be entitled to any constitutional or statutory rights of due process or rights of appeal or review. One or more of the defendants further claim documentation is in their possession that supports their position but as of the date of filing of this complaint they have refused to reveal the information.

280. PBGC - On or about September 28, 2006, John Connolly (and others)'s relationship was formally terminated by the PBGC. At no time, despite multiple requests, including record request via the Freedom of Information Act, Privacy Act and the Fair Credit Reporting Act, has he ever been informed of, or provided with any notice referencing accurate records, his rights or the true reasons of his termination. Quite the opposite actually happened. John Connolly (and others) was deprived of number of very serious due process rights. The deprivation of John Connolly (and others)'s constitutional and civil rights was in violation of laws, rules and regulations, and included violations of criminal statutes. John Connolly (and others) has been deceived and lied to on numerous occasions about the circumstances surrounding termination. Misrepresentations and deceptions to John Connolly (and others) have included deliberate falsification of government records, in violation of agency regulations and criminal statutes.

281. On or about **September 28**, 2006 John Connolly (and others) "employment/license" was formally **terminated** by the **PBGC.** At no time, despite multiple requests, has he ever been told the true reason(s) for the termination of "employment/license". At every opportunity government agencies and their representatives in public and private corporations have lied, perjured themselves, and falsified records in efforts to protect illegal corruption initiatives and violations of John Connolly (and others)'s constitutional due process and civil rights.

282. PBGC - During the course of his relationship with the PBGC, John Connolly (and others) earned approximately $17,600.00 in overtime and vacation time pay for which he was not properly compensated. The time was put forth and income earned under specific instructions of the PBGC and proper documentation and timesheets were submitted.

283. On one or more occasions since his termination the PBGC, and one or more of the individual defendants, has **intentionally interfered** with John Connolly (and others)'s efforts to obtain employment in his chosen field of profession with government contractors, particularly by **impeding the transfer of his security clearance** or by implying derogatory information existed that would preclude the granting of a security clearance.

284. On numerous and documented occasions after terminations of his "employment/licenses" individuals representing government agencies, public and private corporations and private companies have **intentionally interfered** with John Connolly (and others)'s efforts to obtain employment in his chosen field of profession with government contractors, and indeed in any chosen field, particularly by **impeding the transfer of his security clearance** or by implying derogatory information existed that would preclude the granting of a security clearance.

285. John Connolly (and others)'s obtained and maintained gainful employment or "employment/licenses" relationships either directly as an employee with the government, as was the case with defendant PBGC, as an employee, contractor or subcontractor to defendant government contractors, and as an employee, contractor or **subcontractor to defendant public and/or private corporations, private companies and individuals, who had "hired" or provided other "employment license" to John Connolly (and others) for non-government (i.e. NOT-Government) related work, for a period approximating fifteen years to twenty years.**

286. Regardless of John Connolly (and others)'s "employment/license" type, as employee, contractor or subcontractor or IRS filing status as a W2 employee, 1099, LLC, or Corp, he was gainfully employed, by either defendant government agencies and/or **defendant public and private corporations and companies, who over a period of approximately fifteen years repeatedly terminated his "employment license" as part of secret sentences that were the outcome of undisclosed and concealed adjudication processes.**

287. The defendant public and private corporations and companies and individuals worked in collusion and in violation of constitutional, civil rights laws, rules and regulations with federal authorities in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes.

288. The undisclosed and concealed adjudication processes were formed due to adverse investigatory information, and or adverse object algorithm relationships established to data provided by and through the defendants, including but not limited to; Federal Bureau of Investigation (FBI), Defense Security Services (DSS), and/or the Department of Homeland Security (DHS) and/or the Office Of Personnel Management (OPM), Federal Deposit Insurance Corporation (FDIC), Internal Revenue Service (IRS)and other agencies and sources, including all entities acting has their agents, under contract or otherwise, to the respective government agency's involved, including all entities acting has their agents, under contract or otherwise.

289. The PBGC failed to accord John Connolly (and others) any due process and denied him any administrative rights that federal employees in the employ of the PBGC must be provided before their employment is terminated. This included, but was not limited to, the ability to receive notice, to challenge and to correct and/or amend adverse investigatory records and findings. This also included but was not limited to the ability to challenge and appeal a termination based in whole or in part, on information and/or records referencing data and or actions that existed prior to employment.

290. The OPM and other agencies actions and policies failed to accord John Connolly (and others) any due process and denied him any administrative rights that federal employees in the employ of any agency must be provided before their employment is terminated. This included, but was not limited to, the ability to receive notice, to challenge and to correct and/or amend adverse investigatory records and findings. This also included but was not limited to the ability to challenge and appeal a termination based in whole or in part, on information and/or records referencing data and or actions that existed prior to employment. OPM and other agencies actions and policies created a situation in which John Connolly (and others) lost gainful employment, "employment/license" contracts, as an employee, contractor or subcontractor with over as many as two hundred employers.

291. Up to the date of the filing of this case and continuing, John Connolly (and others) has made numerous efforts to discover, investigate and remedy - administratively address and resolve these issues. In attempting to do so he has incurred **more than $635,000** in expenses that he otherwise would not be responsible for had the

FBI/PBGC/OPM/DOJ/DSS/IRS/FDIC/DHS and other government agencies, to include public and private corporations and private companies acting on their own and under color of law in support of government interests, acted lawfully. The aforementioned defendants and bad actors, acted deliberately in egregiously in interfering with John Connolly (and others)'s efforts to find or maintain gainful employment. At no time, despite more than seven hundred of requests, including record request via the Freedom of Information Act, Privacy Act and the Fair Credit Reporting Act, and FACT act has a complete accounting and disclosure of records, to any minimally acceptable standard ever been made. John Connolly (and others) has been deceived and lied to on numerous occasions about the reasons surrounding termination of his "employment/licenses for a period approximating 15 to twenty years. Misrepresentations and deceptions to John Connolly (and others) included deliberate falsification of government records, in violation of agency regulations and criminal statutes.

292. One or more of the government contractors attempted to have government agencies and their supporting administrative agencies **DSS, OPM, FBI, DOJ, FDIC, IRS** transfer or renew John Connolly (and others) security clearance. Upon evidence, information and belief, the agencies continued the dissemination of false and defamatory information concerning John Connolly (and others) to the government contractors and additional federal agency, **for the purpose of causing the employer to terminate John Connolly (and others) from his employment contract and/or his** "employment/license" (contract to hire, W2, LLC, 1099, etc) and his ability to seek and/or maintain other employment. As a result of the defendants' actions, John Do has suffered harm, both financially and with respect to his health.

293. Although John Connolly (and others) was **informed by PBGC and OPM officials, and other government agencies and their "business partners" to include agents, representatives and contractors acting on their behalf,** that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to repeatedly terminate John Connolly (and others)'s, "employment/license", while he was gainfully employed, regardless of type of employment, as a direct employee or contractor of prime contractor or sub contractors. False and adverse information also directly resulted in immediate termination and withdrawal of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, or employee of prime and subcontractors.

294. Although John Connolly (and others) was **informed, repeatedly by Department of Health and Human Services (DHHS) officials, to include agents, representatives and contractors acting on their behalf,** that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to terminate John Connolly (and others)'s, employment/license, regardless of type of employment, as employee or contractor of prime contractor or sub contractors, while he was gainfully employed, "on the job". False and adverse information also directly resulted in the withdrawal and termination of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, and employee of prime and subcontractors.

295. Although John Connolly (and others) was **informed, repeatedly by Department of Transportation (DOT) officials, to include agents, representatives and contractors acting on their behalf,** that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to terminate John Connolly (and others)'s, employment/license, regardless of type of employment; as employee or contractor of prime contractor or sub contractors. False and adverse information also directly resulted in the withdrawal and termination of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, and employee of prime and subcontractors.

296. Although John Connolly (and others) was **informed, repeatedly by numerous defendant government officials, to include defendant agents, representatives and contractors acting on their behalf,** that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to terminate John Connolly (and others), employment/license, regardless of type of employment; as employee or contractor of prime contractor or sub contractors. False and adverse information also directly resulted in the withdrawal and termination of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, and employee of prime and subcontractors.

297. Although John Connolly (and others) was **informed, repeatedly by numerous defendant public and private corporations, private companies and individuals, to include defendant agents, representatives and**

**contractors acting on their behalf, that no security clearance issues, or credit issues existed, or were in their possession, or were reported on and/or were investigated, that would cause a problem,** the government agencies, their contractors were told differently thereby causing them to terminate John Connolly (and others)'s "employment/license", regardless of type of employment; as employee or contractor of prime contractor or sub contractors. False and adverse information also directly resulted in the withdrawal and termination of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, and employee of prime and subcontractors.

298. **The effect of the Defendants actions was to illegally and purposefully stigmatize and seriously harm and injure John Connolly (and others) for life. The defendant's actions, as a practical matter, serve to deny/revoke his security clearance or employment/license ability (possibly for life) without affording him any administrative rights as required by law to challenge such a decision. Their illegal actions were carefully planned and carried out by career senior executive service personal and their subordinating staffs. The results of the horrific damages they caused were foreseeable and entirely predictable, and all but one percent certain.**

299. **The core bad actors and/or ring masters that are responsible for producing, maintaining, effectuating, executing and acting as "Sentential" for these illegal activities and initiatives in government agencies, public and private corporations and private companies are attorneys functioning in roles from the office of General Counsels and Inspector Generals. These attorneys, particularly government (Public) attorneys rely on perceived immunities from having to comply with the law. These attorneys including General Counsels at agencies and public and private corporations have usurped their roles and responsibility and are using their privileged positions and protections i.e., "client confidentiality", "client work product" and congressionally mandated roles in overseeing civil rights protections to predicate and further illegal corruption initiatives and processes. The attorneys are expanding their influence outside of their traditional domains with the expanded use and promulgations of classified government agency, guidance, advisories, and legal opinions that not only have absolutely no foundation in law, they are clearly illegal and violate the most serious of felony criminal statutes. These illegal activities are deliberately and adversely impacting John Connolly (and others), with intent to cause grievous harm.**

300. The defendants participation in **the creation, maintenance and production of secret systems in conjunction with the denial of due process** and the elaborate policies, protocols, procedures and activities of concealment created "secret virtual" "rap sheets" of "passed over opportunities" that included but were not limited to opportunities John Connolly (and others) never knew he had, never knew he had lost, and execution of adverse actions John Connolly (and others) was unaware of, and in which he was never provided due process, and never knew took place. **In each and every circumstance, the illegal assaults, torts, injuries and damages incurred, were entirely predictable, foreseeable and constitute reckless and depraved indifference. Who would want to employ or even interview, an individual who was "passed-over", for several opportunities, in Undisclosed and concealed adjudication processes?**

301. **Each and every time there was an investigation, background check, Undisclosed and concealed adjudication processes, there was a an adverse and negative "status change", imparted into the records of John Connolly (and others)'s "virtual rap sheet",** that also included numerous and varied, "pass-over's" he was also unaware of. Government agencies and their associated defendants, excluding recent regulations, **were required by law to establish (among other failed requirements) finding as the result of the commencement of a suitability determination, action, investigation and/or background check.** With the exception of some identifying information on John Connolly (and others)'s , **each and every single record entry that was made and entries required by law that were failed to be made or recorded (in the thousands) were clear deliberate, premeditated acts of falsification** of records and **falsification of government records**. These fraudulent and illegal acts are in violation of numerous federal, state and local laws, and criminal statutes including Sarbanes-Oxley, Privacy Act, Fair Credit Reporting Act, FACT, Civil Rights Act, Torts Act, and department and agency rules and regulations. The aforementioned statutes provide for the application of serious penalties.

302. The Defendants are not permitted, notwithstanding any contractual language to the contrary, to violate John Connolly (and others)'s Constitutional rights, as set forth by the Constitution of the United States.

303. The Defendants are not permitted, notwithstanding any contractual language to the contrary, to violate John Connolly (and others)'s Constitutional rights and other rights as provided by federal, state, and local laws, regulations and statutes.

304. One or more of the defendants violated one or more of John Connolly (and others)'s rights to which he was entitled and/or which the defendants were obligated, by law, statute, contract and/or regulation to comply with, including, but not limited to violations Privacy Act, Fair Credit Reporting Act, FACT Act, Sarbanes- Oxley Act, Civil Rights Act, Fair Labor Standards Act, and other laws and departmental regulations which resulted in unspeakable injury and harm to John Connolly (and others) and his family.

305. The **PBGC/OPM/FBI/DSS and other agencies and their contractors,** officers and employees, to include but not limited to Jayprakash Parikh, Ellis Tash, Walt Luiza, Ted Winters, CFO James Gerber and others took steps based on their own personal reasons to unlawfully and/or unethically ensure John Connolly (and others)'s relationship with the PBGC and other agencies and public and private corporations was terminated. They committed and undertook actions in violation of internal regulations and federal statutes thereby causing John Connolly (and others) to suffer legal wrongs. This included through, but was not limited to, the dissemination of false and defamatory impressions about John Connolly (and others), throughout certain divisions of the PBGC and other agencies and public and private corporations that effectively stigmatized him, and prevented him from obtaining other positions in the respective organizations and other gainful employment. Agency agents and representatives including individuals in public and private corporations acted both on their own behalf and governments behalf under color of law.

306. The **DHHS**, its officers and employees, to include but not limited to Kerry Weems, , John Gentel , Daniel Morin, Barbara King, and others and their agents and representatives took steps based on their own personal reasons to unlawfully and/or unethically ensure John Connolly (and others)'s relationship with the DHHS was terminated. They committed and undertook actions in violation of internal regulations and federal statutes thereby causing John Connolly (and others) to suffer legal wrongs. This included through, but was not limited to, the dissemination of false and defamatory impressions about John Connolly (and others), throughout certain divisions of the DHHS and other public and private corporations that effectively stigmatized him, and prevented him from obtaining other positions in the respective organization, and other gainful employment. Agency agents and representatives including individuals in public and private corporations acted both on their own behalf and governments behalf under color of law.

307. The **Unisys Corporation**, its officers and employees, and agents and representatives took steps based on their own personal reasons to unlawfully and/or unethically ensure John Connolly (and others)'s relationship with the Unisys Corporation was terminated. They committed and undertook actions in violation of internal rules and regulations and federal statutes thereby causing John Connolly (and others) to suffer legal wrongs. This included through, but was not limited to, the dissemination of false and defamatory impressions about John Connolly (and others), throughout certain divisions of the Unisys Corporation that effectively stigmatized him, and prevented him from obtaining other positions in the organization. Agents and representatives of the Unisys Corporation acted both on their own behalf and under color of law.

308. The **Oracle Corporation**, its officers and employees, and agents and representatives, took steps based on their own personal reasons to unlawfully and/or unethically ensure John Connolly (and others)'s relationship with the Oracle Corporation was terminated. They committed and undertook actions in violation of internal rules and regulations and federal statutes thereby causing John Connolly (and others) to suffer legal wrongs. This included through, but was not limited to, the dissemination of false and defamatory impressions about John Connolly (and others), throughout certain divisions of the Oracle Corporation that effectively stigmatized him, and prevented him from obtaining other positions in the organization. Agents and representatives of the Oracle Corporation acted both on their own behalf and under color of law.

309. The **IBM Corporation** & PWC and its officers and employees, and agents and representatives, took steps based on their own personal reasons to unlawfully and/or unethically ensure John Connolly (and others)'s relationship with the IBM/PWC Corporation was terminated. They committed and undertook actions in violation of internal rules and regulations and federal statutes thereby causing John Connolly (and others) to suffer legal wrongs. This included through, but was not limited to, the dissemination of false and defamatory impressions about John Connolly (and others), throughout certain divisions of the IBM Corporation that effectively stigmatized him, and

prevented him from obtaining other positions in the organization. Agents and representatives of the IBM & PWCCorporation acted both on their own behalf and under color of law.

310. One or more of the defendants, their officers and employees, and agents and representatives, took steps based on their own personal reasons to unlawfully and/or unethically ensure John Connolly (and others)'s employment/license relationship regardless of type, was terminated in secret and with out due process. They committed and undertook actions in violation of rules, regulations and federal statutes thereby causing John Connolly (and others) to suffer legal wrongs. This included through, but was not limited to, the dissemination of false and defamatory impressions and records, that were inaccurate, untimely, irrelevant, illegal to obtain and/or maintain, and to which John Connolly (and others) was not provided due process, or ability to correct records, for a period approximating fifteen to twenty years, that effectively stigmatized him, and prevented him from obtaining and/or maintaining contracts, and/or gainful employment. **John Connolly (and others) and his family were denied their liberty by "government interests for hire", to include government agencies, public and private corporations and private companies and individuals acting under "color of law". These defendants sold John Connolly (and others) and his family's lives and liberty interests, down the river, for financial and other gain, said nothing, never asked any questions and never informed him.**

311. The PBGC, through the actions of its officials and employees including Jayprakash Parikh, Ellis Tash, Walt Luiza, Ted Winters, CFO James Gerber and others conspired to seriously damage or destroy John Connolly (and others)'s good name which led to his termination.

312. Plaintiff asserts OPM/FBI/DOJ/IRS/FDIC/DHS/DSS and other "supporting" agencies are actually "driving" stakeholder agencies with respect to these illegal policies and procedures and through the deliberate and illegal actions of their officials and employees, conspired to seriously damage and/or destroy John Connolly (and others)'s and his ability to obtain or maintain gainful employment and exercise his liberty interest to which he was fully entitled under the United States Constitution and other laws of the United States.

313. The **Oracle Corporation**, through the actions of its officials and employees conspired to seriously damage and/or destroy John Connolly (and others)'s and his ability to obtain or maintain gainful employment and exercise his liberty interest to which he was fully entitled under the United States Constitution and other laws of the United States.

314. The **Unisys Corporation**, through the actions of its officials and employees including John O'Neal, Tim Bethy, Conrad Mosses, conspired to seriously damage and/or destroy John Connolly (and others)'s and his ability to obtain or maintain gainful employment and exercise his liberty interest to which he was fully entitled under the United States Constitution and other laws of the United States.

315. The **Department of Health and Human Services**, through the actions of its officials and employees including Kerry Weems, John Gentile, Daniel Moron, Barbara King and others, conspired to seriously damage and/or destroy John Connolly (and others)'s and his ability to obtain or maintain gainful employment and exercise his liberty interest to which he was fully entitled under the United States Constitution and other laws of the United States.

316. One or more of the defendants, through the actions of their officials and employees, through numerous illegal actions, in deliberate and willful violation of the laws of the United States, and the United States Constitution, and other laws regulations, and statutes, conspired to seriously damage or destroy John Connolly (and others)'s ability to seek, obtain or maintain gainful employment and/or exercise any liberty interest which led to numerous terminations of contracts and/or employment/licenses as an employee, contractor or subcontractor over a period approximating fifteen to twenty years. **John Connolly (and others) and his family were denied their "liberty interest" by "government interests for hire", to include government agencies, public and private corporations and private companies and individuals acting under "color of law", and serving in credentialed "Public Trust Positions".**

317. PBGC - On or about September 28, 2006, John Connolly (and others)'s relationship was formally terminated by the PBGC. At no time, despite multiple requests, including record request via the Freedom of Information Act, Privacy Act and the Fair Credit Reporting Act, has he ever been informed of, or provided with any notice referencing accurate records, his rights or the true reasons of his termination. Quite the opposite actually happened. John

Connolly (and others) was deprived of number of very serious due process rights. The deprivation of John Connolly (and others)'s constitutional and civil rights was in violation of laws, rules and regulations, and included violations of criminal statutes. John Connolly (and others) has been deceived and lied to on numerous occasions about the circumstances surrounding termination. Misrepresentations and deceptions to John Connolly (and others) have included deliberate falsification of government records, in violation of agency regulations and criminal statutes.

318. One or more of the defendants will assert John Connolly (and others) was some sort of independent contractor or employee, or sub-contractor, or volunteer whose relationship with the government and/or public and private corporations or private company's, can be terminated at convenience or "at will", and he would not be entitled to any constitutional or statutory rights of due process or rights of appeal or review. One or more of the defendants further claim documentation is in their possession that supports their position but as of the date of filing of this complaint they have refused to reveal the information.

319. PBGC - John Connolly (and others)'s termination from the PBGC was a direct result of efforts to protect corruption initiatives that amounted to between seven and ten million dollars and represent illegal retaliation, under numerous statutes including the **whistle blowing Act and the Civil Rights Act**. The fraudulent activity involved ██ Consulting charging out between seven and ten million dollars, for a work effort that should not have exceeded any more than approximately two hundred hours. The illegal and fraudulent efforts were documented in detail, validated with individuals in top tier consulting firms, and brought to the attention of PBGC management by John Connolly (and others). John Connolly (and others) in point of fact completed and independently validated a "proof of concept" and created a fully functioning test instance, with the support of another firm, in less than eighty hours. Documentation and copies detailing each step and finding of the validation process and testing results were provided to and included in a review with John Connolly (and others)'s immediate management. Detailed copies and reviews were provided to the PBGC's Inspector Generals Office. John Connolly (and others) termination was a direct result and in direct retaliation for reporting waste, fraud and abuse, by management in PBGC, in violation of law.

320. The termination of John Connolly (and others)'s liberty interests and protected constitutional rights as reflected in fifteen to twenty years of terminations/denials/revocations of "employment/license", was the direct result of policy and/or efforts to protect lucrative corruption initiatives, by government agencies, and their "business partners" in public and private corporations and private companies. In many instances the actions represent illegal retaliation, and violations of constitutional and civil rights statutes including the whistle blowing Act and the Civil Rights Act. In all instances there are deliberate efforts to obstruct justice, in the concealment of these illegal activities and processes.

321. One or more of "employing" defendants, regardless of "employment/license" type, improperly, unlawfully and unconstitutionally terminated John Connolly (and others)'s employment, as an employee, contractor, or sub-contractor.

322. One or more of the Defendants, deliberately and intentionally violated the laws and failed to exercise specific, statutory, legal, and contractual requirements and obligations which they were required to be performed with regard to adverse data and investigations and John Connolly (and others)'s employment and/or employment/license rights, to which **protocols, procedures and civil rights protections he was entitled under the Privacy Act, and numerous other laws.** These protections and violations thereof also extended, and included but were not limited to, obligations and activities which fall under the responsibilities of "Credit Reporting Agencies". Many of these **defendants, including their employees, agents, representatives and contractors, acting both in their own interest and/or perceived interest, and were acting under "color of law".**

323. One or more of the Defendants, deliberately and intentionally violated the laws and failed to exercise specific, statutory, legal, and contractual requirements and obligations which they were required to be performed with regard to adverse data and investigations and John Connolly (and others)'s employment and/or employment/license rights, to which protocols, procedures and civil rights protections he was entitled under the **Fair Credit Reporting Act and/or FACT Act**. These protections and violations thereof also extended, and included but were not limited to, obligations and activities which fall under the responsibilities of "Credit Reporting Agencies". Many of these defendants, including their employees, agents, representatives and contractors, acting both in their own interest and/or perceived interest, and were **acting under "color of law".**

324. Plaintiff John Connolly (and others) **Asserts that the Fair Credit Reporting Act applies to all government agencies** and their representative "business partners" and that No Exception, Exclusion or Exemption for government background checks or "national security" investigations as is provisioned and provided for in the FCRA apply because signed authorization and waiver documents were obtained by misleading and clear fraudulent misrepresentations made to signatories of documents. The authorization or waiver documents obtained from job applicants, and other individuals to conduct investigations and data gathering, are wholly fraudulent documents in every respect. The document (lists agency and individual directly) is a short paragraph with title of applicable statute, "FAIR CREDIT REPORTING ACT", and states (in short) information will be gathered for employment purposes and the reporting agencies are not responsible for determinations made based on the information obtained. Every entity in the country basically uses the same waver form. Every other entity in country under the FCRA has to report/inform individuals of adverse actions and adverse information obtained reporting agencies. The government cannot be obtaining consent, authorization waivers from individuals with the same (even innocuous) documents and then without the acquiescence or knowledge of the signatory be exempting themselves (as policy) under a clause in the FCRA. This is not only, not "FAIR", it is a clear deliberate and premeditated fraudulent misrepresentation from the outset. These actions violate the statutes of frauds and other laws and as a result any government exemptions and/or other terms to the governments benefit, claimed under the act or other laws is vitiated void.

325. One or more of the Defendants, deliberately and intentionally violated the laws and failed to exercise specific, statutory, legal, and contractual requirements and obligations which they were required to be performed with regard to adverse data and John Connolly (and others)'s employment and employment/license rights, to which protocols, procedures and civil rights protections he was entitled under **the Civil Rights Act,** regulations and statutes. These protections and violations thereof also extended, and included but were not limited to, obligations and activities which fall under the responsibilities of **"Credit Reporting Agencies"**. Many of these defendants, including their employees, agents, representatives and contractors, acting both in their own interest and/or perceived interest, and were **acting under "color of law".** Many of these public and private corporations qualifying as **"Credit Reporting Agencies"**, their officers, employees, agents and representatives had legal obligations to include the exercise of "due care" and other legal responsibilities to John Connolly (and others) which they sold for profit, government contracts and perceived immunities from civil and criminal violations of law. Credit Reporting Agencies reliance's on legal opinions, advisories, guidelines and other collateral from attorneys functioning from agencies and their own Offices of General Counsel, and Inspector Generals Offices are unfounded. Their actions with respect to John Connolly (and others), violate criminal statutes and constitute reckless and depraved indifference

326. One or more of the Defendants, deliberately and intentionally violated the laws and failed to exercise specific, statutory, legal, and contractual requirements and obligations which were required and failed to be performed with respect to fraud, material fraudulent activity, falsification of records, falsification of financial records, reporting of same, failure in reporting etc, etc, with regard to the **Sarbanes Oxley Act. These significant and material acts clearly constitute organized corruption initiatives which fall under the RICO statutes and involve the collusion of General Counsels in government agencies, public and private corporations and private companies and individuals, including the inspector generals in government agencies and their outside auditing "business partners".** John Connolly (and others) was seriously and horrifically injured and damaged by the deliberate illegal actions of defendants. Defendants, including their employees, agents, representatives and contractors, were acting both in their own interest and/or perceived interest, and were **acting under "color of law".**

327. **As no opportunity was ever provided John Connolly (and others) for an opportunity to refute any allegations made against him, especially those that serve as a practical matter to deny/revoke his security clearance, ability to seek, obtain, maintain gainful employment – anywhere, or to exercise a liberty interest - everywhere, or clear his name, he is entitled to all the records lawfully requested under the FOIA, Privacy Act, FCRA and FACT Act, and other requests he has made over the last one and a half years, and to which he was denied.**

328. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no

possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**SIXTH CAUSE OF ACTION**
**(PRIVACY ACT)**

329. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

330. One or more of the defendant government agencies, to include their agents, representatives, and/or contractors maintains records within one or more Privacy Act Systems of Records that pertain to John Connolly (and others).

331. **PBGC** - On or about October 20, 2005, John Connolly (and others) entered into an employment relationship with the Pension Benefit Guaranty Corporation (PBGC), as an employee fully possessive of all constitutional, statutory and regulatory rights as any other PBGC federal employee (full time, part time, career appointment, political appointment, term appointment, probationary employee or non-probationary employee, contractor, applicant or even volunteer), for which he is claiming a stated interest, deprivation of right or benefit, incurrence of any damages and/or violation of any right, statute, regulation or law. This would include, among other things, the usual rights, privileges and benefits that are accorded all individuals including but not limited to those who undergo investigations and are entitled to the full protections of the United States Constitution, and other laws, regulations and statutes of the United States and their political subdivisions.

332. **CMS** - On or about October 2, 2006, John Connolly (and others) entered into an "employment/license" relationship with the **Center for Medicated Services.** As a federal employee, contractor, sub-contractor, career appointee, political appointee, part-time contractor, contract to hire contractor, or even a volunteer, John Connolly (and others) was fully possessive of all constitutional, statutory and regulatory rights as any other individual, for which he is claiming a stated interest, deprivation of any right or benefit, incurrence of any damages and/or violation of any right, statute, regulation or law. The usual rights, privileges and benefits that are accorded all individuals include the rights, unimpeded, to seek, apply for, obtain and maintain gainful employment ("employment/license), regardless of IRS filing category as W2, 1099, LLC or LLP. An individual's rights, duly exercised, in seeking, obtaining and maintaining gainful employment, are not compromised or limited when an individual undergoes any type of investigation. Whether an individual undergoes an investigation for an "employment/license" or a capital crime, he is entitled to the full protections of the United States Constitution, and other laws, regulations and statutes of the United States and their political subdivisions.

333. John Connolly (and others)'s obtained and maintained gainful employment or "employment licenses" relationships either directly as an employee with the government, as was the case with defendant PBGC, as an employee, contractor or subcontractor to defendant government contractors, and as an employee, contractor or subcontractor to defendant public and/or private corporations, private companies and individuals, **who had "hired" or provided other "employment license" to John Connolly (and others) for non-government related work, for approximately fifteen years.**

334. One or more of the defendants will assert John Connolly (and others) was some sort of independent contractor or employee, or sub-contractor, or volunteer whose relationship with the government and/or public and private corporations or private company's, can be terminated at convenience or "at will", and he would not be entitled to any constitutional or statutory rights of due process or rights of appeal or review. One or more of the defendants further claim documentation is in their possession that supports their position but as of the date of filing of this complaint they have refused to reveal the information.

335. The undisclosed and concealed adjudication processes were formed due to adverse investigatory information, and or adverse object algorithm relationships established to data provided by and through the defendants, including but not limited to; Federal Bureau of Investigation (FBI), Defense Security Services (DSS), and/or the Department of Homeland Security (DHS) and/or the Office Of Personnel Management (OPM), Federal Deposit Insurance Corporation (FDIC), Internal Revenue Service (IRS)and other agencies and sources, including all entities acting has

their agents, under contract or otherwise, to the respective government agency's involved, including all entities acting has their agents, under contract or otherwise.

336. The PBGC failed to accord John Connolly (and others) any due process and denied him any administrative rights that federal employees in the employ of the PBGC must be provided before their employment is terminated. This included, but was not limited to, the ability to receive notice, to challenge and to correct and/or amend adverse investigatory records and findings. This also included but was not limited to the ability to challenge and appeal a termination based in whole or in part, on information and/or records referencing data and or actions that existed prior to employment.

337. The OPM and other agencies actions and policies failed to accord John Connolly (and others) any due process and denied him any administrative rights that federal employees in the employ of any agency must be provided before their employment is terminated. This included, but was not limited to, the ability to receive notice, to challenge and to correct and/or amend adverse investigatory records and findings. This also included but was not limited to the ability to challenge and appeal a termination based in whole or in part, on information and/or records referencing data and or actions that existed prior to employment. OPM and other agencies actions and policies created a situation in which John Connolly (and others) lost gainful employment, "employment/license" contracts, as an employee, contractor or subcontractor with over as many as two hundred employers.

338. Up to the date of the filing of this case and continuing, John Connolly (and others) has made numerous efforts to discover, investigate and remedy - administratively address and resolve these issues. In attempting to do so he has incurred **more than $635,000** in expenses that he otherwise would not be responsible for had the FBI/PBGC/OPM/DOJ/DSS/IRS/FDIC/DHS and other government agencies, to include public and private corporations and private companies acting on their own and under color of law in support of government interests, acted lawfully. The aforementioned defendants and bad actors, acted deliberately in egregiously in interfering with John Connolly (and others)'s efforts to find or maintain gainful employment. At no time, despite more than seven hundred of requests, including record request via the Freedom of Information Act, Privacy Act and the Fair Credit Reporting Act, and FACT act has a complete accounting and disclosure of records, to any minimally acceptable standard ever been made. John Connolly (and others) has been deceived and lied to on numerous occasions about the reasons surrounding termination of his "employment/licenses for a period approximating 15 to twenty years. Misrepresentations and deceptions to John Connolly (and others), included deliberate falsification of government records, in violation of agency regulations and criminal statutes.

339. PBGC - On or about September 28, 2006, John Connolly (and others)'s relationship was formally terminated by the PBGC. At no time, despite multiple requests, including record request via the Freedom of Information Act, Privacy Act and the Fair Credit Reporting Act, has he ever been informed of, or provided with any notice referencing accurate records, his rights or the true reasons of his termination. Quite the opposite actually happened. John Connolly (and others) was deprived of number of very serious due process rights. The deprivation of John Connolly (and others)'s constitutional and civil rights was in violation of laws, rules and regulations, and included violations of criminal statutes. John Connolly (and others) has been deceived and lied to on numerous occasions about the circumstances surrounding termination. Misrepresentations and deceptions to John Connolly (and others) have included deliberate falsification of government records, in violation of agency regulations and criminal statutes.

340. On a number of occasions after terminations of his employment, "employment/license" contracts, regardless of "type" or IRS category, a number of the defendants , and one or more of the individual defendants, has intentionally interfered with John Connolly (and others)'s efforts to obtain and maintain employment in his chosen field of profession with government contractors, particularly by impeding the transfer of his security clearance or by implying derogatory information existed that would preclude the granting of a security clearance and by imparting without providing John Connolly (and others) recourse, knowledge or information, - euphuisms, "secret codes", i.e. "passed over opportunities" which imply he is "damaged goods"

341. One or more of the government contractors attempted to have government agencies and their supporting administrative agencies **DSS, OPM, FBI, DOJ, FDIC, IRS** transfer or renew John Connolly (and others) security clearance. Upon evidence, information and belief, the agencies continued the dissemination of false and defamatory information concerning John Connolly (and others) to the government contractors and additional federal agency, **for the purpose of causing the employer to terminate John Connolly (and others) from his employment contract**

**and/or his** "employment/license" (contract to hire, W2, LLC, 1099, etc) and his ability to seek and/or maintain other employment. As a result of the defendants' actions, John Do has suffered harm, both financially and with respect to his health.

342. Although John Connolly (and others) was **informed by PBGC and OPM officials, and other government agencies and their "business partners" to include agents, representatives and contractors acting on their behalf,** that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to repeatedly terminate John Connolly (and others)'s, "employment/license", while he was gainfully employed, regardless of type of employment, as a direct employee or contractor of prime contractor or sub contractors. False and adverse information also directly resulted in immediate termination and withdrawal of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, or employee of prime and subcontractors.

343. Although John Connolly (and others) was **informed, repeatedly by Department of Health and Human Services (DHHS) officials, to include agents, representatives and contractors acting on their behalf,** that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to terminate John Connolly (and others)'s, employment/license, regardless of type of employment, as employee or contractor of prime contractor or sub contractors, while he was gainfully employed, "on the job". False and adverse information also directly resulted in the withdrawal and termination of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, and employee of prime and subcontractors.

344. Although John Connolly (and others) was **informed, repeatedly by Department of Transportation (DOT) officials, to include agents, representatives and contractors acting on their behalf,** that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to terminate John Connolly (and others)'s, employment/license, regardless of type of employment; as employee or contractor of prime contractor or sub contractors. False and adverse information also directly resulted in the withdrawal and termination of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, and employee of prime and subcontractors.

345. Although John Connolly (and others) was **informed, repeatedly by numerous defendant government officials, to include defendant agents, representatives and contractors acting on their behalf,** that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to terminate John Connolly (and others), employment/license, regardless of type of employment; as employee or contractor of prime contractor or sub contractors. False and adverse information also directly resulted in the withdrawal and termination of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, and employee of prime and subcontractors.

346. Although John Connolly (and others) was **informed, repeatedly by numerous defendant public and private corporations, private companies and individuals, to include defendant agents, representatives and contractors acting on their behalf, that no security clearance issues, or credit issues existed, or were in their possession, or were reported on and/or were investigated, that would cause a problem,** the government agencies, their contractors were told differently thereby causing them to terminate John Connolly (and others)'s "employment/license", regardless of type of employment; as employee or contractor of prime contractor or sub contractors. False and adverse information also directly resulted in the withdrawal and termination of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, and employee of prime and subcontractors.

347. **The effect of the Defendants actions was to illegally and purposefully stigmatize and seriously harm and injure John Connolly (and others) for life. The defendant's actions, as a practical matter, serve to deny/revoke his security clearance or employment/license ability (possibly for life) without affording him any administrative rights as required by law to challenge such a decision. Their illegal actions were carefully planned and carried out by career senior executive service personal and their subordinating staffs. The results of the horrific damages they caused were foreseeable and entirely predictable, and all but one percent certain.**

348. The defendants participation in **the creation, maintenance and production of secret systems in conjunction with the denial of due process** and the elaborate policies, protocols, procedures and activities of concealment created "secret virtual" "rap sheets" of "passed over opportunities" that included but were not limited to opportunities John Connolly (and others) never knew he had, never knew he had lost, and execution of adverse actions John Connolly (and others) was unaware of, and in which he was never provided due process, and never knew took place. **In each and every circumstance, the illegal assaults, torts, injuries and damages incurred, were entirely predictable, foreseeable and constitute reckless and depraved indifference. Who would want to employ or even interview, an individual who was "passed-over", for several opportunities, in Undisclosed and concealed adjudication processes?**

349. **Each and every time there was an investigation, background check, Undisclosed and concealed adjudication processes, there was a an adverse and negative "status change", imparted into the records of John Connolly (and others)'s "virtual rap sheet",** that also included numerous and varied, "pass-over" he was also unaware of. Government agencies and their associated defendants, excluding recent regulations, **were required by law to establish (among other failed requirements) finding as the result of the commencement of a suitability determination, action, investigation and/or background check.** With the exception of some identifying information on John Connolly (and others)'s , **each and every single record entry that was made and entries required by law that were failed to be made or recorded (in the thousands) were clear deliberate, premeditated acts of falsification** of records and **falsification of government records**. These fraudulent and illegal acts are in violation of numerous federal, state and local laws, and criminal statutes including Sarbanes-Oxley, Privacy Act, Fair Credit Reporting Act, FACT, Civil Rights Act, Torts Act, and department and agency rules and regulations. The aforementioned statutes provide for the application of serious penalties.

350. The Federal Bureau of Investigation (FBI), OPM, PBGC, DHHS, PBGC, DSS, DHS and other defendant government agencies, to include all agents, representatives, contractors and one or more of the defendant public and private corporations and private companies and all their agents, representatives, contractors, one or more of the individual defendants has failed to maintain John Connolly (and others)'s, records with such accuracy, relevance, timeliness and completeness as is reasonably necessary to denote his_true employment eligibility and or government defined "employment/license: with the PBGC and any and all other government agency to include their contractors, and the extent to which he possesses a security clearance, and/or the extent he was denied a security clearance, and most importantly to the extent John Connolly (and others) record was imparted with "passed over" opportunities of secret codes, implying damaged goods. The incorrect interpretation and incorrect assessment and compilation of investigatory records, incorrect suitability determinations, results of Undisclosed and concealed adjudication processes and willful and fraudulent recordation and/or failure of recordation of all aforementioned facts and elements, **clearly indicates one or more of the defendants has "failed to maintain" John Connolly (and others)'s, "records with such accuracy, relevance, timeliness and completeness as is reasonably necessary", for Any Purpose Whatsoever.**

351. The PBGC/OPM/FBI/DOJ/OMB and other defendant government agencies, to include their agents, representatives, contractors, and defendant public and private corporations, private companies and individuals, to include their agents, representatives, contractors, acting both in their own interest and/or under "color of law", willfully and/or intentionally terminated, and/or **provided the data or support services to terminate** John Connolly (and others)'s "employment/license" relationships with the respective agencies, their contractors, **in a manner that was derogatory to his reputation, and provided him with no recourse to correct records or even be made aware, adverse data existed and/or adverse actions were taken.** Defendants acted recklessly, with knowledge, forethought and purpose, and caused injuries to John Connolly (and others) which was entirely foreseeable, 100% predictable, 100% avoidable had the defendants acted within the law. The defendants, to varying degrees, repeated their violations of law over a period, approximating fifteen to twenty years, and have refused innumerable opportunities to ameliorate damages or comply with the law. Defendant's heinous actions in one single instance, has the potential to irreparably damage an individual for life. Defendant's actions over a period approximating fifteen to twenty years, have effectively and irrevocably destroyed John Connolly (and others)'s ability for any meaningful, secure or gainful employment. John Connolly (and others)'s ability to exercise the rights he is entitled too under the constitution of the United States, by absolutely any reasonable persons interpretation of the facts.

352. Based on the defendant OPM/PBGC/DOJ/FBI/OMB's and other defendant government agencies, to include their agents, representatives, contractors, and defendant public and private corporations, private companies and

individuals, acting both in their own interest and/or under "color of law", actions and decisions, it appears John Connolly (and others) is precluded from participating in classified projects or any other gainful employment, requiring an employment/license conducted, managed, sanctioned, authorized, approved, referenced or reviewed by the federal government (after 15 to 20 years including private industry) thereby losing a right, benefit, privilege, or opportunity that was available to him under Federal law. The damages to John Connolly (and others)'s business prospects, or the prospect for any secure and gainful employment, without looking over his shoulder for life, in the public or private sector is all but impossible. The FBI/OPM/DOJ/DSS/IRS/FDIC and other government agencies compiled information and arrived at conclusions that were irrelevant, false, malicious and defamatory, incomplete, inaccurate, and untimely as to John Connolly (and others), who was never provided an opportunity to review or challenge any evaluation or determination that led to termination of his employment/license, regardless of type, or IRS status (W2, LLC, 1099, etc) or that pertains to his, character, security clearance, determinations, actions, etc.

353. The defendant public and private corporations, private companies and individuals, to include their agents, representatives and contractors acting in their own interest and/or under "color of law" failed to collect information directly from John Connolly (and others), which resulted in adverse determinations concerning his rights, benefits, privileges, or opportunities in violation of 5 U.S.C. § 552a(e)(2) and (g)(1(C).

354. The defendant public and private corporations, private companies and individuals, to include their agents, representatives and contractors who facilitated the movement of information of data, who knew and/or should have known of the failures of defendants to follow the law and/or exercise any reasonable "due care", acting in their own interest and/or under "color of law", constricted by illegal Compaq's, memorandums of agreements, memorandums of understanding, classified or confidential legal opinions and/or agency guidelines **failed in meeting their lawful obligations and legal requirements under the Fair Credit Reporting Act, FACT, Privacy Act, Sarbanes Oxley Act, Computer Fraud Act and other federal and state legal statutes.** Additionally, all federal contracts signed required strict adherence to all federal, state and local laws, rules and regulations, which they dutifully violated, with premeditation before ink was dry on contracts. Furthermore, additional provisions of penalties for violations of aforementioned statutes are included in the varied "arrangements" with government "business partners"

355. The defendants, their employees and officers, to include one or more of the individual defendants, their agents, representatives and/or contractors knew or should have known that their actions were improper, unlawful and/or in violation of the Privacy Act.

356. The defendants, their employees and officers, to include one or more of the individual defendants, their agents, representatives and/or contractors acted intentionally or willfully in violation of John Connolly (and others)'s privacy rights.

357. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

## SEVENTH CAUSE OF ACTION
## (PRIVACY ACT)

358. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

359. One or more of the defendant government agencies, to include their agents, representatives, and/or contractors maintains records within one or more Privacy Act Systems of Records that pertain to John Connolly (and others).

360. **PBGC -** On or about October 20, 2005, John Connolly (and others) entered into an employment relationship with the Pension Benefit Guaranty Corporation (PBGC), as an employee fully possessive of all constitutional, statutory and regulatory rights as any other PBGC federal employee (full time, part time, career appointment,

political appointment, term appointment, probationary employee or non-probationary employee, contractor, applicant or even volunteer), for which he is claiming a stated interest, deprivation of right or benefit, incurrence of any damages and/or violation of any right, statute, regulation or law. This would include, among other things, the usual rights, privileges and benefits that are accorded all individuals including but not limited to those who undergo investigations and are entitled to the full protections of the United States Constitution, and other laws, regulations and statutes of the United States and their political subdivisions.

361. **CMS -** On or about October 2, 2006, John Connolly (and others) entered into an "employment/license" relationship with the **Center for Medicated Services.** As a federal employee, contractor, sub-contractor, career appointee, political appointee, part-time contractor, contract to hire contractor, or even a volunteer, John Connolly (and others) was fully possessive of all constitutional, statutory and regulatory rights as any other individual, for which he is claiming a stated interest, deprivation of any right or benefit, incurrence of any damages and/or violation of any right, statute, regulation or law. The usual rights, privileges and benefits that are accorded all individuals include the rights, unimpeded, to seek, apply for, obtain and maintain gainful employment ("employment/license), regardless of IRS filing category as W2, 1099, LLC or LLP. An individual's rights, duly exercised, in seeking, obtaining and maintaining gainful employment, are not compromised or limited when an individual undergoes any type of investigation. Whether an individual undergoes an investigation for an "employment/license" or a capital crime, he is entitled to the full protections of the United States Constitution, and other laws, regulations and statutes of the United States and their political subdivisions.

362. John Connolly (and others)'s obtained and maintained gainful employment or "employment licenses" relationships either directly as an employee with the government, as was the case with defendant PBGC, as an employee, contractor or subcontractor to defendant government contractors, and as an employee, contractor or subcontractor to defendant public and/or private corporations, private companies and individuals, **who had "hired" or provided other "employment license" to John Connolly (and others) for non-government related work, for approximately fifteen years.**

363. One or more of the defendants will assert John Connolly (and others) was some sort of independent contractor or employee, or sub-contractor, or volunteer whose relationship with the government and/or public and private corporations or private company's, can be terminated at convenience or "at will", and he would not be entitled to any constitutional or statutory rights of due process or rights of appeal or review. One or more of the defendants further claim documentation is in their possession that supports their position but as of the date of filing of this complaint they have refused to reveal the information.

364. The undisclosed and concealed adjudication processes were formed due to adverse investigatory information, and or adverse object algorithm relationships established to data provided by and through the defendants, including but not limited to; Federal Bureau of Investigation (FBI), Defense Security Services (DSS), and/or the Department of Homeland Security (DHS) and/or the Office Of Personnel Management (OPM), Federal Deposit Insurance Corporation (FDIC), Internal Revenue Service (IRS)and other agencies and sources, including all entities acting has their agents, under contract or otherwise, to the respective government agency's involved, including all entities acting has their agents, under contract or otherwise.

365. The PBGC failed to accord John Connolly (and others) any due process and denied him any administrative rights that federal employees in the employ of the PBGC must be provided before their employment is terminated. This included, but was not limited to, the ability to receive notice, to challenge and to correct and/or amend adverse investigatory records and findings. This also included but was not limited to the ability to challenge and appeal a termination based in whole or in part, on information and/or records referencing data and or actions that existed prior to employment.

366. The OPM and other agencies actions and policies failed to accord John Connolly (and others) any due process and denied him any administrative rights that federal employees in the employ of any agency must be provided before their employment is terminated. This included, but was not limited to, the ability to receive notice, to challenge and to correct and/or amend adverse investigatory records and findings. This also included but was not limited to the ability to challenge and appeal a termination based in whole or in part, on information and/or records referencing data and or actions that existed prior to employment. OPM and other agencies actions and policies

created a situation in which John Connolly (and others) lost gainful employment, "employment/license" contracts, as an employee, contractor or subcontractor with over as many as two hundred employers.

367. Up to the date of the filing of this case and continuing, John Connolly (and others) has made numerous efforts to discover, investigate and remedy - administratively address and resolve these issues. In attempting to do so he has incurred **more than $635,000** in expenses that he otherwise would not be responsible for had the FBI/PBGC/OPM/DOJ/DSS/IRS/FDIC/DHS and other government agencies, to include public and private corporations and private companies acting on their own and under color of law in support of government interests, acted lawfully. The aforementioned defendants and bad actors, acted deliberately in egregiously in interfering with John Connolly (and others)'s efforts to find or maintain gainful employment. At no time, despite more than seven hundred of requests, including record request via the Freedom of Information Act, Privacy Act and the Fair Credit Reporting Act, and FACT act has a complete accounting and disclosure of records, to any minimally acceptable standard ever been made. John Connolly (and others) has been deceived and lied to on numerous occasions about the reasons surrounding termination of his "employment/licenses for a period approximating 15 to twenty years. Misrepresentations and deceptions to John Connolly (and others) included deliberate falsification of government records, in violation of agency regulations and criminal statutes.

368. In an effort to correct and amend records John Connolly (and others), over a period of a year and a half made several hundred requests to one or more defendants to obtain records, and a full accounting of record disclosures, to which he is entitled under the Privacy Act, Freedom of Information Act, FACT Act and Fair Credit Reporting Act. All defendant government agencies, to include their agents, representatives, contractors, etc, and public and private corporations and private companies, to include their agents, representatives, contractors, report unresponsive records, with a notable exception of an OPM communication dated February 4, 2008, that was replete with fraudulent entries, was inadequate, incomplete and failed any reasonably acceptable standard of an accounting for disclosures. It is important to note that each agency is responsible, per agency guidelines, per OPM guidelines, per OPM "classified or supplementary guidelines", OMB Circulars, Privacy Act and FCRA statutes for maintaining detailed records on which they base adverse determinations. These documents, should they exist, would be maintained within an applicable Privacy Act System of Records.

369. PBGC - On or about September 28, 2006, John Connolly (and others)'s relationship was formally terminated by the PBGC. At no time, despite multiple requests, including record request via the Freedom of Information Act, Privacy Act and the Fair Credit Reporting Act, has he ever been informed of, or provided with any notice referencing accurate records, his rights or the true reasons of his termination. Quite the opposite actually happened. John Connolly (and others) was deprived of number of very serious due process rights. The deprivation of John Connolly (and others)'s constitutional and civil rights was in violation of laws, rules and regulations, and included violations of criminal statutes. John Connolly (and others) has been deceived and lied to on numerous occasions about the circumstances surrounding termination. Misrepresentations and deceptions to John Connolly (and others) have included deliberate falsification of government records, in violation of agency regulations and criminal statutes.

370. On a number of occasions after terminations of his employment, "employment/license" contracts, regardless of "type" or IRS category, a number of the defendants , and one or more of the individual defendants, has intentionally interfered with John Connolly (and others)'s efforts to obtain and maintain employment in his chosen field of profession with government contractors, particularly by impeding the transfer of his security clearance or by implying derogatory information existed that would preclude the granting of a security clearance and by imparting without providing John Connolly (and others) recourse, knowledge or information, - euphuisms, "secret codes", i.e. "passed over opportunities" which imply he is "damaged goods"

371. One or more of the government contractors attempted to have government agencies and their supporting administrative agencies **DSS, OPM, FBI, DOJ, FDIC, IRS** transfer or renew John Connolly (and others) security clearance. Upon evidence, information and belief, the agencies continued the dissemination of false and defamatory information concerning John Connolly (and others) to the government contractors and additional federal agency**, for the purpose of causing the employer to terminate John Connolly (and others) from his employment contract and/or his** "employment/license" (contract to hire, W2, LLC, 1099, etc) and his ability to seek and/or maintain other employment. As a result of the defendants' actions, John Do has suffered harm, both financially and with respect to his health.

372. Although John Connolly (and others) was **informed by PBGC and OPM officials, and other government agencies and their "business partners" to include agents, representatives and contractors acting on their behalf,** that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to repeatedly terminate John Connolly (and others)'s, "employment/license", while he was gainfully employed, regardless of type of employment, as a direct employee or contractor of prime contractor or sub contractors. False and adverse information also directly resulted in immediate termination and withdrawal of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, or employee of prime and subcontractors.

373. Although John Connolly (and others) was **informed, repeatedly by Department of Health and Human Services (DHHS) officials, to include agents, representatives and contractors acting on their behalf,** that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to terminate John Connolly (and others)'s, employment/license, regardless of type of employment, as employee or contractor of prime contractor or sub contractors, while he was gainfully employed, "on the job". False and adverse information also directly resulted in the withdrawal and termination of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, and employee of prime and subcontractors.

374. Although John Connolly (and others) was **informed, repeatedly by Department of Transportation (DOT) officials, to include agents, representatives and contractors acting on their behalf,** that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to terminate John Connolly (and others)'s, employment/license, regardless of type of employment; as employee or contractor of prime contractor or sub contractors. False and adverse information also directly resulted in the withdrawal and termination of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, and employee of prime and subcontractors.

375. Although John Connolly (and others) was **informed, repeatedly by numerous defendant government officials, to include defendant agents, representatives and contractors acting on their behalf,** that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to terminate John Connolly (and others), employment/license, regardless of type of employment; as employee or contractor of prime contractor or sub contractors. False and adverse information also directly resulted in the withdrawal and termination of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, and employee of prime and subcontractors.

376. Although John Connolly (and others) was **informed, repeatedly by numerous defendant public and private corporations, private companies and individuals, to include defendant agents, representatives and contractors acting on their behalf, that no security clearance issues, or credit issues existed, or were in their possession, or were reported on and/or were investigated, that would cause a problem,** the government agencies, their contractors were told differently thereby causing them to terminate John Connolly (and others)'s "employment/license", regardless of type of employment; as employee or contractor of prime contractor or sub contractors. False and adverse information also directly resulted in the withdrawal and termination of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, and employee of prime and subcontractors.

377. **The effect of the Defendants actions was to illegally and purposefully stigmatize and seriously harm and injure John Connolly (and others) for life. The defendant's actions, as a practical matter, serve to deny/revoke his security clearance or employment/license ability (possibly for life) without affording him any administrative rights as required by law to challenge such a decision. Their illegal actions were carefully planned and carried out by career senior executive service personal and their subordinating staffs. The results of the horrific damages they caused were foreseeable and entirely predictable, and all but one percent certain.**

378. The defendants participation in **the creation, maintenance and production of secret systems in conjunction with the denial of due process** and the elaborate policies, protocols, procedures and activities of concealment created "secret virtual" "rap sheets" of "passed over opportunities" that included but were not limited to opportunities John Connolly (and others) never knew he had, never knew he had lost, and execution of adverse

actions John Connolly (and others) was unaware of, and in which he was never provided due process, and never knew took place. **In each and every circumstance, the illegal assaults, torts, injuries and damages incurred, were entirely predictable, foreseeable and constitute reckless and depraved indifference. Who would want to employ or even interview, an individual who was "passed-over", for several opportunities, in Undisclosed and concealed adjudication processes?**

379. **Each and every time there was an investigation, background check, Undisclosed and concealed adjudication processes, there was a an adverse and negative "status change", imparted into the records of John Connolly (and others)'s "virtual rap sheet",** that also included numerous and varied, "pass-over" he was also unaware of. Government agencies and their associated defendants, excluding recent regulations, **were required by law to establish (among other failed requirements) finding as the result of the commencement of a suitability determination, action, investigation and/or background check.** With the exception of some identifying information on John Connolly (and others)'s , **each and every single record entry that was made and entries required by law that were failed to be made or recorded (in the thousands) were clear deliberate, premeditated acts of falsification** of records and **falsification of government records**. These fraudulent and illegal acts are in violation of numerous federal, state and local laws, and criminal statutes including Sarbanes-Oxley, Privacy Act, Fair Credit Reporting Act, FACT, Civil Rights Act, Torts Act, and department and agency rules and regulations. The aforementioned statutes provide for the application of serious penalties.

380. The Defendants are not permitted, notwithstanding any contractual language to the contrary, to violate John Connolly (and others)'s Constitutional rights, as set forth by the Constitution of the United States.

381. The Defendants are not permitted, notwithstanding any contractual language to the contrary, to violate John Connolly (and others)'s Constitutional rights and other rights as provided by federal, state, and local laws, regulations and statutes.

382. The Federal Bureau of Investigation (FBI), OPM, PBGC, DHHS, and other defendant government agencies, to include all agents, representatives, contractors and one or more of the defendant public and private corporations and private companies and all their agents, representatives, contractors, one or more of the individual defendants has failed to maintain John Connolly (and others)'s , records with such accuracy, relevance, timeliness and completeness as is reasonably necessary to denote his_true employment eligibility with the PBGC and all other government agency to include their contractors, and the extent to which he possesses a security clearance, and/or the extent he was denied a security clearance, and to the extent he was imparted with a "status change" gift without his knowledge of "passed over" opportunities, or secret code for "damaged goods. The incorrect interpretation and incorrect assessment and compilation of investigatory records, incorrect suitability determinations, results of Undisclosed and concealed adjudication processes and willful and fraudulent recordation and/or failure of recordation of all aforementioned facts and elements, **clearly indicates one or more of the defendants has "failed to maintain" John Connolly (and others)'s, "records with such accuracy, relevance, timeliness and completeness as is reasonably necessary". This also includes implicit and implied derogatory information, "imparted" on an individual as part of OPM "supplementary guidelines", bureau memorandums of agreements, understanding, legal opinions (out of jail cards) that have no basis in law and other associated gobbledygook, that also result in virtual Rap Sheets, denoting nothing and implying everything, and have deprived John Connolly (and others) of gainful employment, "employment/license", regardless of type and have deprived John Connolly (and others) of his "liberty interest".**

383. The PBGC/OPM/FBI/DOJ/OMB and other defendant government agencies, to include their agents, representatives, contractors, and defendant public and private corporations, private companies and individuals, to include their agents, representatives, contractors, acting both in their own interest and/or under "color of law", willfully and/or intentionally terminated, and/or **provided the data or support services to terminate** John Connolly (and others)'s "employment/license" relationships with the respective agencies, their contractors, **in a manner that was derogatory to his reputation, and provided him with no recourse to correct records or even be made aware, adverse data existed and/or adverse actions were taken.** Defendants acted recklessly, with knowledge, forethought and purpose, and caused injuries to John Connolly (and others) which were entirely foreseeable, 100% predictable, 100% avoidable, had the defendants acted within the law. The defendants, to varying degrees, repeated their violations of law over a period, approximating fifteen to twenty years, and have refused innumerable opportunities to ameliorate damages or comply with the law.

384. Based on the defendant OPM/PBGC/DOJ/FBI/OMB's and other defendant government agencies, to include their agents, representatives, contractors, and defendant public and private corporations, private companies and individuals, to include their agents, representatives, contractors, acting both in their own interest and/or under "color of law", actions and decisions, it appears John Connolly (and others) is precluded from participating in classified projects or any other gainful employment, requiring an employment/license conducted, managed, sanctioned, authorized, approved, referenced or reviewed by the federal government thereby losing a right, benefit, privilege, or opportunity that was available to him under Federal law. The damages to John Connolly (and others)'s business prospects or any prospect for a secure and gainful employment, without looking over his shoulder for life, in the public or private sector is all but impossible. The FBI/OPM and other government agencies compiled information and arrived at conclusions that were irrelevant, false, malicious and defamatory, incomplete, inaccurate, and untimely as to John Connolly (and others), who was never provided an opportunity to review or challenge any evaluation or determination that led to termination of his employment/license, regardless of type, or IRS status (W2, LLC, 1099, etc) or that pertains to his, character, security clearance, determinations, actions, etc.

385. The PBGC/OPM/FBI/DOJ/OMB and other defendant government agencies, to include their agents, representatives, contractors, and defendant public and private corporations, private companies and individuals, to include their agents, representatives, contractors, acting both in their own interest and/or under "color of law", and a number of individuals have **already disseminated, verbally, electronically, and in hard copy, inaccurate information from John Connolly (and others)'s Privacy Act System of Records to a number of government contractors that had hired John Connolly (and others) which, as a result, led to the termination of employments, termination of contracts, and rescission of the employment offers due to alleged security concerns. The actions by the defendants related to the qualifications, character, rights or opportunities of, or benefits to John Connolly (and others) and violated 5 U.S.C. § 552a(e)(5), and other sections of the Privacy Act**

386. The PBGC/OPM/FBI/DOJ/OMB/DSS/DHS/IRS/FDIC and other defendant government agencies, to include their agents, representatives, contractors, and defendant public and private corporations, private companies and individuals, to include their agents, representatives, contractors, acting both in their own interest and/or under "color of law", and a number of individuals, their employees and officers, to include one or more of the individual defendants, knew or should have known that their actions were improper, unlawful and/or in violation of the Privacy Act.

387. The PBGC/OPM/FBI/DOJ/OMB/DSS/DHS/IRS/FDIC and other defendant government agencies, to include their agents, representatives, contractors, and defendant public and private corporations, private companies and individuals, to include their agents, representatives, contractors, acting both in their own interest and/or under "color of law", and a number of individuals, their employees and officers, to include one or more of the individual defendants, acted intentionally or willfully in violation of John Connolly (and others)'s privacy rights.

388. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**EIGHTH CAUSE OF ACTION -**

389. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

390. One or more of the defendant government agencies, to include their agents, representatives, and/or contractors maintains records within one or more Privacy Act Systems of Records that pertain to John Connolly (and others).

391. **PBGC -** On or about October 20, 2005, John Connolly (and others) entered into an employment relationship with the Pension Benefit Guaranty Corporation (PBGC), as an employee fully possessive of all constitutional, statutory and regulatory rights as any other PBGC federal employee (full time, part time, career appointment, political appointment, term appointment, probationary employee or non-probationary employee, contractor, applicant or even volunteer), for which he is claiming a stated interest, deprivation of right or benefit, incurrence of any damages and/or violation of any right, statute, regulation or law. This would include, among other things, the usual rights, privileges and benefits that are accorded all individuals including but not limited to those who undergo investigations and are entitled to the full protections of the United States Constitution, and other laws, regulations and statutes of the United States and their political subdivisions.

392. **CMS -** On or about October 2, 2006, John Connolly (and others) entered into an "employment/license" relationship with the **Center for Medicated Services.** As a federal employee, contractor, sub-contractor, career appointee, political appointee, part-time contractor, contract to hire contractor, or even a volunteer, John Connolly (and others) was fully possessive of all constitutional, statutory and regulatory rights as any other individual, for which he is claiming a stated interest, deprivation of any right or benefit, incurrence of any damages and/or violation of any right, statute, regulation or law. The usual rights, privileges and benefits that are accorded all individuals include the rights, unimpeded, to seek, apply for, obtain and maintain gainful employment ("employment/license), regardless of IRS filing category as W2, 1099, LLC or LLP. An individual's rights, duly exercised, in seeking, obtaining and maintaining gainful employment, are not compromised or limited when an individual undergoes any type of investigation. Whether an individual undergoes an investigation for an "employment/license" or a capital crime, he is entitled to the full protections of the United States Constitution, and other laws, regulations and statutes of the United States and their political subdivisions.

393. John Connolly (and others)'s obtained and maintained gainful employment or "employment licenses" relationships either directly as an employee with the government, as was the case with defendant PBGC, as an employee, contractor or subcontractor to defendant government contractors, and as an employee, contractor or subcontractor to defendant public and/or private corporations, private companies and individuals, **who had "hired" or provided other "employment license" to John Connolly (and others) for non-government related work, for approximately fifteen years.**

394. One or more of the defendants will assert John Connolly (and others) was some sort of independent contractor or employee, or sub-contractor, or volunteer whose relationship with the government and/or public and private corporations or private company's, can be terminated at convenience or "at will", and he would not be entitled to any constitutional or statutory rights of due process or rights of appeal or review. One or more of the defendants further claim documentation is in their possession that supports their position but as of the date of filing of this complaint they have refused to reveal the information.

395. The undisclosed and concealed adjudication processes were formed due to adverse investigatory information, and or adverse object algorithm relationships established to data provided by and through the defendants, including but not limited to; Federal Bureau of Investigation (FBI), Defense Security Services (DSS), and/or the Department of Homeland Security (DHS) and/or the Office Of Personnel Management (OPM), Federal Deposit Insurance Corporation (FDIC), Internal Revenue Service (IRS)and other agencies and sources, including all entities acting has their agents, under contract or otherwise, to the respective government agency's involved, including all entities acting has their agents, under contract or otherwise.

396. The PBGC failed to accord John Connolly (and others) any due process and denied him any administrative rights that federal employees in the employ of the PBGC must be provided before their employment is terminated. This included, but was not limited to, the ability to receive notice, to challenge and to correct and/or amend adverse investigatory records and findings. This also included but was not limited to the ability to challenge and appeal a termination based in whole or in part, on information and/or records referencing data and or actions that existed prior to employment.

397. The OPM and other agencies actions and policies failed to accord John Connolly (and others) any due process and denied him any administrative rights that federal employees in the employ of any agency must be provided before their employment is terminated. This included, but was not limited to, the ability to receive notice, to challenge and to correct and/or amend adverse investigatory records and findings. This also included but was not

limited to the ability to challenge and appeal a termination based in whole or in part, on information and/or records referencing data and or actions that existed prior to employment. OPM and other agencies actions and policies created a situation in which John Connolly (and others) lost gainful employment, "employment/license" contracts, as an employee, contractor or subcontractor with over as many as two hundred employers.

398. Up to the date of the filing of this case and continuing, John Connolly (and others) has made numerous efforts to discover, investigate and remedy - administratively address and resolve these issues. In attempting to do so he has incurred **more than $635,000** in expenses that he otherwise would not be responsible for had the FBI/PBGC/OPM/DOJ/DSS/IRS/FDIC/DHS and other government agencies, to include public and private corporations and private companies acting on their own and under color of law in support of government interests, acted lawfully. The aforementioned defendants and bad actors, acted deliberately in egregiously in interfering with John Connolly (and others)'s efforts to find or maintain gainful employment. At no time, despite more than seven hundred of requests, including record request via the Freedom of Information Act, Privacy Act and the Fair Credit Reporting Act, and FACT act has a complete accounting and disclosure of records, to any minimally acceptable standard ever been made. John Connolly (and others) has been deceived and lied to on numerous occasions about the reasons surrounding termination of his "employment/licenses for a period approximating 15 to twenty years. Misrepresentations and deceptions to John Connolly (and others) included deliberate falsification of government records, in violation of agency regulations and criminal statutes.

399. In an effort to correct and amend records John Connolly (and others), over a period of a year and a half made several hundred requests to one or more defendants to obtain records, and a full accounting of record disclosures, to which he is entitled under the Privacy Act, Freedom of Information Act, FACT Act and Fair Credit Reporting Act. All defendant government agencies, to include their agents, representatives, contractors, etc, and public and private corporations and private companies, to include their agents, representatives, contractors, report unresponsive records, with a notable exception of an OPM communication dated February 4, 2008, that was replete with fraudulent entries, was inadequate, incomplete and failed any reasonably acceptable standard of an accounting for disclosures. It is important to note that each agency is responsible, per agency guidelines, per OPM guidelines, per OPM "classified or supplementary guidelines", OMB Circulars, Privacy Act and FCRA statutes for maintaining detailed records on which they base adverse determinations. These documents, should they exist, would be maintained within an applicable Privacy Act System of Records.

400. PBGC - On or about September 28, 2006, John Connolly (and others)'s relationship was formally terminated by the PBGC. At no time, despite multiple requests, including record request via the Freedom of Information Act, Privacy Act and the Fair Credit Reporting Act, has he ever been informed of, or provided with any notice referencing accurate records, his rights or the true reasons of his termination. Quite the opposite actually happened. John Connolly (and others) was deprived of number of very serious due process rights. The deprivation of John Connolly (and others)'s constitutional and civil rights was in violation of laws, rules and regulations, and included violations of criminal statutes. John Connolly (and others) has been deceived and lied to on numerous occasions about the circumstances surrounding termination. Misrepresentations and deceptions to John Connolly (and others) have included deliberate falsification of government records, in violation of agency regulations and criminal statutes.

401. One or more of the government contractors attempted to have government agencies and their supporting administrative agencies **DSS, OPM, FBI, DOJ, FDIC, IRS** transfer or renew John Connolly (and others) security clearance. Upon evidence, information and belief, the agencies continued the dissemination of false and defamatory information concerning John Connolly (and others) to the government contractors and additional federal agency, **for the purpose of causing the employer to terminate John Connolly (and others) from his employment contract and/or his** "employment/license" (contract to hire, W2, LLC, 1099, etc) and his ability to seek and/or maintain other employment. As a result of the defendants' actions, John Do has suffered harm, both financially and with respect to his health.

402. Although John Connolly (and others) was **informed by PBGC and OPM officials, and other government agencies and their "business partners" to include agents, representatives and contractors acting on their behalf,** that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to repeatedly terminate John Connolly (and others)'s, "employment/license", while he was gainfully employed, regardless of type of employment, as a direct employee or contractor of prime contractor or sub contractors. False and adverse information also directly resulted in immediate termination and withdrawal of

existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, or employee of prime and subcontractors.

403. Although John Connolly (and others) was **informed, repeatedly by Department of Health and Human Services (DHHS) officials, to include agents, representatives and contractors acting on their behalf,** that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to terminate John Connolly (and others)'s, employment/license, regardless of type of employment, as employee or contractor of prime contractor or sub contractors, while he was gainfully employed, "on the job". False and adverse information also directly resulted in the withdrawal and termination of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, and employee of prime and subcontractors.

404. Although John Connolly (and others) was **informed, repeatedly by Department of Transportation (DOT) officials, to include agents, representatives and contractors acting on their behalf,** that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to terminate John Connolly (and others)'s, employment/license, regardless of type of employment; as employee or contractor of prime contractor or sub contractors. False and adverse information also directly resulted in the withdrawal and termination of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, and employee of prime and subcontractors.

405. Although John Connolly (and others) was **informed, repeatedly by numerous defendant government officials, to include defendant agents, representatives and contractors acting on their behalf,** that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to terminate John Connolly (and others), employment/license, regardless of type of employment; as employee or contractor of prime contractor or sub contractors. False and adverse information also directly resulted in the withdrawal and termination of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, and employee of prime and subcontractors.

406. Although John Connolly (and others) was **informed, repeatedly by numerous defendant public and private corporations, private companies and individuals, to include defendant agents, representatives and contractors acting on their behalf, that no security clearance issues, or credit issues existed, or were in their possession, or were reported on and/or were investigated, that would cause a problem,** the government agencies, their contractors were told differently thereby causing them to terminate John Connolly (and others)'s "employment/license", regardless of type of employment; as employee or contractor of prime contractor or sub contractors. False and adverse information also directly resulted in the withdrawal and termination of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, and employee of prime and subcontractors.

407. **The effect of the Defendants actions was to illegally and purposefully stigmatize and seriously harm and injure John Connolly (and others) for life. The defendant's actions, as a practical matter, serve to deny/revoke his security clearance or employment/license ability (possibly for life) without affording him any administrative rights as required by law to challenge such a decision. Their illegal actions were carefully planned and carried out by career senior executive service personal and their subordinating staffs. The results of the horrific damages they caused were foreseeable and entirely predictable, and all but one percent certain.**

408. The defendants participation in **the creation, maintenance and production of secret systems in conjunction with the denial of due process** and the elaborate policies, protocols, procedures and activities of concealment created "secret virtual" "rap sheets" of "passed over opportunities" that included but were not limited to opportunities John Connolly (and others) never knew he had, never knew he had lost, and execution of adverse actions John Connolly (and others) was unaware of, and in which he was never provided due process, and never knew took place. **In each and every circumstance, the illegal assaults, torts, injuries and damages incurred, were entirely predictable, foreseeable and constitute reckless and depraved indifference. Who would want to employ or even interview, an individual who was "passed-over", for several opportunities, in Undisclosed and concealed adjudication processes?**

409. **Each and every time there was an investigation, background check, Undisclosed and concealed adjudication processes, there was a an adverse and negative "status change", imparted into the records of John Connolly (and others)'s "virtual rap sheet",** that also included numerous and varied, "pass-over" he was also unaware of. Government agencies and their associated defendants, excluding recent regulations, **were required by law to establish (among other failed requirements) finding as the result of the commencement of a suitability determination, action, investigation and/or background check.** With the exception of some identifying information on John Connolly (and others)'s , **each and every single record entry that was made and entries required by law that were failed to be made or recorded (in the thousands) were clear deliberate, premeditated acts of falsification** of records and **falsification of government records**. These fraudulent and illegal acts are in violation of numerous federal, state and local laws, and criminal statutes including Sarbanes-Oxley, Privacy Act, Fair Credit Reporting Act, FACT, Civil Rights Act, Torts Act, and department and agency rules and regulations. The aforementioned statutes provide for the application of serious penalties.

410. Prior to disseminating records about John Connolly (and others) to persons, other defendant government agencies, to include their agents, representatives, contractors, and defendant public and private corporations, private companies and individuals, to include their agents, representatives, contractors, acting both in their own interest and/or under "color of law", and a number of individuals, their employees and officers, to include one or more of the individual defendants, **failed to make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes, or any purpose.**

411. The PBGC/OPM/FBI/DOJ/OMB/DSS/DHS/IRS/FDIC and other defendant government agencies, to include their agents, representatives, contractors, and defendant public and private corporations, private companies and individuals, to include their agents, representatives, contractors, acting both in their own interest and/or under "color of law", and a number of individuals have **already disseminated, verbally, electronically, and in hard copy, inaccurate information from John Connolly (and others)'s, Privacy Act System of Records to a number of government contractors that had hired John Connolly (and others) which, as a result, led to the termination of employments, termination of contracts, and rescission of the employment offers due to alleged security concerns.. The actions by government agencies and their "business partners" in public and private corporations and companies violated 5 U.S.C. § 552a (e) (6) and other sections of the Privacy Act.**

412. The PBGC/OPM/FBI/DOJ/OMB/DSS/DHS/IRS/FDIC and other defendant government agencies, to include their agents, representatives, contractors, and defendant public and private corporations, private companies and individuals, to include their agents, representatives, contractors, acting both in their own interest and/or under "color of law", and a number of individuals, their employees and officers, to include one or more of the individual defendants, knew or should have known that their actions were improper, unlawful and/or in violation of the Privacy Act.

413. The PBGC/OPM/FBI/DOJ/OMB/DSS/DHS/IRS/FDIC and other defendant government agencies, to include their agents, representatives, contractors, and defendant public and private corporations, private companies and individuals, to include their agents, representatives, contractors, acting both in their own interest and/or under "color of law", and a number of individuals, their employees and officers, to include one or more of the individual defendants, acted intentionally or willfully in violation of John Connolly (and others)'s privacy rights.

414. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

## NINTH CAUSE OF ACTION (FIFTH AMENDMENT LIBERTY INTEREST)

415. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

416. **PBGC -** On or about October 20, 2005, John Connolly (and others) entered into an employment relationship with the Pension Benefit Guaranty Corporation (PBGC), as an employee fully possessive of all constitutional, statutory and regulatory rights as any other PBGC federal employee (full time, part time, career appointment, political appointment, term appointment, probationary employee or non-probationary employee, contractor, applicant or even volunteer), for which he is claiming a stated interest, deprivation of right or benefit, incurrence of any damages and/or violation of any right, statute, regulation or law. This would include, among other things, the usual rights, privileges and benefits that are accorded all individuals including but not limited to those who undergo investigations and are entitled to the full protections of the United States Constitution, and other laws, regulations and statutes of the United States and their political subdivisions.

417. **CMS -** On or about October 2, 2006, John Connolly (and others) entered into an "employment/license" relationship with the **Center for Medicated Services.** As a federal employee, contractor, sub-contractor, career appointee, political appointee, part-time contractor, contract to hire contractor, or even a volunteer, John Connolly (and others) was fully possessive of all constitutional, statutory and regulatory rights as any other individual, for which he is claiming a stated interest, deprivation of any right or benefit, incurrence of any damages and/or violation of any right, statute, regulation or law. The usual rights, privileges and benefits that are accorded all individuals include the rights, unimpeded, to seek, apply for, obtain and maintain gainful employment ("employment/license), regardless of IRS filing category as W2, 1099, LLC or LLP. An individual's rights, duly exercised, in seeking, obtaining and maintaining gainful employment, are not compromised or limited when an individual undergoes any type of investigation. Whether an individual undergoes an investigation for an "employment/license" or a capital crime, he is entitled to the full protections of the United States Constitution, and other laws, regulations and statutes of the United States and their political subdivisions.

418. John Connolly (and others)'s obtained and maintained gainful employment or "employment licenses" relationships either directly as an employee with the government, as was the case with defendant PBGC, as an employee, contractor or subcontractor to defendant government contractors, and as an employee, contractor or subcontractor to defendant public and/or private corporations, private companies and individuals, **who had "hired" or provided other "employment license" to John Connolly (and others) for non-government related work, for approximately fifteen years.**

419. One or more of the defendants will assert John Connolly (and others) was some sort of independent contractor or employee, or sub-contractor, or volunteer whose relationship with the government and/or public and private corporations or private company's, can be terminated at convenience or "at will", and he would not be entitled to any constitutional or statutory rights of due process or rights of appeal or review. One or more of the defendants further claim documentation is in their possession that supports their position but as of the date of filing of this complaint they have refused to reveal the information.

420. The undisclosed and concealed adjudication processes were formed due to adverse investigatory information, and or adverse object algorithm relationships established to data provided by and through the defendants, including but not limited to; Federal Bureau of Investigation (FBI), Defense Security Services (DSS), and/or the Department of Homeland Security (DHS) and/or the Office Of Personnel Management (OPM), Federal Deposit Insurance Corporation (FDIC), Internal Revenue Service (IRS)and other agencies and sources, including all entities acting has their agents, under contract or otherwise, to the respective government agency's involved, including all entities acting has their agents, under contract or otherwise.

421. The PBGC failed to accord John Connolly (and others) any due process and denied him any administrative rights that federal employees in the employ of the PBGC must be provided before their employment is terminated. This included, but was not limited to, the ability to receive notice, to challenge and to correct and/or amend adverse investigatory records and findings. This also included but was not limited to the ability to challenge and appeal a termination based in whole or in part, on information and/or records referencing data and or actions that existed prior to employment.

422. The OPM and other agencies actions and policies failed to accord John Connolly (and others) any due process and denied him any administrative rights that federal employees in the employ of any agency must be provided before their employment is terminated. This included, but was not limited to, the ability to receive notice, to

challenge and to correct and/or amend adverse investigatory records and findings. This also included but was not limited to the ability to challenge and appeal a termination based in whole or in part, on information and/or records referencing data and or actions that existed prior to employment. OPM and other agencies actions and policies created a situation in which John Connolly (and others) lost gainful employment, "employment/license" contracts, as an employee, contractor or subcontractor with over as many as two hundred employers.

423. Up to the date of the filing of this case and continuing, John Connolly (and others) has made numerous efforts to discover, investigate and remedy - administratively address and resolve these issues. In attempting to do so he has incurred **more than $635,000** in expenses that he otherwise would not be responsible for had the FBI/PBGC/OPM/DOJ/DSS/IRS/FDIC/DHS and other government agencies, to include public and private corporations and private companies acting on their own and under color of law in support of government interests, acted lawfully. The aforementioned defendants and bad actors, acted deliberately in egregiously in interfering with John Connolly (and others)'s efforts to find or maintain gainful employment. At no time, despite more than seven hundred of requests, including record request via the Freedom of Information Act, Privacy Act and the Fair Credit Reporting Act, and FACT act has a complete accounting and disclosure of records, to any minimally acceptable standard ever been made. John Connolly (and others) has been deceived and lied to on numerous occasions about the reasons surrounding termination of his "employment/licenses for a period approximating 15 to twenty years. Misrepresentations and deceptions to John Connolly (and others) included deliberate falsification of government records, in violation of agency regulations and criminal statutes.

424. In an effort to correct and amend records John Connolly (and others), over a period of a year and a half made several hundred requests to one or more defendants to obtain records, and a full accounting of record disclosures, to which he is entitled under the Privacy Act, Freedom of Information Act, FACT Act and Fair Credit Reporting Act. All defendant government agencies, to include their agents, representatives, contractors, etc, and public and private corporations and private companies, to include their agents, representatives, contractors, report unresponsive records, with a notable exception of an OPM communication dated February 4, 2008, that was replete with fraudulent entries, was inadequate, incomplete and failed any reasonably acceptable standard of an accounting for disclosures. It is important to note that each agency is responsible, per agency guidelines, per OPM guidelines, per OPM "classified or supplementary guidelines", OMB Circulars, Privacy Act and FCRA statutes for maintaining detailed records on which they base adverse determinations. These documents, should they exist, would be maintained within an applicable Privacy Act System of Records.

425. PBGC - On or about September 28, 2006, John Connolly (and others)'s relationship was formally terminated by the PBGC. At no time, despite multiple requests, including record request via the Freedom of Information Act, Privacy Act and the Fair Credit Reporting Act, has he ever been informed of, or provided with any notice referencing accurate records, his rights or the true reasons of his termination. Quite the opposite actually happened. John Connolly (and others) was deprived of number of very serious due process rights. The deprivation of John Connolly (and others)'s constitutional and civil rights was in violation of laws, rules and regulations, and included violations of criminal statutes. John Connolly (and others) has been deceived and lied to on numerous occasions about the circumstances surrounding termination. Misrepresentations and deceptions to John Connolly (and others) have included deliberate falsification of government records, in violation of agency regulations and criminal statutes.

426. On a number of occasions after terminations of his employment, "employment/license" contracts, regardless of "type" or IRS category, a number of the defendants , and one or more of the individual defendants, has intentionally interfered with John Connolly (and others)'s efforts to obtain and maintain employment in his chosen field of profession with government contractors, particularly by impeding the transfer of his security clearance or by implying derogatory information existed that would preclude the granting of a security clearance and by imparting without providing John Connolly (and others) recourse, knowledge or information, - euphuisms, "secret codes", i.e. "passed over opportunities" which imply he is "damaged goods"

427. One or more of the government contractors attempted to have government agencies and their supporting administrative agencies **DSS, OPM, FBI, DOJ, FDIC, IRS** transfer or renew John Connolly (and others) security clearance. Upon evidence, information and belief, the agencies continued the dissemination of false and defamatory information concerning John Connolly (and others) to the government contractors and additional federal agency, **for the purpose of causing the employer to terminate John Connolly (and others) from his employment contract and/or his "**employment/license" (contract to hire, W2, LLC, 1099, etc) and his ability to seek and/or maintain other

employment. As a result of the defendants' actions, John Do has suffered harm, both financially and with respect to his health.

428. Although John Connolly (and others) was **informed by PBGC and OPM officials, and other government agencies and their "business partners" to include agents, representatives and contractors acting on their behalf,** that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to repeatedly terminate John Connolly (and others)'s, "employment/license", while he was gainfully employed, regardless of type of employment, as a direct employee or contractor of prime contractor or sub contractors. False and adverse information also directly resulted in immediate termination and withdrawal of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, or employee of prime and subcontractors.

429. Although John Connolly (and others) was **informed, repeatedly by Department of Health and Human Services (DHHS) officials, to include agents, representatives and contractors acting on their behalf,** that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to terminate John Connolly (and others)'s, employment/license, regardless of type of employment, as employee or contractor of prime contractor or sub contractors, while he was gainfully employed, "on the job". False and adverse information also directly resulted in the withdrawal and termination of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, and employee of prime and subcontractors.

430. Although John Connolly (and others) was **informed, repeatedly by Department of Transportation (DOT) officials, to include agents, representatives and contractors acting on their behalf,** that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to terminate John Connolly (and others)'s, employment/license, regardless of type of employment; as employee or contractor of prime contractor or sub contractors. False and adverse information also directly resulted in the withdrawal and termination of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, and employee of prime and subcontractors.

431. Although John Connolly (and others) was **informed, repeatedly by numerous defendant government officials, to include defendant agents, representatives and contractors acting on their behalf,** that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to terminate John Connolly (and others), employment/license, regardless of type of employment; as employee or contractor of prime contractor or sub contractors. False and adverse information also directly resulted in the withdrawal and termination of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, and employee of prime and subcontractors.

432. Although John Connolly (and others) was **informed, repeatedly by numerous defendant public and private corporations, private companies and individuals, to include defendant agents, representatives and contractors acting on their behalf, that no security clearance issues, or credit issues existed, or were in their possession, or were reported on and/or were investigated, that would cause a problem,** the government agencies, their contractors were told differently thereby causing them to terminate John Connolly (and others)'s "employment/license", regardless of type of employment; as employee or contractor of prime contractor or sub contractors. False and adverse information also directly resulted in the withdrawal and termination of existing and outstanding offers of "employment/license" as an employee, "contract to hire" employee, contractor, and employee of prime and subcontractors.

433. **The effect of the Defendants actions was to illegally and purposefully stigmatize and seriously harm and injure John Connolly (and others) for life. The defendant's actions, as a practical matter, serve to deny/revoke his security clearance or employment/license ability (possibly for life) without affording him any administrative rights as required by law to challenge such a decision. Their illegal actions were carefully planned and carried out by career senior executive service personal and their subordinating staffs. The results of the horrific damages they caused were foreseeable and entirely predictable, and all but one percent certain.**

434. The defendants participation in **the creation, maintenance and production of secret systems in conjunction with the denial of due process** and the elaborate policies, protocols, procedures and activities of concealment created "secret virtual" "rap sheets" of "passed over opportunities" that included but were not limited to opportunities John Connolly (and others) never knew he had, never knew he had lost, and execution of adverse actions John Connolly (and others) was unaware of, and in which he was never provided due process, and never knew took place. **In each and every circumstance, the illegal assaults, torts, injuries and damages incurred, were entirely predictable, foreseeable and constitute reckless and depraved indifference. Who would want to employ or even interview, an individual who was "passed-over", for several opportunities, in Undisclosed and concealed adjudication processes?**

435. **Each and every time there was an investigation, background check, Undisclosed and concealed adjudication processes, there was a an adverse and negative "status change", imparted into the records of John Connolly (and others)'s "virtual rap sheet"**, that also included numerous and varied, "pass-over" he was also unaware of. Government agencies and their associated defendants, excluding recent regulations, **were required by law to establish (among other failed requirements) finding as the result of the commencement of a suitability determination, action, investigation and/or background check.** With the exception of some identifying information on John Connolly (and others)'s , **each and every single record entry that was made and entries required by law that were failed to be made or recorded (in the thousands) were clear deliberate, premeditated acts of falsification** of records and **falsification of government records**. These fraudulent and illegal acts are in violation of numerous federal, state and local laws, and criminal statutes including Sarbanes-Oxley, Privacy Act, Fair Credit Reporting Act, FACT, Civil Rights Act, Torts Act, and department and agency rules and regulations. The aforementioned statutes provide for the application of serious penalties.

436. The PBGC/OPM/FBI/DOJ/OMB/DSS/DHS/IRS/FDIC and other defendant government agencies, to include their agents, representatives, contractors, and defendant public and private corporations, private companies and individuals, to include their agents, representatives, contractors, acting both in their own interest and/or under "color of law", and a number of individuals, their employees and officers, to include one or more of the individual defendants, <u>dissemination of false information concerning John Connolly (and others), particularly with respect to his security clearance</u> records, employment eligibility, incorrect interpretation of records, incorrect assessment and compilation of investigatory records, incorrect suitability determinations, incorrect suitability actions and required due process procedures, <u>has the same impact as actually denying or revoking his security clearance.</u> <u>However, had either of those events occurred John Connolly (and others) would have been entitled to administrative due process that would have permitted him to challenge the unfavorable determinations. Instead, the defendants purposefully took steps to ensure John Connolly (and others) was and is precluded from pursuing any administrative challenge to the illegal government actions, and the actions of the respective defendant public and private corporations, and individuals, to include their agents, representatives and/or contractors. This is part of a concerted pattern and practice orchestrated and managed by attorneys functioning from the Offices of General Counsels and Inspector Generals for government agencies and in collusion with equivalent counterparts in public and private corporations and private companies to avoid the legal requirements imposed upon it with respect to the denial/revocation of security clearances.</u>

437. **The defendants are <u>not authorized to operate in a manner whereby an individual can be denied "Liberty" without "due process of law" in contravention of the Fifth Amendment.</u>** <u>The lack of "due process rights" accorded to certain individuals who have effectively been denied a security clearance and/or have received adverse actions, and determinations in secret, have deprived John Connolly (and others) of the ability to challenge the accuracy of the evidence upon which the defendants decision rested.</u> **<u>The creation of virtual rap sheets with verdicts of undisclosed and concealed adjudication processes in the form of "passed over" opportunities leaves only a fool for democracy or liberty.</u>**

438. The PBGC/OPM/FBI/DOJ/OMB/DSS/DHS/IRS/FDIC and other defendant government agencies, to include their agents, representatives, contractors, and defendant public and private corporations, private companies and individuals, acting both in their own interest and/or under "color of law", willfully and/or intentionally terminated, and/or **provided the data or support services to terminate** John Connolly (and others)'s "employment/license" relationships with the respective agencies, their contractors, **in a manner that was derogatory to his reputation, and provided him with no recourse to correct records or even be made aware, adverse data existed and/or adverse actions were taken.** Defendants acted recklessly, with knowledge, forethought and purpose, and caused

injuries to John Connolly (and others) which was entirely foreseeable, 100% predictable and 100% avoidable had the defendants acted within the law. The defendants "chose to hurt John Connolly (and others). The defendants, to varying degrees, repeated their violations of law over a period, approximating fifteen to twenty years, and have refused innumerable opportunities to ameliorate damages or comply with the law. Defendant's heinous actions in one single instance, has the potential to irreparably damage an individual for life. Defendant's actions over a period approximating fifteen to twenty years, effectively and irrevocably destroyed John Connolly (and others)'s ability to establish any meaningful security or gainful employment position. The defendant's actions have in fact destroyed John Connolly (and others)'s ability to exercise the rights he is entitled too under the constitution of the United States.

439. The distain and contempt with which these individual attorneys, "Officers Of The Court", serving in credentialed Public Trust Positions hold the law, their oath of office, the United States Constitution, and this Federal Court needs to be addressed – Plaintiff would be honored to make a contributions in this area, and/or be a servant of the court, in any way

440. The defendant's actions, on numerous and documented occasions over a fifteen to twenty year period have excluded John Connolly (and others), from participating in his chosen profession, and in countless other professions. Should John Connolly (and others) apply to work for a federal agency or government contractor or any public and private corporation for a position, the government agencies will disseminate information it maintains about John Connolly (and others)., to include known inaccurate and false information that was illegally complied, in violation of John Connolly (and others)'s constitutional and civil rights, complied in violation of civil and criminal statutes and will adversely impact upon his reputation and any chance for additional employment opportunities. It is already an impossible situation. As a result of defendants willful and illegal actions John Connolly (and others) has been effectively and publicly stigmatized. John Connolly (and others)'s reputation and imparted "status changes" have not only implicated his liberty interests, it has essentially debarred him from ever truly having the ability to fully exercise his constitutional prerogatives.

441. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

## TENTH CAUSE OF ACTION

442. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

443. The Defendants are not permitted, notwithstanding any contractual language to the contrary, to violate John Connolly (and others)'s Constitutional rights, as set forth by the Constitution of the United States.

444. Plaintiff asserts government agencies, officers, employees, and their "business partners" in public and private corporations, private companies, their officers, employees, agents and representatives, all acting under "Color of Law" deliberately failed to obtain the "Consent" of plaintiff John Connolly (and others).

445. The Privacy Act **OF 1974** 5§552a(b)**Conditions of disclosure states** "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or **with the prior written consent of, the individual to whom the record pertains**"

446. One or more of defendant government agencies to include their business partners and other defendants **presented varied legal documents and other binding legal instruments to John Connolly (and others)**, as required by law, statute and regulations, to obtain wavers/authorizations "consenting" to investigations and the release of records that pertained to John Connolly (and others).

447. One or more of the **defendants could not have obtained records, "shared" or conducted investigations** on John Connolly (and others) without varied wavers/authorizations "consented" to by John Connolly (and others).

448. The "consented" **waivers/authorizations, signed by John Connolly (and others) were required by numerous United States laws, agency regulations, rules and procedures at the federal, state and local levels** and including; Privacy Act, Fair Credit Reporting Act, FACT Act and other laws. Each of these laws and statutes, which also applied and relate to government and other entity obligations with respect to, exercise of due care, privacy, appurtenant processes, authorizations, and consent forms addressed due process and other civil rights protections.

449. One or more of the defendants have varied assertations that John Connolly (and others)'s actions in signing the "consent" and/or waiver/authorization forms, **constituted the giving up, signing away, or the compromising of rights** to which he was fully entitled under the United States Constitution and other laws, rules and regulations of the United States, at federal, state and local levels, including treaties.

450. Plaintiff, John Connolly (and others) asserts that the **defendants are not permitted, notwithstanding any contractual language, waivers/authorizations or consent forms, to the contrary, to violate John Connolly (and others)'s rights** to which he is fully entitled under the United States Constitution and other laws, rules and regulations of the United States, at federal, state and local levels, including treaties.

451. The Defendants are not permitted, notwithstanding any contractual language to the contrary, to violate John Connolly (and others)'s Constitutional rights and other rights as provided by federal state and local laws, rules, regulations and statutes.

452. Plaintiff, asserts that **"consent" documents**, defendants had John Connolly (and others) sign, regardless of whether they were waivers/authorizations, "consent" forms, or contractual stipulations, they **in no way diminished his rights**, and to the contrary, plaintiff asserts documents (waivers/authorizations, consent forms etc) **reasserted, and fully reaffirmed**, either by direct language or implication due to mandatory legal requirements, all rights to which John Connolly (and others) was fully entitled under the United States Constitution and other laws, rules and regulations of the United States.

453. Plaintiff asserts that each of the **"consent" documents**, wavers/authorizations reasserted, and fully **reaffirmed, John Connolly (and others)'s constitutional and other legal and civil rights**, because congress and other legal legislative, judicial and jurisdictional entitles, mandated the inclusion of specific language and/or processes in the **laws governing these consent forms and/or follow-on processes** and obligations and liabilities, to provide assurance that constitutional and other civil rights protections, laws rules and regulations, including Due-Process protections would not be compromised and would be addressed in a manor befitting an individual like John Connolly (and others) who was and still is, fully entitled to the full protections of the United States Constitution.

454. Plaintiff asserts, **virtually all consent documents**, regardless of how defined, (i.e. waiver/authorizations, agreements) or the vehicle used to obtain John Connolly (and others)'s permission, including but not limited to waiver forms, contract addendum or job application clauses, etc, constituted documents on which and for which deliberate **fraudulent misrepresentations were used and/or made in obtaining John Connolly (and others)'s consent**/authorization and or signature.

455. The defendants **"consent documents"** which were obtained from John Connolly (and others) with deliberate fraudulent misrepresentations on the part of one or more of the defendants, included but were not limited to documents of consent, waivers, authorizations, contract clauses/addendums and notification type documents and other legal instruments and obligations required under federal, state and local laws, rules, regulations, contracts and statutes to **include forms referencing, but not limited to the Privacy Act (PA), Fair Credit Reporting Act (FCRA), Fair Accurate Credit Transactions Act (FACT), Sarbanes Oxley Act (SOA), Civil Rights Act (CRA).**

456. Consent documents signed by John Connolly (and others) constituted fraudulent misrepresentations of material and pertinent facts deliberately concealed from consenter John Connolly (and others) by one or more

defendant government agencies, business partners and/or other defendants, acting either in their own interest and/or under "color of law". Consent needs to be informed. There was no informed consent.

457. **John Connolly (and others) never consented to giving up his constitutional rights to Due Process.**

- John Connolly (and others), never consented to giving up his rights to the requirements of the Code of Federal Regulations (CFR) Title 28, Section 50.12,and similar regulations, which requires individuals to be afforded the "OPPORTUNITY TO COMPLETE OR CHALLENGE THE ACCURACY OF THE INFORMATION"

- John Connolly (and others), never consented to giving up his right to the requirements of the Code of Federal Regulations (CFR) Title 28, Section 50.12, and other similar regulations which requires that "THE DECIDING OFFICIAL SHOULD NOT DENY THE LICENSE OR EMPLOYMENT BASED ON THE INFORMATION IN THE RECORD UNTIL THE APPLICANT HAD BEEN AFFORDED A REASONABLE TIME TO CORRECT OR COMPLETE THE INFORMATION".

- John Connolly (and others) never consented to giving up his right to gainful employment regardless of how it is defined, or how the IRS categorizes gainful employment to be an "employee, employment/license, contractor, sub-contractor, W2, 1099, LLC etc. John Connolly (and others) never consented to giving up his right to gainful employment, repeatedly over a period approximating fifteen to twenty years.

- John Connolly (and others) never consented to giving up numerous rights to which he was entitled by law under the Fair Credit Reporting Act, the Privacy Act, the FACT Act, the Civil Rights Act or the United States Constitution in addition to protections and rights afforded under other federal and state laws and agency regulations

458. **Plaintiff asserts there was no constructive consent on the part of John Connolly (and others).** John Connolly (and others) could not possibly have had adverse information associated with his record and not have been informed of it by the government in almost twenty years and more than a decade and a half of signing government releases and consent forms. No one would believe such a thing could ever happen in the United States.

459. **Plaintiff asserts - No legal consent was provided. Consent, to one degree or another, needs to be informed.** A person providing consent needs to know what he is consenting to. A person cannot be deemed to have given informed consent when information upon which an appreciation and understanding of the facts are purposefully and willfully concealed. When there is intent to misrepresent, commit fraud, criminal fraud and other tortuous acts, consent is not provided. Consent, informed or otherwise was clearly not provided, in any and all instances.

460. Plaintiff asserts there was no consent - An **individual needs to be in possession of relevant facts** and also of his reasoning faculties, and be without an impairment of judgment at the time of consenting. In cases where an individual is provided limited facts, serious ethical issues arise. **When an individual is deliberately deceived and the impartment and comprehension of relevant issues is purposely concealed, true consent was never achieved, and could never be sustained.** Under deceptive circumstances, of a material nature, each state provides for statutes that would invalidate and retroactively void assertations of informed consent. No informed consent can be asserted or inferred under the circumstances of the facts being presented. There is no legal right to cause injury of such a grievous nature. There was absolutely no legitimate, valid reason or public interest served in the misrepresentation, deceptions and fraud used, to obtain a 'signed' consent form. The negligence and battery relationship to causation, exhibited a degree of care that can only be characterized as reckless and depraved indifference.

461. Most states have **laws which criminalize misrepresentations, deceptions and fraud** under the circumstances of similar fact patterns to John Connolly (and others). John Connolly (and others) is asserting that the damages are major and material and will establish by a preponderance of the evidence that losses are significant, considerable and catastrophic. John Connolly (and others) would have responded differently if he had the complete facts. Officials making adverse employment license decisions may make different determinations, especially if they find out that the data is wrong. Consent, under these circumstances is treated as vitiated by the dishonesty of the

person, persons or organizations making untrue, false representations or deliberately concealing material facts and relevant information. Knowledge, information and facts are material and relevant, if, had the individual been made aware of the knowledge, information or facts they would not have proceeded with or would have modified any course of action.

462. **If John Connolly (and others) were apprised of any of the true facts**, there would never have been any consent. **If John Connolly (and others) had been apprised or informed of any of the true facts, John Connolly (and others) would not have repeatedly incurred the same damages over and over again for a period approximating 15 to 20 years, destroying himself and his family.** If John Connolly (and others) had been apprised of the facts he would have inflicted the pain and suffering on his wife, children, family, friends and business associates for perhaps as long as a generation. If John Connolly (and others) had been apprised of the facts he could have conducted his life and business affairs in a manor that would not have conflicted with government corruption initiatives. If John Connolly (and others) had been apprised of the facts he could have corrected the errors. If John Connolly (and others) had been apprised of the facts he may not have a need for the serious and material medical care he is currently undergoing.

463. One or more of the defendants did not obtain John Connolly (and others)'s "informed" consent and/or obtained consent falsely through fraudulent representations and deliberate misrepresentations and thereby violated § **552a (b) disclosure, which requires the "prior written consent of, the individual to whom the record pertains".**

464. The Defendants are not permitted, notwithstanding any contractual language to the contrary, to violate John Connolly (and others)'s Constitutional rights and other rights as provided by federal state and local laws, rules, regulations and statutes.

465. One or more of the defendants deliberately exercised reckless and depraved indifference, in their treatment of and harm to John Connolly (and others). These actions constituted deliberate and willful civil and/or criminal violations of law, with intent to harm.

466. One or more of the Defendants conspicuous illegal and determined actions, in supporting initiatives, processes and systems to violate the law is only matched by their lack of initiative to enforce the law, budget or plan for due-process. These defendants knew and/or should have known the actions and treatment of John Connolly (and others) were illegal. These defendants spent billions in illegally funding (un-appropriated funds) programs to violate the law, and no additional funding to assure due process.

467. Plaintiff asserts, that in addition to aforementioned and repeated misrepresentations (all paragraphs in complaint re-alleged), made to John Connolly (and others) in obtaining varied consents, authorizations, notifications, etc, one or more of the defendants provided, facilitated, authorized, certified or permitted frequent and deliberate **fraudulent misrepresentations of official government statements, reports, findings** and other documents, **to include testimony** (including testimony to congress) required by and/or provided under law and on which false actions and/or **misrepresentations were made to John Connolly (and others), who was materially and adversely impacted**. The false misrepresentations and actions by one or more of the defendants included actions, that were capricious, an abuse of discretion, contrary to constitutional right, power, privilege, or immunity, in excess of statutory jurisdiction, authority, or limitations, short of statutory right, without observance of procedure required by law, unsupported by substantial evidence and unwarranted by the facts.

468. Plaintiff asserts that the Privacy Act consent documents (waivers/authorizations/contract stipulations etc) obtained by government agencies and public and private corporations, their agents and representatives over from John Connolly (and others) over a period approximating 15 to 20 years was fraudulently obtained with clearly deliberate and misleading misrepresentations.

469. Plaintiff asserts any and all these and similar authorization or waiver documents that may exist, that were obtained from John Connolly (and others) as or for an "employment/license" as employee, contract to employee, contractor, subcontractor, job applicant, volunteer to conduct investigations and data gathering, to validate, store, hold or maintain data, are wholly fraudulent documents in every respect.

470. Every entity in country under the varied statutes of Privacy Act, FCRA and many other laws has to report/inform individuals of adverse actions when they base such actions on adverse information obtained from reporting repositories. The government charged with enforcing these laws, cannot be violating these laws and be illegally exempting themselves (as a matter policy) and their "business partners", public and private corporations and private companies from compliance with the laws and thus adversely impacting John Connolly (and others).

471. Plaintiff asserts that one or more of defendants actions in obtaining consent were clear deliberate and premeditated fraudulent misrepresentation from the outset. These actions violate the statutes of frauds and other laws and as a result all government and their business partners claims to have obtained consent are false and **violate 5 U.S.C. § 552a (b) Conditions of disclosure, because results (false and erroneous results qualify) were not "obtained with the prior written consent of, the individual to whom the record pertains", and a resulting civil (& possibly criminal) violation results in each and every instance of consent.** Any other benefit accruing to bad actors as a result should be vitiated, and to the degree appropriate or necessary, benefit injured plaintiff John Connolly (and others).

472. Plaintiff asserts that documents of consents, including waivers, clauses in contracts etc, should not just be vitiated but should warrant a civil violation. It is not our view that the Privacy Act is not valid. The deliberate and egregious actions of the bad actors warrant the civil violations in each and every instance. Plaintiff asserts that there is a relationship between facts presented and past court actions including the U.S. Supreme Court and the Federal Circuit, which have recognized a relevant principle in cases involving enforceability of waivers, finding that a waiver is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement

473. Plaintiff asserts, consent documents, regardless of how they are defined, waivers/authorizations, consent forms (including contract stipulations), are essentially contracts and include all the basic and legal elements of contracts, including offer, acceptance, consideration and terms. Many of the elements and required processes included in these varied waivers/authorizations and consent forms are mandated by law, statute, regulations etc, and can thus be imputed if lacking in the agreement.

474. **THE PRIVACY ACT OF 1974 5 U.S.C. § 552a (As Amended) (b) Conditions of disclosure**
5 U.S.C. § 552a (b) "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or **with the prior written consent of, the individual to whom the record pertains**, unless disclosure of the record would be—"

475. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

## ELEVENTH CAUSE OF ACTION

476. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

477. Plaintiff asserts one or more of defendants obtained illegal dissemination of records. One or more of the Defendants committed thousands of illegal transactional disclosures and violated § 552a(b) Conditions of disclosure, by obtaining, sending, receiving, managing, adjudicating, and archiving data and adverse information while operating under a known illegal mandate of concealment from John Connolly (and others).

478. In accordance Privacy Act, Fair Credit Reporting Act, FACT Act and other laws and regulations (all paragraphs in complaint reasserted and re-alleged), in addition to torts, frauds, contract law, and based on evidence, information and belief, plaintiff asserts their was **clear fraud with criminal intent to harm John Connolly (and others). Defendant government agencies, their business partners and other defendants, acting either in their**

**own interest and/or under "color of law", deliberately intended to cause John Connolly (and others) grievous harm. Plaintiff takes the position that all disclosures, each and every disclosure concealed from John Connolly (and others) who was adversely impacted over a period approximating 15 to 20 years was an** illegal disclosure. The horrific damages wrought and inflicted on John Connolly (and others) were known by defendants in advance. The Defendants actions were conducted with deliberate malice and forethought and with the knowledge and purpose of violating, John Connolly (and others)'s individual, constitutional and civil rights. The participation by each party in these illegal activities to the degree that they were aware of these illegal activities, and/or should have known of these illegal activities, each dissemination of data constitute a criminal disclosures, under the privacy act, in addition to the civil violations for data obtainer, data sender, data receiver, datastorer, data adjudicator, data terminator, and/or data facilitator.

479. Plaintiff asserts One or more of the defendants made hundreds of illegal disclosures (presented in attached table of evidence – see discovery) that were not reflections of lapses in judgment or a policy gone astray. The illegal disclosures are manifestations of the circumventing of agency written policy and law by executing alternative, illegal policies, both written and verbal; the defendant's actions demonstrate a depraved indifference for the health, safety and welfare of John Connolly (and others), and other impacted third parties.

480. Plaintiff asserts the degree of depravity exercised by one or more of the defendants was and is reckless and purposeful to the point of constituting 'criminal' disclosures. Based on evidence, information and belief, it is our argument that each disclosure represents a civil as well as a criminal violation of the Privacy Act and other constitutional and civil rights laws, rules, regulations and statutes.

481. The constant theme in each and every single class of disclosure 'experienced' is the non-disclosure to John Connolly (and others). The time effort, money and unauthorized expenditures of funds our trusted public servants have invested in obtaining and ensuring the results for John Connolly (and others), and concealment of the illegal efforts and activities, to retaliate against him, should not be readily dismissed.

482. One or more of the defendants deliberately exercised reckless and depraved indifference, in their treatment of and harm to John Connolly (and others). These actions constituted civil and/or criminal violations of law.

483. One or more of the Defendants conspicuous illegal and determined actions, in violating John Connolly (and others)'s rights by supporting initiatives, processes and systems to violate the law was also matched by their illegal actions in deliberately and selectively failing to enforce the law, and providing immunities and protections from criminal and civil liabilities for violating the law. While one or more of the defendants funded these various programs illegally, they deliberately violated their responsibility and oath of office by not budgeting for due process or accurate records where poor data quality are known industry standards. These defendants knew and/or should have known the actions and treatment of John Connolly (and others) were illegal.

484. **One or more of the Defendants committed thousands of illegal transactional disclosures and violated § 552a(b) Conditions of disclosure, by obtaining, sending, receiving, managing, adjudicating, and archiving data and adverse information while operating under a known illegal mandate of concealment, which was pervasive constraint and operational guideline at all levels of management, in all actions, with the deliberate intent and ultimate goal of denying John Connolly (and others) his constitutional rights to which he was fully entitled under the United States Constitution and other laws of the United States including the Privacy Act.**

485. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

## TWELTH CAUSE OF ACTION

486. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

487. **One or more of the defendants will assert that they and their government "business partners" representing public and private corporations and other defendants are entitled to disclosure of records under 552a (b) (1), (3), because they need records in performance of their duties and under routine use as officers and employees.**

488. The plaintiff asserts that this "use" section whose purpose can be gleamed from legislative intent is referring to Federal employees and/or government contractors that have been specifically tasked & contracted with to manage the Agencies security or system of record functions. The contention that every federal manager or senior executive needs to know all the facts about an individual because they are responsible, familiar with the work and best qualified to make a suitability decision is wishful thinking, pure fiction, patently false, and contrary to initial and a long established policy, with few exceptions, by all government agencies, recent lapses over the last ten years, not withstanding.

489. Plaintiff asserts OPM and DSS/FBI and other agencies regulations and guidelines published up though 1999, clearly establish that private sensitive data used in employment, "employment/license" determinations should leave an agencies security office only in exceptional circumstances. There is case president and documents that defines "those employees of the agency which maintains the record who have a need for the record." The case definition Doe's not apply or sanction the wholesale dissemination of privacy act and/or personnel data, to be vetted by individuals who are not qualified in making assessments of data.

490. The fact of the matter is that offering supervisory GS14's, GS15's and all senior executives a peak into everyone's private and personal life history is not only a **violation of this section of the Privacy Act, it is a powerfully titillating sales tool and is assisting in the sales of 'dick tracy" shared service offerings for government agencies and private corporations.** We may think we are on the cutting edge of technology, however, privacy data of this very exact, same and sensitive value, has existed for generations in private companies and public corporations as well as government entities. The difference of past generational and best practices approaches, centered on values and integrity. In the past any inappropriate disclosures outside of security or human resources, of such highly personal information, resulted in personal actions demonstrating a zero tolerance policy. Personal actions for inappropriate disclosures were immediate, and unequivocal, and usually included an escort to the door. Prior to the intense competition of the last decade, many if not most senior managers were not even privy to direct knowledge of a subordinate's income. Even today, in the private sector, the disclosure of so much as an individual's bonus may result in a terminable offence.

491. One or more of the defendants provided data on John Connolly (and others) that was, inaccurate, misleading, untimely, irrelevant. Data was also assessed and complied incorrectly. Furthermore, if certain data provided had been entirely accurate, or conversely 1% accurate, it would have been in violation of numerous New York State legal statutes, the NYS constitution and federal laws and regulations to report on. Therefore, no officer or employee of any agency had any need, and certainly no obligation to maintain such a record, and continuously report on such records while deliberately denying due process to John Connolly (and others). The maintenance of such records was not in performance of their duties. The maintenance of such records, are in fact an example of the total dereliction of duty and a violation of law by the officers and employees involved. The individuals in Public Trust Positions were specifically charged with keeping data that was accurate, timely and relevant. The individuals involved knew what they were doing. The individuals involved were highly trained professionals. The determinations of these individuals to repeatedly violate the law and to conceal their violations over many years, is an indication of the premeditation, willful, deliberateness to retaliate against and cause harm to John Connolly (and others).

492. Data one or more of the defendants provided was inaccurate, untimely and not relevant for any purpose. The data provided was not only illegal, it was false inaccurate, untimely, and not relevant to any situation. No officer or employee of any agency had any need or business reason to maintain such records. The maintenance of such records was not in performance of their duties. The maintenance of such records, were in fact an example of defendants total dereliction of duty and a violation of law. The determinations of these individuals to violate the law were

premeditated, willful, deliberate, and executed with a degree of care, worthy of the vast sums of illegal (un-appropriated) funds expended to support corruption initiatives.

493. One or more of the Defendants conspicuous illegal and determined actions, in violating John Connolly (and others)'s rights by supporting initiatives, processes and systems to violate the law was also matched by their illegal actions in deliberately and selectively failing to enforce the law, and providing immunities and protections from criminal and civil liabilities for violating the law. While one or more of the defendants funded these various programs illegally, they deliberately violated their responsibility and oath of office by not budgeting for due process or accurate records where poor data quality are known industry standards. These defendants knew and/or should have known the actions and treatment of John Connolly (and others) were illegal.

494. **One or more of the Defendants committed thousands of illegal transactional disclosures and violated § 552a(b) Conditions of disclosure, by obtaining, sending, receiving, managing, adjudicating, and archiving data and adverse information while operating under a known illegal mandate of concealment, which was pervasive constraint and operational guideline at all levels of management, in all actions, with the deliberate intent and ultimate goal of denying John Connolly (and others) his constitutional rights to which he was fully entitled under the United States Constitution and other laws of the United States including the Privacy Act.**

495. The defendant government agencies and their business partners, and other defendants, are acting in violation of law in maintaining these illegal elaborate systems of secret protocols, business process and have deliberately violated and adversely impacted John Connolly (and others)'s constitutional and civil right.

496. Whether by error or design, a "routine use" with respect to John Connolly (and others) has migrated itself into the establishment and maintaining of secret records on John Connolly (and others).

497. If the purpose of the system, process, policy or procedure with respect to records on John Connolly (and others) is not disclosed in the Federal Register, and the non-disclosure is willful, with knowledge, it is by any definition of this statute a criminal violation.

498. Based on the arguments, reasoning and legal standards presented above plaintiff believes defendants are in clear violation of PRIVACY ACT OF 1974 5 U.S.C. § 552a)1) in that individual defendants did not qualify for a disclosure or use of records in "performance of their duties" or as a "routine use"; and (3) for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of PA this section. If the defendants had any claim to legitimate "use" authorities in this area, their actions have vitiated that claim or right. Plaintiff asserts defendant's actions and the court should not support "use" assertions by defendants with respect to John Connolly (and others). Plaintiff asserts defendants "use" and abuse places them in violation of **552a (1), (3), and (a) (7), (e) (4) (D) and other sections and laws as the court may so determine.**

499. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

## THIRTEENTH CAUSE OF ACTION

500. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

501. Privacy Act section § 552a (b)(2) includes disclosures which are "Required under section 552 of this title"

502. The plaintiff prays the court reviews this section of violations under the Privacy Act, after a comprehensive review of the evidence presented. A determination on whether the governments actions were oversight or the result of deliberate and organized tortuous and criminal acts, will affect violations that should accrue bad actors.

503. Based on evidence, information and belief, defendant's actions were not the result of mistakes or errors of mass confusion, and/or lack of understanding with OPM shared service offerings. If the case and evidence are reviewed in a comprehensive fashion, it will be clearly evident that the violations of John Connolly (and others)'s constitutional and civil rights protections and violations of other laws, rules, and regulations are the end result or byproduct of deliberate and extensive efforts. The deliberate depravation of John Connolly (and others)'s constitutional and civil rights, in violation of law, encompassed significant and material time and resources,

504. John Connolly (and others) made several hundred requests for information to one or more of the defendants, under the Freedom of Information Act, FACT Act, Fair Credit Reporting Act and the Privacy Act. There were approximately two hundred certified mailings (see tables – discovery), return receipt requested from government agencies and other defendants. Each one of those mailings fully complied with the provisions of the Freedom of Information Act FACT Act, Fair Credit Reporting Act and the Privacy Act. Each one of those mailings provided for the conditions of disclosure which were "required under section U.S.C. § 552a (b) (2)", and which each agency deliberately failed to honor, in violation of the Privacy Act, section cited. **Under the Privacy Act an agency also has particular responsibility to maintain all records on which they may make or base an adverse determination, for the life of the record or five years after the last dissemination.**

One or more of the defendants violated **disclosure which were "required under section U.S.C. § 552a (b) (2)".**

505. Plaintiff asserts each and every individual instance one or more of defendants terminated John Connolly (and others), an employment/license (hundreds – see discovery table), he was required by law to be informed. Each and every time John Connolly (and others)'s employment/license was terminated over a period approximating fifteen to twenty years, the government defendants, and their "business partners", in public and private corporations and companies violated the privacy because they deliberately, with purpose and intent to harm, failed to make proper disclosures to John Connolly (and others) as is a condition of disclosure as "required under section U.S.C. § 552a(b)(2)and other sections and which each agency deliberately failed to honor, in violation of the Privacy Act, section cited.

506. Plaintiff asserts each and every individual instance one or more of defendants denied/withdrew/dishonored John Connolly (and others)'s, an employment/license (hundreds – see discovery table), he was required by law to be informed. Each and every time John Connolly (and others) was denied/withdrew/dishonored of an employment/license over a period approximating fifteen to twenty years, the government defendants, and their "business partners", in public and private corporations and companies violated the privacy because they deliberately, with purpose and intent to harm, failed to make proper disclosures to John Connolly (and others) as is a condition of disclosure as "required under section U.S.C. § 552a(b)(2)and other sections and which each agency deliberately failed to honor, in violation of the Privacy Act, section cited.

507. Plaintiff asserts each and every individual instance one or more of defendants failed to comply with John Connolly (and others)'s request for records, under the Privacy Act, Fair Credit Reporting Act, FACT Act and other laws (hundreds – see discovery table), he was required by law to be provided with this information. Each and every time defendants failed to comply with the records request constituted a violation of required disclosures. Government defendants, and their "business partners", in public and private corporations and companies violated the privacy because they deliberately, with purpose and intent to harm, failed to comply with the record requests and to make proper disclosures to John Connolly (and others) as is a condition of disclosure as "required under section U.S.C. § 552a (b) (2) and other sections and which each agency deliberately failed to honor, in violation of the Privacy Act, section cited.

508. Under the Privacy Act, and other laws and regulations (including OPM supplementary regulations) an agency also has particular responsibility to maintain all records on which they may make or base an adverse determination, for the life of the record or five years after the last dissemination.

509. One or more of the defendants failed to inform John Connolly (and others) when he was denied an employment license, in violation as "required under section U.S.C. § 552a (b)" (2),

510. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**FOURTEENTH CAUSE OF ACTION**

511. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

512. Plaintiff asserts that one or more defendants failed to make disclosure despite pleadings of John Connolly (and others)'s under U.S.C. § 552a (b)(2)(8)of the privacy act **"(8)** to a person pursuant to a showing of compelling circumstances affecting the health or safety of an individual if upon such disclosure notification is transmitted to the last known address of such individual;"

513. Defendant John Connolly (and others) initiated several hundred requests for information. Each and every agencies General Council, Inspector General and privacy act officers and other were informed of the specific and dire circumstances impacting the "health, safety and welfare" of John Connolly (and others), both verbally and by numerous certified mailings. The clear and important point to keep in mind is the determination to violate constitutional and civil rights of John Connolly (and others) was not a mere error, it was a matter of a predefined policy and retaliation initiated and maintained by attorneys with an expertise in the constitutional and civil rights area. These bad actors, with deliberate intent took actions to adversely impact John Connolly (and others)'s health and safety. While informing them of their successful actions were not about to result in a disclosure required or provided for in the privacy act, it should result in violations.

514. The agencies were contacted by certified mail (return receipt requested). IN total there were more than seven hundred separate mailings, citing the privacy act, FCRA, FACT Act, FOIA, Civil Rights Act and the US Constitution. Each of the government attorneys was provided with a complete copy of D.C. and/or Maryland Rules of Professional Conduct for attorneys, sent in certified separate mailings in addition to hundreds of phone conversations, each agency was made aware of the true, dire and compelling circumstances, in detail, adversely impacting the "health, safety and welfare" of John Connolly (and others) and his family. The General Councils and Inspector Generals at each of these agencies, was keenly aware of the "liberty" interests, and consequently the life and limb issues involved, not only based on an analysis of the subject matter, but because they were specifically told numerous times. Each and every request to provide the information based on FOIA and the Privacy Act, and other laws pursuant to a showing of compelling circumstances was denied and/or ignored. (See Letters on compelling circumstances – table discovery)

515. **Defendants in deliberately failing to respond to John Connolly (and others)'s specific and repeated requests for information that he was entitled to receive under the privacy act, and specifically after certified mailings indicating his dire situation and "compelling circumstances", impacting health safety and welfare issues was a violation of John Connolly (and others)'s Privacy. The actions the defendants took in violating John Connolly (and others)'s privacy rights was deliberate and intended to harm John Connolly (and others), from the outset. Defendants violated** U.S.C. § 552a (b)(2)(8)of the privacy act in failing to respond to John Connolly (and others) after showing compelling circumstances affecting his health safety and welfare.

516. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**FIFTEENTH CAUSE OF ACTION –**
**Accounting of Certain Disclosures -U.S.C. § 552a (C) (1) (a) (b)**

517. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

518. The courts findings on behalf of plaintiff or defendants with respect to subsections "(b) (1) or (b) (2)", for those having "a need for the record in performance of their duties", notwithstanding. John Connolly (and others) submitted hundreds of detailed requests and specifications, over the last year and half in full compliance with the laws pertaining to FOIA, the Privacy Act and the Fair Credit Reporting Act, FACT Act, to which the above referenced exemption to those who have a need for the record in performance of their duties, would not apply.

519. Plaintiff again asserts that Defendants disclosures were not in accordance with 'performance of their duties' as provided for in exception (b)(1) or (b)(2) of section (c) Accounting of Certain Disclosures. Moreover, because the disclosures were not an authorized (no consent), appropriate or routine use, an accurate accounting **must be provided for all disclosures including internal agency or department disclosures that will comply with details of section C 1(A) the date, nature, and purpose of each disclosure of a record to any person or to another agency made under subsection (b) of this section; and C 1 (B) the name and address of the person or agency to whom the disclosure is made;**

520. Plaintiff argues that if the court finds that there was truly "No consent" and that the resulting disclosures, which were illegally kept from the defendant John Connolly (and others), by government agencies, their business partners and other defendants, were "as matter of policy", in violation of constitutional protections and other laws, than **plaintiff prays the court should find that there is no exception of the required accounting for records for government employees or their agents, "who have a need for the record in performance of their duties."** Plaintiff prays the court clearly sees and finds that these individuals were not only failing to perform their duties but they were acting in direct contravention of their sworn oath of office, **and as a result the court would require the detailed accounting of records within each agency that plaintiff has been requesting for the last year and a half.** Individuals working with the government from public and private corporations also serve in credentialed "Public Trust" positions.

521. Defendant John Connolly (and others) made more than seven hundred requests, 200 via certified mail under the FOIA, Privacy Act, and the Fair Credit Reporting act for detailed accounting of each and every disclosure **(see appendix – PA/FOIA/FCRA Letters - discovery).** For the several hundred illegal disclosures made he was provided with an accounting of approximately 10 disclosures. None of the disclosures provided to John Connolly (and others) included an accounting of records and disclosures made to public and private corporations and other entities and the names of individuals representing those public and private corporations. **The Department of Justices, Federal Bureau of Investigation which originally supplied these incorrect records to agencies, public and private corporation, refuses to provide any accounting for a disclosure of records, to John Connolly (and others). The Federal Bureau of Investigation has disseminated these records to hundreds of agencies, public and private corporations, and at this point seeks a list of business John Connolly (and others) was associated with, prior to releasing any information. The FBI's purpose is to mitigate their (and their business partners), legal and criminal liability.**

522. In refusing to provide **and in deliberately failing to respond to John Connolly (and others)'s specific and repeated requests for an accounting of disclosures to which he was entitled to receive under the privacy act, the defendants actions deliberately violated John Connolly (and others)'s privacy rights with deliberate intention to harm John Connolly (and others), Defendants violated** U.S.C. § 552a U.S.C. § 552a (C) (1) (a) (b) of the privacy act in failing to provide an accounting of disclosures. This accounting of disclosures would have also clearly enabled John Connolly (and others) to correct the records, and mitigate damages to other third parties.

523. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no

possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**SIXTEENTH CAUSE OF ACTION**
**Accounting of Certain Disclosures Five years or the life of the record, whichever is longer?**
**U.S.C. § 552a (C) (2) (2) (1)**

524. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

525. Defendant government agencies and their business partners and other defendants, do maintain their own records (secret), which their **legal councils have "opinionated", in order to circumvent constitutional and civil rights due process protections,** that the records are exempt from disclosures under two general propositions. The first justification is that records referencing internal personal practices, policies and procedures are exempt from disclosure and systems of records notices. The second popular proposition is that the records are exempt because they are part of 'law enforcement' functions and are of an "investigatory" nature. Disclosing records of the latter could of course compromise investigations and jeopardize the lives of innocent individuals.

526. Plaintiff requests the court take a realistic and holistic view of all allegations made and evidence provided. The courts finding in this area, particularly with respect to exemptions for records maintained by attorneys, or for law enforcement and investigatory purposes is possibly the most significant and consequential determination that may impact the overall outcome of the case presented, and John Connolly (and others)'s rights to which he is fully entitled under constitutional and other laws rules and regulations.

527. The substance of what is taking place is the violation of John Connolly (and others)'s constitutional and civil rights, involving violations of criminal statutes by attorneys in government agencies including, DOJ, FBI, OPM, DSS,DHS and attorneys representing private commercial interests of public and private corporations and other entities. This is all taking place with the support and protection of Inspector Generals, who are serving in an operational capacity. The basis and use of these "intelligence" systems, processes and functions is to facilitate and be a strong influencer and "support tool" in promoting, protecting and maintaining, illicit programs and corruption initiatives, that require "finessing" of human resources without the need to be concerned with John Connolly (and others)'s due process, there is no "Due Process".

528. The Privacy Acts, congressional intent and judicial president make it very clear these records are not exempt, should be included in "System of Record", and said record "history" should be provided in any accounting of disclosures. Requests for these disclosures were included in hundreds communications by John Connolly (and others) with defendants. There are more than 700 mailings, including 200 certified requests that have been submitted to government agencies requesting an "accounting of these disclosures" **Each agency is required by(c) (2) to retain the accounting of (1) of records for at least five years or the live of the record, whichever is longer,** after the disclosure for which the accounting is made; John Connolly (and others) has been illegally denied an accounting of the requested information for more than one and a half years. Records relevant to John Connolly (and others)'s request exist or existed going back approximately 20 years.

529. The defendants have clearly and deliberately violated John Connolly (and others)'s privacy, section **U.S.C. § 552a (C) (2) (2) (1), and sections and laws as the court may so find.**

530. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**SEVENTHEENTH CAUSE OF ACTION**
**Accounting of Certain Disclosures available to the individual named in the record at his request;" correction or notation of dispute U.S.C. § 552a (C) (3) (c) (4) 9 (d)**

531. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

532. Plaintiff efforts at correction of records and/or ability to record "notation of disputes" were deliberately frustrated and denied by defendants. Plaintiff's efforts (table & appendixes – see discovery) includes more than 700 letters of requests including 200 made by certified mail to obtain an accounting of records. With the exception of a partial incomplete group of records, provided by the Office of Personal Management, all record requests have been refused. The records provided by OPM include hundreds deliberately fraudulent and willfully falsified record entries. Every time John Connolly (and others) was denied employment license an appropriate, accurate, and true reference should have been made in the records. The evidence presented, and allegation asserted, clearly indicate that has a matter of policy and practice, John Connolly (and others) was not permitted to be informed of adverse information. The partial list of evidence included (see discovery) was carefully selected to provide an overall picture of the deprivation of John Connolly (and others)'s constitutional and civil rights at federal, state and local levels. The deprivation of John Connolly (and others)'s rights involved government defendants, working in conjunction with public and private corporations to circumvent internal controls, with and through the support of public auditing firm, right on up through the Inspector General Audits, and the Inspector General. John Connolly (and others) never had a chance.

533. John Connolly (and others) has made attempts for over a year to obtain the disclosures he was entitled to, and the agencies are required by statute to provide per section C (3) of the privacy act which states that the accounting made under paragraph (1) be provided to the individual named in the record at his request;

534. **Defendants are in violation of U.S.C. § 552a(C)(3)(c)(4)9(d) and section (1)**

535. A review of all evidence, deliverables and collateral being submitted for review by the court will provide a clear, convincing and indisputable snap shot of the willful, systematic and systemic civil rights violations that have adversely impacted John Connolly (and others) and include violations of criminal statutes. **In violation of section C (4) of the Privacy Act, government concealment activities with respect to records management on John Connolly (and others) were and are clearly designed to 'not inform', and/or in fact misinform, John Connolly (and others) about adverse data and even the existence of adverse data and or adverse actions.** These reckless and deliberate concealment activities would of course result in the denial of due process. When all instruments of government agencies and public and private corporations operating within the constructs of covertly denying John Connolly (and others) due process with respect to employment license (in addition to many other areas), they are also **denying John Connolly (and others) the right to make "any correction or notation of dispute".** These practices and retaliation initiatives at an agency level are effectively supported and enforced by agencies with oversight responsibility and interagency groups of functional bad actors. Their practices and policies of concealment and denial of due process, effectively circumvent the required and mandated process under subsection (C)(4) of this section to "Inform any person or other agency about any **correction or notation of dispute** made by the agency in accordance with subsection (d) of this section. The deliberate failure to comply with this section of the law, further **dissuades any individuals or agencies acting in good faith and under color of law** from disputing, challenging or including a "notation of dispute made by the agency in accordance with subsection (C) (4) & 9 (d) of this section of any record that has been disclosed to the person or agency if an accounting of the disclosure was made. The deliberate circumvention of this process by defendants, including oversight agencies has effectively institutionalized these abuses and violations of constitutional, civil rights laws, rules and regulations in perpetuity, for John Connolly (and others). The defendants have violated John Connolly (and others)'s right to Privacy, with their violations of subsection (C)(3)(4)&9(d) of this section

536. John Connolly (and others) has been and continues to be denied due process.

537. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also

involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**EIGNTEENTH CAUSE OF ACTION**

**(d) Access to records / and other violations as court may so determine upon request by any individual to gain access to his record U.S.C. § 552a (d) (1) (2) (3) (4)**

538. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

539. **Defendants are in violation of the Privacy Act under section (d) Access to records provides that (1) upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system**, an agency is to **permit him** and upon his request, a person of his own choosing to accompany him, **to review the record and have a copy made of all or any portion thereof in a form comprehensible to him**, except that the agency may require the individual to furnish a written statement authorizing discussion of that individual's record in the accompanying person's presence;"

540. Plaintiff asserts that there is a tremendous number of constitutional, federal, state and agency laws rules and regulations that could provide an individual with access to records or a pathway and/or reason to access records. The corner stone of all justice activities is due process. If Defendants were going to take an adverse action against John Connolly (and others), they simply needed to include him in the process, or **at** least keep him notified of what was taking place, and the results thereof. There are a number of references in the Privacy Act that give rise to 'individual's rights of access', and require the government to provide said access to an individuals records. Section (d) of the Privacy Act, clearly defines access to agency records. Upon request, John Connolly (and others), is supposed to be able to gain access to his records or any other information pertaining to himself, which is contained in a system, manual or automated. This access was never provided by the responsible defendant government agencies, or their business partners or other defendants, involved in the plaintiff's case. An agency is also responsible for maintaining records on which adverse determinations are made.

541. In violation of section (d) Access to records, of the Privacy Act, the defendant government agencies, their business partners, and other **defendants, clearly have done everything possible to prevent John Connolly (and others) from accessing records, or obtaining adverse data maintained in government systems.** Evidence, information and belief along with affidavits' and sworn testimony, will provide a clear, convincing and indisputable picture of willful, systematic and systemic civil rights violations that include elements constituting violations of criminal statutes, with respect to the management of records and treatment of John Connolly (and others). **Defendants, their "business partners" and other individuals, violated section D (1) of the Privacy Act. Defendant's concealment activities were clearly designed to Not inform, or in fact misinform, John Connolly (and others) about adverse data and/or even the existence of adverse data. This reckless and deliberate concealment of activities would of course result in the denial of due process, with the failure of John Connolly (and others) to 'access records, or 'any information pertaining to himself, which is in a system. Government actions in denying access would also make it impossible to make corrections and would also result in the failure of John Connolly (and others) to have the means, ability or reason to dispute, amend, or correct the record or any record.** The defendants have gone to great lengths to violate the law, and deliberately injure John Connolly (and others). John Connolly (and others) has been deprived of his rights to due process. **John Connolly (and others) has been denied his right to access records, in violation of U.S.C. § 552a (d)(1),(2),(3),(4)**

542. The defendant's concealment activities are in violation of section (d) Access to records, of the Privacy Act, the defendant government and other defendants have clearly done everything possible to prevent John Connolly (and others) from accessing records, or obtaining adverse data maintained in government systems.

543. **The denial of due process is effected in conjunction with concealment activities that include concealment of adverse data and concealment that an adverse action is even taking place.** John Connolly (and others), is being denied rights by the defendants government agencies, and their business partners and other defendants, **refusal to comply with direct written and verbal requests, to access data**, as indicated in appendix

containing table of requests, and explicit illegal policy guidelines, codified to subvert constitutional, federal, state and agency, laws, rules, regulations and statutes, as indicated in appendix of communications and evidence.

544. Additionally, by directly concealing adverse data or even the existence of adverse actions, John Connolly (and others), has for years and continues to be **constructively denied access to records due to illegal concealment activities** (appendix – see discovery), as provided for in section **(d) (1)** of the Privacy Act. If John Connolly (and others) is informed that adverse data exists or that an adverse action is taking place, access to 'secret' data will never be sought. Concealment activities include explicit illegal policy guidelines, codified to subvert constitutional, federal, state and agency, laws, rules, regulations and statutes. John Connolly (and others) was and is essentially being circumvented from exercising his rights and being denied protections afforded him under the U.S. constitution, federal, state, laws, agency rules and regulations in addition to the Privacy Act

545. Section (d) (2) of the privacy act not only conveys to the individual the right to access data, it provides the individual the right to correct the data and amend the record. By directly concealing adverse data or even the existence of adverse actions, as stipulated in concealment table, John Connolly (and others), has for years been, and continue to be **constructively denied his right to correct or amend records as provided for in section (d) (2)** of the Privacy Act. Concealment activities include explicit illegal policy guidelines, codified to subvert constitutional, federal, state and agency, laws, rules, regulations and statutes, as indicated in appendix table (see – discovery). John Connolly (and others) is essentially and very effectively, being circumvented from exercising his rights and being denied protections afforded him under the U.S Constitution, federal, state, laws, agency rules and regulations in addition to the **defendants violations of his privacy in deliberately violating , section(d)(2).**

546. Section (d) (3) of the privacy act not only conveys to John Connolly (and others) the right to access data, it provides John Connolly (and others) the right to appeal and request a review, of any agency refusal to correct or amend a record. By directly concealing adverse data or even the existence of adverse actions, "due process" rights of John Connolly (and others) has been violated for years, and he continue to be **constructively denied the right to appeal and request a review, of any agency refusal to correct or amend a record as provided for in section (d) (3)** of the Privacy Act. Concealment activities include explicit illegal policy guidelines, codified to subvert constitutional, federal, state and agency, laws, rules, regulations and statutes, as indicated in evidence presented. **John Connolly (and others) is essentially and very effectively, being circumvented from exercising his rights and being denied protections afforded him and to which he is fully entitled under the U.S. Constitution, federal, state, laws, agency rules and regulations in addition to the defendants** Privacy Act violations of section **(d) (3)**

547. **Section (d) (4)** of the privacy act not only conveys to John Connolly (and others) the right to access data, it provides John Connolly (and others) the right to override all agency adverse determinations and records to the significant and material extent, of **mandating the unassailable right to the individual to include a statement of dispute or statement of explanation** to be appended to any records or data adversely impacting an individual. **Defendant government agencies, their business partners, and other defendants would have absolutely no recourse to an individual's election or determination to exercise or execute this right. How many adverse actions would never see the light of day if an individual was informed that adverse data existed or an adverse action was taking place and the individual was given the right to defend himself?** These systems, associated business process, infrastructures and architectures are designed and maintained to violate civil rights on a John Connolly (and others) + scale. Defendant's deliberately circumvented protections afforded John Connolly (and others) under the constitution, federal, state, laws, agency rules and regulations. The fact that these systems, business processes, and associated architectures may not have originated with these purposes at their inception, twenty or thirty years ago is not germane or relevant to discussions, examination or assertations. These systems and processes have metamorphosed themselves into infrastructures of corruption that have adversely impacted John Connolly (and others).

548. If John Connolly (and others) was given the opportunity to defend himself, corrections would have been made and there would be no adverse (incorrect) data. These systems have evolved themselves into instruments supporting government corruption activities. The reason this John Connolly (and others) was denied due process as a matter of policy and course was to prevent John Connolly (and others) and similarly situated individual from securing a forum or position where the billions in standard government waste fraud and abuse activities may be exposed and jeopardized. In addition to directly concealing adverse data or even the existence of adverse actions, as

stipulated in concealment table (appendix see discovery), John Connolly (and others) has for years been denied, and continues to be **constructively denied his unassailable right to dispute incorrect or adverse data (or any data) or to include a statement of dispute or statement of explanation to be appended to any records or data adversely impacting an individual.** The senior executive service bureaucrats at their respective agencies are not about to stand by and permit statements detailing their corruption activities to be appended to personal records. **An agency has absolutely no recourse to an individual's election or determination to exercise or execute this right.** Defendants violated John Connolly (and others)'s privacy **as provided for in section (d) (4)** of the Privacy Act. Concealment activities include explicit illegal policy guidelines, codified to subvert constitutional, federal, state and agency, laws, rules, regulations and statutes, as previously indicated. John Connolly (and others) was essentially and very effectively, being circumvented from exercising his rights and being denied protections afforded him under the U.S. Constitution, federal, state, laws, agency rules and regulations in addition to the defendants Privacy Act violations of section (d) (4)

549. Defendant Government agencies and their business partners and other defendants actions in denying access would also make it impossible to make corrections and would also result the failure of John Connolly (and others) to dispute, amend, or correct the record. The defendants have gone to great lengths to violate the law. John Connolly (and others) has been deprived of his rights to due process. He has been denied his right to access records.

550. Each and every time John Connolly (and others) was not informed about an adverse action or the existence of adverse data he was **constructively denied the ability of Access to records as is required by subsection (d)(1) of the Privacy Act.** John Connolly (and others) was denied, "Due Process".

551. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

## NINETEENTH CAUSE OF ACTION

**(e) Agency requirements and other violations as court may determine**

Maintain only information about individuals that is relevant and necessary

**U.S.C. § 552a (e) (1)**

552. Plaintiff is notifying the court that he has no education or experience with respect to practice of law. Plaintiff is further requesting that each claim and assertion of violations made and damages incurred be applied throughout complaint to the appropriate laws of the U.S Constitution, Privacy Act, Fair Credit Reporting Act, Fair Accurate Credit Transactions Act, Sarbanes Oxley Act, Freedom of Information Act, Statutes of Frauds and other appropriate laws as the court deems fit.

553. Plaintiff is respectfully notifying/asserting to the court that failure to obtain adequate counsel is due to fraudulent, illegal and criminal actions being conducted by attorneys representing government agencies, functioning from the Offices of General Counsel and Inspector Generals offices, and attorneys who are acting in conjunction and collusion with these illegal activities who are representing public and private corporations.

554. Plaintiff Prays the court provide all aid, assistance and intercession where possible to John Connolly (and others) who is acting without the benefit of counsel, due to fraudulent acts of counsel - Officers Of The Court – attorneys representing government agencies colluding with public and private corporations in deliberate violation of law, including premeditated violations of criminal statutes and violations of John Connolly (and others)'s constitutional and civil rights, and other rights to which he is fully entitled under the United States Constitution.

555. All paragraphs of this section are **to be used and applied in whole or in part in all other sections** and subsections of complaint, including items presented in tables of Authorities, to further identify, clarify and present comprehensive complaint as should be determined using all information throughout complaint, and where possible

and/or necessary, expanded complaint, as the court may so determine or see fit, including the generation of additional injunctive orders, as the court may so determine.

556. All paragraphs, arguments of **all other sections** and subsections of complaint, including items presented in table of Authorities are to be utilized, argued, reasoned and **inserted into this section**, in order to further identify, clarify and present comprehensive complaint as should be determined using all information throughout complaint, and where possible and/or necessary, expanded complaint, as the court may so determine or see fit, including the generation of additional injunctive orders, as the court may so determine.

557. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

558. Defendant government agencies, their business partners and other defendants had violated their responsibilities with respect to records. Their use and care of records to "maintain, collect, use or disseminate" records, or the management thereof, was in a manner that is inconsistent with the law, in a manner that is deliberately designed to circumvent the law and in fact subverts the main principal purpose for enactment of the law, and would by all due necessity **violate the law and specifically, the Privacy Act, section "(e) (1) "maintain" in its records only such information about an individual as is 'relevant and necessary' to accomplish a purpose of the agency** required to be accomplished by statute or by Executive order of the President". Additionally, the maintenance, collection, use and dissemination of records, and the management thereof, with the purpose codified in varied policy documents and supplementary guidelines, of circumventing the law, is a clear violation of constitutional, civil rights, laws rules, regulations and statutes, including but not limited to table of authorities.

559. **Maintain is defined** as "maintain, collect, use or disseminate' and includes 'management of associated processes as defined by the Privacy Act, Office of Management & Budget, General Accounting Office and other authorities, regulations, directives, guidance and statutes.

560. One or more of the defendants disclosures and dissemination, on a repeated basis of entirely wrong, incorrect, inaccurate, false, fraudulent untimely, incomplete, immaterial and irrelevant records, deliberately and with purpose, of denying due process, is not "relevant and necessary" to accomplish any purpose of any government agency or Executive order of the President. The practical application ('maintenance of records'), through the use of illegal polices, procedures, business process and system architectures and infrastructures are not designed to improve security or effectuate Executive orders. The maintenance of the records is conducted in strict accordance with and fully accomplishes the design objectives incorporating the illegal processes, protocols, and procedures designed to circumvent John Connolly (and others)'s civil rights and due process. Maintaining and secretly disseminating John Connolly (and others)'s records in violation of his constitutional, federal, state, laws, rules, regulations and statutes, whose that was entirely wrong, incorrect, inaccurate, false, fraudulent untimely, incomplete, immaterial and irrelevant is not the result of a minor errors or omissions. The results are the deliberate and predictable outcome of extensive design considerations, from both business process and systems perspective. A particular objective that was achieved was the protection of corruption initiatives and retaliation against John Connolly (and others) by violating the rights to which he was fully entitled under the Unites States Constitution and other laws and regulations of the United States at federal, state and local levels. The amount of resources expended, in terms of management, time and level of effort should not be underestimated. The development of illegal 'record maintenance 'programs, associated illegal business processes, systems architectures and support infrastructures is pervasive to the internalized processes within all agency's, with respect to John Connolly (and others). The pervasiveness of the illegal business process, systems and supporting infrastructures has matured to a degree of being intractable. Maturation has surpassed the 'critical mass' threshold to the point that only a comprehensive business process analysis and remediation initiative could begin to address and remedy.

561. One or more of the defendants deliberately failed in their efforts to provide, qualify and certify Privacy Impact Assessments. The privacy impact assessments and "risk assessments" among the many details absent from required Federal Register notices, including adequate Privacy Act System of Records notices, the agency has failed to describe the adverse consequences that might result from the risk assessment possibly derived from inaccurate or incomplete information indicating that an individual is unsuitable for employment license or poses a "security threat".

562. One or more of the defendants failed to exercise due care in their management of John Connolly (and others)'s records. Management of records, **"particularly records of a personal nature, at all times must to be consistent and in compliance with all laws."** With respect to data the Privacy Act defines the term "maintain'" to include (a) (3) maintain, 'collect, use or disseminate'. The Privacy Act in addition to OMB and OPM guidelines and regulations explicitly state the obvious, that 'maintain, collect, use or disseminate' also means and includes the "management of" maintaining, collecting use or dissemination of records, including all the associated business processes, system architectures and support infrastructures.

563. One or more of the defendants have committed violations that total in the thousands. **It is not "relevant and necessary"** (e)(1) to accomplish any agency purpose or execute any executive order to (violation Privacy Act, section "(e) (1)) **maintain**, only such information, collect, use, disseminate or the management thereof, **records that egregiously, deliberately and with purpose, harmed and defrauded John Connolly (and others) and thwarted and frustrated his ability to exercise his right to ;**

- **Access** information about himself contained in any system.
- Access adverse records
- Access information on any adverse actions
- Challenge inaccurate, irrelevant, untimely or incomplete records.
- Request correction of inaccurate, irrelevant, untimely or incomplete records.
- Due process

564. Maintenance, use of records and **management thereof** is also proscribed in a number of federal and state laws, rules, regulations and agency directives. What is fraudulent in part must be fraudulent in whole. **Section (e) (1)** of the privacy act Doe's not merely provide an agency with the right to maintain 'collect, use or disseminate', only relevant and necessary records, including management thereof, it **confers a responsibility, which is clearly not met by the most serious, egregious, and deliberate violations of law, including violations of criminal statutes, by numerous defendants.**

565. Knowledge of information contained in these systems is for all practical purposes, not accessible by John Connolly (and others).

566. With some exceptions for categories of individuals, that serve government interests, records contained in these systems is for all practical purposes, not accessible to John Connolly (and others).

567. There are a number of material exceptions that serve the interests of defendant government agencies, their "business partners", and other defendant's where Due-Process is not only followed "it's celebrated". That discussion however, is currently outside the scope of this complaint.

568. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

TWENTYTH CAUSE OF ACTION

**(e) Agency requirements**

Maintain only information about individuals that is relevant and necessary

**U.S.C. § 552a (e) (1) Agency requirements**

569. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

570. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

571. One or more of the defendants "uses", of records or management thereof to include, access, accessing, processing and/or dissemination of records were "not used for the purpose requested", in violation of section. Inaccurate and false records, pertaining to John Connolly (and others) were used in numerous instances to discredit John Connolly (and others)'s findings of waste fraud and abuse.

572. Plaintiff asserts that there were several specific and high profile instances where John Connolly (and others)'s contracts and/or employment/license were terminated within 72 hours of reporting fraud amounting to hundreds of millions of dollars, billions over time. "Employment/license" is defined as gainful employment, regardless of what section of the IRS code (w2, 1099, LLC, SS), an individual is paid on.

573. Plaintiff asserts the specific engagements where plaintiff reported waste fraud and abuse activities, included but were not limited to engagements at the Program Support Center, (PSC) (DHHS), Center for Medicated Services (CMS) & DHHS and the Pension Benefit Guarantee Corporation (PGGC). At the Department of Health and Human Services John Connolly (and others) uncovered hundreds of millions of dollars in waste, fraud and abuse, these frauds would have cost billions over time. John Connolly (and others) was actually credited by federal officials with saving 28 million dollars; these officials were not only modest in their accolades, within 72 hours his contract was terminated. The officials, to include presidential appointee Kerry Weems, John Genteil, Larry Bedeker, Daniel Morian and other defendants, were aware of the reports on waste fraud and abuse, and were also made aware of and launched an illegal investigations to obtain data to discredited John Connolly (and others), and then conducted secret tribunal, which resulted in the termination of John Connolly (and others)'s contracts, who was denied due process. These actions were taken to protect the corruption initiatives under way at DHHS's PSC operations division which represents approximately 12 agencies. Without detailing out the frauds and corruption initiatives this is an important example in illustrating how the deprivation of "Due Process", has been seamlessly inculcated in all applicable business processes, system architectures and supporting infrastructures, that are used in, and as "support tools" of corruption initiatives.

574. One or more of the defendants violations of John Connolly (and others)'s constitutional and civil rights, was accomplished via standardized & protected business processes and supporting system architectures. These illegal infrastructures are not merely the result, manifestation, or "natural growth or outgrowth" of the increasing power of defendant government agencies, their business partners and other defendants. The deprivation of due process for John Connolly (and others), was the result of a deliberate and willful effort to provide for the protection of corruption initiative to defraud the United States Government and U.S. Taxpayers of hundreds of millions of dollars (amounting to billions - over years) by discrediting and retaliating against John Connolly (and others), and other individuals who dare jeopardize corruption initiatives and/or report on waste, fraud and abuse activities.

575. Defendants "uses" of records or management thereof, confers responsibilities and actionable obligations, required by law, statutes and regulations, on the part of defendant government agencies, their business partners, and other defendants. Defendants are not entitled to "use" data in accordance with their own volition. If defendants are not meeting their "due process" and other obligations under applicable and varied laws, they cannot maintain that the "records were used for the purposes requested" and they are thus in violation of section (e)

576. Moreover, of significant and material importance, defendant government agencies, their business partners and other defendants, cannot **knowingly be in a relationship, supporting a relationship or maintaining a relationship with another entity, that is willfully, egregiously and deliberately violating the law. All entities involved, including government sector business must be in compliance with the law, and they are not entitled to be accepting immunity.**

577. There are a number of statutes at the federal, state and local level that provide for serious remedies in addressing these violations. Additionally there often language included directly in the body of the applicable statutes, that describe some of the penalties involved. Determining the specific negligence's of and nexus, to defendant government agencies, business partners and other defendants will not be all that difficult.

578. One or more of defendants will assert that their contracts and professional services were within the law and they were unaware and/or were not responsible for actions or damages by associated bad actors actions.

579. One or more of defendants will assert that they were helping their country in a "time of war", and that their corporate general counsels, outside councils and "supplementary guidelines" legal opinions and/or findings provided by government General Counsels and/or Inspector Generals, provided them with the legal landscape in which they had to operate under the law.

580. Plaintiff asserts that defendants had no right to violate John Connolly (and others)'s constitutional rights; regardless of which attorney said it was "O.K."

581. Plaintiff asserts that one or more of the defendants "use" of records was a clear and deliberate violation of law for financial gain, and/or other pecuniary interest. Plaintiff further asserts that actions to violate the law were egregious and that the resulting catastrophic damages immediately caused plaintiff were not only foreseeable, with an ability to fully anticipate, they were predictable with almost "near certainty".

582. Plaintiff asserts and will demonstrate clear and deliberate nexus to a number of defendants from proposal, planning, training, design, implementation, execution, production, to post production support to include law enforcement protections for violations of John Connolly (and others)'s civil rights. Violations are of both criminal and civil in nature.

583. One or more of the defendants policy of denying due process (required "use" implication) is also reflected in defendant's refusal to release records which is illustrated in more than 700 total mailings and 200 certified mailings of Privacy Act/FCRA/FACT/CRA, requests to defendants. **The refusals are in willful violation of respective laws cited in communications. The defendant's failure to determinably provide no records or due process is a violation of their required "use for purposes intended"**. These results and deliberate **actions guarantee that agencies can never provide any assurance on any data they promulgate on John Connolly (and others), or anyone** else, will ever be "relevant, and necessary to accomplish a purpose of the agency", as is also required by subsection **(e)(4)** of this section.

584. Defendants Disclosure, dissemination, to include compilation and incorrect assessments made thereof, on a repeated basis of incorrect, inaccurate, wrong, untimely and incomplete and irrelevant records were also a **violation of the New York State Constitution, and a number of New York State and Virginia State laws, regulations and statutes, including statutes baring dissemination of said records for employment license purpose.** There are many states that have similar laws. With respect to John Connolly (and others) the data was and still is completely incorrect. One or more defendants deliberate violations of aforementioned statutes, laws, regulations, processes and/or procedures, directly and adversely impacted John Connolly (and others).

585. Defendants Disclosure, dissemination, to include compilation and incorrect assessments made thereof, on a repeated basis of incorrect, inaccurate, wrong, untimely and incomplete and irrelevant records, alone and/or in conjunction with a deliberate policy in the denial of due process, were a **violation of varied memorandums of agreements and/or memorandums of understanding between and/or by defendants, including but not limited to Federal Bureau of Investigation, DOJ, OPM, DSS, DOD, DHS,DHHS, and other defendant government agencies, their business partners**, and other defendants and "functional agency groups" to include state attorney general groups representing New York State, and the State of Virginia, their business partners and other defendants. One or more defendants deliberate violations of aforementioned statutes, laws, regulations, processes and/or procedures, directly and adversely impacted John Connolly (and others).

586. Disclosure, dissemination, to include compilation and incorrect assessments made thereof, on a repeated basis of incorrect, inaccurate, wrong, false, fraudulent untimely, incomplete and irrelevant records, alone and/or in conjunction with a deliberate policy in the denial of due process were a **violation of memorandums of agreements and understanding with government agencies represented by their data integrity boards, and other associated boards and "functional" and/or "working groups"**, business partners and other defendants. One or more defendants deliberate violations of aforementioned statutes, laws, regulations, processes and/or procedures, directly and adversely impacted John Connolly (and others).

587. Disclosure, dissemination, to include compilation and incorrect assessments made thereof, "use" on a repeated basis of incorrect, inaccurate, wrong, false, fraudulent untimely, incomplete and irrelevant records, alone and/or in conjunction with a deliberate policy in the denial of due process were a **violation of memorandums of**

**agreements and understanding between defendants, Federal Bureau of Investigation,** Office of Personal Management (OPM),PBGC, DHHS,DOD,DHS and other agencies and their business partners and other defendants.

588. John Connolly (and others) was never informed that adverse data existed or that adverse data or records were associated his person. **It was a violation of due process in failing to notify John Connolly (and others) that records were being compiled and/or that assessments were being made, and/or adverse actions were being taken. John Connolly (and others) was never informed a record existed or that he 'had an adverse record'**. John Connolly (and others) was rarely informed an adverse action had ever, even taken place, he was never provided with the true and/or complete facts. John Connolly (and others) was willfully deceived over a period approximating 15 to 20 years, with the explicit purpose of denying him his constitutional rights to due process, and in so doing, violating the law.

589. **Records were disseminated for "use" outside receiving departments**. Before the Department of Justice and their subordinate agencies were in the business of "politics" or "selling shared" services, the clearly established and codified policy did not permit dissemination outside the "receiving office". The "receiving" office covered high level security personal, and specifically did not include every hiring manager in the organization.

590. One or more of defendants violated numerous OMB directives, (excluding supplementary directives & associated collateral), which state that the most "important way for an agency to protect individual privacy is to limit the amount of information that the agency maintains about individuals. One or more of the defendants failed to review their systems of records, (including secret exempt systems) to ensure that they contain only that information about individuals that is **"relevant and necessary",** to accomplish an agency purpose." The management of John Connolly (and others)'s records, particularly after one or more of defendants were apprised of agency errors, constituted criminal violations of law, that further compounded John Connolly (and others)'s situation. It would be a gross mischaracterization of the facts to conclude that one or more of the defendants were merely out of compliance with Privacy Act guidelines and directives with respect to **(e) (1) "maintain" responsibilities.**

591. John Connolly (and others) was deliberately and egregiously denied "Due Process", life and liberty interests.

592. Excluding "supplementary guidelines", training and other assorted accruements, one or more of the defendants are also in violation of their required compliance with the published, OMB, GAO, NIST directives and guidelines, the Computer Security Act, the GPEA and related statutes. The "systematic attention to the management of government records is an essential component of sound public resources management which ensures public accountability. **Together with records preservation, it protects the government's historical record and guards the legal and financial rights of the government and the public.** The actions of one or more defendants operating under color of law in Public Trust Positions, constitutes reckless and depraved indifference, to include violations of criminal statutes.

593. Plaintiff asserts that "maintaining" (maintain, collect, use, dissemination or management thereof) records in an illegal fashion, in violation of key values this nation was founded on and in violation of constitutional, civil rights, laws, rules and regulations, **including violations of criminal statutes, is also a violation of section 552a (e)(1), of the privacy act.**

594. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**TWENTYFIRST CAUSE OF ACTION**
**(e) Agency requirements**
**Directly from the subject individual**
**<u>U.S.C. § 552a (e)</u> (2) Agency requirements**

595. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

596. **The Privacy Act requires than an agency (e)(2) collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs;"**

597. It would be a correct assertations, to state that the **defendants failed to elicit information about the plaintiff "to the greatest extent practicable directly from the subject" from the plaintiff, as it required by 5 U.S.C. §§ 552a(e)(2); 552a(g)(4); 552a(g)(1)(A)(B)(C)&(D)violations).** The defendants have clearly, deliberately and willfully engaged in fraudulent actions in violation of U.S. Constitutional, civil rights laws, rules and regulations, including violations of criminal statutes at the federal and state levels. Their actions constitute willful, depraved and reckless indifference. Their actions have caused unmitigated suffering to John Connolly (and others) and his family. **The actions of these defendants, including, government bureaucrats operating under color of law, in the functions and through the functions of "counsel" protections, and immunities to law provided to "Officers of the Court", (attorneys)actions qualify as torture under existing United States statutes. Defendants are also in violation of section of 552a (g) (1) (2) (3) (4) & (5). The legal action against defendants is also covers violations of section 552a(g)(1)(C)&(D)and is being filed under section 552a(g)(4)&(5), where the an agency has materially and willfully misrepresented just about all information, and particularly information material the establishment of their liability under this section.**

598. The overriding factors of consideration with respect to the treatment of John Connolly (and others) was the corruption of career senior executive service personal (government bureaucrats), protecting and maintaining their authorities and the money trains which secures the tenure of their authorities. The **plaintiff and the court are not burdened with one of the major standard determining factors of 552a (e) (2). Regardless of whether or not the information "may" or "may" not have resulted "in adverse determination", John Connolly (and others) and was "not" going to be informed of it, to the governments "greatest extent practicable".** The government bureaucrats have invested billions of dollars in developing, building and maintaining business processes, procedures, system architectures and support infrastructures, to secure their supremacy and survivability and assure the subversion and subjugation, in this case, of John Connolly (and others)'s constitutional prerogatives and rights. Government bureaucrats have clearly exercised their authority not to be burdened with laws enacted by the elected representatives of federal and state governments. **These defendant government agencies, their business partners and other defendants illegal institutional and individual agency actions, could not and would not have been accomplished without the aid and real and perceived immunities of counsel (Officers Of The Court), their actions in establishing and enforcing a policy of denial of due process, with respect to John Connolly (and others) constitute violations of the Privacy Act, 5 U.S.C. § 552a (e) (2).**

599. The Privacy Act supports "the principle that an individual should to the greatest extent possible be in control of information about him which is given to the government." Waters v. Thornburgh, 888 F.2d 870, 875 (D.C.Cir. 1989). The language of the act, provides that Each agency that maintains a system of records shall - collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges". Section 552a (e) (2) "reflects congressional judgment that the best way to ensure accuracy in general is to require the agency to obtain information 'directly from the individual whenever practicable.'" Waters v. Thornburgh, 888 F.2d 870, 874 (D.C. Cir. 1989) (quoting OMB Privacy Act Guidelines, 40 Fed. Reg. 28,949, 28,961 (July 9, 1975)).

600. The compilations, reviews, assessments, disclosures, disseminations on a repeated basis of John Connolly (and others)'s records and associated data, that was entirely wrong, incorrect, inaccurate, false, fraudulent untimely, incomplete, immaterial and irrelevant, with deliberate malice of forethought, and intent violate the law and with the intent to harm, or with the knowledge that John Connolly (and others) would be harmed, is a violation of 552a (e) (2), of the Privacy Act. The failure to interview John Connolly (and others) and (See IG Audit), or provide John Connolly (and others) with an opportunity to give a statement, under any and all circumstances is also a violation of 552a(e)(2). There was never a chance or expectation of John Connolly (and others), ever being provided an opportunity to give direct information, make a statement, or defend himself. The circumvention of Due Process by **purposefully avoiding** the "collection of information to the greatest extent practicable **directly from the subject**" was a forgone conclusion, based on the management objectives and reflected in the policies and procedures being

enforced. The circumvention of Due Process was an absolute certainty, and a necessity in order to protect and conceal illegal operations and corruption initiatives. **The violation of section, 5 U.S.C. § 552a (e) (2), of the Privacy Act is clear in spirit, intent and execution, surpassing even the most elementary standards grading the statutes of frauds and criminal liability.**

601. The defendant's deliberate actions have resulted in unspeakable adverse harms to John Connolly (and others), was denied a liberty interest to which he was fully entitled under the U.S. Constitution and other laws of the United States at the federal, state and local level. John Connolly (and others) was denied, "employment/licenses", regardless of IRS gainful employment category, for a period approximating 15 to 20 years

602. **See Appendix (discovery) for preliminary list of organizations that have denied John Connolly (and others) due process for employment license based on false and fraudulent information provided by government sources.**

603. Agencies violated the Privacy Act, 5 U.S.C. § 552a(e)(2), when, during standard background investigations, and illegally initiated investigations, it compiled, collected, reviewed, disclosed, made adverse determinations with, and disseminated, with deliberate purpose and intent, with full knowledge harm would result, as part of a government conspiracy, represented by career senior executive service personal and bureaucratic elites, to commit violations of John Connolly (and others)'s constitutional and civil right protections, to which he was entitled, under federal and state laws, rules and regulations, including mass torts and violations of criminal statutes. The information that was collected, reviewed, disclosed, disseminated, and on which adverse determinations were repeatedly based, were entirely wrong, incorrect, inaccurate, false, fraudulent, untimely, incomplete, immaterial, and irrelevant and were used in undisclosed and concealed adjudication processes, created by defendants, as the basis to deny John Connolly (and others) his liberty interest or right to "employment/license".

604. The Privacy Act, 5 U.S.C. § 552a (e) (2) requires the government to collect information to the greatest extent practicable directly from the subject. The **(congress) purpose here, as indicated by legislative memorandums of intent, is to assure the accuracy and completeness of information by obtaining said information, directly from the subject individual.** Defendant government agencies and their business partners and other defendants, had every opportunity to collect the information from John Connolly (and others) "directly", to the "greatest extent practicable". The defendants, in no way neglected, to obtain information "directly" from John Connolly (and others) and similarly situated individuals. Their **decisions were active determinations, not passive errors of omissions.** Defendant's actions, **however, under this definition, would qualify as neglect** under PA statute, section cited. In direct contravention of the law, the evidence will clearly and unequivocal demonstrate that virtually all **defendant actions and resources were dedicated and committed to the "greatest extent practicable", to withhold information, deceive and defraud, particularly,** "when the information may result in adverse determinations". The few significant exceptions that exist, where defendant's compliance with "Due Process" is enthusiastically celebrated, also serve to benefit defendant's interests.

605. Defendant government agencies, their business partners and other defendants had legal obligations to be in compliance with additional OMB Privacy Act Guidelines, which state that in analyzing each situation where it proposes to collect personal information from a third party source, agencies should consider [5] Provisions for verifying, whenever possible, any such third-party information with the individual before making a determination based on that information. According to OMB Privacy Act Guidelines, 40 Fed. Reg. 28,961 (July 9, 1975). The Privacy Act is "fundamentally concerned with privacy. **It supports the principle that an individual should to the greatest extent possible be in control of information about him which is given to the government . . . a principle designed to insure fairness in information collection which should be instituted wherever possible."** Waters, 888 F.2d at 875 (internal quotation omitted). The defendants have clearly, deliberately and willfully engaged in actions in direct violation of U.S. Constitutional, civil rights laws, rules and regulations, including violations of criminal statutes at the federal and state levels. **Their actions constitute willful, depraved and reckless indifference. Their actions have caused unmitigated suffering to John Connolly (and others). The actions of these government bureaucrats and their business partners and other defendants operating under color of law qualify as torture under existing United States statutes.**

606. Plaintiff has clearly established the standard of material fact, (1)that the defendants failed to elicit information to any reasonable extent practicable from the plaintiff; (2) that the **defendant government agencies,**

**their business partners and other defendants, violation of the Act was intentional or willful; and (3) that defendant actions had an adverse impact on plaintiff, John Connolly (and others)". Hudson, 130 F.3d at 1205 (citing 5 U.S.C. §§ 552a (e) (2); 552a (g) (4); 552a (g) (1) (D)).**

607. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**TWENTYSECOND CAUSE OF ACTION**
**(e) Agency requirements**
**Principal purpose or purposes/routine use exceptions**
**U.S.C. § 552a (e) (3) (b) Agency requirements**

608. **The Privacy Act requires agencies to,(e)(3) inform each individual** whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual— (B) the **principal purpose or purposes** for which the information is intended to be used;"

609. The defendants never disclosed that a principal purpose would include the deprivation of constitutional and civil rights by conducting **undisclosed and concealed adjudication processes** on John Connolly (and others) for a complete lifetime. The defendants never disclosed to John Connolly (and others) that the "information is intended to be used;" for the denial of a "liberty interest" and other **fraudulent uses and/or financial gain of individuals** defrauding the United States government, as is required by (e) (3) (B). John Connolly (and others) was **never informed that a principal purpose** or purposes included the **retention of records would be in "exempt systems", explicitly stated or otherwise, which he could never gain access to or amend.** These purposes of intended use, legal or illegal should have been disclosed on the hundreds of waivers, agreements, disclosures and disseminations made with respect to John Connolly (and others)'s record. After initial security checks a principal purpose of the program was to maintain secret records on John Connolly (and others) and when the opportunity or more importantly the "need" arose, to discredit and deprive John Connolly (and others) of his legal rights including violations of his constitutional, civil rights to "Due Process"

610. "(C) the **routine uses** which may be made of the information, as published pursuant to paragraph (4)(D) of this subsection; and"

611. Defendant government agencies, their business partners and other defendants, serious and illegal actions and policies, preclude them from any legitimate or legal claim to exceptions or "routine uses", as provided under (c)or pursuant to paragraph(4)(D) of this subsection. The "routine uses" of depriving John Connolly (and others) of his due process and privacy rights is not mentioned in any of the forms. The defendants never disclosed a routine use would include the deprivation of constitutional and civil rights to John Connolly (and others). The defendants never disclosed to John Connolly (and others) that the "information is intended to be used;" for the denial of "liberty interest" for the individual involved and his family, as is required by and is defendants violation of section (e) (3) (B). The defendants never apprised John Connolly (and others) of many of the material facts on routine and/or intended uses. The defendants should have disclosed uses and intended uses each and every instance (partial list - discovery) identified in above and referenced in tables. **These routine uses and/or intended uses were not disclosed and/or published in the Federal Register, and as a result the defendants violated the Privacy Act 552 (a) requirements as cited in section (e)(3)(B), and pursuant to paragraph (4) (D)**

612. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no

possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**TWENTYTHIRD CAUSE OF ACTION**
**(e) Agency requirements**
**publish in Federal Register/existence and character of system of records**
**U.S.C. § 552a (e) (4)**

613. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

614. **The defendants violated the following sections and references of the privacy act including;**
"**(e)(4)** subject to the provisions of paragraph (11) of this subsection, **publish in the Federal Register** upon establishment or revision a notice of the **existence and character of the system of records**, which notice shall include— (violations)

- the name and location of the system;
- the **categories of individuals on whom records are maintained in**
- **the system;**
- **(D) each routine use of the records contained in the system,**
- **including the categories of users and the purpose of such use;**
- (C) the **categories of records** maintained in the system;
- (E) the policies **and practices of the agency regarding storage, retrievability, access controls, retention, and disposal of the records**;"

615. Plaintiff reviewed all appurtenant "System of Records" and "Privacy Impact Assessments" and found no categories of records or categories of users that would indicate records were being maintained on malcontents, individuals with out rights to due process, foreign nationals, with records obtained illegally by defendant government agencies, their business partners and other defendants, on U.S citizens, other nationals and foreign nationals "not entitled to due process", and/or foreign nationals who have "native criminal cultures", as was referred to by attorneys in the offices of inspector generals and general councils. Plaintiff found no categories of individuals with non-discloseable records and/or government and corporate policies permitting or advocating the deprivation of constitutional and human rights. Plaintiff found no records alluding to, or even referencing supporting business infrastructures or system architectures and/or their policies and procedures, to which John Connolly (and others) was subjected for a period approximating 15 to 20 years.

616. These routine uses of depriving John Connolly (and others) of his due process and privacy rights is not mentioned in any of the varied forms, publications, filings, deliverables, etc, provided and "certified" by officials occupying "public trust positions", to include "officers of the court", attorneys functioning from the Offices of General Counsel and Inspector Generals. The defendants never disclosed/published a routine use would include the deprivation of constitutional and civil rights to John Connolly (and others) for a complete lifetime. After the initial security check the routine use of the programs information was to maintain secret records on individuals and when the opportunity or more importantly a "need" arose, with advanced knowledge and forethought, to discredit and deprive these individuals of their legal rights including violations of their constitutional, civil rights. The defendants violated the requirements of this section. These routine uses or "categories of records (B)(C)were not disclosed or published as is required in (e)(3)(B), and pursuant to paragraph (4) (D)

617. The policies and practices of defendants was to deny John Connolly (and others) his rights to due process as is evidenced in more than 150 certified mail requests to defendant government agencies, their business partners and other defendants, begging for relief, begging agencies to comply with the law including the Privacy Act and the U.S. Constitution. All relevant senior executive service personal were reminded of their oath of office and their responsibilities in serving in a Public Trust Position. Each government attorney with respect to John Connolly (and others) was reminded of the rules of professional conduct of attorneys, and was provided with a copy of those rules. All individuals were apprised of their violations of law.

618. Plaintiff asserts and reasserts all allegations and previous arguments in stating that the defendant government agencies, their business partners, and other defendants have and continue to violate all sections of the Privacy Act, including (e)(4),(G),(H),(I) below.

"(G) the agency **procedures whereby an individual can be notified at his request if the system of records contains a record pertaining to him;**(H) the **agency procedures whereby an individual can be notified at his request how he can gain access to any record pertaining to him contained in the system of records**, and how he can contest its content; and (I) the categories of sources of records in the system;"

619. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**TWENTYFORTH CAUSE OF ACTION**
**(e) Agency requirements**
**(e)(5) Accuracy & Completeness to assure fairness in individual determinations**
**(e)(6) prior to disseminating any record make reasonable efforts to assure such records are accurate, complete, timely, and relevant for agency purposes;**
**U.S.C. § 552a (e) (5) (6)**

620. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

621. The defendants violated the Privacy Act including sections "(e)(5) maintain all records which are used by the agency in making any determination about any individual with such **accuracy, relevance, timeliness, and completeness** as is reasonably necessary **to assure fairness** to the individual **in the determination**;

622. (e)(6) **prior to disseminating** any record about an individual to any person other than an agency, unless the dissemination is made pursuant to subsection (b)(2) of this section, make reasonable efforts to **assure that such records are accurate, complete, timely, and relevant for agency purposes**;"

623. John Connolly (and others) was never aware these records existed. He never saw them before. During the course of almost twenty years there were literally hundreds of steps of due processes, required by federal, state, local laws and international statutes that were deliberately circumvented in order for the scope and breath of damages inflicted on John Connolly (and others) to be fully realized. Defendants deliberate determination to deny John Connolly (and others) due process, by conducting undisclosed and concealed adjudication processes concealing records and adverse actions, and not allowing John Connolly (and others) any rights to challenge determinations and/or actions, **violated section 552(e) (5) requirements, because such actions of denial in due process, guaranteed in perpetuity that there could never be any assurance of the accuracy, relevance, timeliness, and completeness of any records. Defendants actions were designed to harm John Connolly (and others), deny him of his constitutional due process rights, in violation of law, including criminal statutes, and in violation of 552(e)(5) deliberately failed to "assure fairness** to the individual **in the determination**;"

624. John Connolly (and others) called the court of original jurisdiction and discussed the issues. A court employee apologized and said the system never should have reported this information and it would be corrected. The records are still incorrect. John Connolly (and others) is including a waiver enabling any member of the court a thirty day license to view any personal data at their own discretion. The additional purpose here is to avoid including in current records, false information that never should have been part in parcel of any record or disseminated for more than a quarter of a century.

625. Defendants have exercised a number of serious illegal and criminal initiatives in circumventing constitutional and congressional statutes designed to protect the civil rights of John Connolly (and others). The denial of the right to due process, discovery, access to records and correction of records and other violations can be gleamed from

Exhibit A, which includes more than 700 mailings in total and 200 certified separate communications, appeals and denials of specific record requests filed under the appropriate provisions of the Privacy Act, FOIA and the FCRA by said John Connolly (and others), for more than one and a half years. The request for records was in complete compliance with FOIA, PA and the FCRA rules and regulations. All defendant government agencies, their business partners and other defendants, under varied sections of the Privacy Act, FCRA, FACT Act, etc are charged not only with maintaining accurate records, but maintaining detailed records especially where adverse determinations are made. Defendant's failure in providing records, were willful and deliberate violations of such laws. On February 4 of 2008, the office of Personal Management provided a limited release of detailed records. This release of records is materially and substantially incomplete, inaccurate and documents clear and illegal violations of both criminal and civil provisions of the privacy act and other laws. The records are also replete with a literally countless number fraudulent entries, implicit, explicit and by omission – all by design.

626. One or more of the defendants provided data on John Connolly (and others) that was also assessed and complied incorrectly, was inaccurate, misleading, untimely, and irrelevant. Furthermore, data was obtained and disseminated from New York via defendant New York State government, defendant government agencies, their business partners, and other defendants (i.e. data brokers), and said data, even if entirely accurate or conversely only 1% accurate, would have been in violation of numerous New York State legal statutes, the NYS constitution and federal laws and regulations to report on. Therefore, no officer or employee of any agency had any need, and certainly no obligation to maintain such a record, and continuously report on such records while deliberately denying due process. The maintenance of such records was not in performance of their duties. The maintenance of such records, are in fact an example of the total dereliction of duty and a violation of law by the defendants and employees involved. The individuals in Public Trust Positions were specifically charged with keeping data that was accurate, timely and relevant. The individuals involved knew what they were doing. The individuals involved were highly trained professionals. The determinations of these individuals to repeatedly violate the law and to conceal their violations over many years, is an indication of the premeditation and willful deliberateness and institutionalization of the illegal processes. The illegal business processes, and associated activities were executed with a degree of care, worthy of the vast sums of illegal (Un-appropriated) funds in violation of the Anti-Deficiency Act, expended to support the training and expertise of the various illegal programs that facilitated retaliation against John Connolly (and others) with deliberate intent to cause grievous harm (battery) in violation of section (e)(5) and (6) which required defendants, " **prior to disseminating** any record about an individual to any person", to "make reasonable efforts to **assure that such records are accurate, complete, timely, and relevant for agency purposes**;". The records repeatedly disseminated over a period approximating 15 to 20 years, with policies, protocols and procedures denying due process were not **"accurate, complete, timely, and relevant for agency purpose", or any purpose.**

627. The defendant government agencies and their business partners, and other defendants, are acting in violation of law in maintaining these illegal elaborate secret protocols, supporting business process infrastructures and system architectures that have deliberately violated and adversely impacted John Connolly (and others)'s constitutional and civil right.

628. Inherent in an agencies responsibility is the accountably assessed by congress and codified under section (e) (5) agency requirements that states an agency must "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination;

629. Plaintiff's asserts that there are no errors of mass confusion, or lack of understanding with respect to any defendant "shared service offerings". If the case and evidence are reviewed in a comprehensive fashion, it will be clearly evident that the violations of constitutional, civil rights laws rules and regulations are the end result of a deliberate and extensive effort, encompassing billions of dollars in investments in business processes, systems architectures and supporting infrastructures.

630. John Connolly (and others) made several hundred requests for information filed under the Freedom of Information Act, FACT Act, FCRA and the Privacy Act. There were approximately 700 mailings in total including two hundred certified mailings, return receipt requested from defendant government agencies, their business partners, and other defendants, listed in the tables (Appendixes – discovery) Each one of those mailings fully complied with the provisions of the Freedom of Information Act, FACT Act, FCRA and the Privacy Act. Each one of those mailings provided for the conditions of disclosure which were "required under section U.S.C. § 552a (b) (2)", and

which each agency deliberately failed to honor, in violation of the Privacy Act, section cited. Under the Privacy Act, in addition to guidelines issued by OPM, OMB, GSA, NIST and Commence, an **agency also has particular responsibility to maintain all records on which they may make or base an adverse determination, for the life of the record or five years after the last dissemination. Defendants are in clear, willful, deliberate, and with criminal intent, in violation of aforementioned sections and agency guidelines cited.**

631. One or more of defendant government agencies, their "business partners" and other defendants, including Senior Government Officials making the determination of suitability deliberately, knowingly and with purpose of criminal intent, with purpose of protecting corruption initiatives denied applicant, in direct violation of the law, "the opportunity to complete, or challenge the accuracy of, the information contained in the FBI identification records", per CFR regulations

632. Government official used knowledge gained in committing civil rights violations to abuse his authority in using his influence to establish private interests, in direct violation of criminal ethics statutes.

633. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**Twenty Fifth - Cause of Action**
**United States Constitution Amendment II - Right To Bear Arms**

634. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

635. **One or more of Defendants violated John Connolly (and others)'s second amendment rights. In the period approximating July 2006, John Connolly (and others) sought to purchase a firearm from Atlantic Gun shop and was denied his second amendment right under the United States Constitution. The dealer called back John Connolly (and others) in three days and informed him that he could now purchase the weapon. If the defendant government agencies represented by attorneys and other public trust official, in collusion with attorneys and other individuals, representing public and private corporations were not deliberately and with criminal intent, violating the law and illegally spending funds, amounting to billions of dollars (un-appropriated), in pursuit and concealment of violations of John Connolly (and others)'s Constitutional and Civil Rights, false, misleading and inaccurate records would not have existed and John Connolly (and others) could have exercised his second amendment rights, unimpeded and been left alone. Attorneys representing government agencies at federal, state, and local levels are working in collusion with attorneys representing public and private corporations**

636. **Please incorporate entire complaint to complete requisite assertations, claims, positions, arguments and reasoning.**

637. Defendants violated John Connolly (and others)'s second amendment rights of the United States Constitution

**Twenty Sixth Cause of Action**
**United States Constitution Amendment IV**
**Right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated**

638. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

639. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

**Amendment IV states that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."**

640. Defendants violated John Connolly (and others)'s forth amendment rights of the United States Constitution. Defendants did with the purpose of protecting corruption initiatives and other illegal programs, participated, with knowledge and consent, in varied illegal activities involving the obtaining, storage, management, use, facilitation, communication, concealment and dissemination of adverse, false, misleading, inaccurate and fraudulent information about plaintiff, which included falsification of government records, and perjured government statements and reports to the deliberate detriment of plaintiff. The adverse information was presented in forums where adjectives describing, processes, procedures, roles and responsibilities would be clearly associative with trials identified as undisclosed and concealed adjudication processes. Plaintiff John Connolly (and others) was not permitted any knowledge of adjudications and was tried in absentia, by government agencies and/or government "business partners representing public and private corporations and companies. Although John Connolly (and others) had no representation, the government, public and private corporations and companies were represented by attorneys, "OFFICERS OF THE COURT", and other individuals in credentialed Public Trust Positions who took harmful and adverse actions against plaintiff, in deliberate and willful violation of law, with intent to harm and injure John Connolly (and others).

641. Defendants concealed adverse information and adverse actions from John Connolly (and others). John Connolly (and others) was not invited to participate in or be informed of undisclosed and concealed adjudication processes. John Connolly (and others) was a defendant in absentia, without representation or knowledge, at undisclosed and concealed adjudication processes, held by government agencies and/or government "business partners representing public and private corporations and companies. Although John Connolly (and others) had no representation, the government, public and private corporations and companies were represented by attorneys, "OFFICERS OF THE COURT", functioning from agencies Office Of The General Counsel and the Office Of The Inspector General, and their counterparts in public and private corporations and private companies.

642. The frauds John Connolly (and others) declined to participate in, focused on Business Process Re-Engineering and Re-Organization efforts in conjunction with building, maintaining and supporting fraudulent IT infrastructures. Over time these frauds would amount to billions of dollars.

643. The defendant public and private corporations and companies and individuals worked in collusion and in violation of constitutional, civil rights laws, rules and regulations with federal, state and local authorities in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes over a period approximating fifteen years.

644. Plaintiff asserts that the defendants have deprived themselves of any benefits or immunities of time limitations that may have applied for a number of reasons, including standard operating policies, procedures and process of the bad actors in retaining, accessing and using data on a regular basis. Defendants who have obtained information and universally deny individuals, John Connolly (and others), access to or knowledge of information in facilitating determinations, unlawfully, on an operational, systematic and transactional basis in perpetuity. Each and every time the specific data is referenced the violations are made new. Plaintiff asserts and prays the court Doe's find that the illegal operational processes, procedures and guidelines codified in corporate policy and "understandings" with bad actors representing government agencies alone is sufficient for re-qualifying or making violations anew on a daily basis. The bad actors are building and using the "poisoned" wells on a daily operational basis, as needed, in conjunction with universally denying individual, John Connolly (and others), the ability to access, correct, amend and/or challenge the data. Defendant's entities and individuals have no right to be relying on government attorneys or any attorney's opinions to be providing them with immunities with which they can violate John Connolly (and others)'s constitutional and civil rights with impunity.

645. Plaintiff asserts each of defendants has recommitted and renewed violations alleged in complaint during the year 2008.

646. Defendants violated John Connolly (and others)'s forth amendment rights of the United States Constitution

647. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**Twenty Seventh Cause of Action**
**United States Constitution Amendment V**
**No Capital Crime without Presentment Or Indictment**
**Nor be deprived of life, liberty, or property, without due process of law**

648. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

**Amendment V states "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation. "**

649. **Defendants in violation of law held John Connolly (and others) to answer for capital and infamous crimes without the presentment of an indictment by trying him in secret for a period approximating fifteen to twenty years. Defendants deprived John Connolly (and others) of his constitutional rights and liberty interests without due process and in violation of law. While defendants spent billions of dollars in illegal programs to conceal violations of John Connolly (and others)'s Constitutional and civil rights, they deliberately never budgeted for Due process. Defendant's actions across the board, cradle to grave - from creation and management of legal entities and business structures, to their underlying supporting business process infrastructures and system architectures, were designed to circumvent constitutional and civil rights protections, regulations and procedures to which John Connolly (and others) was fully entitled under the United States Constitution and other laws, rules and regulations of the United States at federal state and local levels.**

650. John Connolly (and others) was never provided any administrative remedies to challenge and/or correct, the false inaccurate, irrelevant records that pertained to John Connolly (and others), and also led to defendant government and government contractors actions to terminate his "employment/license which, as a federal employee, contractor, volunteer, convicted felon, escaped convict or terrorist he was entitled to pursue.

651. Defendants violated John Connolly (and others)'s Fifth Amendment rights of the United States Constitution. Defendants did with the purpose of protecting corruption initiatives and other illegal programs, participated, with knowledge and consent, in varied illegal activities involving the obtaining, storage, management, use, facilitation, communication, concealment and dissemination of adverse, false, misleading, inaccurate and fraudulent information about plaintiff, which included falsification of government records, and perjured government statements and reports to the deliberate detriment of plaintiff. The adverse information was presented in forums where adjectives describing, processes, procedures, roles and responsibilities would be clearly associative with trials identified as undisclosed and concealed adjudication processes. Plaintiff John Connolly (and others) was not permitted any knowledge of adjudications and was tried in absentia, by government agencies and/or government "business partners representing public and private corporations and companies. Although John Connolly (and others) had no representation, the government, public and private corporations and companies were represented by attorneys,

"OFFICERS OF THE COURT", and other individuals in credentialed Public Trust Positions who took harmful and adverse actions against plaintiff, in deliberate and willful violation of law, with intent to harm and injure John Connolly (and others).

652. Defendants concealed adverse information and adverse actions from John Connolly (and others). John Connolly (and others) was not invited to participate in or be informed of undisclosed and concealed adjudication processes. John Connolly (and others) was a defendant in absentia, without representation or knowledge, at undisclosed and concealed adjudication processes, held by government agencies and/or government "business partners representing public and private corporations and companies. Although John Connolly (and others) had no representation, the government, public and private corporations and companies were represented by attorneys, "OFFICERS OF THE COURT", functioning from agencies Office Of The General Counsel and the Office Of The Inspector General, and their counterparts in public and private corporations and private companies.

653. The frauds John Connolly (and others) declined to participate in, focused on Business Process Re-Engineering and Re-Organization efforts in conjunction with building, maintaining and supporting fraudulent IT infrastructures. Over time these frauds would amount to billions of dollars.

654. The defendant public and private corporations and companies and individuals worked in collusion and in violation of constitutional, civil rights laws, rules and regulations with federal, state and local authorities in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes over a period approximating fifteen years.

655. Plaintiff asserts that the defendants have deprived themselves of any benefits or immunities of time limitations that may have applied for a number of reasons, including standard operating policies, procedures and process of the bad actors in retaining, accessing and using data on a regular basis. Defendants who have obtained information and universally deny individuals, John Connolly (and others), access to or knowledge of information in facilitating determinations, unlawfully, on an operational, systematic and transactional basis in perpetuity. Each and every time the specific data is referenced the violations are made new. Plaintiff asserts and prays the court Doe's find that the illegal operational processes, procedures and guidelines codified in corporate policy and "understandings" with bad actors representing government agencies alone is sufficient for re-qualifying or making violations anew on a daily basis. The bad actors are building and using the "poisoned" wells on a daily operational basis, as needed, in conjunction with universally denying individual, John Connolly (and others), the ability to access, correct, amend and/or challenge the data. Defendant's entities and individuals have no right to be relying on government attorneys or any attorney's opinions to be providing them with immunities with which they can violate John Connolly (and others)'s constitutional and civil rights with impunity.

656. Plaintiff asserts each of defendants has recommitted and renewed violations alleged in complaint during the year 2008.

657. **Please incorporate entire complaint to complete requisite assertations, claims, positions, arguments and reasoning.**

658. Defendants violated John Connolly (and others)'s Fifth Amendment rights of the United States Constitution

659. **John Connolly (and others) is entitled to an immediate and emergency review and relief by a senior Federal Judge He is entitled to the review and supervision of a federal judge to work out the immediate short term, and where possible long term planning and logistics of the restoration of John Connolly (and others)'s "liberty interest" and other issues.**

660. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

661. While the case may proceed through numerous judicial processes, plaintiff asserts/requests, that he is entitled to an immediate and emergency review by a senior Federal Judge to ameliorate and where possible provide interim relief and restoration of John Connolly (and others)'s "liberty interests".

662. A federal Judge has equitable power to order the release of John Connolly (and others) from the virtual confinement and servitude which the federal government and their "business partners" in public and private corporations have kept him in "reserve", for a period approximating fifteen to twenty years.

663. A federal Judge has additional authority and equitable powers over public and private corporations and companies through the use and exercise of the same federal acquisition regulations and contract clauses, government agencies, and their "willing" business partners in public corporations and private companies submit themselves and agree to on a regular basis.

**Twenty Eighth Cause of Action**
**United States Constitution Amendment VI**
**Accused shall enjoy the right to a speedy and public trial, by an impartial jury be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have the assistance of counsel for his defense.**

664. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

**Amendment VI states "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense. "**

665. **Defendants violated John Connolly (and others)'s Sixth Amendment Rights under the U.S Constitution. The Defendants subjected John Connolly (and others) to undisclosed and concealed adjudication processes which** essentially involved the use of suitability determinations, actions and processes. Evidence was obtained and evaluated, charges were made, testimony was obtained and/or reviewed, written and/or verbal, supplemental and/or "classified" guidelines were referenced, which were supported by "classified" legal opinions and/or advisories that have no basis in law, and were in fact designed to circumvent and violate the law. Appeals were made and/or were declined to be made, on behalf of John Connolly (and others) by the defendant entities involved, including; government agencies, public and private corporations, private companies and individuals. **All organizational entities** and individuals (except for John Connolly (and others) – who was not invited to, or notified about these activities), **were represented at varied points in the process by legal counsel. The attorneys, "Officers of The Court", operated and functioned through government agencies Offices of General Counsel, and Inspector Generals offices, in conjunction and collusion with attorneys representing public and private corporations and private companies and individuals.** Verdicts were reached and sentence were determined by defendant entities and individuals involved. These illegal, unconstitutional activities were deliberately conducted and concealed from John Connolly (and others) in order to circumvent John Connolly (and others)'s constitutional rights.

666. Plaintiff asserts that the defendants have deprived themselves of any benefits or immunities of time limitations that may have applied for a number of reasons, including standard operating policies, procedures and process of the bad actors in retaining, accessing and using data on a regular basis. Defendants who have obtained information and universally deny individuals, John Connolly (and others), access to or knowledge of information in facilitating determinations, unlawfully, on an operational, systematic and transactional basis in perpetuity. Each and every time the specific data is referenced the violations are made new. Plaintiff asserts and prays the court Doe's find that the illegal operational processes, procedures and guidelines codified in corporate policy and "understandings" with bad actors representing government agencies alone is sufficient for re-qualifying or making violations anew on a daily basis. The bad actors are building and using the "poisoned" wells on a daily operational

basis, as needed, in conjunction with universally denying individual, John Connolly (and others), the ability to access, correct, amend and/or challenge the data. Defendant's entities and individuals have no right to be relying on government attorneys or any attorney's opinions to be providing them with immunities with which they can violate John Connolly (and others)'s constitutional and civil rights with impunity.

667. Plaintiff asserts each of defendants has recommitted and renewed violations alleged in complaint during the year 2008.

668. **Please incorporate entire complaint to complete requisite assertations, claims, positions, arguments and reasoning.**

669. Defendants violated John Connolly (and others)'s Sixth Amendment rights of the United States Constitution

670. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**Twenty Ninth Cause of Action**
**United States Constitution Amendment VIII**
**Nor cruel and unusual punishments inflicted.**

671. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

672. Defendants violated John Connolly (and others)'s Eighth Amendment Rights under the United States Constitution. John Connolly (and others) has been provided and has obtained one or more offers of employment with government contractors involved in business operations with the aforementioned defendant government agencies and other federal agencies and public and private corporations. The work John Connolly (and others) performs requires a security clearance. On numerous occasions in which John Connolly (and others)'s "employment/license" had been "terminated/denied/revoked" in secret as the result of verdicts from undisclosed and concealed adjudication processes he "purportedly" possessed a clearances that were still active. John Connolly (and others) than acting as a "Typhoid Mary" or current day equivalent of a Human IED (without the benefit of knowledge), would than create and/or move onto a new opportunity, in which the process would be repeated again and again. John Connolly (and others) would work his way up into senior and trusted leadership positions, then BOOM, destroying or damaging surrounding business unites, practices, small companies and colleagues careers. During his career in "virtual confinement" John Connolly (and others) was repeatedly, in writing and verbally, informed by representatives of government agencies and public and private corporations that there were no security or employment clearance issues or concerns within his investigative and/or personnel files. John Connolly (and others) obtained personal confirmations' and assurance that there were no security or employment clearance issues numerous times, including communications, written and verbal, with the Federal Bureau of Investigation in 1999 and 2000 - "No records", responsive to request.

673. Plaintiff asserts that the defendants have deprived themselves of any benefits or immunities of time limitations that may have applied for a number of reasons, including standard operating policies, procedures and process of the bad actors in retaining, accessing and using data on a regular basis. Defendants who have obtained information and universally deny individuals, John Connolly (and others), access to or knowledge of information in facilitating determinations, unlawfully, on an operational, systematic and transactional basis in perpetuity. Each and every time the specific data is referenced the violations are made new. Plaintiff asserts and prays the court Doe's find that the illegal operational processes, procedures and guidelines codified in corporate policy and "understandings" with bad actors representing government agencies alone is sufficient for re-qualifying or making violations anew on a daily basis. The bad actors are building and using the "poisoned" wells on a daily operational basis, as needed, in conjunction with universally denying individual, John Connolly (and others), the ability to

access, correct, amend and/or challenge the data. Defendant's entities and individuals have no right to be relying on government attorneys or any attorney's opinions to be providing them with immunities with which they can violate John Connolly (and others)'s constitutional and civil rights with impunity.

674. Plaintiff asserts each of defendants has recommitted and renewed violations alleged in complaint during the year 2008.

675. One or more of the government contractors attempted to have government agencies and their supporting administrative agencies **DSS, OPM, FBI, DOJ, FDIC, IRS** transfer or renew John Connolly (and others) security clearance. Upon evidence, information and belief, the agencies continued the dissemination of false and defamatory information concerning John Connolly (and others) to the government contractors and additional federal agencies, **for the purpose of causing the employer to terminate John Connolly (and others) from his employment contract and/or his** "employment/license" (contract to hire, W2, LLC, 1099, etc) and his ability to seek and/or maintain other employment. As a result of the defendants' actions, John Do has suffered harm, both financially and with respect to his health.

676. **Defendants acted with full knowledge and purpose of harmful effects. Defendants acted in violation of law with intent to harm. Defendant's actions were reckless and constitute depraved indifference for human life. Defendants actions and violations of John Connolly (and others)'s constitutional and civil rights constitute illegal acts of torture as defined by US law and the code of federal regulations, and apply to individuals and entities "acting under color of law"**

677. **Fifteen To Twenty Years – H – For what reason, what purpose and under what authority? - There simply is no valid or legitimate reason. The only real explanation is governments "natural" propensity to increase its power and authority relative, to the governed. This is not a new or novice phenomenon.**

678. **The government has no right to be violating or outsourcing for the purposes of violating and circumventing constitutional and civil rights laws and other laws rules and regulations to the deliberate detriment and injury of John Connolly (and others), in violation of law.**

679. **Please incorporate entire complaint to complete requisite assertations, claims, positions, understandings, arguments and reasoning.**

680. Defendants violated John Connolly (and others)'s Eighth Amendment rights of the United States Constitution

681. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

## Thirtieth Cause of Action
## United States Constitution Amendment IX
## Privacy and Right To Be Left Alone

682. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

**Amendment IX states "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."**

683. Defendants violated John Connolly (and others)'s right to be left alone. John Connolly (and others) does not want his life regulated. John Connolly (and others) should be able to live and work with out providing excessive and

private information to be stored by governments and their business partners to take actions against John Connolly (and others) when the need or circumstances to conduct corruption initiatives arises. Defendants violated John Connolly (and others)'s Right to Privacy. Information that was obtained and/or obtainable from the "Public Doman" that an individual subject himself is not even aware of - is in fact "obscure" an not public domain information unless the individual has been apprised of its use and purpose and authorized its use and purpose, in each and every individual circumstances and instance.

684. **Please incorporate entire complaint to complete requisite assertations, claims, positions, understandings, arguments and reasoning.**

685. Defendants violated John Connolly (and others)'s Ninth Amendment rights of Privacy and Right To Be Left Alone the United States Constitution

686. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**Thirty First Cause of Action**
**United States Constitution - Amendment X**
**Powers not delegated to the United States are reserved to the states respectively, or to the people.**

687. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

688. **Plaintiff is under assault by "Officers Of The Court" – Attorneys functioning from agencies Office of General Counsel and Inspector Generals Offices in conjunction and collusion with attorneys representing public and private corporations and companies for the deliberate purpose of circumventing the law and conducting Constitutional and Civil Rights abuses in violation of law.**

689. **Please incorporate entire complaint to complete requisite assertations, claims, positions, understandings, arguments and reasoning.**

690. Defendants violated John Connolly (and others)'s Tenth Amendment rights of Privacy and Right To Be Left Alone **by violating state laws with respect to use and vetting for employment purposes information specifically prohibited from being used by the state laws of New York, Virginia and Illinois in violation of the tenth amendment of** the United States Constitution.

691. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**Thirty Second Cause of Action**
**United States Constitution Amendment XIV**
**Right to Due Process**

692. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

693. Plaintiff asserts that the defendants have deprived themselves of any benefits or immunities of time limitations that may have applied for a number of reasons, including standard operating policies, procedures and process of the bad actors in retaining, accessing and using data on a regular basis. Defendants who have obtained information and universally deny individuals, John Connolly (and others), access to or knowledge of information in facilitating determinations, unlawfully, on an operational, systematic and transactional basis in perpetuity. Each and every time the specific data is referenced the violations are made new. Plaintiff asserts and prays the court Doe's find that the illegal operational processes, procedures and guidelines codified in corporate policy and "understandings" with bad actors representing government agencies alone is sufficient for re-qualifying or making violations anew on a daily basis. The bad actors are building and using the "poisoned" wells on a daily operational basis, as needed, in conjunction with universally denying individual, John Connolly (and others), the ability to access, correct, amend and/or challenge the data. Defendant's entities and individuals have no right to be relying on government attorneys or any attorney's opinions to be providing them with immunities with which they can violate John Connolly (and others)'s constitutional and civil rights with impunity.

694. Plaintiff asserts each of defendants has recommitted and renewed violations alleged in complaint during the year 2008.

695. **Please incorporate entire complaint to complete requisite assertations, claims, positions, arguments and reasoning.**

696. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**Thirty Third Cause of Action**
**United States Constitutional Rights & Civil Protections Provisioned By Congress & Provided In Title 18, U.S.C., Section 241 Conspiracy Against Rights**

697. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

698. Defendants and other individuals in government agencies and public and private corporations, acting under color of law conspired against John Connolly (and others), in deliberate violation of law each and every time he sought, obtained, maintained or secured gainful employment to which he was fully entitled under the United States Constitution and other laws of the United States.

699. Defendants violated John Connolly (and others)'s forth amendment rights of the United States Constitution. Defendants did with the purpose of protecting corruption initiatives and other illegal programs, participated, with knowledge and consent, in varied illegal activities involving the obtaining, storage, management, use, facilitation, communication, concealment and dissemination of adverse, false, misleading, inaccurate and fraudulent information about plaintiff, which included falsification of government records, and perjured government statements and reports to the deliberate detriment of plaintiff. The adverse information was presented in forums where adjectives describing, processes, procedures, roles and responsibilities would be clearly associative with trials identified as undisclosed and concealed adjudication processes. Plaintiff John Connolly (and others) was not permitted any knowledge of adjudications and was tried in absentia, by government agencies and/or government "business partners representing public and private corporations and companies. Although John Connolly (and others) had no representation, the government, public and private corporations and companies were represented by attorneys, "OFFICERS OF THE COURT", and other individuals in credentialed Public Trust Positions who took harmful and adverse actions against plaintiff, in deliberate and willful violation of law, with intent to harm and injure John Connolly (and others).

700. Defendants concealed adverse information and adverse actions from John Connolly (and others). John Connolly (and others) was not invited to participate in or be informed of undisclosed and concealed adjudication processes. John Connolly (and others) was a defendant in absentia, without representation or knowledge, at undisclosed and concealed adjudication processes, held by government agencies and/or government "business partners representing public and private corporations and companies. Although John Connolly (and others) had no representation, the government, public and private corporations and companies were represented by attorneys, "OFFICERS OF THE COURT", functioning from agencies Office Of The General Counsel and the Office Of The Inspector General, and their counterparts in public and private corporations and private companies.

701. The frauds John Connolly (and others) declined to participate in, focused on Business Process Re-Engineering and Re-Organization efforts in conjunction with building, maintaining and supporting fraudulent IT infrastructures. Over time these frauds would amount to billions of dollars.

702. The defendant public and private corporations and companies and individuals worked in collusion and in violation of constitutional, civil rights laws, rules and regulations with federal, state and local authorities in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes over a period approximating fifteen years.

703. John Connolly (and others) was never provided any administrative remedies to challenge and/or correct, the false inaccurate, irrelevant records that pertained to John Connolly (and others), and also led to defendant government and government contractors actions to terminate his "employment/license which, as a federal employee, contractor, volunteer, convicted felon, escaped convict or terrorist he was entitled to pursue.

704. Defendants individually and collectively and in "functional" groups did conspire to injure, oppress, threaten, and intimidate John Connolly (and others) in the free exercise and enjoyment of aforementioned rights and privilege secured to him/her by the Constitution and laws of the United States, and further retaliated against and/or deprived him of his constitutional rights in efforts to protect illegal corruption initiatives and other illegal government programs. Government programs and the individuals in government agencies, public and private corporations "acting under color of law" who, deliberately and in violation of law have conspired to deprive John Connolly (and others) of his constitutional and civil rights are part of unlawful government programs, funded illegally, with un-appropriated monies, and provide the business process supporting infrastructure and systems architectures for circumvention of John Connolly (and others)'s (and others) civil and constitutional rights.

705. Plaintiff asserts that the defendants have deprived themselves of any benefits or immunities of time limitations that may have applied for a number of reasons, including standard operating policies, procedures and process of the bad actors in retaining, accessing and using data on a regular basis. Defendants who have obtained information and universally deny individuals, John Connolly (and others), access to or knowledge of information in facilitating determinations, unlawfully, on an operational, systematic and transactional basis in perpetuity. Each and every time the specific data is referenced the violations are made new. Plaintiff asserts and prays the court Doe's find that the illegal operational processes, procedures and guidelines codified in corporate policy and "understandings" with bad actors representing government agencies alone is sufficient for re-qualifying or making violations anew on a daily basis. The bad actors are building and using the "poisoned" wells on a daily operational basis, as needed, in conjunction with universally denying individual, John Connolly (and others), the ability to access, correct, amend and/or challenge the data. Defendant's entities and individuals have no right to be relying on government attorneys or any attorney's opinions to be providing them with immunities with which they can violate John Connolly (and others)'s constitutional and civil rights with impunity.

706. Plaintiff asserts each of defendants has recommitted and renewed violations alleged in complaint during the year 2008. **Please incorporate entire complaint to complete requisite assertions, claims, positions, arguments and reasoning.**

707. Defendants violated John Connolly (and others)'s rights with deliberate and willful violations of criminal statutes and protections as defined in Title 18, U.S.C., Section 241Conspiracy Against Rights.

708. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost

contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**Thirty Fourth**
**Cause of Action**
**Violation of**
**United States Constitutional Rights & Civil Protections Provisioned By Congress & Provided In Title 18, U.S.C., Section 242**
**Acting under color of law, statute, ordinance, regulation,**
**To willfully deprive or cause to be deprived from any person those rights**

709. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

710. Deprivation of Rights Under Color of Law. The defendants and entities who involved themselves in and conducted criminal acts on a routine basis were professionals serving in Credentialed Public Trust Positions. These individuals and functional groups of professionals were not only serving under color of law, their specialized professional forte is the Protection of Civil Rights. Many of these individuals following their own agenda serve in the most senior and trusted of public trust positions and are responsible for providing numerous certification documents and other certifying collateral attesting to civil rights protections. This statute makes it a crime for any person acting under color of law, statute, ordinance, regulation, or custom to willfully deprive or cause to be deprived from any person those rights, privileges, or immunities secured or protected by the Constitution and laws of the U.S.

711. This law further prohibits a person acting under color of law, statute, ordinance, regulation or custom to willfully subject or cause to be subjected any person to different punishments, pains, or penalties, than those prescribed for punishment of citizens on account of such person being an alien or by reason of his/her color or race.

712. Defendants violated John Connolly (and others)'s forth amendment rights of the United States Constitution. Defendants did with the purpose of protecting corruption initiatives and other illegal programs, participated, with knowledge and consent, in varied illegal activities involving the obtaining, storage, management, use, facilitation, communication, concealment and dissemination of adverse, false, misleading, inaccurate and fraudulent information about plaintiff, which included falsification of government records, and perjured government statements and reports to the deliberate detriment of plaintiff. The adverse information was presented in forums where adjectives describing, processes, procedures, roles and responsibilities would be clearly associative with trials identified as undisclosed and concealed adjudication processes. Plaintiff John Connolly (and others) was not permitted any knowledge of adjudications and was tried in absentia, by government agencies and/or government "business partners representing public and private corporations and companies. Although John Connolly (and others) had no representation, the government, public and private corporations and companies were represented by attorneys, "OFFICERS OF THE COURT", and other individuals in credentialed Public Trust Positions who took harmful and adverse actions against plaintiff, in deliberate and willful violation of law, with intent to harm and injure John Connolly (and others).

713. Defendants concealed adverse information and adverse actions from John Connolly (and others). John Connolly (and others) was not invited to participate in or be informed of undisclosed and concealed adjudication processes. John Connolly (and others) was a defendant in absentia, without representation or knowledge, at undisclosed and concealed adjudication processes, held by government agencies and/or government "business partners representing public and private corporations and companies. Although John Connolly (and others) had no representation, the government, public and private corporations and companies were represented by attorneys, "OFFICERS OF THE COURT", functioning from agencies Office Of The General Counsel and the Office Of The Inspector General, and their counterparts in public and private corporations and private companies.

714. The defendant government agencies, defendant public and private corporations, private companies and individuals, to include all their agents and representatives, including contractors, acting on their own behalf, or under

"color of law" and/or acting and serving with or in a federal "Credentialed Public Trust Positions" failed to accord John Connolly (and others) any due process and denied him any administrative rights that federal employees, or individuals under contract to any agency must be provided before their "employment/license" regardless of category is terminated. This included, but was not limited to, the failure to provide notice, or the ability to challenge and to correct and/or amend adverse investigatory records and findings.

715. The defendant public and private corporations, private companies and individuals, to include all their agents and representatives, including contractors, acting on their own behalf, or under "Color of law" and/or acting and serving with or in a federal "credentialed Public Trust Positions" failed to accord John Connolly (and others) any due process and denied him any administrative rights he was entitled to from entities acting under "Color of law". Moreover, **defendant public and private corporations, private companies and individuals, to include all their agents and representatives under public contracts violated contract provisions that require them to remain in compliance with the laws, rules, regulations and statutes of the United States at federal, state and local levels.** The defendant public and private corporations, private companies and individuals, violated a number of laws and due process rights of John Connolly (and others), with respect to and including his constitutional and civil rights, and specific rights provided to him under the statutes of the Fair Credit Reporting Act, FACT Act, Privacy Act (that also apply to government contractors) and other federal and state rights laws. **The defendant public and private corporations, private companies and individuals, to include all their agents and representatives, did willfully and with reckless indifference sell the life and liberty of John Connolly (and others), to include his wife and children, down the river for a profit, never let him know about it, and never asked any questions.**

716. The defendants are not permitted, notwithstanding any contractual language to the contrary, to violate John Connolly (and others) Constitutional, statutory or regulatory rights.

717. Plaintiff asserts that the defendants have deprived themselves of any benefits or immunities of time limitations that may have applied for a number of reasons, including standard operating policies, procedures and process of the bad actors in retaining, accessing and using data on a regular basis. Defendants who have obtained information and universally deny individuals, John Connolly (and others), access to or knowledge of information in facilitating determinations, unlawfully, on an operational, systematic and transactional basis in perpetuity. Each and every time the specific data is referenced the violations are made new. Plaintiff asserts and prays the court Doe's find that the illegal operational processes, procedures and guidelines codified in corporate policy and "understandings" with bad actors representing government agencies alone is sufficient for re-qualifying or making violations anew on a daily basis. The bad actors are building and using the "poisoned" wells on a daily operational basis, as needed, in conjunction with universally denying individual, John Connolly (and others), the ability to access, correct, amend and/or challenge the data. Defendant's entities and individuals have no right to be relying on government attorneys or any attorney's opinions to be providing them with immunities with which they can violate John Connolly (and others)'s constitutional and civil rights with impunity.

718. Plaintiff asserts each of defendants has recommitted and renewed violations alleged in complaint during the year 2008.

719. The violations were under color of law instituted by individuals who serve in Credentialed Public Trust Positions who terminated John Connolly (and others)'s employment license as part of an effort to protect illegal corruption initiatives amounting to hundreds of millions of dollars on government contracts. This government fraud and abuse would amount to billions of dollars over time. John Connolly (and others) was terminated, ostensibly, based on the results of false and fraudulent government records that were presented at a secret tribunal. John Connolly (and others), to this day, was never informed, and had no idea of the existence or processes of these undisclosed and concealed adjudication processes. The undisclosed and concealed adjudication processes involved suitability determinations, actions and processes. Evidence was obtained and evaluated, charges were made, testimony was obtained and/or reviewed, written and/or verbal, supplemental and "classified" guidelines were referenced, which were supported by "classified" legal opinions and/or advisories that have no basis in law. Appeals were made and/or were declined to be made, on behalf of John Connolly (and others) by the defendant entities involved, including; government agencies, public and private corporations, private companies and individuals. All organizational entities and individuals (except for John Connolly (and others) – who was not invited to, or notified about these activities), were represented at varied points in the process by legal counsel. The attorneys, "Officers of The Court", operated and functioned through government agencies Offices of General Counsel, and Inspector

Generals offices, in conjunction and collusion with attorneys representing public and private corporations and private companies and individuals. Verdicts were reached and sentence were determined by defendant entities and individuals involved. These illegal, unconstitutional activities were deliberately conducted and concealed from John Connolly (and others) in order to circumvent John Connolly (and others)'s constitutional rights. Defendants and associated government "business partners", to include public and private corporations and companies and individuals, worked in collusion and in violation of constitutional, civil rights laws, rules and regulations with federal authorities in executing these secret sentences, and verdicts of the undisclosed and concealed adjudication processes.

720. Please incorporate entire complaint to complete requisite assertations, claims, positions, understandings, arguments and reasoning.

721. Defendants serving in credentialed Public Trust Positions did willfully and continue to violate the law with criminal intent and acting under color of law to support the deprivation of John Connolly (and others)'s Constitutional and civil rights protections as provided under Title 18, U.S.C., Section 242

722. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**Thirty Fifth Cause of Action - Violation of United States Constitutional Rights & Civil Protections Provisioned By Congress & Provided In Title 18, U.S.C., Section 245 Federally Protected Activities**

723. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

724. Plaintiff asserts he has been a participant in benefits, service, privilege, programs, facilities and activities provided and administered by the United States in employment opportunities, as an applicant, employee, unknown "employee/license" recipient for over the last thirty years, and as a citizen of the United States, in addition to meeting other qualifications, required under Title 18 U.S.C. section 245 1) b), c) and e)

725. John Connolly (and others) has been injured, willfully, with deliberate intent to harm and intimidate in violation of law. Defendants caused willful, deliberate and catastrophic injury to John Connolly (and others) by secretly denying, terminating, withdrawing, gainful employment and liberty opportunities as part of undisclosed and concealed adjudication processes based on false, incorrect, and misleading information and "imparting to him", hundreds of false, falsified and counterfeit secret records, sentences and verdicts, expanding a period of fifteen to twenty years in "employment/license" opportunities with the federal government, and public and private sector corporations and companies. Defendants deliberate and willful injuries and intimidation of John Connolly (and others) violated civil rights protections due John Connolly (and others) and enumerated in criminal statutes of **Title 18, U.S.C., Section 245** 1) b), c) and e). **Defendants also violated** John Connolly (and others)'s rights under the 4,5,6,8 and 9 amendments of the United States Constitution. Defendants did with the purpose of protecting corruption initiatives and other illegal programs, participated, with knowledge and consent, in varied illegal activities involving the obtaining, storage, management, use, facilitation, communication, concealment and dissemination of adverse, false, misleading, inaccurate and fraudulent information about plaintiff, which included falsification of government records, and perjured government statements and reports to the deliberate detriment of plaintiff. The adverse information was presented in forums where adjectives describing, processes, procedures, roles and responsibilities would be clearly associative with trials identified as undisclosed and concealed adjudication processes. Plaintiff John Connolly (and others) was not permitted any knowledge of adjudications and was tried in absentia, by government agencies and/or government "business partners representing public and private corporations and companies. Although John Connolly (and others) had no representation, the government, public and private corporations and companies were represented by attorneys, "OFFICERS OF THE COURT", and other individuals in

credentialed Public Trust Positions who took harmful and adverse actions against plaintiff, in deliberate and willful violation of law, with intent to harm and injure John Connolly (and others).

726. Defendants violated John Connolly (and others)'s Eighth Amendment Rights under the United States Constitution. John Connolly (and others) has been provided and has obtained one or more offers of employment with government contractors involved in business operations with the aforementioned defendant government agencies and other federal agencies and public and private corporations. The work John Connolly (and others) performs requires a security clearance. On numerous occasions in which John Connolly (and others)'s "employment/license" had been "terminated/denied/revoked" in secret as the result of verdicts from undisclosed and concealed adjudication processes he "purportedly" possessed a clearances that were still active. John Connolly (and others) than acting as a "Typhoid Mary" or current day equivalent of a Human IED (without the benefit of knowledge), would than create and/or move onto a new opportunity, in which the process would be repeated again and again. John Connolly (and others) would work his way up into senior and trusted leadership positions, then BOOM, destroying or damaging surrounding business unites, practices, small companies and colleagues careers. During his career in "virtual confinement" John Connolly (and others) was repeatedly, in writing and verbally, informed by representatives of government agencies and public and private corporations that there were no security or employment clearance issues or concerns within his investigative and/or personnel files. John Connolly (and others) obtained personal confirmations' and assurance that there were no security or employment clearance issues numerous times, including communications, written and verbal, with the Federal Bureau of Investigation in 1999 and 2000 - "No records", responsive to request.

727. Defendants concealed adverse information and adverse actions from John Connolly (and others). John Connolly (and others) was not invited to participate in or be informed of undisclosed and concealed adjudication processes. John Connolly (and others) was a defendant in absentia, without representation or knowledge, at undisclosed and concealed adjudication processes, held by government agencies and/or government "business partners representing public and private corporations and companies. Although John Connolly (and others) had no representation, the government, public and private corporations and companies were represented by attorneys, "OFFICERS OF THE COURT", functioning from agencies Office Of The General Counsel and the Office Of The Inspector General, and their counterparts in public and private corporations and private companies.

728. Defendants are prohibited from willfully and with purpose injuring, intimidating and interfering with John Connolly (and others)'s protected activity and exercising of his constitutional rights in seeking, obtaining and/or maintaining employment or employment/license with government agencies and their "business partners", in public and private corporations working on federal contracts, programs, or any initiatives assisted, financed and/or supported by the government.

729. Section 2) Prohibits willful injury, intimidation, or interference or attempt to do so, by force or threat of force of any person because of race, color, religion, or national origin and because of his/her activity as:

730. Defendants activities and actions were in **violations of Title 18, U.S.C., Section 245 2) b), and 2) c)** which applies sanctions and penalties for willful injuries and interference because of race or national origin of individuals involved in protected activities. Aforementioned John Connolly (and others), who is first generation Irish and qualifies for dual citizenship was a participant and beneficiary in numerous programs administrated and financed by state governments to include but not limited to employment on state financed government contracts and benefit programs and as an applicant for employment opportunities with public and private corporations and companies for almost thirty years.

731. The process of undisclosed and concealed adjudication processes John Connolly (and others) was subjected to, over a fifteen to twenty year period, was raciest and discriminatory in nature. Plaintiff has reviewed deliverables and work products of attorneys representing the Offices of Inspector Generals, and General Counsels allocating the majority of blame in their analysis of criminal activity in government agencies on foreign born nationals is disturbing. The size, quality of content, expansive nature and narrative produced by our most senior and trusted of our public trust officials is distressing. The activities and plans discussed, confirmed, agreed to, and congratulated on - to obtain records on individuals in the United States from foreign countries through and by purchases of public and private corporations and companies in those countries places plaintiff in position of disbelief. Selected excerpts of

analysis of discussion documents and white papers seem **more consistent with Mine Kempf** than a product produced by senior Public Trust Officials of the United States whose area of specialty is civil rights protections.

732. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**Thirty Sixth Cause of Action RICO**
**RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT**
**TITLE 18 U.S.C. S1962(d) (CONSPIRACY CLAIM) CIVIL REMEDIES TITLE 18 U.S.C. 1964(c)**

733. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

734. Defendants and other individuals in government agencies and public and private corporations, acting under color of law conspired against John Connolly (and others), in deliberate violation of law each and every time he sought, obtained, maintained or secured gainful employment to which he was fully entitled under the United States Constitution and other laws of the United States.

735. During a period approximating fifteen to twenty years the FBI and other defendant government agencies and their "business partners" in public corporations and private companies to include all officers, employees and other associates of respective entities, and other unknown persons acting in association knowingly, intentionally, and willfully, joined, agreed and conspired to, and did so, form an enterprise made up of disparate functional business groups, whose responsibilities cut across all business process within an agency and have intra agency elements coordinated by attorneys and other senior "public trust" officials and various named and unknown named federal employees and contractors, of enterprise, with its principal purpose to function as members of said illicit enterprise, through the legal organizational structures of government agencies, and through its members carry out a pattern of racketeering, corruption and corruption support and protection activities as a common scheme to intimidate, corruptly coerce, and corruptly persuade, individuals, witnesses, clients, contractors and employees of the federal government and public and private corporations and companies, working on government programs, contracts and other shared domain initiatives which include the outsourcing of constitutional and civil rights prerogatives to private interests. Human resource determinations impacting individuals in order to facilitate and protect corruption initiatives can take many forms including the holding of hearings in secret. The "subject" individual is prohibited from being made aware of any adverse information, in the interests of national security, and other reasons and official proceedings withhold, fabricate and falsify evidence, information, testimony, and AUTHORIZED and/or ALLOWED predicate acts of racketeering, Title 18 U.S.C. §201(c)(2) (relating to bribery – corporations can avoid adverse actions and replace individual, with another billable resource – If government actions are not opposed or challenged), Title 18 U.S.C. §1503 (relating to Obstruction of Justice), and Title 18 U.S.C. §1512 (relating to tampering with a witness, victim, or an informant), as defined within "racketeering activity" under Title 18 U.S.C. §1961, to cover-up certain legal and illegal activities of other acting in aid thereof, all in violation of Title 18 U.S.C. §1962(d), the CONSPIRACY CLAIM WITHIN RICO.

736. For John Connolly (and others) the deliberate falsification of records, fraudulent record entries and disseminations also included mention and findings of undisclosed and concealed adjudication processes, which were concealed from John Connolly (and others) and to which John Connolly (and others) was not invited to participate in or be informed of, however each tribunal impacted and "imparted" on John Connolly (and others) a secret status change of essentially "persona non grata" . John Connolly (and others) was a defendant in absentia, without representation or knowledge, at undisclosed and concealed adjudication processes, held by government agencies and/or government "business partners" representing public and private corporations and companies.

737. It is of critical importance to understand that although John Connolly (and others) had no representation, the government, public and private corporations and companies were represented by attorneys, "OFFICERS OF THE

COURT", functioning from agencies Office Of General Counsel and the Inspector Generals Office, and their counterparts in public and private corporations and private companies. They set-up, protected and managed the entire process.

738. While agencies may be sanctioned, as the court may so determine, plaintiff's infinity for his country, requests only that the functional groups (In camera review) and individual bad actors be assessed in full violations of aforementioned statutes and laws, and not a named agency, whose mission and purpose were subverted.

739. Public and private corporations and private companies and individuals should be held fully accountable. The law and the market will make appropriate determinations. Plaintiff may have very limited standing in application of law. However, plaintiff has have preference for sanctions to be applied to lower levels of an organization, and not "transient" leadership - Attorneys, CPA, outside counsel, anyone with a license or certification is fair game.

740. Plaintiff claims that each Defendant by WORDS or ACTIONS, conspired to engage in a pattern of racketeering activities in violation of Title 18 U.S.C. §1962. Plaintiff also alleges the seven constitutional elements: (1) that the Defendant's (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of racketeering activity (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce. See, IN RE CRAZY EDDIE SECURITIES LITIGATION, 812 F.Supp. 338, 347 (E.D.N.Y. 1993).

741. Plaintiff states that Supreme Court Justice J. Kennedy stated in SALINAS vs. U.S., No. 96-738, 62 CrL 2010, 12/03/97, "To be convicted of conspiracy to violate RICO under §1962(d), the conspirator NEED NOT HIMSELF HAVE COMMITTED OR AGREED TO COMMIT THE TWO OR MORE PREDICATE ACTS, such as bribery, requisite for a substantive RICO offense under §1962(c). Section 1962(d) - which forbids "any person to conspire to violate" §1962(c) - is even more comprehensive than the general conspiracy provision applicable to federal crimes, §371, since it contains no requirement of an overt act or specific act to effect the conspiracy's object . . . it suffices that he adopt the goal of furthering or facilitating the criminal endeavor, and he need not agree to undertake all of the acts necessary for the criminal completion."

742. Plaintiff states that he was INJURED "by reason of a violation of Section 1962.", Title 18 U.S.C. S1964(c) and other sections.

743. Defendants used the U.S. POSTAL SERVICE and internet service providers to commit mail fraud, that is defendant's knowingly or intentional participation in scheme, the use of inter state mails and/or wire communications in furtherance of all adverse actions and proceedings of trials and undisclosed and concealed adjudication processes of Plaintiff John Connolly (and others), (1) adverse actions (2) denial of notification (3) denial of opportunity to challenge records (4) denial of opportunity to correct records (5) denial of opportunity to amend records (6) denial of opportunity of include a statement of explanation or statement of dispute with record (7) denial of opportunity to appeal findings (8) denial of opportunity to make motions (9) denial of several hundred requests made under the Privacy Act (10) denial of several hundred requests made under the Freedom of Information Act (11) denial of several hundred requests made under the Fair Credit Reporting Act (12) failure to follow agency regulations (13) failure to exercise due care of privacy act protected records (14) failure to protect and keep John Connolly (and others) safe (15) acting with reckless and depraved indifference to human life, in conspiracy with others with the purpose to cause injury to John Connolly (and others) for monetary gain etc. Title 18 U.S.C.A. §§ 1341 & 1343.

744. Defendant's false and/or fraudulent information as to the actual concealing of adverse information, adverse actions, "imparting of secret" records and status changes and total deprivation of due process and impositions of legal sentence(s), to further and protect corruption initiatives was neither isolated, nor sporadic, and constitute a pattern of racketeering activity.

745. Plaintiff relied on Defendant's misrepresentation. Therefore, injury occurred by reason of Defendant's actions. Defendant's supplied false and/or fraudulent information for the guidance of Plaintiff, thus subject to liability to loss caused by Defendant's. Plaintiff's justifiable reliance upon the information caused injury.

746. BROWN vs. LaSALLE NORTHWEST NATIONAL BANK, 820 F.Supp. 1078, 1079, Key Note 5 (N.D. Ill. 1993) (Borrower sufficiently alleged pattern of RICO activity to support civil RICO claim against bank which lent

her money for automobile purchase by claiming that bank used numerous insurance agents and numerous automobile dealers to defraud numerous customers of their RIGHT TO NOTICES OF DEFENSES TEEY HAD UNDER FEDERAL LAW AGAINST BANK'S COLLECTION OF LOANS ON AUTOMOBILE TRANSACTIONS THAT WENT BAD. 18 U.S.C.A. §1961 et seq.; Fed . Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.)

747. Under these circumstances, there exists an almost certainty that said enterprise will attempt to obstruct justice and further impact on interstate commerce.

748. During the course and in furtherance of said conspiracy and enterprise, Plaintiff incorporates all pleadings within this action and all pleadings within the companion case U.S. vs. LAMBROS, Criminal File No. CR-4-89-82(05), District of Minnesota, and Eighth Circuit Court of Appeals case U.S. vs. LAMBROS, 65 F.3d 698 (1995), among others, were committed under racketeering acts.

**DAMAGES UNDER THE THIRTY SIXTH CAUSE OF ACTION - RICO - 18 U.S.C. S1962 (d) CONSPIRACY CLAIM - PROVIDES FOR CIVIL REMEDIES IN FORM OF TREBLE DAMAGES. TITLE 18 U.S.C. S1964(c).**

749. **DAMAGE PRAYER – For This CAUSE OF ACTION**

750. For Thirty Sixth Cause of Action - (36th) Cause of Action $1 Billion U.S.;

a. For pain, suffering, and actual injuries to Plaintiff's body, enjoyment of use, loss of wages, residual pain, etc., as to the 36th cause of action $1 Billion U.S.

b. Plaintiff requests the Court and jury to adjust/recalculate TOTAL DAMAGES, DUE TO RICO TREBLE DAMAGE EXPOSURE, AND SUM CERTAIN ACTUAL AND PUNITIVE DAMAGES FROM EACH DEFENDANT DUE TO INJURIES SUSTAINED HEREIN.

751. I hereby certify that the above is true and correct pursuant to Title28 U.S.C.A. §1746.

752. John Connolly (and others) seeks a jury trial and monetary damages for personal damages and punitive damages.

753. Defendants activities and actions were in **violations of Title 18, U.S.C., Section 245 2) b), and 2) c)** which applies sanctions and penalties for willful injuries and interference because of race or national origin of individuals involved in protected activities. Aforementioned John Connolly (and others), who is first generation Irish and qualifies for dual citizenship was a participant and beneficiary in numerous programs administrated and financed by state governments to include but not limited to employment on state financed government contracts and benefit programs and as an applicant for employment opportunities with public and private corporations and companies for almost thirty years.

754. The process of undisclosed and concealed adjudication processes John Connolly (and others) was subjected to, over a fifteen to twenty year period, was raciest and discriminatory in nature. Plaintiff has reviewed deliverables and work products of attorneys representing the Offices of Inspector Generals, and General Counsels allocating the majority of blame in their analysis of criminal activity in government agencies on foreign born nationals is disturbing. The size, quality of content, expansive nature and narrative produced by our most senior and trusted of our public trust officials is distressing. The activities and plans discussed, confirmed, agreed to, and congratulated on - to obtain records on individuals in the United States from foreign countries through and by purchases of public and private corporations and companies in those countries places plaintiff in position of disbelief. Selected excerpts of analysis of discussion documents and white papers seem **more consistent with Mine Kempf** than a product produced by senior Public Trust Officials of the United States whose area of specialty is civil rights protections.

755. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no

possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**Thirty Seventh Cause of Action**
**Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985 and 1988.**

756. Plaintiff hereby re-alleges all allegations in all above paragraphs, causes and sections and all below paragraphs causes and sections.

757. Deprivation of Rights "Under Color of Law". The defendants and entities who involved themselves in and conducted criminal acts on a routine basis were professionals serving in Credentialed Public Trust Positions. These individuals and functional groups of professionals were not only serving under color of law, their specialized professional forte is the Protection of Civil Rights. Many of these individuals following their own agenda serve in the most senior and trusted of public trust positions and are responsible for providing numerous certification documents and other certifying collateral attesting to civil rights protections. This statute makes it a crime for any person acting under color of law, statute, ordinance, regulation, or custom to willfully deprive or cause to be deprived from any person those rights, privileges, or immunities secured or protected by the Constitution and laws of the U.S.

758. This law further prohibits a person acting under color of law, statute, ordinance, regulation or custom to willfully subject or cause to be subjected any person to different punishments, pains, or penalties, than those prescribed for punishment of citizens on account of such person being an alien or by reason of his/her color or race.

759. With this suit, Plaintiff seeks compensatory and punitive damages for Defendants' actions of retaliation, discrimination, breach of contract and tortuous interference with contracts over a period approximating 15 to twenty years.

760. In addition, John Connolly (and others) seeks injunctive relief against the policies that chill his own speech and limit his rights to free association liberty interests, tortuous interference with contracts, employment/licenses, gainful employment or however the government and/or courts define how I pay my bills. Plaintiff also seeks damages caused by the defendant's impermissible closure of the "marketplace of ideas", for the furtherance and protection of corruption initiatives.

761. The process of undisclosed and concealed adjudication processes John Connolly (and others) was subjected to, over a fifteen to twenty year period, was raciest and discriminatory in nature. Plaintiff has reviewed deliverables and work products of attorneys representing the Offices of Inspector Generals, and General Counsels allocating the majority of blame in their analysis of criminal activity in government agencies on foreign born nationals is disturbing. The size, quality of content, expansive nature and narrative produced by our most senior and trusted of our public trust officials is distressing. The activities and plans discussed, confirmed, agreed to, and congratulated on - to obtain records on individuals in the United States from foreign countries through and by purchases of public and private corporations and companies in those countries places plaintiff in position of disbelief. Selected excerpts of analysis of discussion documents and white papers seem **more consistent with Mine Kempf** than a product produced by senior Public Trust Officials of the United States whose area of specialty is civil rights protections.

762. John Connolly (and others) has suffered adverse and catastrophic harmful effects, including, but not limited to, life threatening ailments, physical distress, mental distress, emotional trauma, embarrassment, humiliation, lost contracts, and employment opportunities and jeopardized future gainful employment opportunities. Damages also involved injury to John Connolly (and others)'s wife and children, to include but not limited to injuries of health, safety and welfare, (in-camera review). John Connolly (and others) has been permanently damaged with virtually no possibility for an adequate, satisfactory or secure recovery. John Connolly (and others)'s "liberty interest" has been crippled for the duration of his own life and quite possibly for the lives of his children.

**DEMANDS (partial)**

This lawsuit is being filed to challenge the legality of these U.S. government-run extra judicial "justice" programs. Being a silent judge jury and executioner in promulgating, financing, mandating, supporting and protecting these

programs through the federal civilian government agencies into and through to the private sector is the illegal outsourcing of our constitutional and civil rights. It is a violation of law.
WHEREFORE: John Connolly (and others). requests that the Court award him the following relief:

1) **John Connolly (and others) is entitled to an immediate and emergency review and relief by a senior Federal Judge He is entitled to the review and supervision of a federal judge to work out the immediate short term, and where possible long term planning and logistics of the restoration of John Connolly (and others)'s "liberty interest" and other issues, with DOJ Attorneys**

2) A federal Judge has equitable power to order the release of John Connolly (and others) from the virtual confinement and servitude which the federal government and their "business partners" in public and private corporations have kept him in "reserve", for a period approximating two decades.

3) A federal Judge has additional authority and equitable powers over public and private corporations and companies through the use and exercise of the same federal acquisition regulations and contract clauses, government agencies, and their "willing" business partners in public corporations and private companies submit themselves and agree to on a regular basis.

4) **Plaintiff demands a Trial By A Jury of His Peers He Has Been Waiting Almost 3 decades.**

5) John Connolly (and others) wants a Jury of his peers (With the exception of cause 36 – remedy included narrative) to determine the harm he has suffered and determine what damages he should or may receive.

6) Plaintiff wants all relevant government attorneys disbarred

7) Plaintiff wants all relevant government accountants disbarred

8) Referral for the request of a Special Prosecutor, who is Not an Attorney.

9) Pray the Court should order an interim assessment and payment to John Connolly (and others) on more than a dozen lost contracts. – Interim damages are readily determinable

10) Pray the Court should order an interim assessment of litigation expenses and counsel fees for petitioners prior to the establishment of the trial and compilation of the expert and factual testimony proposed in question.

11) Establish Finding of Fault that Federal Agencies are in violation of various constitutional and civil rights, rules regulations and laws by requesting information from an individual for background purposes of establishing a right to work, Employment License, Contract Sourcing or Job Application that is different from, and inconsistent with the information sought from data brokers and background information providers.

12) Plaintiff is seeking information about all these programs in addition to seeking compliance with John Connolly (and others)'s FOIA, PA and FCRA requests. Plaintiff seeks to have the Office of Management and Budget (OMB) and the General Services Administration (GSA) issue instructions for all agencies and administrative supporting entities, including themselves, to comply with the same detailed specification requests made of OPM, DOT and the FBI. (See Appendix )

13) Plaintiff is seeking copies of all communications, memorandums of agreements and memorandums of understandings and contracts and interfaces and FBI or Federal agency access privileges to data repositories of any and all public corporations, or private entities. These repositories can include even a single data element where the user i.e. FBI, can "aggregate or produce a single matching records on the fly" Please see detailed specifications provided to the FBI on numerous occasions.

14) Plaintiff seeks copies of all communications with government attorneys who are responsible for all aspects of these illegal and criminal activities. Plaintiff seeks copies of all communications between government attorneys, their outside councils and with private corporations and their corporate councils. Plaintiff also seeks any particular information covering any legal liability issues, criminal or financial, for their roles in cooperating with

the government in enforcing and abiding by these illegal agreements, and their intelligence gathering which violate constitutional and civil rights laws rules and regulations, including the violation of criminal statutes.

15) Plaintiff Prays the Court Declare and find that the Government Agencies violated the Administrative Procedure Act, its internal regulations and/or statutes governing John Connolly's employment/license terminations over a period covering 15 to 20 years.

16) Declare and find that the defendants violated the Privacy Act by failing to collect information directly from John Connolly., failed to maintain accurate, relevant, timely or complete records pertaining to John Connolly and/or failed to make reasonable efforts to assure that such records regarding John Connolly (and similarly situated individuals) are accurate, complete, timely and relevant prior to dissemination;

17) Declare and find that the defendants violated John Connolly (and similarly situated individuals)'s liberty interest under the Fifth Amendment to the Constitution;

18) Refer those officials responsible for violating the law for prosecution.

19) Award John Connolly the costs of the action and reasonable attorney fees under the Equal Access to Justice Act or any other applicable law; and

20) Grant such other relief as the Court may deem just and proper.

Under penalties of perjury these statements are sworn to true.

Date: January 13, 2008
Respectfully submitted,

J.P. Connolly Counsel Pro Se (703) 856-6712
5609 Trotter Road
Clarksville M.D. 21029

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JOHN CONNOLLY | ) | |
| | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Civil Action No. 09-110 (JR) |
| | ) | |
| | ) | |
| ERNST & YOUNG LLP, et al. | ) | |
| | ) | |
| | ) | |

**NOTICE REGARDING BULKY EXHIBITS**

Bulky exhibits have been filed in paper in this case. The exhibits are available at the Clerk's Office for public viewing and copying between the hours of 9:00 a.m. and 4:00 p.m., Monday through Friday.

**NANCY MAYER-WHITTINGTON**

Clerk